**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WI-LAN INC.,**<br>Plaintiff,<br>v.<br>**LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC.,**<br>Defendants. | **10 Civ. 432 (LAK) (AJP)** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING *EX PARTE* REEXAMINATION**


GREENBERG TRAURIG, LLP
Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
200 Park Avenue
New York, NY 10166
(212) 801-6528 (*telephone*)
(212) 805-5528 (*facsimile*)
edlinr@gtlaw.com

Of Counsel:

GREENBERG TRAURIG, LLP
Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
maierse@gtlaw.com

*Attorney for Defendants LG Electronics Inc. and LG Electronics USA, Inc.*

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. RESPONSE TO WI-LAN'S ARGUMENT ..... 1

A. Wi-LAN's Response Is Riddled With Key Factual Omissions, Misrepresentations And False Statements. ..... 1

1. Wi-LAN Knew About The Request For Reexamination Before It Filed This Lawsuit, But Withheld It From The Court And Defendants. ..... 2

2. LG Timely Filed The Motion To Stay Immediately Upon Learning That A Reexamination Request Was Granted. ..... 2

B. Contrary to Wi-LAN's Arguments, Recent Decisions From Across The United States Support Granting A Stay Under Similar Factual Circumstances. ..... 4

C. Contrary to Wi-LAN's Arguments, The Case Will Be Simplified By The Results Of The Reexamination And The Fraud Claim Does Not Preclude A Stay. ..... 4

1. Wi-Lan's Fraud Count Is A Sham. ..... 5

2. Wi-LAN's Fraud Claim Is Intertwined With, And Dependent Upon, The Resolution Of The Patent Issues. ..... 7

D. There Is No Danger of Undue Prejudice Or Tactical Disadvantage to Wi-LAN. ..... 8

E. The Preliminary Stage Of This Case Weighs Heavily In Favor Of A Stay. ..... 10

III. CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Federal Cases**

*Cygnus Telecomms. Tech., LLC v. United World Telecom, L.C.*,
385 F. Supp. 2d 1022 (N.D. Cal. 2005)........8

*Edisync Systems, Inc. v. Centra Software, Inc.*,
No. 03-cv-1587-WYD-MEH (D.Colo. Nov. 6, 2009)........4

*ESN, LLC v. Cisco Systems, Inc.*,
No. 5:08-cv-20 (E.D.TX 2008)........4

*Everett Labs., Inc. v. River's Edge Pharm., LLC*,
No,. 09-3458 (JLL) (D.N.J. Nov. 24, 2009)........7

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
No. 08-CV-299S (W.D.N.Y. Sept. 28, 2009)........4

*ICI Uniqema, Inc. v. Kobo Prods., Inc.*,
2009 WL 4034829 (D.N.J. Nov. 20, 2009)........4

*Inteplast Group, LTD. v. Coroplast, Inc.*,
No. 4:08-CV-1413 CAS (E.D.Mo. June 23, 2009)........4

*Lifewatch Servs. v. Medicomp, Inc.*,
2010 WL 963202 (M.D. Fla. March 16, 2010)........4

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
2007 WL 627920 (N.D. Cal. Feb. 26, 2007)........9

*Roy-G-Biv Corp. v. Fanuc Ltd.*,
No. 2:07-cv-418 (DF) (E.D. TX Aprl 14, 2009)........4

*Sabert Corp. v. Waddington N. Am., Inc.*,
No. 06-5423 (D.N.J. Sept. 14, 2007)........10

*Seaquist Closures LLC v. Rexam Plastics*,
No. 08C0106 (E.D. Wis. Oct. 22, 2008)........4

*Sorensen v. Black & Decker Corp.*,
2007 WL 2696590 (S.D. Cal. Sept. 10, 2007)........9

*Spectros Corporation v. Thermo Fisher Scientific, Inc.*,
No. ,C 09-1996 SBA (N.D.Cal. Jan. 20, 2010)........4

*Speedtrack, Inc. v. Wal-mart.com USA, LLC*,
No. C06-7336 PJH (N.D. Cal. Feb. 5, 2009)........4

*Stormedia Texas, LLC v. CompUSA, Inc.*,
No. 2:07-cv-025 (E.D.TX July 23, 2008)........4

