GT GreenbergTraurig

~~CONFIDENTIAL – ATTORNEYS' EYES ONLY~~

RECEIVED DEC 03 2010 CHAMBERS OF ANDREW J. PECK

MEMO ENDORSED

Jeffrey G. Mote
Tel 312.456.8401
Fax 312.456.8435
motej@gtlaw.com

BY ECF

December 3, 2010

**VIA FACSIMILE**

Hon. Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom: 20D
New York, NY 10007-1312
Fax: 212-805-7933

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

Re: Wi-LAN Inc. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc.
Civil Action No. 10 Civ. 432 (LAK) (AJP)

Dear Magistrate Judge Peck:

Defendants write regarding discovery issues relating to the depositions of Plaintiff's 30(b)(6) witnesses and fact witness Michael Fortkort.

## I. PLAINTIFF'S IMPROPER ATTEMPT TO LIMIT THE SCOPE OF THE COURT ORDERED DEPOSITION OF TIM COLLINGS

Tim Collings, the inventor of the '402 patent, former director of Tri-Vision and long-standing consultant to Wi-LAN, was designated as Wi-LAN's 30(b)(6), deponent for Topics 13–21, 26, 36, 38, 42, 48, 50, 56, 60, and 62 in Defendants 30(b)(6) Deposition Notice. That deposition took place on October 15, 2010. On October 29, 2010, the Court ordered Plaintiff to produce Mr. Collings for a continued 30(b)(6) deposition on a number of topics based on his dilatory tactics and unpreparedness during his October 15th deposition. The Court also ordered Plaintiff to revisit all 26,000-plus documents listed on its privilege log to ensure that only truly privileged documents were listed.

The relevant portion of the transcript states:

THE COURT: One day, seven hours, all the categories,
unless you tell me that on one of these categories,
Mr. Sipiora, he was not your 30(b)(6) witness and that somebody
else is the witness on that category.
MR. SIPIORA: I don't know that's the case. I believe

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN--
BOSTON
BRUSSELS--
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON-
LOS ANGELES
MIAMI
MILAN--
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME--
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
ZURICH--
-OPERATES AS GREENBERG TRAURIG MAHER LLP
--STRATEGIC ALLIANCE

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

if they are listed here, I'm assuming Mr. Harris represented they were on the notice.
MR. HARRIS: They are his designations, your Honor, and the reason they are not --
THE COURT: Stop, stop, stop. One day, seven hours, a little bit of reasonableness on both sides. If you can get it done in five or six, great. If you need seven and a half, come on. Don't keep a stopwatch or do keep a stopwatch, but cooperate with each other.

See 10/29/10 Hearing Transcript at pp. 57 at lines 16:25 and 58 at lines 1:4 (emphasis provided).

As a result of that order, on Friday, November 5, Plaintiff served Defendants with more than 130,000 pages of documents, many, but not all, of which were from the privilege log, on six DVDs, with a new privilege log that shrank from nearly 3,000 pages to a "mere" 319 pages—only 10% of its original size. In papers submitted to the Court in connection with the November 16th hearing, Defendants demonstrated how Plaintiff had used its privilege log as a tool to withhold evidence from LG solely because it was deemed damaging to Plaintiff's case. Based on this evidence, the Court ordered Plaintiff to produce Mr. Collings for two days of deposition testimony without any limitation on the scope of topics for which Mr. Collings had already been designated. Further, Plaintiff's counsel agreed on the record to bring back Mr. Collings for two days and without restrictions on the scope of this deposition. The relevant portion of the transcript states:

THE COURT: As I said, there is a lot in here which frankly I glossed over as to how terrible Wi-Lan is. All I care about is whether from generosity now in withdrawing privilege designations that arguably are still privileged or whether as you admitted as to some of them at the October 29 conference that they were mistakenly coded as privileged, you have now produced a quarter of a million, half of a quarter, 125,000 pages' worth of documents, they are entitled to depose Mr. Collins about it.
So the only question would seem to be the argument is should it be one day, two days, one and a half days. And in light of this, so I don't have to determine whether there was misconduct and can just take the high road and say he has now produced it, let's move on, it seems to me that no more than two days but as little as possible is appropriate. So tell me

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

```
why it isn't or tell me that you can live with that.
        MR. SIPIORA:  The documents are largely cumulative.
Can we live with it; sure we can live with it.  It's two days.
```

See pp. 8 at lines 21:25; 9 at lines 1:13.

Nevertheless, Plaintiff now seeks to narrowly limit the scope of Mr. Collings' Court ordered deposition, including limiting the Defendants' deposition to (i) only the 30(b)(6) deposition topics identified during the October 29, 2010, hearing; (ii) limiting the individual deposition to "Mr. Ikebe . . . and the recently produced documents."

