

# GreenbergTraurig

Jeffrey G. Mote
Tel 312.456.8401
Fax 312.456.8435
motej@gtlaw.com

CONFIDENTIAL – ATTORNEYS' EYES ONLY

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 12/6/10

December 5, 2010

**VIA FACSIMILE (W/O EXHIBITS) & VIA MESSENGER**

Hon. Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom: 20D
New York, NY 10007-1312
Fax: 212-805-7933

**MEMO ENDORSED**

Re: Wi-LAN Inc. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc.
Civil Action No. 10 Civ. 432 (LAK) (AJP)

Dear Magistrate Judge Peck:

Defendants submit the following reply in support of their 12/3/10 letter to the Court regarding various deposition issues.

**I. PLAINTIFF'S REFUSAL TO PROVIDE A WITNESS CAPABLE OF FULLY TESTIFYING ON 30(B)(6) DEPOSITION TOPICS NOS. 30, 39, 44, 46, 51, 55, AND 61**

As outlined in Defendants original 12/3/10 letter to the Court, Plaintiff's General Counsel, William Middleton, was unable to testify on a number of 30(b)(6) topics for which he was designated, including Topic Nos. 30, 39, 44, 46, 51, 55, and 61. (See **Ex. A**, Defendants' December 3, 2010, Letter to Judge Peck.)

    **A. Mr. Middleton Was Unprepared To Testify On Numerous Topics For Which Wi-LAN Designated Him.**

        1. <u>Plaintiff rejected Defendants' attempts to amicably resolve this dispute without involving the Court.</u>

This dispute should never have involved the Court. Defendants made significant efforts both during Mr. Middleton's deposition and thereafter to amicably resolve the issues with Mr. Middleton's 30(b)(6) deposition, including seeking to have previously scheduled Wi-LAN fact witnesses cover these issues

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
77 West Wacker Drive, Suite 3100 ■ Chicago, Illinois ■ Tel 312.456.8400 ■ Fax 312.456.8435

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN··
BOSTON
BRUSSELS··
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON·
LOS ANGELES
MIAMI
MILAN··
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME··
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
ZURICH··
·OPERATES AS GREENBERG TRAURIG MAHER LLP
··STRATEGIC ALLIANCE

Hon. Andrew J. Peck
December 5, 2010
Page 2

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

during their individual depositions. Despite initially indicating it would seek to work with Defendants to make appropriate designations during these depositions, Plaintiff refused Defendants' reasonable proposal to have Najmul Siddiqui, Tri-Vision's former President and, until July 2010, the President of Wi-LAN's V-Chip division, testify on the topics that Mr. Middleton was unable to cover. That deposition was scheduled for and taken on December 3rd, but Plaintiff refused to agree to have Mr. Siddiqui cover these topics. And now, Plaintiff seeks to preclude Defendants from obtaining any meaningful testimony on these topics, which relate to several critical issues at the core of Plaintiff's fraud and infringement claims.

To put this current dispute in context, and to understand why Plaintiff is taking such an unreasonable position on a simple request to have its former President cover topics on which he is far more familiar than Wi-LAN's general counsel, it is worth examining Plaintiff's discovery strategy throughout this lawsuit. For example, Mr. Middleton recently confirmed that Wi-LAN began preparing for this lawsuit against LG in 2008 -- more than two years ago -- when it (a) hired the Townsend & Townsend & Crew law firm, (b) began collecting relevant documents from key employees and (c) conducted its first litigation strategy meeting in Washington D.C.

Similarly, documents recently produced by Plaintiff demonstrate that Wi-LAN took aggressive measures to silence key prior art fact witnesses long before it filed this action, using various outside counsel to set up consulting arrangements with these key fact witnesses. For instance, when Sony first identified the General Instruments System Information reference during licensing negotiations in 2006 -- the reference that is now at the core of the pending '402 patent reexamination -- Wi-LAN sought out the former General Instruments employee, Dr. Paul Hearty, who had distributed this reference to the ATSC and its members in May 1995 (more than a year before Mr. Collings filed the applications leading to the '402 patent). Wi-LAN had its outside counsel at Duane Morris set up a consulting agreement with Mr. Hearty -- the terms of which purported to preclude Dr. Hearty from discussing his work for Wi-LAN or the distribution of the GI reference to various Standards Setting Organizations, including ATSC, DAVIC and ABSOC.

