UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WI-LAN INC.,

Plaintiff,

-v-

LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC.,

Defendants.

**No. 10-CV-432 (LAK)(AJP)**

**PLAINTIFF WI-LAN INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND PLEADINGS**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LEGAL STANDARD ..... 7

A. Defendants Bear the Burden to Show Good Cause to Amend ..... 7

B. Amendment Under Fed. R. Civ. P. 15(a) ..... 7

C. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ..... 8

IV. ARGUMENT ..... 9

A. Allowing Defendants to Assert Their New Counterclaims Would Be Prejudicial to Wi-LAN ..... 9

B. Defendants' Proposed Amendments are Futile ..... 11

V. CONCLUSION ..... 13

**TABLE OF AUTHORITIES**

**CASES**

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Citizens & Southern Securities Corp. v. Braten*, 733 F. Supp. 655, 660 (S.D.N.Y. 1990) . .7, 8, 9

*City of Columbia v, Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379-80 (1991) . . . . . . 12

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . 12

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 686-87 (2d Cir. 2009) . . . .9

*E*Trade Financial Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495-96 (2d Cir. 2004) . . . .9

*Kahn v. iBiquity Digital Corp.*, 309 Fed. Appx. 429, 431 (2d Cir. 2009) . . . . . . . . . . . . . . .12

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Volunteer Fire Association of Tappan, Inc. v. County of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES**

15 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 12

15 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 12

**RULES**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Fed. R. Civ. P. 16(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

## I. INTRODUCTION

Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG" or "Defendants") seek to amend their Answer and Counterclaims to assert baseless claims for alleged violations of the Sherman Antitrust Act. Defendants' proposed amendments would add brand new, complex causes of action to a litigation focused on patent infringement and fraudulent inducement allegations. Defendants' Motion to Amend Pleadings ("Motion") comes *after* the close of fact discovery, long after any opportunity for Plaintiff Wi-LAN Inc. ("Wi-LAN" or "Plaintiff") to take discovery related to the ten pages of new allegations that Defendants seek to add to their Answer and Counterclaims. Defendants provide almost no support for their effort to bring new counterclaims at this late date other than cursory allegations concerning allegedly "new" evidence recently produced by Plaintiff. Contrary to Defendants' assertions, the information in Plaintiff's recently-produced documents is cumulative of evidence produced by Plaintiff long ago, and Defendants have been in possession of the relevant information for several months, including extensive deposition testimony elicited from Plaintiff in mid-October. Furthermore, the alleged "lobbying" efforts identified by Defendants are wholly irrelevant to any claim or defense in this case, as there is no dispute these activities took place *after* any relevant regulations and standards were adopted, and no relevant changes in regulations or standards have taken place since these activities occurred.

In any event, Defendants' new counterclaims are futile for several reasons. First, Defendants make the untenable claim that Wi-LAN has monopolized and attempted to monopolize a market in which Wi-LAN does not even allegedly compete. (Wi-LAN does not manufacture digital television receivers.) Second, the allegedly illegal concerted acts upon which Defendants base their restraint of trade claim – concerted actions intended to influence government regulations – are entitled to antitrust immunity under the *Noerr Pennington* doctrine.

Defendants' allegations therefore fail as a matter of law to state any viable antitrust claim. Facing liability on the facts in the case, Defendants' Motion amounts to nothing more than another attempt to smear Wi-LAN,[1] prejudice Wi-LAN's ability to prosecute this litigation, and distract the Court (and the jury) from Defendants' fraudulent conduct and willful infringement of the patent-in-suit. Defendants' Motion should be denied.

## II. STATEMENT OF FACTS

Plaintiff asserts two causes of action in this litigation: fraudulent inducement and patent infringement. Throughout this litigation, Defendants have attempted to expand the scope of this lawsuit by asserting affirmative defenses and counterclaims related to Plaintiff's activities in connection with the Federal Communications Commission ("FCC") and various standards-setting organizations, including the Advanced Television Systems Committee ("ATSC") and Consumer Electronics Association ("CEA"). Importantly, as early as September 9, 2010 (nearly three months before filing their Motion), Defendants asserted detailed (yet baseless) allegations that the patent-in-suit is unenforceable due to Plaintiff's activities related to standards-setting organizations. *See* LG Electronics, Inc.'s Answers and Counterclaims to Second Amended Complaint ¶¶ 20-46. Furthermore, Defendants were well aware of Plaintiff's involvement with certain other parties in relation to these standard-setting organizations and regulatory agencies as early as August 30, 2010, having propounded discovery requests specifically directed to these entities on that date. *See* Defendants' Second Set of Requests for Production of Documents at Request No. 115 (Holohan Decl., Exh. 1).

