UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | No. 10-CV-432 (LAK)(AJP) |

**PLAINTIFF WI-LAN INC.'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a)**

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
dsipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

Richard S. Meyer (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 481-9911
rmeyer@kilpatricktownsend.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 3

   A. Protective Order Decision............................................................................................. 3

   B. Admissibility Decision.................................................................................................. 6

III. LEGAL STANDARD........................................................................................................... 7

IV. ARGUMENT........................................................................................................................ 7

   A. Magistrate Judge Peck's Ruling Concerning the Protective Order Is Clearly Erroneous and Contrary to Law ........................................................................................................ 7

      1. Wi-LAN Has Complied With the Terms of the Protective Order. ................................ 7

      2. Wi-LAN's Actions Are Consistent With the Purpose of the Prosecution Bar. .............. 8

      3. There Is No Risk That Mr. Meyer Would Be Required to Disclose LG's AEO Material in the '402 Patent Reexamination ................................................................................ 10

      4. Wi-LAN Will Be Significantly Prejudiced By Denying Mr. Meyer Access to AEO Material. ......................................................................................................................... 12

   B. Magistrate Judge Peck's Ruling on Authenticity and Admissibility Ignored LG's Burden of Authentication ........................................................................................................ 14

V. CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*Hochstein v. Microsoft Corp.*,
  No. 04-CV-73071, 2008 WL 4387594 (E.D. Mich., Sep. 24, 2008) ...................................... 10

*Xerox Corp. v. Google, Inc.*,
  270 F.R.D. 182 (D. Del. 2010) ............................................................................. 9, 10, 13, 14

**STATUTES**

35 U.S.C. § 112 ................................................................................................................... 11

35 U.S.C § 302 (2006) ........................................................................................................ 10

**OTHER AUTHORITIES**

37 C.F.R. § 1.552(a)-(b) ..................................................................................................... 11

37 C.F.R. § 1.552(c) ........................................................................................................... 11

37 C.F.R. § 1.555 .......................................................................................................... 10, 11

37 C.F.R. § 1.555(a) ........................................................................................................... 11

Fed. R. Civ. P. 72(a) ............................................................................................................. 7

Federal Rule of Evidence 901 ................................................................................. 14, 15, 16

Plaintiff Wi-LAN Inc. ("Wi-LAN" or "Plaintiff") respectfully moves this Court for an order reversing both the January 3, 2011 Order of Magistrate Judge Peck barring Wi-LAN's counsel Richard Meyer from access to material designated CONFIDENTIAL ATTORNEYS' EYES ONLY or CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE ("Protective Order Decision") and the December 30, 2010 bench ruling of Magistrate Judge Peck holding that the handwritten notes appearing in document Bates stamped WL0426961 through WL0426963 and the document Bates stamped WL0426964 through WL0426965 are authentic and admissible ("Admissibility Decision"), as being clearly erroneous and contrary to law.

## I.  INTRODUCTION

The Protective Order in this case contains a "prosecution bar" provision barring any person currently participating in the reexamination of the patent-at-issue from having access to materials from Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG" or "Defendants") designated CONFIDENTIAL ATTORNEYS' EYES ONLY and CONFIDENTIAL –OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE (collectively "AEO Material"). July 26, 2010 Protective Order, ¶ 4(b) (Holohan Decl., Ex. A). Nothing in the provision, however, bars access to AEO Material once a person has terminated his or her involvement in the reexamination.

Based on the plain language of the Protective Order, Wi-LAN seeks to provide one of its outside counsel, Richard Meyer, with access to AEO Material now that Mr. Meyer has permanently ceased his involvement in the reexamination proceeding. Wi-LAN's proposed course of action, as Magistrate Judge Peck himself has noted on multiple occasions, literally complies with the Protective Order.

Wi-LAN's proposed action, moreover, complies with the intent of the prosecution bar. The rationale for a prosecution bar is to prevent Wi-LAN from using LG's confidential information to LG's detriment in the reexamination. Now that Mr. Meyer is precluded from additional involvement in the reexamination, there is no risk that LG's AEO Material will be used by Mr. Meyer in the reexamination.

