UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
WI-LAN INC.,

               Plaintiff,

v.

LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,

               Defendants.
-------------------------------------------------------------- x

Case No. 10 CV 432 (LAK) (AJP)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OBJECTION PURSUANT TO FED. R. CIV. P. 72(a)

Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com
smuliand@gtlaw.com

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Matthew J. Levinstein (*pro hac vice*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.

i

Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "Defendants" or "LG") respectfully request that the Court deny Plaintiff's objection and affirm Magistrate Judge Peck's January 24, 2011, bench ruling, holding that the opening expert reports of Martin R. Frankel (the "Frankel Report") and Dennis Wallace (the "Wallace Report") (collectively, the "Reports") were improperly designated as "CONFIDENTIAL" under the Protective Order. Judge Peck's application of the Protective Order was consistent with both its language and spirit. Put simply, the Wallace and Frankel Reports do not contain any confidential information. Rather, the Reports analyze publicly available information using publicly known methods. As such, Judge Peck's ruling was neither clearly erroneous nor contrary to law.

## I.   BACKGROUND

### A.   The Protective Order

Plaintiff Wi-LAN Inc. ("Plaintiff" or "Wi-LAN") sued LG, claiming that LG is infringing U.S. Patent No. 5,828,402 (the "'402 Patent"), which relates to downloadable parental controls for TV programming, and that LG fraudulently induced Plaintiff to enter into a license agreement under the '402 Patent. To facilitate discovery, Judge Peck entered a Protective Order providing, *inter alia*, that a party may designate materials "CONFIDENTIAL" if both of the following two requirements are met:

> it contains any confidential or proprietary technical, scientific, or business information that is not generally known *and* which the Designating Person normally would maintain in confidence and not reveal to a third party.

(Protective Order ¶ 1(a) (emphasis added), attached as **Exhibit A** to Declaration of Matthew C. Holohan, Dkt. 120.)

According to the Protective Order, the party asserting confidentiality bears the burden of proving that the allegedly confidential material deserves protection. (*Id.* at ¶ 10 ("The

1

Designating Person shall have the burden of showing why the Designated Material warrants protection pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.").) A party is free to challenge any confidentiality designation at any time. (*Id.*)

### B. The Wallace and Frankel Reports

To prove infringement, Plaintiff must, among other steps, demonstrate that broadcasters actually transmit downloadable television program ratings information. Towards that end, Plaintiff commissioned a field study to determine whether broadcasters currently transmit Rating Region Table 01 ("RRT-01,") throughout the continental United States. RRT-01 is the approved television rating system for over-the-air broadcasting in the U.S. Mr. Frankel, Plaintiff's statistics expert, purportedly applied statistical analysis to select a representative sample of fifty U.S. market areas from which he and Mr. Wallace could draw conclusions regarding the transmission of RRT-01 across the entire country. Mr. Wallace then, using simple, consumer products, recorded publicly available broadcast data from these various markets selected by Mr. Frankel to detect the presence of RRT-01 within the broadcast signals available in such markets.

Plaintiff concedes that the Wallace and Frankel Reports are based on publicly available information. (01/20/2011 Holohan Email to Maiers, attached as **Exhibit D** to Declaration of Matthew C. Holohan, Dkt. 120.) Nevertheless, Plaintiff designated both the Wallace and Frankel Reports "CONFIDENTIAL" because, according to Plaintiff, the experts' "work product and analysis" are entitled to a "CONFIDENTIAL" designation. (*Id.*)

### C. Magistrate Judge Peck's Ruling

After receiving the Wallace and Frankel Reports on January 14, 2011, LG challenged Plaintiff's "CONFIDENTIAL" designations, noting that "neither report appears to contain any confidential material belonging to Plaintiff" and that "[t]he reports merely contain the results of

field tests of public airways and statistical analyses thereof." (01/19/2011 Maiers Email to Holohan, attached as **Exhibit D** to Declaration of Matthew C. Holohan, Dkt. 120.)  In response, Plaintiff admitted that the Reports were based on publicly available information, but claimed that the Reports constitute the expert's work product and analysis, which are valuable, non-public information.  (01/20/2011 Holohan Email to Maiers.)   Unable to resolve the issue, Defendants sought the Court's intervention.  (1/24/2011 Hearing Tr. at 2:13–25, attached as **Exhibit E** to Declaration of Matthew C. Holohan, Dkt. 120.)

