UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WI-LAN INC., <br><br>         Plaintiff, <br><br>    v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br>         Defendants. | **No. 10-CV-432 (LAK)(AJP)** |

### PLAINTIFF WI-LAN INC.'S REPLY MEMORANDUM IN SUPPORT OF OBJECTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a)

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
dsipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

Richard S. Meyer (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 508-5800
rmeyer@kilpatricktownsend.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

Plaintiff Wi-LAN Inc. ("Wi-LAN" or "Plaintiff") respectfully submits this Reply Memorandum in support of its motion for an order reversing the January 24, 2011 bench ruling of Magistrate Judge Peck holding that two expert reports served by Plaintiff are not CONFIDENTIAL as that term is defined in the Protective Order in this action ("Plaintiff's Motion"). As set forth in Plaintiff's Motion, both reports contain non-public, confidential technical and business information that falls squarely within the definition of "CONFIDENTIAL" information under the plain terms Protective Order. Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "Defendants") cannot dispute this, and instead twist the terms of he Protective Order and seize upon certain out-of-context statements in an ultimately futile effort to refute Plaintiff's clear showing that the reports are entitled to protection under the Protective Order.

## I.   ARGUMENT

### A.   Defendants Misrepresent the Wallace and Frankel Reports

As set forth in Plaintiff's Motion, Plaintiff commissioned an extensive scientific field study to determine whether certain data is being routinely broadcast by U.S. broadcasters, in order to support its claims of infringement of the patent-in-suit by Defendants' products. Plaintiff had to commission the study because the information was *not publicly available,* either for free or for sale from anyone. While Defendants focus on the fact that the raw data is publicly available, along with their assertion that the data was collected and analyzed "using simple, consumer products," Defendants cannot dispute that the non-public results of the field study were obtained only after the expenditure of significant resources by Plaintiff and the application of specialized expertise by Plaintiff's consultants. Indeed, Defendants' focus on the "consumer products" used in the field survey completely misses the point. The specific tools used by a consultant in conducting a scientific study are immaterial to the value of the study. It is the

consultant's specialized use of the tools and analysis of the data that are protectable.

Furthermore, Plaintiff is not seeking protection of the Wallace and Frankel reports merely because they are expert reports, as Defendants assert.  Rather, the Wallace and Frankel reports are unique in that their respective analyses and conclusions are based on underlying factual analysis that is not generally known, and cannot be generally discerned without the expenditure of significant resources.  If Plaintiff could have looked the data up in a book, on the Internet, or even paid for it, Plaintiff would have done so as opposed to commissioning an empirical study from scratch.  The reports are not a mere consumer confusion survey, as Defendants and Magistrate Judge Peck maintain.  Rather, the reports set forth highly technical conclusions and analysis that could only be obtained by canvassing across the country and collecting data from over 600 separate broadcast TV stations in a specialized way.  Furthermore, unlike a consumer confusion survey, which is limited in scope, the data and results contained in the Wallace and Frankel reports implicate the entire over-the-air DTV industry, including broadcasters, equipment manufacturers, and consumer electronics manufacturers alike.  The public release of this information would be an unwarranted windfall to not only the DTV industry but to Plaintiff's competitors, licensees, and potential licensees.

That Defendants and Magistrate Judge Peck's rationale is wrong is clear from its ramifications.  Under their rationale, anyone who collects and/or researches publicly available data and creates a new work therefrom, *e.g.*, a book, study, thesis, software, etc. could not own their new work or claim copyright or other protections, but would have to dedicate the work to the public and release them to the public.  Companies who poll public opinion, such as Gallup, and companies who report on public events like newspapers and TV and radio news organizations could never claim copyright or charge for their work because it was based upon

2

public material, and under Defendants' theory therefore dedicated to the public.

**B.  Defendants Misconstrue the Legal Standard**

When considering a ruling by a Magistrate Judge that is not dispositive of a party's claim or defense, "[t]he district judge in the case *must* . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a) (emphasis added).  Defendants misrepresent the standard by focusing only on the "clearly erroneous" portion of the rule, ignoring the fact that a District Judge must also set aside rulings that are "contrary to law."  "A Magistrate Judge's determination is contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law."  *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).  Here, Magistrate Judge Peck misapplied the plain terms of the Protective Order in this action.  The ruling was contrary to law.  Furthermore, given the salient facts as set forth in Plaintiff's Motion, Magistrate Judge Peck's ruling was "clearly erroneous" as well.

