UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | No. 10-CV-432 (LAK)(AJP) <br><br> REDACTED VERSION |

**PLAINTIFF WI-LAN INC.'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO PRECLUDE PLAINTIFF FROM PURSUING A CLAIM OF PATENT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS AND MOTION TO STRIKE**

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
dsipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

Richard S. Meyer (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 508-5800
rmeyer@kilpatricktownsend.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

Plaintiff Wi-LAN Inc. ("Wi-LAN" or "Plaintiff") submits this Response to Defendants' Supplemental Brief in Support of their Motion to Preclude Plaintiff From Pursuing a Claim of Patent Infringement Under the Doctrine of Equivalents and Motion to Strike ("Defendants' Supplemental Brief"), along with the Supplemental Declaration of Matthew C. Holohan, with exhibits ("Supp. Holohan Decl."). As set forth more fully below, Defendants have demonstrated no basis for (a) the preclusion of Plaintiff's doctrine of equivalents arguments or (b) striking the Rebuttal of Craig K. Tanner to the Expert Report on Non-Infringement by Adam Goldberg ("Rebuttal Tanner Report"). Defendants' Supplemental Brief levies baseless attacks and accusations against Plaintiff, and conveniently ignores the fact that *Defendants have served their own supplemental expert report* – without Court approval and after the due date for the service of reports. Having served their own supplemental expert report on invalidity (an issue on which Defendants bear the burden of proof), Defendants should not now be heard to complain of Wi-LAN's expert supplement. This is particularly true in view of the fact that Wi-LAN's supplement consists only of a response to theories of non-infringement that were not previously raised by Defendants. Defendants' motion is pure gamesmanship and should be rejected by the Court.

## I. BACKGROUND

### A. The Parties' Exchange of Invalidity Reports

Defendants served an opening expert report on invalidity signed by their consultant, Adam Goldberg, on January 14, 2011 ("Goldberg Invalidity Report"). Supp. Holohan Decl., Ex. A. Consistent with the case schedule, Plaintiff served a rebuttal report signed by its own consultant, Craig Tanner, on January 28 ("Tanner Invalidity Report"). Supp. Holohan Decl., Ex. B. On February 8, without prior notice and without seeking leave of Court, Defendants served another invalidity report by Mr. Goldberg responding to the report by Mr. Tanner ("Rebuttal

1

Goldberg Invalidity Report"). Supp. Holohan Decl., Ex. C. The following day, Plaintiff challenged Defendants regarding the Rebuttal Goldberg Invalidity Report. Supp. Holohan Decl., Ex. D. In response, Defendants refused to withdraw the report and asserted that the supplement was proper in order to address certain validity issues raised in the Tanner Invalidity Report. *Id.* Thus, Defendants took the position that responsive reports were proper in this litigation without notice or leave of court.

### B. The Parties' Exchange of Infringement Reports

Plaintiff's opening infringement reports were served on January 14, 2011, including an infringement report by Mr. Tanner ("Opening Tanner Report"), pursuant to the case schedule. The reports expanded upon and clarified Plaintiff's infringement theories that had already been outlined in previous interrogatory responses. *See* Defendants' Ex. 5; Opening Tanner Report (Holohan Decl., Ex. L). The parties always contemplated that details concerning infringement and non-infringement positions would be fleshed out in expert reports. Specifically, both Wi-LAN and Defendants stated in their respective responses to interrogatories seeking infringement and non-infringement contentions that complete responses would be provided during expert discovery. *See, e.g.*, Plaintiff's Opposition Brief at 6 n.3 (LG stated that it would "provide a more detailed response through its expert report(s)").

Accordingly, and as explained in Plaintiff's Opposition Brief, the Opening Tanner Report specifically set forth claims of literal infringement and infringement under the doctrine of equivalents. With respect to the doctrine of equivalents ("DOE"), Mr. Tanner explained his understanding of the doctrine and specifically stated that he reserved the right to raise DOE to address any claims of non-infringement raised by Defendants. *See* Opening Tanner Report (Holohan Decl., Ex. L) ¶¶ 192-193. Mr. Tanner then went on to set forth his analysis under DOE for two possible non-infringement theories that Defendants might adopt. Mr. Tanner stated:

2

>(194)   **For example, if LG argues or the Court determines that the first configuration information, second configuration information, and user preference information must be stored in the same memory block, I may testify that storing this information in various memory blocks distributed throughout the device is an insubstantial difference because it makes no material difference to the operation of the Accused Products whether the information is stored in a single memory block or multiple memory blocks.** (emphasis added)
>
>(195)   **Similarly, if LG argues or the Court determines that RRT1 must be stored in a memory on a "permanent" or non-volatile basis, I may testify that storing RRT1 in a** ▓▓▓▓▓▓▓▓▓▓ **nonetheless satisfies the claim elements because storing the information in this manner stores it long enough for the function and purposes described in the '402 Patent, namely for the Accused Product to determine whether RRT1 must be processed further. In other words, storage in a** ▓▓▓▓▓▓▓▓▓▓ **allows the device to perform operations concerning RRT1 rather than discarding it immediately without storing or analyzing the data at all.** (emphasis added)

