UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | 10 Civ. 432 (LAK) (AJP) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF WI-LAN INC.'S MOTION FOR SUMMARY JUDGMENT THAT GI AND
DIGICIPHER REFERENCES DO NOT QUALIFY AS PRIOR ART**

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
disipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

I.      **INTRODUCTION**

In their consultant's report on invalidity, Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG") identified a total of ten documents which LG contends are "prior art" that invalidate the asserted claims of U.S. Patent No. 5,848,402 ("the '402 Patent") by anticipation.  *See* Expert Report on Invalidity by Adam Goldberg dated January 14, 2011 ("Goldberg Invalidity Report").   While their relevance is disputed, there is no dispute that eight of the ten allegedly anticipating documents cited in the Goldberg Invalidity Report are, in fact, "prior art," that is, prior in time to the priority date of the asserted patented inventions.  With respect to the other two documents, however, the only basis in the Goldberg Invalidity Report to establish them as prior art is the allegation that they constitute prior "printed publications."  The two documents are standards proposals known as General Instrument's "System Information Description, Rev. 1.3" ("GI") and "Digicipher® II, Rev. 1.2" ("Digicipher").

Before LG can rely on these two documents as "prior art," LG must prove by clear and convincing evidence that they qualify as "printed publications" under the Patent Act.  LG's only evidence for the printed publication status of these documents are declarations by two fact witnesses who were not disclosed or otherwise identified by LG until service of the Goldberg Invalidity Report, more than a month after the close of fact discovery.  Further, the Goldberg Invalidity Report sets forth no "expert" analysis concerning the bald factual assertions in the declarations.  Rather, the Goldberg Invalidity Report merely accepts the assertions without comment and parrots the conclusions recited in the declarations.

As set forth more fully below, LG's reliance on GI and Digicipher as invalidating prior art references fails as a matter of law for at least three reasons.  First, the declarations are untimely, having been delivered after the close of fact discovery, and the purported testimony

should be precluded as such. Second, Mr. Goldberg's conclusory reliance on these declarations is improper expert evidence and should likewise be excluded. Finally, because LG has no other evidence to satisfy the threshold requirement of proving that GI and Digicipher are prior art printed publications, LG cannot, as a matter of law, prove that either document invalidates any claim of the '402 Patent. For these reasons, as explained more fully below, Plaintiff Wi-LAN Inc. ("Plaintiff" or "Wi-LAN") respectfully requests that the Court grant summary judgment that GI and Digicipher do not qualify as prior art.

## II. FACTUAL BACKGROUND

LG alleges that the GI and Digicipher documents qualify as prior art "printed publications." *See* 35 U.S.C. § 102(a), (b). Regardless of the substance of the documents, however, LG has failed to show that either document qualifies as a "printed publication." The only "evidence" related to the prior art status of these documents appears in five paragraphs in the Goldberg Invalidity Report. The paragraphs are set forth in their entirety below (emphasis added):

> 119. I have reviewed the General Instrument's "System Information Description, Rev. 1.3" ("GI") and "Digicipher® II, Rev. 1.2" ("Digicipher"). GI indicates that it was published on May 17, 1995 and Digicipher indicates it was published on April 28, 1995.
>
> 120. I understand that a "printed publication" is a type of prior art. I also understand that a document need not be formally published to qualify as a printed publication. It is my understanding that as long as a document can be located by interested persons of ordinary skill in the art by exercising reasonable diligence, the document qualifies as a printed publication. I understand that even a single document indexed and available for copy from a library or depository may qualify as a printed publication. I also understand that distribution and/or indexing of a document is not required for it to constitute a printed publication. Rather, it is my understanding that accessibility to the interested public is the touchstone of the printed publication analysis. It is my