*Tech., LLC v. Digital Gaming Solutions S.A.*,
2010 WL 883657 (E.D. Mo. March 5, 2010)........4

*Wall Corp. v. Bonddesk Group, L.L.C.*,
No. 07-844 GMS (D. Del. Feb. 24, 2009)........4

**Federal Statutes**

35 U.S.C. § 303(a) ....................................................................................................................3, 6, 7

Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"), respectfully submit this reply in support of their motion to stay this case pending the completion by the U.S. Patent and Trademark Office ("PTO") of a reexamination involving the patent-in-suit (U.S. Pat. No. 5,828,402 or the "'402 patent").

## I. INTRODUCTION

A stay is appropriate at this preliminary stage of the case and consistent with existing case law in this and other circuits. Absent a stay, the Court will need to construe more claims and consider more briefing than is likely necessary and do so without the benefit of the USPTO's expertise. In addition, the parties will also need to conduct costly discovery and briefing on a broader scope of issues than is likely necessary.

Noticeably absent from Wi-LAN's Response is any rebuttal to the fact that the parties and Court will have wasted enormous time and money litigating this case should the PTO ultimately determine, during the pending reexamination, that the '402 patent is invalid, or that the patent claims must be materially changed. The enormous prejudice to LG in such a case is obvious, and Wi-LAN cannot seriously argue otherwise.

Instead, Wi-LAN omits, mischaracterizes or, in some instances, outright fabricates the facts in its opposition to the stay. Given that (a) Wi-LAN's fraud claim is entirely intertwined with, and dependent upon the resolution of, the patent issues; (b) LG and Wi-LAN are not competitors; (c) Wi-LAN is a non-practicing, licensing entity; (d) Wi-LAN has tacitly admitted that LG is licensed; (e) Wi-LAN has admitted it has an obligation to license all comers under fair and reasonable terms; (f) Wi-LAN delayed more than two and a half years before asserting these claims; and (g) Wi-LAN has acknowledged that its only motivation for bringing the case is money, should the instant motion be granted the prejudice to Wi-LAN is minimal, if not non-existent. Contrasted with the possibility of great prejudice to LG, the Court should exercise its inherent power to manage its case load and grant LG's motion.

## II. RESPONSE TO WI-LAN'S ARGUMENTS

### A. Wi-LAN's Response Is Riddled With Key Factual Omissions, Misrepresentations And False Statements.

Wi-LAN's Response begins with nine-pages of "Introduction" and "Statement of Facts" replete with numerous factual misrepresentations, omissions and unsupported attorney argument disguised as facts. Supporting citations are sparse and, when provided, either cite to inapposite exhibits or the corresponding paragraph of Wi-LAN's First Amended Complaint.

**1. Wi-LAN Knew About The Request For Reexamination Before It Filed This Lawsuit, But Withheld It From The Court And Defendants.**

In its attempt to distort the circumstances surrounding LG's motion to stay, Wi-LAN goes to great length to portray LG's decision to file this motion as the product of some nefarious motive to gain a tactical advantage in the lawsuit. In so suggesting, Wi-LAN intentionally omits critical facts, and misrepresents or outright "creates" others.

Wi-LAN conveniently ignores the critical fact that the Request for Reexamination was filed **well before** it filed this lawsuit. Specifically, the Request for Reexamination was filed on December 24, 2009. *See* Edlin Aff.,[1] Ex. 2. The reexamination request included a certification that Wi-LAN's patent counsel of record, Oyen, Wiggs, Green and Mutala LLP, were served with a copy of the reexamination request on December 24, 2009. *Id*. Thus, despite knowledge of the pending reexamination, Wi-LAN filed this action against LG on January 9, 2010—a little more than two weeks later—which suggests that it was the reexamination request and the resulting inability to continue to pressuring its licensees, and not LG's activities, that provided the true motivation for Wi-LAN's lawsuit after sitting on its purported claims for more almost three years. Compl.; Dkt. No. 1. The PTO granted the Request for Reexamination on March 2, 2010. *See* Edlin Aff., Ex. 3.