Defendants intend to elicit Wi-LAN deposition testimony via Mr. Collings on Topic Nos. 14 (Design, development, construction, testing, or reduction to practice of any and all preliminary designs, prototypes, and preproduction or demonstration models of any apparatus, system or method embodying any element or claim of the Patent-in-Suit) and 15 (Any and all preliminary designs, prototypes, preproduction or demonstration models, benchmarking, reverse engineering and/or analysis of V-Chip Technology in connection with the design, development, construction, testing, or reduction to practice of any apparatus, system or method embodying any element or claim of the Patent-in-Suit and/or any V-Chip Technology apparatus, system, or method.). The following documents are relevant to Topic Nos. 14 and/or 15 and were produced on November 5, 2010, following Plaintiff's egregious privilege log abuses and after Defendants had already deposed Mr. Collings:

- WL0380646 - 01/09/2008 Email Chain between Tim Collings, John Roberts, Najmul Siddiqui, and Murray Eldon regarding Wi-LAN's role as a "mole" in testing DTV receivers and reporting their non-compliance with the FCC regulations to the FCC.

- WL0315807 - 11/12/2007 Email Chain between Tim Collings, Murray Eldon, Leonard Wan, and Mike Fortkort regarding Wi-LAN's test of an LG DVR product for compliance with the FCC regulations.

- WL0325590 - 06/01/2007 Tim Collings Email to Murray Eldon debating whether to instruct Dominic Perri to state to the FCC that Perri, himself, "located a company (us [Wi-LAN]) who can provide detailed test and non-compliance reports if the FCC is not willing/wanting to test."

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

- WL0342483 - 08/22/2007 Email Chain between Tim Collings and Murray Eldon discussing Wi-LAN's "diabolical" plan to have Dominic Perri "ask a few pointed questions to Gary Shapiro" of the CEA (in the presence of FCC representatives) about several CEA members' non-compliance with the FCC regulations.

Further, Defendants direct the Court's attention to Wi-LAN 30(b)(6) Topic Nos. 16 (The conception and/or reduction to practice of the alleged invention(s) of the Patent-in-Suit) and 26 (Inventorship of the Patent-in-Suit and any other V-Chip Technology owned by Wi-LAN). First and foremost, Defendants note that Plaintiff did not serve the highly relevant First Amended Response to Interrogatory No. 3 until the eve of Mr. Collings' depositions. Now that Defendants have had the time to read and analyze Plaintiff's Amended Response, Defendants must elicit additional deposition testimony from Mr. Collings as Wi-LAN's 30(b)(6) designee. Wi-LAN produced the following documents relating to Topic Nos. 16 and/or 26 in its November 5, 2010, production:

- WL0376697 - 02/01/2008 Tim Collings Email to Murray Eldon and Tyler Burns demonstrating Mr. Collings' reluctance to announce in Wi-LAN's 2007 Annual Report that he is the inventor of Wi-LAN's V-Chip technology.

- WL0309544 & WL0309545 - 11/13/2001 Cover Letter from Richard Parr to Najmul Siddiqui and redlined version of Collings / V-Chip Advertising Materials in which nearly every reference to V-Chip technology is revised to reflect whether the technology covers single or multiple informational schemes.

Next, Defendants intend to elicit deposition testimony from Mr. Collings as Wi-LAN's 30(b)(6) representative on Topic No. 20 (Any and all prior art searches relating to V-Chip Technology conducted by Wi-LAN, the attorneys prosecuting the Patent-in-Suit or any foreign counterpart thereof, and the inventors of the Patent-in-Suit). The following documents (which were produced after Mr. Collings' October depositions) are relevant to Topic No. 20:

- WL0308432 - 06/11/2003 Tim Collings Email to Najmul Siddiqui relating to '402 Patent prior art public disclosures; Mr. Collings informs Mr. Siddiqui that he has discarded certain "clippings," perhaps related to V-Chip technology.

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

- WL0345905 - 10/31/2006 Tim Collings Email to Thomas Meagher, Murray Eldon, Najmul Siddiqui, and Mike Fortkort in which Mr. Collings makes several assertions regarding the publication of the DigiCipher II reference.

- WL0359196 - 10/25/2006 Thomas Meagher Email to Tim Collings, Najmul Siddiqui, and Mike Fortkort in which Mr. Meagher asks whether he should "pursue signing [Paul Hearty] up as a consultant to [his]firm for the purpose of confidentially getting to the real story with 079 [the GI reference]."

- WL0359196 - 12/16/2006 Email Chain between Mike Fortkort, Tim Collings, Thomas Meagher, and Najmul Siddiqui relating to Paul Hearty and the disclosure of information perhaps related to the publication of DigiCipher II. Mr. Meagher states that "Paul Hearty called to say that he just received an email from Bill Frommer, Sony's counsel, asking for his help. Paul has not responded but contacted me as he was obligated to do under our agreement.... Unless anyone has a different view or wants to talk about it first, I plan to tell Paul to not respond to the email or any other he may get." In response, Collings states "Agree on Paul not responding to Sony in any way, shape or form."