Likewise, recent documents from Plaintiff suggest that it sought out and retained the former Chairman of DAVIC, Jules Bellisio, under a similar arrangement to that of Dr. Hearty. Under that agreement, Wi-LAN had Mr. Bellisio prepare a declaration designed to cast doubt on whether the distribution of the same or a similar GI reference at DAVIC even prior to the ASTC

Hon. Andrew J. Peck
December 5, 2010
Page 3

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

distribution is prior art to the '402 patent.[1]

In attempting to shield these key fact witnesses from discovery and putting enormous pressure on Defendants early in the case, Plaintiff clearly hoped to quickly force Defendants to the settlement table. This discovery strategy included demanding an extraordinarily aggressive case scheduling order for a patent case even after Plaintiff shifted the entire focus of the case from a contract dispute to a patent infringement case. Specifically, Plaintiff refused all overtures from Defendants to cooperate in seeking amendments to the case scheduling order to include typical patent related activities (such as scheduling the exchange of infringement and invalidity positions and scheduling a Markman hearing into the case schedule) after Plaintiff dropped its breach of contract claim and shifted the focus of its case to patent infringement.

When this evidence is viewed in combination with Wi-LAN's trial counsel's attempt to avoid exchanging privilege logs altogether earlier in this lawsuit and its massive privilege log misconduct -- resulting in the Court-ordered production[2] of more than 125,000 pages -- it becomes clear that Wi-LAN's misdesignation of privileged documents was no innocent mistake resulting from miscommunication with its contract attorneys but rather a deliberate and knowing litigation strategy employed by Wi-LAN to prevent Defendants from obtaining key evidence.

> 2. <u>Mr. Middleton could have, but did not, seek relevant information from former employees that were clearly available to him as Wi-LAN is paying them to testify in this matter.</u>

Wi-LAN's argument as to why Mr. Middleton was unable to cover topics, such as the licensing negotiations between Plaintiff and LG, supports only that he was not properly designated by Wi-LAN. For example, Wi-LAN argues that Mr. Middleton did the best he could given that the license negotiations took place

---

[1] Although designated to cover Topic No. 4 relating to *inter alia* Wi-LAN's consultants, Mr. Middleton, during his individual deposition, claimed no knowledge of Wi-LAN's consulting arrangements with Dr. Hearty or Mr. Bellisio, did not know whether Wi-LAN had retained any other outside consultants (whether directly or through outside counsel) to assist with '402 patent infringement and/or invalidity issues, and was unable to discuss the terms of Wi-LAN's retention of Dominic Perri and the Coalition of Independent Ratings Services to lobby the FCC and various Standards Setting Organizations on Wi-LAN's behalf. (See Ex. B, November 23, 2010, Excerpts from William Middleton Deposition at 102:17-103:17 (Hearty & Bellisio); 81:9-85:12 (CFIRS / Perri); and 93:1-94:4 (other Wi-LAN consultants).)

[2] The size and scope of Plaintiff's privilege log misconduct is thoroughly outlined in Defendants' 11/16/10 letter to Judge Peck.

GREENBERG TRAURIG, LLP

Hon. Andrew J. Peck  
December 5, 2010  
Page 4

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

---

more than four years ago, and that neither he nor any other person currently employed at Wi-LAN personally participated in those negotiations. But that argument is disingenuous for two reasons.

First, Wi-LAN's argument that it lacks any current employees with knowledge on these topics so that Mr. Middleton was unable to use information within the custody and control of Wi-LAN to prepare for his 30(b)(6) deposition is a sham. Wi-LAN has made, and is paying, several key former employees to sit for their individual depositions. These former employees include the previous President of Wi-LAN V-Chip Corp., Mr. Siddiqui, who only left the company late this past summer and during the lawsuit. Other former employees or agents that participated in the license negotiations with LG include Mr. Collings, Mr. Eldon and Mr. Fortkort -- all of whom participated in one or more of the license negotiation meetings with LG outlined in Wi-LAN's Second Amended Complaint and who were noticed and produced for individual depositions. But, as discussed below, Mr. Middleton never communicated with these former employees, other than a brief 5-10 discussion with Mr. Collings, to prepare for his deposition. This was clearly insufficient for a witness designated to cover more than 30 categories who had no prior background on Tri-Vision's operations.

Second, Plaintiff easily could have and probably should have designated one or more of the former employees it provided for individual depositions to testify on these topics as they clearly had far greater knowledge than Mr. Middleton.