In response to these allegations and discovery requests, Plaintiff produced thousands of

[1] For example, Defendants refer to "Wi-LAN's illegal deception of the federal government," yet Defendants set forth no basis, whatsoever, that *any* activity of Wi-LAN or its predecessor-in-interest was illegal. In fact, Wi-LAN has not done anything illegal and Defendants have not pointed to even a single shred of proof to the contrary.

documents concerning its involvement with regulatory agencies and standard-setting organizations, including its activities with other entities related to these organizations. Indeed, as of mid-October 2010, Plaintiff had produced more than 2,000 documents specifically related to Plaintiff's dealings with the alleged "lobbying" organizations that form the basis for Defendants' new counterclaims, *i.e.*, Dominic Perri and the Coalition for Independent Rating Services (CFIRS). Holohan Decl. ¶¶ 17-18. Plaintiff's supplemental productions since then have provided cumulative information concerning Plaintiff's activities with these organizations.

4

[Page content fully redacted]

[page content redacted]

Thus, as reflected in documents and made explicit in questions from the mouths of Defendants' own counsel, Defendants have been aware of Plaintiff's "lobbying" activities and its relationship with these organizations for months, long *before* Plaintiff's supplemental document production in November. There is no surprise here, no new evidence, no great revelation in the later produced documents. For several months, Defendants' counsel have not only been on notice of the "new" facts that form the basis for their new counterclaim, they have been relying on those facts to accuse and attack witnesses in depositions.

Furthermore, Defendants' Motion contains blatant falsehoods concerning Plaintiff's document production. Defendant's Motion is dated December 6, and falsely asserts that Plaintiff produced over 100,000 pages of documents "[l]ess than two weeks ago." Motion at 1. In fact, Plaintiff's document production was substantially complete as of November 8, 2010, nearly a month before Defendants' Motion was filed. Holohan Decl., ¶¶ 13-16. Additionally, possessing all relevant facts, Defendants stated their desire to amend their Answer and Counterclaim at the November 16, 2010 Status Conference, and yet did not even send their proposed Amended Answer and Counterclaim to Plaintiff until after close of business at 9:51 p.m. Eastern Time on December 2, 2010, more than two weeks later, on the eve of December 3, 2010 close of fact discovery. Holohan Decl., Exh. 11. Defendants demanded that Plaintiff consent to their proposed Amended Answer and Counterclaim by the following day (*id.*), and yet did not file their Motion until the following week. Thus, Defendants have engaged in undue delay in bringing this Motion, and the motion should be denied on that basis alone.

Moreover, even assuming the outrageous allegations in Defendants' proposed Answer and Counterclaim are true (and they are not) for purposes of this Motion, the Motion should be denied because the amendment is futile. It cannot survive a Motion to Dismiss for at least two

independent reasons: (1) Plaintiffs' alleged "lobbying" activities are protected from antitrust scrutiny by the First Amendment and the *Noerr Pennington* Doctrine; and (2) Plaintiff does not even participate in the allegedly relevant digital television receiver ("DTV") market. Thus, the new claims are futile and Defendants' Motion should be denied.

## III. LEGAL STANDARD

### A. Defendants Bear the Burden to Show Good Cause to Amend

As an initial matter, Defendants cite the wrong rule and standard in seeking to amend their Answer and Counterclaim. Defendants bring their motion pursuant to Federal Rule of Civil Procedure 15(a). However, as Defendants acknowledge in their Motion, this Court imposed a deadline of August 21 for amendment of pleadings – more than three months prior to Defendants' motion. "Where . . . the Court sets a deadline for amendments to the complaint and a party moves to amend once the deadline has passed, the Court must balance the more liberal standard of Rule 15(a) against the requirements of Federal Rule of Civil Procedure 16(b)." *Volunteer Fire Association of Tappan, Inc. v. County of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010). "Under Rule 16(b), a party moving to amend after the applicable deadline must demonstrate good cause." *Id.* "Whether good cause exists depends on the diligence of the moving party." *Id.* Accordingly, Defendants bear the burden of showing that good cause exists to amend their Answer and Counterclaim. As discussed more fully below, Defendants have not been diligent and cannot demonstrate good cause.

### B. Amendment Under Fed. R. Civ. P. 15(a)

Even if Rule 15(a) applies, "[p]rejudice to the opposing party is ordinarily the most compelling reason for denying a motion to amend under Rule 15(a)." *Citizens & Southern Securities Corp. v. Braten*, 733 F. Supp. 655, 660 (S.D.N.Y. 1990). "Prejudice has been found when [the] proposed amendment contained an unexpected allegation or defense." *Id.* "Prejudice

may also occur when the proposed amended pleading is interposed after the completion of discovery, or is based upon a new set of operative facts." *Id.* Furthermore, "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *E*Trade Financial Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) (quoting *Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir.2003)). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Id.* As set forth more fully below, each of these standards provides an independent basis for denial of Defendants' Motion.