LG raises the specter of a "continuing duty of candor" to the United States Patent and Trademark Office ("PTO") in the reexamination proceeding. LG's position, however, has no basis in fact or law. Because a reexamination proceeding is limited by law to an analysis of prior art patents and printed publications that were reasonably available to the interested public at the time of the invention, LG's confidential AEO Material is, by definition, irrelevant to the reexamination. Thus, Mr. Meyer would never be forced to disclose LG's AEO Material to comply with the "duty of candor" in the PTO. Moreover, the plain language of the regulation imposing the "duty of candor" does not continue beyond a person's active involvement in the reexamination, nor does the PTO have any authority to compel testimony or continued participation by Mr. Meyer in the reexamination. Hence, no conflict with the PTO rules would be created by allowing Mr. Meyer access to AEO Material.

Wi-LAN, on the other hand, will suffer undue prejudice if its counsel of choice is precluded from full involvement in the litigation going forward. Mr. Meyer is intimately familiar with the technology and issues in the case, having worked with Wi-LAN on the complex technical and legal issues in this dispute since 2008. Wi-LAN has contemplated his transition from the reexamination team since the entry of the Protective Order, has reasonably relied on the terms of the Protective Order, and has at all times complied with both the letter and spirit of the Protective Order. Magistrate Judge Peck's decision creates a new, material restriction in the

Protective Order that unfairly changes the rules of engagement on the eve of expert discovery. Accordingly, Magistrate Judge Peck's decision should be reversed.

Finally, as a separate issue, LG seeks to introduce documents produced by Wi-LAN as contemporaneous notes of negotiations with LG from 2006. No witness or source, however, can authenticate the documents' author or the context in which the documents were created. LG bears the burden of proving that the documents are what they claim them to be, and absent proper authentication by LG the documents are inadmissible. Wi-LAN was willing to stipulate to the authenticity of where they received the documents, from the files of their Canadian counsel Bereskin & Parr, but nothing more. Magistrate Judge Peck, however, erroneously ruled the documents were authentic and admissible for the purposes advanced by LG, with no basis for such a finding.

Accordingly, both decisions are clearly erroneous and contrary to law, and should be reversed.

## II.     BACKGROUND

### A.     Protective Order Decision

Wi-LAN filed this action against LG asserting claims for infringement of U.S. Patent No. 5,828,402 (the "'402 patent" or "patent-in-suit") and fraudulently inducing Wi-LAN to enter a license agreement that severely harmed Wi-LAN's licensing business. The '402 patent concerns the world-famous "V-Chip" technology, and the contribution of Professor Timothy Collings, the inventor of the '402 patent. The '402 patent generally relates to downloadable rating schemes for use in selectively blocking video signals (*i.e.*, television programs). Wi-LAN commenced this action on January 19, 2010. On December 24, 2009, an unknown party filed in the PTO an *ex parte* request for reexamination of the '402 patent alleging that the '402 patent is invalid

because of new prior art not considered when the patent was initially granted.  As it does over 90% of the time, the PTO granted the reexamination request by an Order dated March 2, 2010.

Magistrate Judge Peck entered a Protective Order in this action on July 26, 2010.  Prior to the entry of the Protective Order, the parties disagreed as to the scope of the prosecution bar in the Protective Order.  LG requested that the prosecution bar extend to participation in the reexamination proceeding concerning the '402 patent, while Wi-LAN proposed that the bar allow participation in the reexamination due to, *inter alia*, the fact that a party's confidential information is categorically irrelevant to the validity analysis and claim amendment process involved in a reexamination proceeding.  After hearing arguments, Magistrate Judge Peck adopted the prosecution bar proposed by LG.  Specifically, the Protective Order provides that:

> Absent the written consent of the Producing Party, any person that has the right to access materials designated CONFIDENTIAL ATTORNEYS' EYES ONLY or CONFIDENTIAL –OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE shall not be involved in the prosecution of patents or patent applications (including those involved in reexamination or reissue proceedings) relating to the subject matter of such information or of the lawsuit or Patents-in-Suit. . . .  This prohibition on patent prosecution shall begin when access to Designated Material is first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

Protective Order ¶ 4(b).