On January 24, 2011, Magistrate Judge Peck conducted a telephonic hearing to determine whether the Wallace and Frankel Reports were improperly designated as "CONFIDENTIAL." Defendants explained that the Reports were really just summaries of factual, publicly available information containing no real expert opinions.  (*See* 01/24/2011 Hearing Tr. at 2:16-21.) Defendants further argued that, under Plaintiff's interpretation, "any time an expert creates an expert report it automatically has to be confidential because it involves the expert's work product." (01/24/2011 Hearing Tr. at 2:22–25.)  After listening to Plaintiff's description of the Wallace Report, Judge Peck analogized it to a standard trademark likelihood of confusion survey, which he noted is not entitled to designation as "CONFIDENTIAL."  (*Id.* at 3:21–4:2.)

Thus, recognizing that the Reports merely contained summaries of publicly available information, Judge Peck concluded that the Wallace Report did not contain "CONFIDENTIAL" information.  (*See id.*)

Judge Peck further concluded that Wi-LAN would likely disclose the Wallace Report to potential licensees to induce them to take a license. (*Id.* at 5:8–10 ("And it's information that you [Wi-LAN] are going to share with these other people in order to get them to take your license. It's not confidential.").)  In view of the above, and the fact that the same analysis applied to the

3

Frankel Report, the Court ultimately concluded that both Reports were not "CONFIDENTIAL." (*See id.* at 5:12–13.)

## II.     LEGAL STANDARD

A district judge reviewing a magistrate judge's order on a non-dispositive matter must defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law. FED. R. CIV. P. 72(a); *Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303 (S.D.N.Y. 1997) (District court may reverse magistrate judge's decision on nondispositive matter only if found to be clearly erroneous or contrary to law.). Thus, even if there are two permissible views, the reviewing court should not overturn the magistrate judge's decision solely because it would have chosen the other view. *Westefer v.Snyder*, 472 F. Supp. 2d 1034, 1037 (S.D. Ill. 2006) (When ruling on discovery matters, a magistrate judge "is operating in a zone of very broad discretion."). Motions for discovery matters are nondispositive and subject to the more deferential "clearly erroneous" standard of review. *Reidy v. Runyon*, 169 F.R.D. 486, 489 (E.D.N.Y. 1997) (district court reviews magistrate's order on nondispositive discovery matter under clearly erroneous standard).

## III.    ARGUMENT

### A.     The Wallace and Frankel Reports are not "CONFIDENTIAL" Under the Express Terms of the Protective Order

Plaintiff has failed to meet its burden of demonstrating that Magistrate Judge Peck's ruling was clearly erroneous or contrary to law. Neither Wallace's nor Frankel's Report contains, relies on or discusses "confidential or proprietary technical, scientific or business information that is not generally known." Wi-LAN admits that the Reports are based on publicly available information, but argues that the experts' work product and analysis render the Reports "CONFIDENTIAL." Wi-LAN's argument is mistaken and is based on an improper reading of

the Protective Order.  The purported "expert work product and analysis" contained within the Frankel and Wallace Reports amounts to nothing more than a basic statistical analysis and a summary of non-confidential, publicly known information.  Such a "repackaging" of non-confidential information does not warrant a "CONFIDENTIAL" designation under the Protective Order.  Moreover, as both Defendants and Judge Peck noted, if an expert's work product and analysis were the sole basis for designating a report "CONFIDENTIAL," then *all* expert reports, by their very nature, would be "CONFIDENTIAL."  (1/21/2011 Maiers Email to Holohan, attached as **Exhibit D** to Declaration of Matthew C. Holohan, Dkt. 120; *see* 1/24/2011 Hearing Tr. at 3:21–4:2.)  Of course, this view—Plaintiff's view—is contrary to law.  Because the Reports do not contain confidential information, there is no need to designate them "CONFIDENTIAL."