**C.  Defendants Have Not Shown that Magistrate Judge Peck's Ruling Was Correct.**

**1.  The Wallace and Frankel Reports Rely on Confidential Information.**

As explained above and in Plaintiff's Motion, Defendants are simply wrong in claiming that the Wallace and Frankel Reports do not rely on "confidential or proprietary technical, scientific or business information that is not generally known."  Defendants cannot deny that the results of the underlying scientific field study are not generally known, nor can Defendants deny that this information was (1) obtained through the investment of significant resources by Plaintiff; and (2) highly valuable to Plaintiff's licensing program.  Again, if the results of the field study were publicly available, Plaintiff would not have spent more than $100,000 in obtaining and analyzing the data.

### 2.     Plaintiff Would Not Normally Disclose the Contents of the Wallace and Frankel Reports to Third Parties.

Defendants seize upon Plaintiff's assertion (which Defendants do not refute) that the non-public information in the Wallace and Frankel reports will be useful in negotiating with Plaintiff's current and future licensees, and the fact that Plaintiff alone is in possession of this information will afford it an advantage in such negotiations.  Defendants conveniently ignore the word "normally" in the Protective Order.[1]  Plaintiff, of course, would not normally disclose this information to the public without restriction.  However, Plaintiff routinely engages in confidential licensing negotiations with other companies, and where the parties contemplate the disclosure to each other of confidential non-public information or documentation, these negotiations are either governed by a formal non-disclosure agreement or otherwise conducted with the understanding that the information exchanged between Plaintiff and potential licensees will remain confidential.  Supp. Middleton Dec. ¶ 3.  In other words, Plaintiff would disclose this information to third parties only under the same terms under which it has disclosed it in this litigation – subject to protections comparable to those of the Protective Order.  Magistrate Judge Peck's simplified interpretation of how Plaintiff may use the information does not support Defendants' contention that Plaintiff will disclose this information to third parties without restriction.

### 3.     Plaintiff Will Be Prejudiced by the Disclosure of the Wallace and Frankel Reports.

Finally, Defendants wrongly deny that Plaintiff will be prejudiced by the disclosure of the Wallace and Frankel reports.  The sole basis for Defendants' contention in this regard is that Plaintiff specifically obtained the information for use in this litigation.  Again, Defendants'

---

[1] The Protective Order provides for confidential treatment of material that a party *"normally* would maintain in confidence and not reveal to a third party."  Protective Order ¶ 1(a) (emphasis added).

4

argument is immaterial.  The origin of the information is not relevant to whether its disclosure

will prejudice Plaintiff.  Plaintiff expended the resources to obtain highly valuable information

that is not generally known, and Plaintiff is entitled to use that information in this litigation

without making it publicly available.  The Protective Order, by its plain terms, provides the very

protection that Plaintiff seeks.

## II.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion, Plaintiff

respectfully requests that the Court reverse the January 24, 2011 bench ruling of Magistrate

Judge Peck holding that the Wallace and Frankel Reports are not CONFIDENTIAL, and enter an

Order holding that the Reports shall be treated as CONFIDENTIAL under the terms of the

Protective Order.

DATED:  March 1, 2011                    Respectfully submitted,

                                     David A. Koenigsberg
                                     MENZ BONNER & KOMAR LLP
                                     444 Madison Ave., 39th Floor
                                     New York, New York 10022
                                     (212) 223-2100

                                     ___/s/ Matthew C. Holohan_____
                                     David E. Sipiora
                                     Matthew C. Holohan (admitted *pro hac vice*)
                                     KILPATRICK TOWNSEND & STOCKTON LLP
                                     1400 Wewatta Street, Suite 600
                                     Denver, CO 80202
                                     (303) 571-4000

                                     Richard S. Meyer (admitted *pro hac vice*)
                                     KILPATRICK TOWNSEND & STOCKTON LLP
                                     607 14th Street, NW, Suite 900
                                     Washington, DC 20005-2018
                                     (202) 508-5800

                                     ATTORNEYS FOR PLAINTIFF WI-LAN INC.

63173495 v1

5