*Id.*

Notwithstanding this explicit statement of infringement under DOE, Defendants continue to advance blatant falsehoods, stating in their Supplemental Brief:

>1. Plaintiff's "opinion witnesses failed to offer any opinions on infringement under the Doctrine of Equivalents in accordance with the Court's expert discovery schedule." Defendants' Supplemental Brief at 2.
>2. Plaintiff failed "to raise any Doctrine of Equivalents theory of infringement during fact and expert discovery." *Id.*
>3. "None of Plaintiff's experts opined on infringement under Doctrine of Equivalents in their opening expert reports. . . ." *Id.* at 3.
>4. "Notwithstanding Plaintiff's failure to assert any Doctrine of Equivalents claim during fact and expert discovery, . . . " *Id.*
>5. "Mr. Tanner only offered a literal infringement opinion in his infringement report." *Id.* at n. 2.

These statements form the foundation of Defendants' motion and every one of these statements is false.

On February 8, 2011, Defendants served rebuttal infringement reports by Mr. Goldberg ("Goldberg Non-Infringement Report") and Dr. Ciro Noronha ("Noronha Non-Infringement Report"). Supp. Holohan Decl., Exs. E & F. **Importantly, these reports contained numerous**

3

**theories that had never before been advanced by Defendants in their responses to Plaintiff's interrogatories seeking disclosure of Defendants' non-infringement contentions.** For example, the Goldberg and Noronha Non-Infringement Reports contained new arguments related to Defendants' newly minted assertions that (1) the configuration information received by Defendants' Accused Products does not describe the first and second informational scheme as required by the patent-in-suit; (2) the storage of configuration information by Defendants' Accused Products is not the same "storage" required by the patent-in-suit; (3) the default user preference information programmed by Defendants in their Accused Products does not satisfy the claims of the patent-in-suit; and (4) the rating information is not embedded in a "video signal" as that term is used in the patent-in-suit.

None of the foregoing non-infringement positions were disclosed by Defendants in response to Wi-LAN's Interrogatory No. 21, which specifically requested each basis for Defendants' pleaded assertion, both in affirmative defenses and counterclaims, of non-infringement. **In fact, the entirety of Defendants' substantive response concerning non-infringement was as follows**:

> Defendant further states that none of Defendant's Accused DTV Products and Accused Non-DTV Products infringe any claim of the '402 patent either literally or under the Doctrine of Equivalents. In each of Defendants' Accused DTV Products and Accused Non-DTV Products, the current TVPG and MPAA ratings comprising rating region 0x01 are preloaded (i.e., hardwired) in the DTV or Non-DTV receiver and the preloaded scheme is used to control blocking. If a broadcast is received that contains an RRT for rating region 0x01, it is ignored by the receiver. Thus, blocking is done based soley [sic] upon the use of a preloaded scheme. There is no downloading and use of even a first informational scheme, much less a second one as required by the asserted claims of the '402 patent.

Defendant LG Electronics, Inc.'s Responses and Objections to Plaintiff's Fourth Set of Interrogatories at 15 (dated November 8, 2010) (Holohan Decl., Ex. I).[1] Clearly, this response does not disclose the positions set forth in either the Goldberg or Noronha Non-Infringement Reports described above, which were served on February 8, 2011.

Presented with these new theories, Mr. Tanner evaluated them and prepared a supplemental report, narrowly addressing each of the four positions. Notably, the Opening Tanner Report anticipated the arguments related to "storing," "memory," and "video signal," and merely amplified Mr. Tanner's prior statements. *See* page 3 *supra*, quoting ¶¶ 194-95. The Rebuttal Tanner Report also addressed the "configuration information" and "default user preference information" arguments that had been raised for the first time in Defendants' Non-Infringement Reports.

The Tanner Rebuttal Report was served on February 24,[2] four days before Mr. Tanner's scheduled deposition. Defendants thus had ample opportunity to review, analyze, and prepare questions concerning the limited material set forth in the Tanner Rebuttal Report.

## II. ARGUMENT

### A. Plaintiff Previously Raised Doctrine of Equivalents Arguments

Defendants continue to cling to their disproven assertion that Plaintiff never raised a DOE claim. As explained in Plaintiff's Opposition, Plaintiff confirmed its intention to pursue a claim of infringement under the doctrine of equivalents in its *first* response to Defendants' *first* set of interrogatories, and included what doctrine of equivalents arguments it could in the

---

[1] Under Defendants' own theory on this motion, Defendants' entire non-infringement defense must be limited to the argument quoted above, and their expert reports should be stricken to the extent they express opinions beyond this specific theory.