> understanding that the effective date of a printed publication is the date it became accessible to the public
>
> 121. For the following reasons, it is my opinion that both GI and Digicipher are prior art printed publications. <u>First, as set forth more fully in the Declaration of Jeffrey S. Hamilton and exhibits thereto,</u> Digicipher was published by General Instruments on April 28, 1995 and subsequently submitted to the Digital Audio Visual Council (DAVIC) and distributed without restriction to DAVIC members at DAVIC's May 4-8, 1995, meeting in Cagliari, Italy. During that meeting, Digicipher was distributed to three separate technical committees within DAVIC: the Applications Technical Committee, the Systems Integration Technical Committee and Set-Top Unit Technical Committee.
>
> 122. <u>Second, as set forth more fully in the Hamilton Declaration,</u> GI was distributed to at least two separate technical committees and their associated 75 participants during the DAVIC June 6-10, 1995, meeting in Melbourne Australia. <u>In addition, as set forth more fully in the Declaration of Bernard J. Lechner,</u> GI was submitted to the ATSC and distributed without restriction to approximately 50 members of the ATSC T3/S8 Group in May 1995. GI was discussed at a meeting of the ATSC T3/S8 Group on June 19, 1995, at which members of the T3/S8 Group brought copies that General Instruments had previously distributed to the entire Group. Thus, GI was readily accessible to the any [*sic*] interested members of the public based on their review of the ATSC document tracking log.
>
> 123. Because I have not seen any evidence showing that Asserted Claim 7 of the '402 Patent was invented as early May 17, 1995 and April 28, 1995, both GI and Digicipher, respectively are prior art.

Holohan Dec. Ex. 24 at 28-29 (emphasis added).

Notably, the only evidentiary basis cited by Mr. Goldberg in support of his conclusion that GI and Digicipher qualify as "prior art printed publications" are the Declaration of Jeffrey S. Hamilton ("Hamilton Declaration")[1] and the Declaration of Bernard J. Lechner ("Lechner Declaration").[2] The Goldberg Invalidity Report explicitly limits the basis for Mr. Goldberg's "opinion that both GI and Digicipher are prior art printed publications" to the four corners of the

---

[1] *See* Holohan Dec. Ex. 22.
[2] *See* Holohan Dec. Ex. 21.

Hamilton Declaration and the Lechner Declaration. Paragraphs 121 and 122 of the Goldberg Invalidity Report set forth the entire basis for Mr. Goldberg's opinion, and both paragraphs only identify facts that are "set forth more fully" in the two declarations. Mr. Goldberg simply summarizes the declarations without applying any expert analysis. Further, Mr. Goldberg does not express any personal knowledge of the facts set forth in the Hamilton and Lechner Declarations.

Neither Mr. Hamilton nor Mr. Lechner was disclosed by LG as a potential fact witness prior to the service of the Goldberg Invalidity Report on January 14, 2011. Specifically, neither individual was listed on LG's Initial Disclosures pursuant to Fed. R. Civ. P. 26(a), nor identified in LG's interrogatory responses. *See* Holohan Dec. Exs. 28-30.

LG's failure to timely disclose Mr. Hamilton and Mr. Lechner renders the facts set forth in their declarations inadmissible, and precludes LG from offering Mr. Hamilton and Mr. Lechner as fact witnesses. Further, Mr. Goldberg's reliance on this inadmissible evidence, without any analysis whatsoever, is improper expert evidence that should likewise be excluded. Without this improper evidence, LG cannot prove that GI and Digicipher are prior art printed publications and summary judgment with respect to each reference is proper.

### III. LEGAL STANDARD

"A district court's discretion to admit expert testimony is controlled by Rules 702, 703, and 403 of the Federal Rules of Evidence." *United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2003). Rule 702 provides that an expert witness may testify "'[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702). Rule 703 provides that an expert witness may base opinions on otherwise inadmissible facts or data "'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id.* (quoting

Fed. R. Evid. 702). "Of course, expert testimony, like other forms of evidence, 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'" *Id.* at 51-52 (quoting Fed. R. Evid. 403).