**2. LG Timely Filed The Motion To Stay Immediately Upon Learning That A Reexamination Request Was Granted.**

The parties conducted a Rule 26(f) meeting on the morning of March 17, 2010, just before the Rule 16 Conference scheduled with the Court that same day.[2] Wi-LAN attempts to make much of LG's purported failure to inform Wi-LAN or the Court of its intention to file a motion to stay during the Rule

[1] "Edlin Aff." means the Affirmation of Richard A. Edlin in Support of Motion to Stay Litigation Pending *Ex Parte* Reexamination Proceedings filed contemporaneously with and in support of LG's motion to stay.

[2] Rule 26(f) specifically requires the parties to conduct a pre-case management conference at least 21-days before the Rule 16 scheduling conference. As the party initiating the lawsuit, it is the plaintiff's responsibility to timely schedule the Rule 26(f) meeting.

26(f) meeting and Rule 16 Conference. Resp. at 7. In so doing, Wi-LAN conveniently omits the fact that LG was completely unaware that a reexamination request of the '402 patent had been filed, let alone granted, on March 17, 2010. *See* Mote Decl. at ¶ 2. This is something of which Wi-LAN surely should have informed both the Court and LG. It was only during diligence research in early April, while preparing LG's response to Wi-LAN's original Complaint, which was due on April 9, 2010, that LG learned about the reexamination. *Id.*

Wi-LAN's counsel next represents that "a motion was never mentioned by LG ... during the communications between the parties in which LG requested and Wi-LAN consented to allow LG to delay the filing of its answer and the service of its responses to discovery in this case." Resp. at 7. This assertion is a blatantly false. In the same April 14, 2010, telephone call in which the parties discussed the extensions,[3] counsel for LG expressly asked whether Wi-LAN would consent to stay this action pending the reexamination proceedings. *See* Mote Decl. at ¶3. LG filed the motion to stay on April 15, 2010, or only a little more than a month after the Request for Reexamination was granted, and only about week after LG learned of the reexamination, and Wi-LAN refused to consent to entry of a stay. The Patent Statute expressly states that requests for reexamination should only be granted if they raise a substantial new question of patentability. *See* 35 U.S.C. § 303(a). Thus, even assuming *arguendo* Wi-LAN's misplaced theory of constructive notice, the earliest LG could have reasonably filed its motion was immediately after the PTO granted the reexamination request or early March.

Nevertheless, based on these half-truths, factual omissions and outright false statements, Wi-LAN spins a tale that suggests LG's motion to stay was somehow untimely. But, as the facts outlined above establish, it was Wi-LAN that "hid the ball" here, not LG. Wi-LAN indisputably knew of the reexam almost immediately after the Request for Reexamination was filed on December 24, 2009, and that there were significant problems with its patent after the PTO granted the Request on March 2, 2010, because it

[3] These extensions were hardly unreasonable or unexpected by Wi-LAN. LG sought an extension to both serve its answer after Wi-LAN unexpectedly filed a First Amended Complaint on the eve of LG's deadline to answer the original complaint and for its written response to Wi-LAN's first set of discovery, which Wi-LAN hand served on LG's counsel during the untimely and perfunctory Rule 26(f) meeting that Wi-LAN **conducted on the same day** as the Court's Rule 16 Conference.

was served with these documents contemporaneously with their filing in the PTO. Yet, Wi-LAN withheld both the Request and the grant of reexamination from LG and the Court.

### B. Contrary to Wi-LAN's Arguments, Recent Decisions From Across The United States Support Granting A Stay Under Similar Factual Circumstances.

Wi-LAN does not dispute that courts routinely grant stays pending reexamination but, instead, suggests that more recently courts have rolled back the "liberal policy" of granting stays pending reexamination in patent infringement lawsuits.[4] Resp. at 20. Nothing could be further from the truth. In fact, there are numerous cases from across the country—in just the last few months—in which courts have affirmed the "liberal policy" of granting stays.[5]

### C. Contrary to Wi-LAN's Arguments, The Case Will Be Simplified By The Results Of The Reexamination And The Fraud Claim Does Not Preclude A Stay.