Finally, Defendants intend to question Mr. Collings in a 30(b)(6) capacity on documents relevant to Topic No. 36 (Description and identification of financial and manufacturing documents generated or used by Wi-LAN in the development, manufacture, marketing, and sale of any apparatus, system or method embodying the Patent-in-Suit). Defendants note that there are still documents that Plaintiff has yet to produce relating to this topic. Newly produced documents relating to this topic include:

- WL0432007 - 10/29/2009 Wi-LAN Presentation regarding V-Chip Licensing Strategic Planning 2010, which contains projected '402 patent revenue streams.

- WL0382756 - 07/21/2010 Wi-LAN Presentation regarding V-Chip Q2 Quarterly Business Review Report.

- WL0335026 - Wi-LAN Inc. Operating Plan Fiscal Year 2008.

CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Not surprisingly, Plaintiff offers no explanation as to why Mr. Collings should not have to testify on topics for which he was designated and for which relevant documents were only recently produced. In sum, Plaintiff ignores that it was ordered by the Court to produce Mr. Collings for two days of deposition testimony without limitation as a sanction for Mr. Collings' previous deposition misconduct and Plaintiff's massive mis-designation of documents that were only recently produced -- long after the original fact discovery cut-off and Mr. Collings original 30(b)(6) deposition. Accordingly, the Court should deny Plaintiff's belated and unjustifiable attempt to limit the scope of Mr. Collings' deposition.

## II. WI-LAN'S REFUSAL TO RE-DESIGNATE A 30(B)(6) WITNESS TO COVER TOPICS THAT BILL MIDDLETON, WI-LAN'S GENERAL COUNSEL WAS UNPREPARED OR UNABLE TO TESTIFY.

Defendants took the 30(b)(6) deposition of Bill Middleton, Wi-LAN's General Counsel, on November 24, 2010. Mr. Middleton was designated to cover numerous topics in the Defendants' 30(b)(6) deposition notice, which included Topics 1–7, 9–12, 24–25, 27–30, 33, 35, 39, 41, 43–46, 49, 51–55, 59, and 61. Mr. Middleton had little personal knowledge of the topics for which he was designated and he spent little if any time preparing with knowledgeable person's from Wi-LAN's V-Chip licensing business to prepare for his deposition. He further acknowledged that the V-Chip licensing business, Wi-LAN V-Chip Corporation, operated as a separate wholly-owned subsidiary after Wi-LAN acquired Tri-Vision in July 2007 until October 2009.

Mr. Middleton's inability to testify about topics for which he was designated was further confirmed throughout his 30(b)(6) deposition. Specifically, Mr. Middleton was unable to testify about Wi-LAN's communications relating to the '402 patent, the factual basis for Wi-LAN's pleadings, discovery responses, fraud and infringement claims, Wi-LAN's licensing negotiations with LG and Wi-LAN's communications with the FCC relating to the '402 patent - information required by at least Topic Nos. 30, 39, 44, 46, 51, 55, and 61. Mr. Middleton's inability to cover questioning directed to these topics is outlined below:

- 139:6-139:19 - Middleton doesn't know what specific documents Siddiqui provided to LG, particularly any documents that revealed Wi-LAN's licensing strategies to LG. Siddiqui would know this information
- 107:10-110:9 Middleton doesn't know about FCC proffers, though he acknowledges that he is Wi-LAN's representative. He states

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

Siddiqui would know this information when Wi-LAN made its '402 patent proffer to the FCC.

- 73:18-74:3 - Middleton doesn't know how many potential licensees of the '402 patent Wi-LAN communicated with after the date that LG was licensed, informing them that LG had taken a license. He states that Siddiqui would know this information.
- 135:14-136:1 - Middleton doesn't know whether Wi-LAN disclosed its '402 patent licensing strategy to LG during '402 patent license negotiations. He states that Collings or Siddiqui would know this information.
- 141:8-141:21 - Middleton doesn't know whether WI-LAN disclosed the specific royalty rates that it had offered licensees prior to the date that Wi-LAN executed the license agreement with LG. He states that Siddiqui would know this information.
- 150:16-151:5 - Middleton doesn't know whether WI-LAN sought the consent of other licensees to share the terms of their license agreements with LG. He states that Siddiqui, Eldon or Roberts would know this information.
- 60:15-61:24 - Middleton doesn't know whether LG was ever told that Wi-LAN intention to use LG's trademark logo on Wi-LAN's website.
- 168:24-170:3 - Middleton doesn't know why or whether it was Wi-LAN's decision not to go forward with the Advertising Agreement that resulted in a lower royalty rate for LG as alleged in the complaint. He states that Middleton, Siddiqui, Eldon, or Fortkort might know this information.
- 80:5-80:15 - Middleton isn't sure whether Richard Parr was the only Bereskin & Parr attorney assisting Wi-LAN after the merger with Tri-Vision. He states that Siddiqui would know this information.
- 184:5-185:6 - Middleton doesn't know whether Wi-LAN ever shared specific dollar amounts of royalties paid by its other licensees with LG during '402 patent negotiations.