Mr. Middleton's deposition preparation activities further reveal that his preparation was woefully inadequate. These activities included:

- Mr. Middleton met with Tonia Morgan and had some "brief discussions" with Tim Collings. (See **Ex. C**, November 24, 2010, Excerpts from Wi-LAN 30(b)(6) Deposition at 8:3-13.) In truth, these "brief discussion" comprised a single conversation. (**Ex. C** at 8:14-18.) The conversation with Mr. Collings lasted approximately five to ten minutes. (**Ex. C** at 9:4-8.) Mr. Middleton and Mr. Collings spoke about the Coalition and Dominic Perri. (**Ex. C** at 10:1-11.)

- Mr. Middleton met with Ms. Morgan "probably only once" to prepare for his deposition, but had a "number of telephone calls [with her] about document collection and efforts to make sure we were comprehensive." (**Ex. C** at 9:9-15.) Mr. Middleton did not talk to Ms. Morgan regarding any other subjects to prepare for his

Hon. Andrew J. Peck
December 5, 2010
Page 5

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

deposition. (**Ex. C** at 9:21-24.)

- Mr. Middleton met with David Sipiora and Richard Meyer. (**Ex. C** at 7:13-21.) Mr. Middleton estimated that he spent a little more than two days to prepare for his 30(b)(6) deposition with his Townsend attorneys, (**Ex. C** at 25:19-26:3,) but admitted that he spent no time talking with any key Tri-Vision / Wi-LAN V-Chip employees (aside from his brief conversation with Mr. Collings), any outside counsel or any key consultants to prepare for his deposition, (**Ex. C** at 6:19-7:9.)

- Mr. Middleton reviewed two or three license agreements other than LG's to prepare for his deposition, but could not recall which ones, nor their respective dates. (**Ex. C** at 143:16-146:13.)

As noted above, Mr. Middleton had almost no communications with any key Tri-Vision/Wi-LAN V-Chip employees including Mr. Siddiqui, Mr. Eldon or Mr. Roberts in preparation for his deposition and despite the fact that all were previously noticed and scheduled for individual depositions in this case – and, thus, readily available to him. Mr. Middleton also did not communicate with key outside counsel -- who had acted as long-standing licensing agents for Wi-LAN's V-Chip business -- including Mr. Meagher, Mr. Fortkort or Mr. Parr in preparing for his deposition.

In view of Mr. Middleton's admission that he (a) did not communicate with key Wi-LAN former employees, current consultants or licensing agents, (b) his testimony that after Tri-Vision was acquired in July 2007, its V-Chip business operated as a standalone business unit of Wi-LAN (which was, until a few months ago, a wholly-owned subsidiary of Wi-LAN, Inc. called Wi-LAN V-Chip Corp.) and (c) his recent busy travel schedule preparing for and attending mediations in patent matters relating to Wi-LAN's separate wireless patent portfolio, it is not surprising that Mr. Middleton was unprepared and unable to cover a significant number of topics for which he was designated. (**Ex. B** at 55:18-58:14.)

3. <u>Plaintiff's Arguments Are Based Solely On Conclusory and Misleading Attorney Argument</u>

Like its previous response to Defendants' objections to Mr. Collings' 30(b)(6) deposition testimony, Wi-LAN repeats its "strawman" argument that a 30(b)(6) deposition is not supposed to be a "memory test." Defendants never suggested, however, that it was. Instead, Defendants' issues with Wi-LAN's

Hon. Andrew J. Peck
December 5, 2010
Page 6

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

designated 30(b)(6) witness' inability to properly testify on several topics is based on the witness' own admissions of inadequate preparation and his admission that he had never seen and could not explain dozens of documents relating to topics for which he was designated. Likewise, Mr. Middleton repeatedly pointed to Mr. Siddiqui, Mr. Eldon, and Mr. Collings as the persons that Defendants should seek information from in response to dozens of questions asked during his deposition.

Similarly, when he was confronted with numerous documents that contradicted key allegations in the fraudulent inducement claim outlined in Plaintiff's Second Amended Complaint, Mr. Middleton was unable to testify about these materials and, instead, claimed that he had never seen the documents prior to his deposition and was unaware of their existence when he approved the filing of the Second Amended Complaint. Wi-LAN also conveniently ignores that Mr. Middleton could have, but chose not to, confer with knowledgeable former employees, consultants, and outside counsel to prepare for his deposition.