**C. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

As stated above, an amendment is considered futile if the amended pleading fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants' new counterclaims allege violations of Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2). The Supreme Court recently set forth the standard for pleading an antitrust violation in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where it held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 555 (internal quotations and citations omitted).

Pleading a violation of Section 1 of the Sherman Act requires (1) a "contract, combination . . . or conspiracy" (2) "in restraint of trade or commerce." 15 U.S.C. § 1. Regarding Section 2:

> [T]o state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must establish (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. The plaintiffs also must

> demonstrate an antitrust injury and damages.

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 686-87 (2d Cir. 2009) (internal quotations and citations omitted).

In either case, the Court must define the relevant market. *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495-96 (2d Cir. 2004). "The goal in defining the relevant market is to identify the market participants and competitive pressures that restrain an individual firm's ability to raise prices or restrict output." *Id.* at 496. Here Defendants' alleged DTV market is fatally defective as it is undisputed that Plaintiff does not make or sell DTVs and hence does not participate in the allegedly monopolized market.

## IV. ARGUMENT

### A. Allowing Defendants to Assert Their New Counterclaims Would Be Prejudicial to Wi-LAN

As stated above, an amendment is be prejudicial if it contains "an unexpected allegation or defense," or "when the proposed amended pleading is interposed after the completion of discovery." *Braten*, 733 F. Supp. at 660. Here, there is significant prejudice on both grounds. First, there is no dispute that Defendants seek to interpose their Amended Answer and Counterclaims after the completion of discovery. Secondly, Defendants are belatedly attempting to transform a patent infringement and fraudulent inducement case into an antitrust lawsuit. Defendants' highly novel antitrust theories are clearly unexpected and introduce entirely new and highly complex legal elements to the case. Given the fact that the underlying factual allegations relate to information that has been in Defendants' possession for months, there is no basis for Defendants to have waited until this late stage in the litigation to raise their antitrust counterclaims. *See* Holohan Decl. ¶¶ 3-9, 14-19.

Defendants' allegations concerning the relevant market, for example, will require complicated economic and commercial analysis and likely will require the retention of additional

expert witnesses. However, opening expert reports are due in less than three weeks, leaving very little time to seek and retain new consultants to analyze the new legal factors that Defendants seek to inject into the case.

Similarly, in addition to defending against Defendants' substantive antitrust allegations, Plaintiff will be faced with entirely new theories of damages. To date, Defendants have asserted damages based solely upon trademark infringement and breach of contract, theories of liability that entail discrete damages assessments. Defendants' proposed counterclaims, for the first time, assert that Defendants have suffered antitrust damages as well. Plaintiff has had no opportunity to take discovery on this new theory of damages, and indeed Defendants have not produced any evidence of such damages. With fact discovery closed, expert reports due imminently, and summary judgment motions closely following, Plaintiff will have no opportunity to conduct the extensive discovery necessary to defend against Defendants' new counterclaims.

Defendants' delay in bringing their Motion further prejudices Plaintiff. As stated above, the underlying facts have been known to Defendants for months. Holohan Decl. ¶¶ 3-9, 14-19. Thousands of documents and pages of documents related to Plaintiff's activities concerning regulatory and standards-setting organizations have been produced over the course of the litigation, with the recent document production providing information that was cumulative of information produced long ago. *Id.* ¶¶ 3-9, 14-19. Indeed, Defendants cite no specific documents or purportedly new information in their four-page memorandum in support of their Motion, and provide no explanation for their failure to bring their Motion earlier.[2] Defendants made a vague reference to antitrust counterclaims at the November 16, 2010 Status Conference, but did not submit their proposed amendments for Plaintiff's consideration until December 2, the

[2] The Court should not permit Defendants to sandbag Plaintiff by attempting to bring such alleged "new" evidence into the record on reply. Defendants' support for their Motion should be limited to that which was set forth in their opening memorandum.

day before the close of fact discovery. Holohan Decl., Exh. 11. Even then, Defendants waited until the following week – *after* the close of fact discovery – to file their Motion, leaving Plaintiff with no opportunity at all to take discovery of Defendants' new, unrelated counterclaims.

In sum, Defendants have not shown good cause to amend as required by Rule 16(b), nor have they shown that they are entitled to amend under Rule 15(a). To the contrary, Defendants' undue delay in asserting unexpected and surprising counterclaims, and the resulting prejudice to Plaintiff, warrants that Defendants' Motion be denied.