Wi-LAN filed a Motion for Reconsideration of Magistrate Judge Peck's ruling concerning the prosecution bar.  By Order dated August 18, 2010 (Holohan Decl., Ex. B), Magistrate Judge Peck affirmed his prior ruling, but made clear that Wi-LAN's outside litigation counsel could participate in the reexamination provided that they did not access LG's AEO Materials.  August 18, 2010 Order at 2  (holding that Wi-LAN's counsel "can see all non-Attorneys' Eyes Only material in this case and still participate in the patent reexamination").  Although Wi-LAN disagreed with the terms of the prosecution bar, Wi-LAN elected to forego

taking a formal objection to the Protective Order, and instead chose to proceed in the litigation under the terms of the prosecution bar adopted by Magistrate Judge Peck. Specifically, Wi-LAN determined that outside attorney Richard Meyer would initially participate in the reexamination and would therefore be denied access to AEO Material from the litigation. Essentially, pursuant to the August 18 ruling, Wi-LAN created an "ethical wall" that would allow Mr. Meyer to participate in both the reexamination and the litigation without having access to AEO Material. Wi-LAN anticipated that, once the major work concerning the reexamination was complete, Mr. Meyer would cease all participation in the reexamination and "cross over" to full participation in the litigation, including access to AEO Material.

Based on the language of the Protective Order, on December 16, 2010, Wi-LAN informed LG that Mr. Meyer would permanently terminate his involvement in the '402 patent reexamination proceeding and thus, under the Protective Order, be given access to LG's AEO Material. December 16, 2010 Letter from M. Holohan to J. Mote (Holohan Decl., Ex. C). On December 17, 2010, LG objected to Wi-LAN allowing Mr. Meyer access to AEO Material but did not explain the basis for its objection under the Protective Order. December 17, 2010 Letter from J. Mote to M. Holohan (Holohan Decl., Ex. D). Wi-LAN responded the same day citing the plain language of the Protective Order in support of its position and informing LG that "in light of the upcoming deadlines for expert reports" Wi-LAN could not agree to LG's "unsupported demand." December 17, 2010 Letter from R. Meyer to J. Mote (Holohan Decl., Ex. E). At that point, LG did not respond or attempt to explain the basis for its objection nor did LG raise its objection with the Court.

Instead, LG waited until December 21, 2010, four days later, and nearly three hours into a third-party deposition, to demand a telephonic hearing with Magistrate Judge Peck. Cukljevic

5

Dep. at 91:8-21 (Holohan Decl., Ex. F).  During that conference, Magistrate Judge Peck ruled that Mr. Meyer could not be present during "AEO" portions of the deposition.  December 21, 2010 Telephonic Hearing Tr. at 9:7-8, 10:4-11 (Holohan Decl., Ex. G).

The following week, after the third-party depositions were completed and after the Christmas holiday, Wi-LAN requested that the Court reconsider the ruling as it applied to AEO Material in general.  December 27, 2010 Letter from D. Sipiora to Magistrate Judge Peck (Holohan Decl., Ex. H).  During a Status Conference on December 30, 2010, Magistrate Judge Peck acknowledged that Wi-LAN had literally complied with the terms of the Protective Order by allowing Mr. Meyer to have access to AEO Material after terminating his involvement with the reexamination.  December 30, 2010 Hearing Tr. at 24:25-25:1 (Holohan Decl., Ex. I).  With Wi-LAN's agreement, Magistrate Judge Peck ruled that Mr. Meyer is "barred from any involvement in the reexamination pursuant to the terms of the protective order." *Id.* at 30:2-4.  However, Magistrate Judge Peck deferred a final ruling on whether Mr. Meyer could continue to fully participate in the litigation.  *Id.* at 30:21.  On January 3, 2011, Magistrate Judge Peck issued an Order holding that Mr. Meyer was barred from access to AEO Material.  January 3, 2011 Order (Holohan Decl., Ex. J).[1]

### B.     Admissibility Decision

Also at the December 30th hearing, Magistrate Judge Peck ruled from the bench on the authenticity and admissibility of two documents containing handwritten notes produced by Wi-LAN (the "Documents").  December 30, 2010 Hearing Tr. At 12:18-24.  These documents are from a collection of documents Wi-LAN received from its Canadian counsel, Bereskin & Parr,

---

[1] Judge Peck's January 3, 2011 Order was clarified by endorsed letter making clear that Mr. Meyer could continue to participate in the case, but without any access to AEO Material. Endorsed January 3, 2011 Letter from M. Holohan to Magistrate Judge Peck  (Holohan Decl., Ex. K).

prior to the filing of this lawsuit.  The documents appear to be handwritten notes from Bereskin & Parr attorneys.