Moreover, even if the Wallace and Frankel Reports did contain confidential information, the Reports are nevertheless not "CONFIDENTIAL" because they contain information that Wi-LAN will likely reveal to third parties.  According to Wi-LAN:

> Wi-LAN will be able to use this information in negotiating with current and future licensees, and the fact that Wi-LAN alone is in possession of this information will afford it an advantage in such negotiations.

(Dkt. 122 at p. 7.)  Confusingly, Wi-LAN maintains that it can gain a competitive advantage in future licensing negotiations by *not* disclosing information that, if known by potential licensees, might induce them to take licenses.  To the contrary, unless Wi-LAN reveals the conclusions contained within the Wallace and Frankel Reports to a third party, the Reports cannot provide Wi-LAN with any negotiating advantage.  Judge Peck, recognizing this fact, readily concluded that the Wallace and Frankel Reports contain information that Wi-LAN would likely reveal to third parties to induce them to sign license agreements.  (01/24/2011 Hearing Tr. at 5:8–10.)

Because the Wallace and Frankel Reports contain information that Wi-LAN is likely to disclose to third parties, the Reports are not "CONFIDENTIAL" as the Protective Order defines that term.

### B. Judge Peck Properly Applied the Terms of the Protective Order

Ignoring that he entered the order in the first place, Plaintiff argues that Judge Peck replaced the terms in the Protective Order with his own, undefined standard. According to Plaintiff, Judge Peck's statement that the Reports do not contain any "confidential business information," means that he created a new, "confidential business information" standard. (Dkt. 122 at p. 5, 7.)

Rather, as noted above, Judge Peck properly analyzed the Wallace Report (based on Plaintiff's representations) according to the two-prong definition of "CONFIDENTIAL" set forth in the Protective Order. First, Judge Peck concluded that the Wallace Report did not contain any confidential information. (01/24/2011 Hearing Tr. at 3:21-4:2.) Second, Judge Peck concluded that because Wi-LAN's argument indicated that it intended to disclose its experts' conclusions to potential licensees as leverage in future license negotiations, the information was not properly designated "CONFIDENTIAL." (*See id.* at 5:8-10.) Accordingly, Judge Peck properly construed the Protective Order in ruling that the Wallace Report was not "CONFIDENTIAL." (*Id.* at 5:10.) Judge Peck came to the same conclusion applying the same analysis to the Frankel Report. (*Id.* at 5:12–13 ("And I assume the same issue goes to Frankel, so neither of them are confidential.").)

### C. Plaintiff Will Not be Prejudiced by De-designating the Wallace and Frankel Reports

Plaintiff puzzlingly argues that it would suffer prejudice if the Wallace and Frankel Reports are not designated "CONFIDENTIAL." Plaintiff's main qualm is that by de-designating

6

the Reports, it will lose its $100,000 investment, the cost of the Reports. (Dkt. 122 at p. 9.) Wi-LAN implicitly argues that it would not have otherwise retained Messrs. Wallace and Frankel had it known that their Reports would not warrant "CONFIDENTIAL" designations. Plaintiff conveniently ignores that the purpose of the Wallace and Frankel Reports is to help establish its infringement claim *in this litigation*—not for its potential use as leverage in future negotiations. But even if that was the purpose, such intent to disclose the Reports in the future to potential licensees hardly supports designating them as "CONFIDENTIAL." Accordingly, Plaintiff has not suffered, and will not suffer, any prejudice should the Court deny Plaintiff's objection and affirm Magistrate Judge Peck's ruling that the Wallace and Frankel Reports are not "CONFIDENTIAL."

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's objection and affirm Magistrate Judge Peck's January 24, 2011, bench ruling, holding that the Wallace and Frankel Reports are not "CONFIDENTIAL."

Dated:  February 22, 2011                                    Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Jeffrey G. Mote*
Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com
smuliand@gtlaw.com

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)

7

James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Matthew J. Levinstein (*pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on February 22, 2011, the foregoing Defendants' Memorandum of Law in Opposition to Plaintiff's Objection Pursuant to Federal Rule of Civil Procedure 72(a) was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel that have appeared for any party in this matter.

*/s/ Jeffrey G. Mote*
Jeffrey G. Mote