[2] Defendants' emphasis on the "formal close of expert discovery" is immaterial, as Defendants acknowledge that the parties agreed to extend the expert discovery cutoff and provided extended time for expert depositions. Indeed, Defendants sought and deposed Mr. Tanner nearly one week after the "formal close of expert discovery."

5

Opening Tanner Report given Defendants' refusal to disclose their non-infringement theories. *See* Plaintiff's Opposition Brief at 2, 7.  Thus, Defendants' claim that the Rebuttal Tanner Report raises "an entirely new theory of infringement" is blatantly false.  Plaintiff previously asserted that Defendants should be sanctioned for burdening the Court with these false allegations. *Id.* at 7.  The fact that Defendants continue to assert them even after Plaintiff resoundingly disproved them confirms that sanctions are warranted.

### B.  The Rebuttal Tanner Report Is Proper

As set forth above, the Rebuttal Tanner Report was proper given Defendants' course of dilatory, "hide the ball" tactics throughout fact and expert discovery.  There is no need to establish doctrine of equivalents positions where literal infringement is clearly present. *See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("Because we conclude that substantial evidence supports a finding of literal infringement, it is not necessary for us to address the issue of infringement under the doctrine of equivalents.").  Hence, theories under the doctrine of equivalents are most logical in response to non-infringement arguments posed by the accused infringer.

Given Defendants' wholesale failure to set forth detailed non-infringement theories prior to serving their expert reports, Plaintiff could not have anticipated all the new arguments advanced by Mr. Goldberg and Dr. Noronha.  Further, it is disingenuous for Defendants to claim that they could not have raised their non-infringement contentions previously, as they had a detailed infringement claim chart at their disposal, setting forth Plaintiff's infringement contentions on a limitation by limitation basis, to which they could have responded at any time. *See* Defendants' Ex. 5.

Additionally, Defendants set the precedent of serving supplemental expert reports by serving the additional Goldberg invalidity report, which was not provided for in the case

6

schedule. For Defendants to fail even to mention this critical fact in their Supplemental Brief, even as they accuse Plaintiff of defying the Court's case schedule, is grounds alone to deny Defendants' motion.[3]

Furthermore, Defendants were not prejudiced by the Rebuttal Tanner Report. The Rebuttal Tanner Report consists of only 19 pages and was served *within* the expert discovery period agreed to by the parties and four days prior to the deposition of Mr. Tanner. Defendants' reliance on *Revlon Consumer Prods. Corp. v. Estee Lauder Cos.*, No. 00 Civ. 5960 (RMB)(AJP), 2003 U.S. Dist. LEXIS 13004 (S.D.N.Y. July 30, 2003), is therefore misplaced. There, the party submitting the challenged expert declaration waited until *five months* after the close of expert discovery. *Id.* at *12. Here, The Rebuttal Tanner Report was served within the expert discovery period in ample time for Defendants to depose Mr. Tanner concerning its contents.

Similarly, in *United States v. Vulcan Society, Inc.*, 637 F. Supp. 2d 77 (E.D.N.Y. 2009), the challenged expert reports were served after the close of expert discovery. *Id.* at 107. The Court found that one challenged report contained only "conclusory assertions" addressing "analyses presented over a year ago" in the opposing party's expert reports. *Id.* In contrast, the Rebuttal Tanner Report was timely served shortly after Defendants' new non-infringement arguments were first presented, and contains detailed yet discrete analyses rebutting certain specific arguments in Defendants' expert reports.

In sum, Defendants have not shown that they are entitled to the drastic remedy of preclusion, or indeed any remedy at all. The Rebuttal Tanner Report was entirely proper in response to Defendants' conduct concerning its own expert reports and disclosures, and was

---

[3] Defendants' purported justification for the Goldberg Supplemental Invalidity Report was a shift in burden of proof concerning invalidity. However, Defendants clearly bear the burden of proving invalidity, and thus no purported "burden shifting" justified the supplemental Goldberg report.

7

served with ample time for Defendants to question Mr. Tanner on the opinions therein. There is no foul and there is no harm.

### III. CONCLUSION

For the foregoing reasons, Wi-LAN respectfully requests that the Court DENY Defendants' Motion to Preclude Plaintiff from Pursuing a Claim of Patent Infringement Under the Doctrine of Equivalents, and DENY Defendants' Motion to Strike the Rebuttal Tanner Report.

DATED: March 4, 2011                    Respectfully submitted,

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100

_____
David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000

Richard S. Meyer (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 508-5800

ATTORNEYS FOR PLAINTIFF WI-LAN INC.

63189337 v1