IV.  **ARGUMENT**

   A.  **The Hamilton and Lechner Declarations Are Improper.**

As stated above, LG did not disclose Mr. Hamilton or Mr. Lechner in its Initial Disclosures pursuant to Rule 26(a), nor did LG disclose these individuals in its interrogatory responses, or at any point in this litigation prior to serving the Goldberg Invalidity Report on January 14, 2011.  Under Fed R. Civ. P. 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Here, LG cannot show that the failure to disclose Mr. Hamilton or Mr. Lechner was substantially justified or harmless.

No justification exists for LG's failure to disclose Mr. Hamilton and Mr. Lechner until January 14, 2011.  LG has been aware of the GI and Digicipher references since before this litigation commenced.  GI and Digicipher are two versions of the same standards proposal document, one of which (GI) has been cited in the reexamination proceeding concerning the '402 Patent.  *See* Holohan Dec. Ex. 178.  Furthermore, LG identified both GI and Digicipher in its response to Plaintiff's Interrogatory No. 23, seeking the bases for LG's invalidity defense, served on November 8, 2011, more than two months before LG served the Goldberg Invalidity Report. Holohan Dec. Exs. 29 & 30.  Wi-LAN additionally filed a Declaration with the United States Patent and Trademark Office ("PTO") on October 29, 2010, that specifically challenged the printed publication status of GI.  Holohan Dec. Ex. 163.  Thus, LG was well aware of the need to establish these references as printed publications long before fact discovery closed on December

63242413 v1                                            5

3, 2010.[3]  However, LG chose to withhold its intent to rely upon Mr. Hamilton and Mr. Lechner and surprise Wi-LAN late in the litigation.

Nor can LG establish that its decision to withhold these witnesses was harmless.  Wi-LAN was not aware that these individuals would be serving as fact witnesses until well after the close of fact discovery, and were only given the opportunity to depose them halfway through expert discovery.  Although at the time the Court characterized the opportunity to depose these individuals as a "Hobson's choice" (Holohan Dec. Ex. 27, 2/10/2011 Hearing Tr. at 16:14-17:1), it was no choice at all.  Because it had no idea that the facts set forth in the declarations would be involved in this case, Wi-LAN had taken no discovery directed to the alleged facts.  Wi-LAN had not sought documents from LG or any third party regarding the allegations.  Wi-LAN had not sought to identify or depose witnesses who could speak to the events in question or refute the vague allegations of Messrs. Hamilton and Lechner.  Further, the events described in the declarations occurred in Cagliari, Italy and Melbourne, Australia – presenting an impossible logistic challenge on short notice for Wi-LAN to canvass for possible relevant witnesses or documents.  In addition, there would be no possibility to pursue follow-up discovery after any deposition of Messrs. Hamilton or Lechner.  In short, conducting the depositions of these individuals offered nothing other than an opportunity to preserve testimony for LG with no meaningful opportunity to cross examine or follow up on statements made.

---

[3] The Court ordered LG to provide affidavits setting forth "when [Mr. Hamilton and Mr. Lechner] were contacted, when they were hired, and frankly why at that point it was not disclosed to plaintiff so that it didn't come through to plaintiff until the January 14th Goldberg affidavit." Holohan Dec. Ex. 27, 2/10/2011 Hearing Tr. at 11:25-12:3.  To date, *LG has failed to provide the affidavits*.  Plaintiff anticipates that these affidavits may establish that LG contacted Mr. Hamilton and Mr. Lechner even earlier than these documents would suggest.

Accordingly, Mr. Hamilton and Mr. Lechner should both be excluded as fact witnesses, and their declarations stricken, pursuant to Fed. R. Civ. P. 37.[4]

### B. Mr. Goldberg's Reliance on the Hamilton and Lechner Declarations Is Improper.

As neither Mr. Hamilton nor Mr. Lechner may properly testify as fact witnesses, their declarations are improper hearsay that should be stricken. As set forth above, the sole basis for LG's contention that GI and Digicipher qualify as "prior art printed publications" is Mr. Goldberg's reliance on undisclosed factual testimony from Mr. Hamilton and Mr. Lechner. This is improper expert evidence that should be excluded.