Wi-LAN argues that whether the patent-in-suit emerges from the reexamination process changed or cancelled is speculative. LG strongly disagrees. While Wi-LAN makes every effort to massage the numbers in its favor, the simple fact remains that 76% percent of all patents submitted for reexamination will be either cancelled or amended altogether. Edlin Aff.; Ex. 3. If the stay is denied and the claims are cancelled in their entirety, the entire case will be moot. If the claims are amended, it is likely that a number of aspects of this litigation will have to start over, including discovery, claim construction briefing (and

---

[4] Not surprisingly, Wi-LAN relies heavily on three decisions from the Eastern District of Texas, a court well known as a favorable venue for patent plaintiffs, and the lone district court that apparently frowns on stays pending reexamination, counter to the weight of the decisions from the rest of the country, namely *ESN, LLC v. Cisco Systems, Inc*., No. 5:08-cv-20, 2008 WL 6722763 (E.D.TX 2008); *Roy-G-Biv Corp. v. Fanuc Ltd*., No. 2:07-cv-418 (DF), 2009 WL 1080854 (E.D. TX Aprl 14, 2009) and *Stormedia Texas, LLC v. CompUSA, Inc*., No. 2:07-cv-025, 2008 WL 2885814 (E.D.TX July 23, 2008).

[5] *See e.g JAB Distributors, LLC v. London Luxury, LLC et al*., N.D.IL Case No. 1:09-cv-05831 (Judge St. Eve. May 11, 2010) (granting stay where the parties had exchanged proposed claims constructions(Mote Decl.; Ex. 8); *Edisync Systems, Inc. v. Centra Software, Inc*., No. 03-cv-1587-WYD-MEH, 2009 WL 3698520 (D.Colo. Nov. 6, 2009) (granting a stay and finding no undue prejudice to plaintiff since it was not in direct competition with the defendant); *Inteplast Group, LTD. v. Coroplast, Inc*., No. 4:08-CV-1413 CAS, 2009 WL 1774313 (E.D.Mo. June 23, 2009) (granting a stay where plaintiff's arguments that it would be prejudiced by the loss of market share was contradicted by its delay in pursuing its infringement claims); *Wall Corp. v. Bonddesk Group, L.L.C*., No. 07-844 GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) (granting stay after deeming plaintiff's argument that evidence might be lost as speculative or irrelevant). *See also Lifewatch Servs. v. Medicomp, Inc*., 2010 WL 963202, at *1 (M.D. Fla. March 16, 2010); *1st Tech., LLC v. Digital Gaming Solutions S.A*., 2010 WL 883657, at *1 (E.D. Mo. March 5, 2010); *ICI Uniqema, Inc. v. Kobo Prods., Inc*., 2009 WL 4034829, at *1 (D.N.J. Nov. 20, 2009); *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Prods., Inc*., No. 08-CV-299S, 2009 WL 3162213 (W.D.N.Y. Sept. 28, 2009); *Seaquist Closures LLC v. Rexam Plastics*, No. 08C0106, 2008 WL 4691792 (E.D. Wis. Oct. 22, 2008); *Spectros Corporation v. Thermo Fisher Scientific, Inc*., No. C 09-1996 SBA, 2010 WL 338093 (N.D.Cal. Jan. 20, 2010).

hearing), dispositive motions, among other things. That scenario would result in a significant waste of both the Court's and parties' time and resources.

Wi-LAN does not dispute that the reexamination will likely simplify the issues relating to its patent infringement claim, or that determining the validity of the '402 patent through a reexamination proceeding will be considerably less expensive than through a patent infringement lawsuit. Wi-LAN also does not dispute the benefits from utilizing the PTO's expertise on issues relevant to the prior art and the evaluation of the validity of the '402 patent in view of prior art references. Instead, Wi-LAN states that "the parties agreed that patent-related activities, such as a *Markman* hearing, are not necessary to adjudicate this case." This statement is both false and contrary to law. LG never agreed that "patent-related activities were not necessary to adjudicate" Wi-LAN's patent infringement action. Wi-LAN's false representation suggests that it will say anything to defeat this motion regardless of its basis in fact.

Wi-LAN also argues that its fraud claim precludes the entry of a stay. Wi-LAN is wrong. As set forth below, the fraud count is a sham and, even if it were not, its resolution is intertwined with, and dependent on, the resolution of patent issues.