- 251:12-251:21 - Middleton doesn't know whether LG was ever notified of a lower applicable royalty rate that might be relevant to its '402 patent license under the license agreement's most favored nations clause. He states that Siddiqui or Eldon may know.

- 251:22-253:15 - Middleton doesn't know whether Wi-LAN ever notified any other licensees that they were entitled to a lower royalty rate in connection with NTIA products pursuant to their MFN Clauses. He states that Siddiqui, Eldon, Roberts, Collings, and/or Fortkort would know this information.

- 262:21-264:4 - Middleton doesn't know whether Wi-LAN offered Sony a $1.25 royalty rate at some point prior to 12/18/06. He states that Eldon, Siddiqui, Roberts or Collings would know this information.

- 274:2-275:23 - Middleton doesn't know if Panasonic articulated to Wi-LAN a theory of non-infringement based on the fact that its receivers were not capable of receiving and downloading RRT-05.

In an attempt to resolve these issues without involving the Court, Defendants' counsel asked Wi-LAN's counsel to agree to designate Mr. Siddiqui as Wi-LAN's witness on the topics Mr. Middleton was unprepared to provide testimony, including Topic Nos. 30, 39, 44, 46, 51, 55, and 61. Plaintiff refused, however, to agree to designate Mr. Siddiqui to cover these topics, raising issues for the first time concerning the 30(b)(6) depositions of LG witnesses taken long ago and that Plaintiff had previously failed to assert any objection. Accordingly, Defendants now seek an order from the Court requiring Wi-LAN to produce a witness to cover 30(b)(6) Topic Nos. 30, 39, 44, 46, 51, 55, and 61.

## III. PLAINTIFF'S ATTEMPT TO LIMIT THE SCOPE OF MR. FORTKORT'S CONTINUED DEPOSITION

During the October 29th hearing, Plaintiff agreed to produce Mr. Fortkort for an additional full day of deposition based on . 10/29/10 transcript at 48:23-24. The parties are currently working together to schedule Mr. Fortkort's deposition for the week of December 6-10, 2010. However, the parties disagree as to the scope of Mr. Fortkort's deposition. Defendants believe there should be now limitation on the scope of Mr. Fortkort's continued Rule 30(b)(1) deposition. Plaintiff has indicated it will refuse to permit inquiry into information relating to its response in the pending '402 patent reexamination. Defendants do not believe there is any legal basis for Plaintiff to refuse questioning relating to the

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

reexamination response, which was filed by Wi-LAN after Defendants originally deposed Mr. Fortkort. It is indisputable that Mr. Fortkort's reexamination response is highly relevant to this case in terms of infringement, validity, and claim construction issues, among others. Accordingly, Defendants request the Court enter an order indicating that Defendants are free to depose Mr. Fortkort on any relevant issues without limitation, including the office action response recently filed by Mr. Fortkort on behalf of Wi-LAN in the '402 patent reexamination.

## IV. SUMMARY OF RELIEF REQUESTED BY DEFENDANTS

For the reasons set forth in detail above, LG respectfully asks the Court to enter an order requiring Wi-LAN to:

- deny Wi-LAN's motion for protective, which attempts to unfairly limit the scope of the 2-day, Court ordered depositions of Mr. Collings.
- produce a knowledgeable witness to cover Topics Nos. Topic Nos. 30, 39, 44, 46, 51, 55, and 61 in Defendants' 30(b)(6) Deposition Notice to Plaintiff.
- produce Mr. Fortkort for his continued deposition without restriction as to the scope of subjects that may be covered and that is to be completed on or before December 10, 2010.

Very truly yours,

Jeffrey G. Mote

Enclosures
cc: Counsel of record (via e-mail)

# ECF TRANSCRIPTION SHEET



ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.: (212) 805-7933
Telephone No.: (212) 805-0036

**Dated:** December 3, 2010 **Total Number of Pages:** 10

## TRANSCRIPTION OF MEMO ENDORSED ORDER

1. Re Item I, see separate order.

2. Re No. II, plaintiff shall respond by close of business Saturday, with any reply from defendants by close of business Sunday.

3. Re No. III, the Court cannot rule in general but only on a question by question basis.

Copies to: All Counsel
Judge Lewis A. Kaplan