In sum, once Plaintiff became aware that Mr. Middleton was unable to provide meaningful testimony regarding several of the 30(b)(6) topics, it was obligated under Fed.R.Civ.P. 26(e) to supplement his testimony by identifying other individuals with knowledge as to these categories. *See generally Belmont Holdings Corp. v. Unicare Life & Health Ins. Co.*, Civ. A. 98-2365, 2000 U.S. Dist. LEXIS 17228, 2000 WL 1920039 at *2 (E.D. Pa. Dec. 1, 2000) ("When a [30(b)(6)] designee is unable to adequately respond to certain relevant areas of inquiry, the designating party has a duty to substitute an appropriate deponent."). Nevertheless, Wi-LAN refused LG's offer to resolve these issues without Court intervention by simply designating previously scheduled fact witnesses to cover these topics.

4. <u>Wi-LAN's attempt to deflect attention to Defendants' 30(b)(6) deponents is a transparent effort to obfuscate its own 30(b)(6) deponent's inadequacies.</u>

Finally, Wi-LAN's child-like "tit for tat" argument that Mr. Middleton's misconduct is somehow justified because Defendants' 30(b)(6) witnesses purportedly had similar issues barely merits a response. Defendants note, however, that the purported issues that Wi-LAN raises for the first time in its 12/4/10 Response Letter are based on depositions that took place months ago. For instance, Ms. Seshan's 30(b)(6) deposition took place on September 28, 2010, and Mr. Cho's 30(b)(6) deposition took place on October 7-8, 2010.

Hon. Andrew J. Peck
December 5, 2010
Page 7

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

---

B. **Further Grounds For Continuing Plaintiff's 30(b)(6) Deposition Include Mr. Middleton's Identification of Numerous Relevant Documents That Wi-LAN Has Still Not Produced to Defendants.**

Mr. Middleton was designated to cover 30(b)(6) Topic Nos. 1 and 2 which include Wi-LAN's responses to requests for production and its document productions in this lawsuit. During Mr. Middleton's deposition, however, he identified numerous highly relevant documents that he could not confirm Wi-LAN had produced or that he specifically believed were withheld from production to LG. These documents include:

- Summary charts listing the '402 Patent licensees along with their respective royalty rates. In Mr. Middleton's words: "I'm not certain, perhaps summary information has been provided as part of our production that identifies [pre-LG '402 Patent license royalty rates]. I just don't have them committed to memory." (**Ex. C** at 156:22-157:2.) Mr. Middleton later admits that he believes such a summary document might exist, but is not sure whether the document has been produced to LG. (**Ex. C** at 339:22-341:2.)

- Mr. Middleton does not know whether Wi-LAN operating plans for years other than 2008 were produced to LG. (**Ex. C** at 360:16-21; **Ex. B** at 239:11-15.)

- Mr. Middleton is uncertain whether the contract reflecting the consulting arrangement between Najmul Siddiqui and Wi-LAN has been produced in this lawsuit. (**Ex. B** at 64:22-65:10.)

- Mr. Middleton does not know whether there is a consulting agreement between Mr. Paul Hearty and Wi-LAN's outside counsel, or whether such an agreement was produced to LG. (**Ex. B** at 102:17-103:5.)

- Mr. Middleton does not know whether Wi-LAN produced documents to LG reflecting Samsung's '402 Patent offer to Wi-LAN. (**Ex. B** at 231:14-18.)

- Mr. Middleton believes that a May 2010, letter from Panasonic to Wi-LAN regarding the GI reference **was not produced** to LG, pursuant to a confidentiality agreement in place between Panasonic and Wi-LAN. (**Ex. B** at 272:24-273:16; **Ex. C** at 275:12-282:21.)

Hon. Andrew J. Peck             **CONFIDENTIAL -- ATTORNEYS' EYES ONLY**
December 5, 2010
Page 8

- Mr. Middleton does not know whether Wi-LAN produced December 2009 - January 2010, licensing correspondence relating to the '402 patent between Wi-LAN and Toshiba. (**Ex. B** at 274:1-12.)

- Mr. Middleton did not know whether information relating to Wi-LAN's first use of LG's trademark logo on its website had been produced to LG. (**Ex. C** at 60:20-61:7.)