**B. Defendants' Proposed Amendments are Futile**

As a separate, independent basis for denying Defendants' Motion, Defendants' proposed counterclaims for violations of the Sherman Antitrust Act are objectively baseless and would not survive a motion to dismiss under Rule 12(b)(6). Defendants essentially assert that Plaintiff has violated Sections 1 and 2 of the Sherman Antitrust Act by *attempting* to lobby certain regulatory agencies and standards-setting organizations to adopt rules and regulations that would benefit Plaintiff.[3] The myriad defects in Defendants' antitrust counterclaims are too numerous to list here. They include at least the fundamental flaw of failing to define a legally relevant market and ignoring Plaintiff's First Amendment rights, which shield alleged antitrust liability as a matter of law. Defendants allege that "the DTV receiver market" represents the relevant market and that Plaintiff has monopolized and attempted to monopolize this market. However, Defendants do not allege, and cannot allege, that Plaintiff is a participant in the DTV receiver

[3] Notably, it is undisputed that the activities complained of in Defendants' proposed counterclaims took place in 2006 or later *after* all relevant amendments to standards and FCC regulations took effect in 2004. Defendants point to no revisions to binding standards or regulations that are connected in any way to any conduct of Plaintiff. To the extent that Defendants assert that Plaintiff's patent is unenforceable due to non-disclosure of the patent-in-suit to the FCC, Defendants cite to no legal requirement to make such a disclosure because there is none.

market. It is indisputable that Plaintiff does not manufacture or sell DTV receivers. Rather, Plaintiff is in the patent licensing business. "[I]t is axiomatic that a firm cannot monopolize a market in which it does not compete." *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); *see also Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007) (quoting *Discon*). For this reason alone, Defendants fail as a matter of law to state a claim under Section 2 of the Sherman Antitrust Act for monopolization or attempted monopolization. To the extent that Defendants allege that Plaintiff has improperly leveraged its patents, such claims are subsumed in Defendants' existing claims of inequitable conduct and patent misuse, and amendment is neither necessary nor appropriate. Plaintiff cannot possess power in a market in which it does not participate.

Furthermore, the alleged acts that Defendants claim violate antitrust laws cannot as a matter of law provide the bases for claims under either Section 1 or Section 2 of the Sherman Act. Defendants' claim under Section 1 rests solely on alleged concerted actions between Plaintiff and alleged "secret Lobbyists" in connection with purported efforts to persuade the FCC to pass certain regulations[4]. But the *Noerr Pennington* doctrine, which the Supreme Court created to safeguard First Amendment rights, immunizes from antitrust scrutiny conduct undertaken to petition government entities, such as the FCC, for redress. *See, e.g., Kahn v. iBiquity Digital Corp.*, 309 Fed. Appx. 429, 431 (2d Cir. 2009) (holding that concerted action aimed at influencing the FCC is immune under the *Noerr Pennington* doctrine); *see also City of Columbia v, Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379-80 (1991) ("The federal antitrust laws also do not regulate the conduct of private individuals in seeking anticompetitive

[4] Defendants also provide no evidence that the alleged secret "Lobbyists," *i.e.*, Mr. Perri and CFIRS, are lobbying organizations subject to federal or state lobbying laws.

action from the government."). Defendants' Section 1 claim therefore fails as a matter of law. For these and other reasons, Defendants' proposed antitrust counterclaims are futile.

Defendants' objectively baseless and frivolous antitrust claims are Defendants' latest futile attempt to smear Plaintiff and distract the Court from the salient issues in this case, namely Defendants' fraudulent campaign to deprive Plaintiff of compensation for Defendants' ongoing infringement of the patent-in-suit. There is no reason to allow Defendants to amend their Answer and Counterclaim to assert claims that will be dismissed out of hand. For this reason alone, Defendants' Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Wi-LAN respectfully requests that the Court DENY Defendants' Motion to Amend Pleadings.

DATED: December 20, 2010

Respectfully submitted,

By: ___/s/ Matthew C. Holohan____________

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
TOWNSEND AND TOWNSEND AND CREW LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000

Richard S. Meyer (admitted *pro hac vice*)
TOWNSEND AND TOWNSEND AND CREW LLP
1304 K Street, N.W.
Ninth Floor, East Tower

Washington, DC 20005
(202) 481-9900

Attorneys for Plaintiff
Wi-LAN INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2010, a true and correct copy of the foregoing **PLAINTIFF WI-LAN INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND PLEADINGS** was served by electronic mail to the following:

Richard A. Edlin, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
edlinr@gtlaw.com

Jeffrey G. Mote
Richard D. Harris
James Lukas, Jr.
Eric J. Maiers
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
motej@gtlaw.com
harrisr@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com

Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.

63061085 v1