LG desires to introduce into evidence the two documents at issue as "contemporaneous notes" of a meeting between Defendants and Tri-Vision, Plaintiff's predecessor, from several years ago.  *See* December 30, 2010 Hearing Tr. at 5:23-6:6.  However, as Defendants acknowledged at the December 30 Hearing, no witness has identified or confirmed the author of the notes or the context in which they were written.  *Id.* at 6:7-7:2.  Defendants further acknowledged that they had been given an opportunity to depose an individual from Bereskin & Parr.  *Id.* at 6:24-25.  To date, Defendants have not done so.

At the December 30 Hearing, Plaintiff agreed to stipulate that the documents are "authentic documents from Bereskin & Parr files."  *Id.* at 8:21-23.  Despite the lack of authentication beyond the source of the documents, however, Magistrate Judge Peck ruled the documents both authentic for the purposes advanced by LG and admissible at trial.  *Id.*

### III.     LEGAL STANDARD

When considering a ruling by a Magistrate Judge that is not dispositive of a party's claim or defense, "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  As explained below, the Protective Order Decision and the Admissibility Decision are both clearly erroneous and contrary to law.

### IV.     ARGUMENT

   **A.     Magistrate Judge Peck's Ruling Concerning the Protective Order Is Clearly Erroneous and Contrary to Law**

      **1.     Wi-LAN Has Complied With the Terms of the Protective Order.**

Wi-LAN's decision to terminate Mr. Meyer's involvement in the reexamination and grant him access to AEO Material is fully consistent with the terms of the Protective Order.  The plain

7

language of the prosecution bar in the Protective Order is clear.  Any person that receives access to AEO Materials

> *shall not be involved* in the prosecution of patents or patent applications (including those involved in reexamination or reissue proceedings) . . . .  This prohibition on patent prosecution *shall begin when access to Designated Material is first received by the affected individual*, and shall end two (2) years after the final resolution of this action, including all appeals.

Protective Order, ¶ 4(b) (emphasis added).  Nothing in the language of the prosecution bar remotely suggests that it applies "retroactively" to bar access to AEO Material by persons who *have participated* in the reexamination.  Rather, the prosecution bar applies only when an individual receives AEO Material, and the *sole* effect is to bar continued or future participation in the reexamination and related patent prosecution matters.

Wi-LAN now *permanently* has transitioned Mr. Meyer out of the reexamination proceeding and moved him to the other side of the ethical wall where he may have access to AEO Material.  Furthermore, Mr. Meyer is expressly barred by Court order from any further involvement in the reexamination proceeding.  December 30, 2010 Hearing Tr. at 30:2-4.  This transition is completely consistent with the terms of the Protective Order.  Indeed, Magistrate Judge Peck himself noted in the December 30th hearing that Wi-LAN's course of action complies with the Protective Order.  *Id.* at 24:25-25:1; *see also* January 3, 2011 Order ("As to attorney Meyer, the court believes Wi-LAN may have complied with the letter of the Protective Order . . . .").  Because Mr. Meyer is no longer involved in the '402 patent reexamination, there is no impediment under the Protective Order to his gaining access to LG's AEO Material.

        **2.**    **Wi-LAN's Actions Are Consistent With the Purpose of the Prosecution Bar.**

In addition to following the literal terms of the Protective Order, which Magistrate Judge Peck acknowledged, Wi-LAN has followed the "spirit" of the Protective Order by abiding by its

8

protections against the use of AEO Material in the reexamination. In originally explaining the prosecution bar in the Protective Order, the Court made clear that so long as outside counsel did not have access to AEO Material, such counsel could participate in the reexamination of the '402 patent. August 18, 2010 Order at 2 (holding that Wi-LAN's litigation counsel "can see all non-Attorneys' Eyes Only material in this case and still participate in the patent reexamination"). This is consistent with the sole purpose of the prosecution bar of Paragraph 4(b), that is, to prevent the patentee (Wi-LAN) from using the AEO Material of LG to the detriment of LG in the reexamination proceeding. *See Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010).

Wi-LAN has complied with the letter and spirit of this requirement and, consistent with Paragraph 4(b), walled off any individual who has had access to Defendants' AEO information from participation in the reexamination. In particular, Mr. Meyer, who until recently was involved in the reexamination proceeding, had not been permitted any access to Defendants' AEO information.