The law is clear that "an expert witness may rely on hearsay evidence *while reliably applying expertise to that hearsay evidence*, but may not rely on hearsay for any other aspect of his testimony." *Dukagjini*, 326 F.3d at 58 (emphasis added). Put another way, an "expert may not . . . simply transmit that hearsay to the jury." *U.S. v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). To allow otherwise would enable the expert to "simply repeat[] hearsay evidence without applying any expertise whatsoever, a practice that allows the proponent to circumvent the rules prohibiting hearsay." *Id.* (quotations omitted). "When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)] teaches that the testimony should be excluded." *Dukagjini*, 326 F.3d at 54.

Mr. Goldberg's citation to the Hamilton and Lechner Declarations is nothing more than an effort to transmit hearsay to the jury. The Goldberg Invalidity Report contains no independent expert analysis of the facts alleged in the Hamilton and Lechner Declarations, but merely reiterates their conclusions and states, without analysis, that GI and Digicipher qualify as

---

[4] Although LG should bear the brunt of its dilatory tactics, it is worth noting that LG's consultant, Mr. Goldberg, purportedly believes there are <u>eight</u> other references that anticipate the asserted claims. Hence, there is no harm or prejudice to LG from striking these declarations.

"prior art printed publications." This is precisely the type of improper expert evidence prohibited by *Mejia* and *Dukagjini*.[5] Accordingly, pursuant to Federal Rules of Evidence 702 and 703, paragraphs 119 through 123 of the Goldberg Invalidity Report should be stricken.[6]

### C. LG Has Failed as a Matter of Law to Prove that GI and Digicipher Are Invalidating Prior Art References.

LG asserts that GI and Digicipher, and eight additional references, anticipate the asserted claims of the '402 Patent under 35 U.S.C. § 102(a) and/or § 102(b). These subsections of Section 102 provide:

> A person shall be entitled to a patent unless -
>
> (a) the invention was known or used by others in this country, or patented or described in a <u>printed publication</u> in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a <u>printed publication</u> in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States

35 U.S.C. §§ 102(a), (b) (emphasis added). LG does not allege that GI and Digicipher constitute evidence of knowledge or use in this country, or public use or sale in this country. Thus, as a threshold matter, LG must prove that GI and Digicipher are "printed publications."

---

[5] The only case LG has cited in support of Mr. Goldberg's reliance on the Hamilton and Lechner Declarations is *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85 (2d Cir. 2000). While LG represented that "the circumstances are close" in that case, the Court properly concluded that the case is wholly inapplicable. Holohan Dec. Ex. 27, 2/10/2011 Hearing Tr. At 10:11-23. In *Gussack*, the expert relied on data collected by *another expert*, and thus the Court concluded that the challenged data was properly admissible as expert evidence. *Gussack*, 224 F.3d at 94-95. Here, Mr. Goldberg is relying on bare *factual* assertions by undisclosed witnesses, without applying any expertise to those facts. *Gussack* is therefore inapposite and LG's reliance on that case is unavailing.

[6] The Hamilton and Lechner evidence should be excluded under Fed. R. Evid. 403 as well. The declarations set forth bald, unchallenged factual assertions, and Mr. Goldberg accepts them with no analysis whatsoever. Thus, the probative value of this evidence is far outweighed by the prejudice of allowing LG's expert to simply parrot the untested assertions of two undisclosed fact witnesses.

Because the only evidence that LG has put forth in support of its contention that GI and Digicipher are "printed publications" is the improper expert evidence of Mr. Goldberg, LG cannot, as a matter of law, prove that GI or Digicipher qualify as prior art. Accordingly, LG cannot prove that GI and Digicipher anticipate any claim of the '402 Patent. Summary judgment on this issue is therefore warranted.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment that GI and Digicipher do not qualify as prior art.

Dated: April 1, 2011                    KILPATRICK TOWNSEND & STOCKTON LLP


     /s/ Matthew C. Holohan
David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100

Attorneys for Plaintiff
Wi-LAN Inc.