**1. Wi-Lan's Fraud Count Is A Sham.**

Wi-LAN's current lawsuit is a sham: Wi-LAN has taken what was originally (and should have remained) a contract dispute relating to a patent license agreement and converted it into a fraud and patent infringement case.

Wi-LAN bases its fraud claim against LG on two purported representations by LG: (1) that it would "implement the technology of the '402 patent in order to comply with the FCC regulations," and (2) "that the revenues generated from LG's license would therefore outweigh the costs associated with lowering the royalty rates for Tri-Vision's other customers." Simply put, Wi-LAN argues that the License Agreement between LG and Wi-LAN somehow morphed into a guarantee agreement, an insurance policy, and a trust document creating a fiduciary relationship between the parties. Such claims are nonsense and, if upheld, would stand contract law on its head.

The License Agreement itself and Wi-LAN actions confirm its fraud claim lacks merit. The License Agreement has no annual royalty minimums or guarantees—standard terms for a licensor

concerned about ensuring its licensee meets a certain minimum threshold of annual royalty payments. Likewise, Wi-LAN never invoked the License Agreement's Accounting provision, which allowed Wi-LAN to inspect its licensee's accounting records, until this lawsuit.

Perhaps no evidence better reveals the absence of any support for Wi-LAN's fraud claim than the fact that up until a few days before the filing of this Reply Brief, and well after LG filed its original and amended complaints, Wi-LAN's website continued to advertise its V-Chip technology licensing business—**listing LG as one of its current licensees**. Mote Decl. at ¶¶4-6; Ex. 5-7. The LG name and logo were published along with several other television manufacturers and Wi-LAN included a link to a PDF file listing all of Wi-LAN's V-Chip licensees. *Id*. Not surprisingly, and only after LG noted this seeming contradiction with LG's fraud claims in its Answer to Wi-LAN's First Amended Complaint, did Wi-LAN remove the LG name and logo marks from its V-Chip licensing webpage. *Id.* at ¶ 5; Ex. 6. Wi-LAN apparently forgot, however, to amend its PDF list of V-Chip licensees, which continues to list LG as a licensee. *Id*. at ¶ 6; Ex. 7.

Likewise, Wi-LAN's actions since filing the lawsuit further demonstrate that its fraud claim is meritless. For instance, at the time Wi-LAN filed its fraud claim on January 9, 2010, it had still not terminated the License Agreement. Wi-LAN did not send LG a notice of termination until April 7, 2010.[6] *See* Edlin Aff.; Ex. 1.

In addition, Wi-LAN's fraud claim makes no logical sense. According to Wi-LAN, LG promised to make up for the reduced per unit royalty it demanded with enough volume to cover the lost licensing revenue Wi-LAN would receive from all other licensees that had a most-favored nations clause in their license agreements requiring Wi-LAN to provide such licensees with the best royalty rate offered another licensee. *See* Resp. at 3-4. But Wi-LAN cannot and does not allege that LG knew the identity of these other licensees, the terms of their license agreements with Wi-LAN or the amount of revenue that Wi-LAN received from these licenses. And, according to Wi-LAN, it has entered into more than one hundred and eighty licenses under the '402 patent. Nevertheless, Wi-LAN claims that LG promised it would make up

---

[6] The termination letter confirms that Wi-LAN had no basis for including a patent infringement claim when it filed its original complaint.

for the incremental reduction in royalties collected from these unidentified, constantly changing licensees. Such assertions simply fail the smell test.

But even assuming *arguendo* that LG made such a representation during the license negotiations, Wi-LAN could not have reasonably relied on such a representation because it knew that LG did not have information about the identity of, or the amount of royalties paid by, Wi-LAN's numerous other licensees.[7] More troubling, Wi-LAN apparently suggests that such a representation would bind LG for as long as it was licensed under the '402 patent.

Finally, Wi-LAN's fraud allegation makes no economic sense. Why would LG enter into a License Agreement that it never intended to honor for the sole purpose of dropping the royalty rate paid by all of its competitors? If LG had really intended to defraud Wi-LAN, would not it have just asked for the offered or prevailing rate so that it did not trigger the most-favored nations clauses in its competitors' licenses? In sum, Wi-LAN's manufactured fraud claim is meritless.