- Mr. Middleton confirmed that Wi-LAN maintains an archive of all materials posted on Wi-LAN's website. (**Ex. C** at 58:22–59:15.)[3]

Defendants' counsel wrote to Wi-LAN's counsel following Mr. Middleton's deposition requesting these materials but to date has received no response — nor have these materials been produced. (See **Ex. D**, Defendants' December 1, 2010, Letter to Plaintiff & **Ex. E**, Defendants' December 2, 2010, Letter to Plaintiff.) Wi-LAN cannot genuinely dispute that LG is entitled to depose a corporate representative on these indisputably relevant materials if and when they are produced.

## II. THERE IS NO BASIS FOR LIMITING THE SCOPE OF MR. FORTKORT'S DEPOSITION AS REQUESTED BY PLAINTIFF

Plaintiff concedes that Mr. Fortkort is its prosecution counsel in the pending '402 patent reexamination and that he filed a significant number of documents in that proceeding after the date of his original deposition on October 27, 2010. Nevertheless, and without any legal support, Plaintiff asks the Court to bar Defendants from seeking indisputably relevant information relating to the continued prosecution of the '402 patent. According to Defendants, Mr. Fortkort may only be deposed on new documents related to its privilege log supplemental production and not on new documents that he submitted on behalf of Wi-LAN in the '402 patent reexamination.

Not surprisingly, Plaintiff can offer no reasoned argument for distinguishing between the use of these two highly relevant sets of documents that were not previously available to Defendants during Mr. Fortkort's previous deposition. Plaintiff's statement that "[a]s we suspected, Defendants now intend to use this further deposition to inquire into topics related to the reexamination that they could have but did not raise before, or the newly produced

---

[3] Although Mr. Middleton confirmed that Wi-LAN had made unauthorized use of LG's trademark logo since at least the date of the merger in July 2007, Wi-LAN has never produced copies of these archived website screen shots to LG.

GREENBERG TRAURIG, LLP

Hon. Andrew J. Peck          CONFIDENTIAL -- ATTORNEYS' EYES ONLY
December 5, 2010
Page 9

---

reexamination documents" is ludicrous. How could Defendants have deposed Mr. Fortkort on documents that he had not yet submitted in the reexamination?

Finally, Plaintiff makes the non-sensical argument that Defendants should not be allowed to question Mr. Fortkort on the recent reexamination filings because they chose the date for Mr. Fortkort's deposition, which was prior to the filing of these additional reexamination documents. This argument is nonsensical and hardly merits a response. Nevertheless, it is worth noting that not one of Plaintiff's arguments suggests that these newly filed reexamination materials are not highly relevant to the patent infringement and invalidity issues at the core of this lawsuit. Accordingly, Defendants request that the Court deny Plaintiff's request to limit the scope of Mr. Fortkort's deposition to the newly produced documents from the privilege log and confirm that Defendants are entitled to also cover documents filed in the reexamination after Mr. Fortkort's original deposition.

### III. SUMMARY OF RELIEF REQUESTED BY DEFENDANTS

For the reasons set forth in detail above, LG respectfully asks the Court to enter an order requiring Wi-LAN to:

- produce a knowledgeable witness for an additional day of deposition to cover Topic Nos. 30, 39, 44, 46, 51, 55, and 61 set forth in Defendants' 30(b)(6) Deposition Notice to Plaintiff.

- confirm that Defendants may depose Mr. Fortkort on both the newly produced documents from the privilege log review and any documents related to the reexamination that were produced after Mr. Fortkort's initial deposition.

**MEMO ENDORSED** 12/6/10

1. [handwritten notes largely illegible] 30(b)(6) witness [illegible] ...

Very truly yours,

Jeffrey G. Mote

Enclosures
cc: Counsel of record (via e-mail)

BY ECF

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

# ECF TRANSCRIPTION SHEET



**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:      (212) 805-7933
Telephone No.:   (212) 805-0036

Dated:  December 6, 2010                              Total Number of Pages:  10

## TRANSCRIPTION OF MEMO ENDORSED ORDER

1. Additional 30(b)(6) witness not necessary because defendants can and have deposed the knowledgeable fact witness.

2. If the documents listed on pages 7-8 are produced, Mr. Middleton may have to be re-deposed about those documents.

3. Defendants may depose Fortkort re all newly produced documents – both from the privilege log production and updated reexamination docs.

Copies to:   All Counsel
             Judge Lewis A. Kaplan