Mr. Meyer has now ceased all involvement in the reexamination proceeding. He will not participate in the reexamination in any way—including but not limited to drafting or amending of patent claims, supervising of others doing same, or advising any client concerning strategies for obtaining or preserving patent rights including in the reexamination at issue. *See* Protective Order, ¶ 4(b). Under the Protective Order, this prohibition began when he was first granted access to AEO Material on December 17, 2010[2] and shall not end until two (2) years after the final resolution of this action. *Id*. As such, it is impossible for Mr. Meyer to rely upon or use

---

[2] After ceasing participation in the reexamination on December 17, Mr. Meyer reviewed limited LG AEO information in order to prepare for a third-party deposition and Wi-LAN's opening expert reports, consistent with its letters to LG on December 16 and 17. Access to LG AEO information ceased immediately after Judge Peck rendered his decision during the deposition on December 21.

9

LG's AEO Material in the reexamination proceeding—he has permanently terminated his involvement.  To the extent that there are any further Office Actions in the reexamination, Mr. Meyer will not participate in responding to those actions, and any responses will be handled by other counsel who have had no access to LG's AEO Material.  Thus, Wi-LAN has not only complied with the letter of the Protective Order, its course of action is completely consistent with the intent of the prosecution bar as well.

### 3. There Is No Risk That Mr. Meyer Would Be Required to Disclose LG's AEO Material in the '402 Patent Reexamination

Defendants have raised a purported concern about a continuing "duty of candor" owed by Mr. Meyer to the PTO under 37 C.F.R. § 1.555, and allege there might be some ethical conflict where he would be required to disclose LG's AEO Material to the PTO.  LG's contentions are meritless.

Reexaminations are by law limited to an analysis of prior art patents and printed publications that were reasonably available to the interested public at the time of the invention. 35 U.S.C § 302 (2006); *Hochstein v. Microsoft Corp.*, No. 04-CV-73071, 2008 WL 4387594 at *3 (E.D. Mich., Sep. 24, 2008).  As is common in every other patent infringement case involving a patent in a pending reexamination, litigation counsel and consultants will provide only public information to counsel who are currently involved in the reexamination and reexamination counsel will determine what should be disclosed to the PTO.  LG's confidential AEO Material, by definition, cannot have been available to the interested public and therefore cannot be considered material to the validity of the claims of the patent.  *See Hochstein*, 2008 WL 4387594 at *3; *Xerox*, 270 F.R.D. at 184 (holding that other parties' confidential information is "basically irrelevant" to the determinations made during a reexamination).  Thus, the duty of candor cannot require disclosure of AEO Material to the PTO.

10

In addition, the language of 37 C.F.R. § 1.555 makes clear that the duty of candor does not continue once an individual ceases involvement in the reexamination proceeding. The duty of candor applies to "the patent owner, each attorney or agent who *represents* the patent owner, and every other individual who *is* substantively involved on behalf of the patent owner in a reexamination proceeding." 37 C.F.R. § 1.555(a) (emphasis added). The present tense language of the regulation belies LG's concern about a "continuing" duty. LG's position would require a "continuing duty" from any attorney who ceased representation but was ever involved in a reexamination proceeding under all circumstances, *e.g.*, even if such an attorney changed law firms or ceased the practice of law altogether. Not surprisingly, LG cannot cite any authority for this position.

Moreover, the PTO has no authority to compel continued participation or testimony by Mr. Meyer. The PTO looks at two issues in an *ex parte* reexamination: (1) the claims of the patent in reexamination "on the basis of patents or printed publications and, with respect to subject matter added or deleted in the reexamination proceeding, on the basis of the requirements of 35 U.S.C. § 112"; and (2) ensuring the reexamination does not "enlarge the scope of the claims of the patent." 37 C.F.R. § 1.552(a)-(b). The PTO *cannot* raise any issues other than those *sua sponte*. *Id.*; Chisum on Patents § 11.07 n.190. Should the patent owner or third party raise such an issue, the PTO will merely note the issue's existence "in the next Office action, in which case the patent owner *may consider* the advisability of filing a reissue application to have such issues considered and resolved." 37 C.F.R. § 1.552(c) (emphasis added).