**2. Wi-LAN's Fraud Claim Is Intertwined With, And Dependent Upon, The Resolution Of The Patent Issues.**

The sham fraud claim has now become the crux of Wi-LAN's opposition to LG's motion to stay, and Wi-LAN argues that LG's motion is "fatally flawed for its failure to consider Wi-LAN's substantial fraud claim." Resp. at 1. According to Wi-LAN, "a reexamination determination will do little or nothing to focus or resolve this claim." *Id*. Wi-LAN is wrong. Wi-LAN's fraud claim is based on a patent license agreement covering the '402 patent. Thus, Wi-LAN's fraud claim is directly intertwined with and dependent on the same issues as the patent infringement claim, namely whether the '402 patent is valid, enforceable and infringed—all issues that Wi-LAN admits will be substantially simplified by the pending reexamination. Courts do not hesitate to grant stays pending reexamination, covering claims other than the patent infringement when the claim bears some relationship to the patent. *See Everett Labs., Inc. v. River's Edge Pharm., LLC*, No. 09-3458 (JLL), 2009 WL 4508584 (D.N.J. Nov. 24, 2009) (entering stay pending reexamination of all claims having a direct bearing on plaintiff's patented product, including federal unfair

[7] And LG obviously had no ability to forecast who these licensees would be or the volume of products they would sell under the license in the future.

competition, copyright infringement and state law unfair competition claims in addition to the patent infringement claim).

A patent owner has no basis to demand a license under an invalid patent. And if Wi-LAN were to suggest otherwise, then it would invite patent misuse and antitrust claims by LG and its other licensees. Wi-LAN's fraud claim depends on resolving whether or not LG's accused television receivers use the method for updating ratings table data, which it calls flexible V-Chip technology, covered by the claims of the '402 patent. If the reexamination results in the invalidity of the '402 patent or substantially changes the claims, then Wi-LAN's fraud claim likewise disintegrates. Further, if LG's accused products do not use the patented method, then there can be no fraud because LG has no obligation to pay royalties for products that are not covered by the patent. On the other hand, if LG's accused products are found to actually practice the method claims of the '402 patent, then LG is licensed under the patent license agreement and Wi-LAN is entitled to contract damages—the benefit of its bargain, which is the royalty amount multiplied by the number of accused products found to practice the patented method.

**D. There Is No Danger of Undue Prejudice Or Tactical Disadvantage to Wi-LAN.**

A stay would not prejudice Wi-LAN. Wi-LAN attempts to overcome the overwhelming precedent against it by pointing to statistics showing the average pendency for an *ex parte* reexamination is about 25 months and speculating that the entire reexamination proceeding, with all possible appeals, is likely to last 4-7 years. (Resp. at 7). That purported estimate is grossly exaggerated, wholly inaccurate, misleading and should be rejected (as that same argument has been before).[8] First, while LG does not dispute the 25-month figure, it is important to note that the median pendency is less than 20 months.[9] Second, at least one court has outright rejected the notion that a reexamination will take 7 years. *See Cygnus Telecomms. Tech., LLC v. United World Telecom, L.C.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (holding that plaintiff's 7 year estimate for a reexamination was "unrealistic"). Further, Wi-LAN's reliance on a law journal article titled, *Inter Partes* Reexamination and Improving Patent Quality, which focuses on *inter partes* reexamination proceedings, not *ex*

[8] Even if that estimate is given credence, courts have consistently held that delay alone is insufficient to overcome a stay.

[9] LG asserts that the "median" time frame is more accurate since, unlike the "average," a particularly long and complex reexamination (which this is not) would not artificially skew the results.

*parte* reexamination proceedings, is misplaced. See Resp. Ex 3.

Further minimizing the potential prejudice to Wi-LAN, the PTO has promulgated internal rules that give patents involved in litigation priority over "all other cases." *See* MPEP § 2261 ("Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases"). Moreover, if the stay is granted, the PTO will further attempt to expedite the proceedings. *See* MPEP § 2686.04(1) (where "litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible").