There is simply no ethical concern or other impediment arising from PTO regulations that precludes Mr. Meyer from ceasing involvement in the reexamination proceeding and having access to AEO Material. Because Mr. Meyer has terminated his involvement in the

11

reexamination proceeding, and because he is now behind an ethical wall that permanently precludes his involvement in that proceeding, there is no risk that Mr. Meyer will be required to disclose LG's AEO Material in the reexamination of the '402 patent.

### 4. Wi-LAN Will Be Significantly Prejudiced By Denying Mr. Meyer Access to AEO Material.

Wi-LAN has contemplated the transition of Mr. Meyer to the other side of the ethical wall where he may have access to LG's AEO information since the date of entry of the Protective Order on July 26, 2010. Wi-LAN based its expectations and plans on the plain terms of the Protective Order and the Court's explanation of those terms. When the Court issued its Order regarding the prosecution bar (Paragraph 4(b) of the Protective Order), Wi-LAN evaluated its options and determined an appeal of the Court's Order, although justified, was not necessary. Mr. Meyer could be deployed to assist in the initial response to the reexamination, but remain actively involved in the litigation so long as he did not have access to AEO Material. Once Mr. Meyer terminated his involvement in the reexamination, the plain language of the Protective Order allowed him to then have access to AEO Material.

Mr. Meyer has been advising Wi-LAN in its dispute with Defendants since 2008. Based on many hours of client interviews, client consultation, and review of the relevant records and facts, Mr. Meyer has a deep understanding of the technical and factual issues in the case. Since the entry of the Protective Order, Mr. Meyer has not only been involved in the reexamination of the '402 patent, he has played a major role for Wi-LAN in prosecuting this litigation. For example, Mr. Meyer has prepared for or defended the depositions of many of Wi-LAN's witnesses in this case, including inventor Tim Collings, former employee Murray Eldon, outside counsel Michael Fortkort, and former employee John Roberts. Mr. Meyer also has prepared and defended the Rule 30(b)(6) deposition of Wi-LAN in the person of inventor Tim Collings. Mr.

Meyer has been actively involved in many other issues in the case and, for example, has been the lead attorney for Wi-LAN in evaluating prior art and questions of invalidity raised by LG. Mr. Meyer also has been instrumental in identifying and retaining consultants in the case, and has worked with those consultants in preparation for their work in delivering expert reports. Mr. Meyer has performed all of these tasks without accessing LG's AEO Materials.

Mr. Meyer's involvement in the case to this point has been consistent with the terms of the Protective Order. To now preclude him from full participation in this case required for Wi-LAN to prepare for and conduct the trial in this matter—even while he is completely walled off from any further involvement in the reexamination proceeding—would be grossly unfair and prejudicial to Wi-LAN, particularly given that there is no risk of harm to LG, as recent case law makes clear. Relying on the terms of the Protective Order and the Court's explanation of that Order, Wi-LAN reasonably chose to involve Mr. Meyer in the initial strategy and the Patent Owner's substantive response to the Office Action in the '402 patent reexamination proceeding. As noted recently by the *Xerox* Court in reviewing issues pertaining to patent litigation and the overlap with reexamination of the patent-in-suit:

> Plaintiff clearly has a strong interest in choosing its own counsel-particularly in the complex and technical realm of patent litigation. Here, plaintiff's trial counsel have acquired expertise in the patents-in-suit as well as the relationship between plaintiff's claim language and the prior art. Forcing plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort.

*Xerox*, 270 F.R.D. at 185.

While the Court here, unlike the *Xerox* court, has imposed a prosecution bar, the language of the bar in Paragraph 4(b) limits the scope to individuals currently participating in the reexamination. To now construe the bar to prevent Mr. Meyer from having access to LG's AEO Material would create an unjustifiable and unnecessary burden on Wi-LAN and "force plaintiff

13

to split its resources between two fronts of the same war." *Id.* Such a construction would unnecessarily deprive Wi-LAN of the services of its counsel of choice, and deprive Wi-LAN of the services of an attorney who has spent a considerable amount of time preparing for the issues of this case and developing a thorough understanding of the technology at issue. Wi-LAN would be unfairly prejudiced if Mr. Meyer is precluded from full involvement in the prosecution of this case, especially as this case moves into expert reports and expert discovery.