Even assuming *arguendo* that plaintiff's 4 to 7 year figure is accurate and applicable (which, as discussed above, it is not), it is well settled that delay alone is insufficient to demonstrate undue prejudice. *See, e.g.*, *Sorensen v. Black & Decker Corp*., 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007) ("The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay"); *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd*., 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007).

But Wi-LAN admits, and cannot reasonably deny, the following: (a) Wi-LAN is a non-practicing, licensing entity; (b) LG and Wi-LAN are not competitors; (c) Wi-LAN is legally obligated to license the '402 patent on fair and non-discriminatory terms; (d) Wi-LAN did not file suit against LG **for more than two and half years after** first notifying LG of its purported material breach of the License Agreement; (e) Wi-LAN filed this lawsuit **after** it had knowledge that a Request for Reexamination was filed with the PTO; (f) Wi-LAN continued to pursue it clams **after it knew** the PTO granted the Request; (g) Wi-LAN **knew of but never disclosed** the existence of the reexamination request and the PTO's grant of the request to LG or the Court; (h) Wi-LAN **continues to represent** on its website that LG is a licensee of Wi-LAN's V-Chip technology (even after taking down the LG name and logo marks from its website after LG's Answer, just days ago).

Based on the facts outlined above, it is not surprising that Wi-LAN makes a feeble, half-hearted attempt to argue that it will suffer prejudice if a stay is granted. Nevertheless, and based solely on naked, unsupported attorney argument, Wi-LAN argues that if a stay is entered its licensing program for the patent-in-suit "will be irreparably harmed by the delay." Resp. at 15-16. Continuing, Wi-LAN argues that a stay "would create the prospect of the inability to capture millions of dollars of potential licensing

revenues in the remaining six years of the term of the patent." *Id*. But Wi-LAN fails to offer a single shred of support for any of these arguments. Notably, Wi-LAN cannot identify a single licensee or potential licensee that is impacted by its lawsuit against LG. But even if it could, impact to Wi-LAN's license program is insufficient to avoid a stay. *Speedtrack, Inc. v. Wal-mart.com USA, LLC*, No. C 06-7336 PJH, 2009 WL 281932 (N.D. Cal. Feb. 5, 2009) (granting stay despite plaintiff's argument that a stay would frustrate its efforts to obtain license agreements with third parties). Tellingly, Wi-LAN cannot explain the basis for its recent, litigation-inspired concern for its licensing program, when it previously showed no such concern while sitting on its purported fraud and patent infringement claims for years. In sum, Wi-Lan's own actions prior to litigation confirm the absence of any prejudice from a stay.

Finally, Wi-LAN's silence tacitly concedes its agreement that LG faces extreme prejudice if a stay is not granted. Moreover, Wi-LAN does not dispute that there exists a substantial risk of undue and wasted effort by both the Court and the parties if a stay is not granted. And Wi-LAN does not dispute that LG will be subjected unfairly to the expense of litigating allegations based upon rights that are uncertain and subject to cancellation or change during the reexamination.

### E. The Preliminary Stage Of This Case Weighs Heavily In Favor Of A Stay.

Wi-LAN cannot and does not reasonably dispute that this lawsuit is in its preliminary stages. Courts stress the importance of the stay being sought early in the litigation." *Sabert Corp. v. Waddington N. Am., Inc*., No. 06-5423, 2007 WL 2705157, at *7 (D.N.J. Sept. 14, 2007). Conceding that the lawsuit is in an early stage, Wi-LAN's only argument appears to be that "LG agreed to a 'rocket docket' schedule without mentioning the reexamination." But Wi-LAN conveniently ignores that the "rocket docket" was imposed by the court, not LG, **and that LG was unaware of the reexamination at time of the parties' Rule 16 Scheduling Conference**.

## III. CONCLUSION

For all of the foregoing reasons, LG respectfully requests a stay of all proceedings in this action pending a final disposition of the pending reexamination of the '402 patent by the United States Patent & Trademark Office.

Dated: New York, New York
May 13, 2010

**GREENBERG TRAURIG, LLP**

/s/ Richard A. Edlin

Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com

Of counsel:

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Greenberg Traurig, LLP
77 West Wackver Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
maierse@gtlaw.com

*Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.*