Wi-LAN has reasonably relied on the terms of the Protective Order and the Court's rulings in preparing its case. Wi-LAN always has anticipated that if this case goes to trial, Mr. Meyer will be involved in that trial and play an important role in preparing and presenting Wi-LAN's case. To construe the Protective Order now to bar Mr. Meyer—who is no longer participating in the '402 patent reexamination proceeding—from having access to LG's AEO Material would add a new, material restriction not present in the terms of the Protective Order. It would unfairly change the rules of the case on the eve of expert discovery and unfairly prejudice Wi-LAN.

In sum, Magistrate Judge Peck's ruling ignores the plain terms of the Protective Order as well as the specific purpose for which the prosecution bar was adopted. There is simply no basis to deny Mr. Meyer access to AEO Material, and to do so would unduly prejudice Wi-LAN at a critical juncture in this litigation. Magistrate Judge Peck's ruling concerning the Protective Order is clearly erroneous and contrary to law, and should be reversed.

### B. Magistrate Judge Peck's Ruling on Authenticity and Admissibility Ignored LG's Burden of Authentication

Under Federal Rule of Evidence 901, authentication of documents is a condition precedent to admissibility. Wright & Miller § 7104 (2010). "[T]his condition is satisfied by

14

evidence showing that the 'matter in question is what its proponent claims.'" *Id.* Moreover, the party seeking to introduce documents into evidence bears the burden of proving authenticity. *Id.*

LG seeks to introduce into evidence the Documents, which are part of a collection of documents that Wi-LAN received from its Canadian counsel Bereskin & Parr prior to the filing of this lawsuit. Although LG deposed numerous Wi-LAN witnesses, it declined to depose Bereskin & Parr through either formal or informal procedures before fact discovery closed, and was unable to secure testimony confirming the author, context, or contents of the Documents. Nonetheless, Defendants now seek to use these documents as contemporaneous notes of a meeting that took place several years go, and essentially rely upon isolated statements within the Documents written by as yet unidentified authors.

At the December 30th hearing, Wi-LAN's counsel stated that Wi-LAN was willing to stipulate that the Documents were "authentic documents from Bereskin & Parr files" and under that limited authentication admissible subject to relevance. December 30, 2010 Hearing Tr. at 8:21-9:1. This stipulated authentication, however, only authenticates the Documents' origin, *i.e.*, that the documents came from Bereskin & Parr. It does not authenticate the Documents' author, nor does it authenticate the context in which the Documents were created or their meaning. Thus, the only purpose for which the Documents could be used based on Wi-LAN's stipulated authentication is to show that Wi-LAN received documents from Bereskin & Parr.

To show that Wi-LAN received documents from Bereskin & Parr, however, is not the purpose for which LG seeks admission. LG, rather, seeks to introduce the Documents as contemporaneous notes of Wi-LAN's predecessor Tri-Vision's negotiations with LG. December 30, 2010 Hearing Tr. at 5:22-6:6. Yet, as LG admits, no witness has authenticated the author of the Documents. *Id.* at 6:16-7:2. Nor has any witness authenticated the context in which the

15

Documents were created or been able to decipher the handwriting or what the notes mean.

Absent proper authentication showing the Documents are what LG claims them to be, the Documents are inadmissible for the purpose LG desires.  F.R.E. 901.  Magistrate Judge Peck's ruling misses the crucial distinction between what Wi-LAN's counsel was willing to stipulate to, that the Documents were received from the Bereskin & Parr files, and what LG's counsel claims them to be.  December 30, 2010 Hearing Tr. at 5:22-6:6, 8:21-9:1, 12:2-24.  Admission of documents without proper authentication is clearly erroneous and contrary to law.  Accordingly, Magistrate Judge Peck's ruling that the Documents are admissible should be reversed.

## V. CONCLUSION

For the foregoing reasons, Wi-LAN respectfully requests that the Court reverse the January 3, 2011 Order of Magistrate Judge Peck barring Mr. Meyer from access to AEO Material and construe the prosecution bar of Paragraph 4(b) of the Protective Order as allowing access by Mr. Meyer to LG's AEO material.  Wi-LAN also respectfully requests that the Court reverse the December 30, 2010 bench ruling of Magistrate Judge Peck holding that the document Bates stamped WL0426961 through WL0426963 and the document Bates stamped WL0426964 through WL0426965 are authentic and admissible.

DATED:  January 12, 2011		Respectfully submitted,

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com


___/s/ Matthew C. Holohan_____
David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
dsipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

Richard S. Meyer (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 481-9911
rmeyer@kilpatricktownsend.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.