CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| WI-LAN INC., | ) | |
| Plaintiff, | ) ) ) | 10 Civ. 432 (LAK) (AJP) |
| v. | ) ) ) | |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF WI-LAN INC.'S MOTION FOR SANCTIONS

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
disipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 1

   A.   The '402 Patent and LG's Infringement ........................................................ 1

   B.   LG's Accused Products.................................................................................... 5

   C.   LG's Misconduct Regarding Source Code Production.................................... 6

      1.   LG's Intentional Withholding of RRT1 Source Code ................................ 6

      2.   LG's Continued Failure to Produce Source Code....................................... 9

      3.   LG's Witness' Admissions Regarding Intentional Withholding, Alteration, and
           Deletion of Source Code Materials ........................................................ 12

   D.   LG's Misconduct Regarding Rule 30(b)(6) Depositions............................... 15

      1.   LG's Unilateral Alterations to Deposition Schedules............................... 15

      2.   LG's Failure to Produce a Knowledgeable Rule 30(b)(6) Witness .............. 16

   E.   LG's Inadequate Remedial Measures and Further Misconduct..................... 18

III.    LEGAL STANDARD......................................................................................... 20

IV.     ARGUMENT...................................................................................................... 21

   A.   Monetary Sanctions Are Warranted Due to LG's Gross Misconduct .......... 21

   B.   Wi-LAN Is Also Entitled to a Jury Instruction............................................. 25

V.      CONCLUSION.................................................................................................. 25

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

## TABLE OF AUTHORITIES

**CASES**

*Arista Records LLC v. Usenet.com, Inc.,*
    633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................... 21, 22, 23, 25

*Medina v. Gonzales,*
    No. 08 Civ. 01520(BSJ)(KNF), 2010 WL 3744344 (S.D.N.Y. Sep. 23, 2010) ..................... 21

*R.F.M.A.S., Inc. v. So,*
    271 F.R.D. 13 (S.D.N.Y. 2010) ........................................................................................ 20

*Rahman v. Smith & Wollesnky Restaurant Group,*
    No. 06 Civ 6198LAKJCF, 2009 WL 773344 (S.D.N.Y. Mar. 18, 2009) ............................. 20

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir.1999) .............................................................................................. 21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ............................................. 1, 2, 8, 9, 10, 11, 12, 14, 15, 16, 18, 19, 20, 24

Fed. R. Civ. P. 37(b) ........................................................................................................... 20

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

## I.     INTRODUCTION

Plaintiff Wi-LAN Inc. ("Wi-LAN") hereby moves for an order imposing evidentiary and monetary sanctions against Defendants LG Electronics, Inc. ("LGE") and LG Electronics U.S.A., Inc. ("LGEUS") (collectively "LG") due to extensive, persistent, and gross discovery misconduct. As set forth more fully below, LG has (1) intentionally withheld, deleted, and altered key portions of source code prior to producing such code for inspection by Wi-LAN; (2) refused to cooperate with Wi-LAN in addressing the numerous deficiencies in the source code production; (3) violated multiple Court Orders compelling LG to complete its source code production; (4) failed to produce a fully knowledgeable Rule 30(b)(6) witness; and (5) engaged in a general pattern of obstruction and lack of cooperation designed to prevent Wi-LAN from obtaining information critical to this litigation. Accordingly, Wi-LAN respectfully requests monetary sanctions, an appropriate jury instruction, and any other relief the Court deems appropriate.[1]

## II.    FACTUAL BACKGROUND

### A.     The '402 Patent and LG's Infringement

This litigation concerns LG's infringement of U.S. Patent No. 5,828,402 ("the '402 patent"), titled "Method and Apparatus for Selectively Blocking Audio and Video Signals." The '402 patent concerns the world-famous "V-Chip" technology, which was invented by Professor

---

[1] Wi-LAN initially raised these issues before the Court in October 2010. At that time, the Court held that it would defer the imposition of sanctions until the resolution of the case. October 29, 2010 Hearing Tr. at 24:1-5 ("As to the monetary issue, the court is going to defer that, and you can renew your application for monetary sanctions at the close of the case."). However, at the February 10, 2011 Status Conference, the Court stated that it would not consider any further motions after the deadline for opening summary judgment briefs. February 10, 2011 Hearing Tr. at 61:3-7. Accordingly, Wi-LAN files this motion now to preserve its rights to seek sanctions for LG's gross discovery misconduct. Wi-LAN further reserves its right to provide a bill of costs if and when the Court awards sanctions pursuant to the Court's prior ruling that sanctions motions would be resolved at the end of the case.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Timothy Collings, the sole named inventor on the '402 patent. The '402 patent relates to downloadable rating schemes for use in selectively blocking video signals (*i.e.*, television programs). Claim 7 of the '402 patent is the only independent claim asserted.

Elements (a) through (d) of Claim 7 relate to the receipt and storage of "configuration information" that defines two "informational schemes," which may be used to rate programming content. Element (e) relates to the storage of user preferences regarding the informational schemes. Elements (f) through (i) relate to the receipt of embedded information codes specifying which informational scheme has been used to rate a particular program and the current levels of categories in the specified information scheme, extraction of that embedded information and comparison to the stored user preferences, and blocking or allowing a video display based on the comparison.

At all times relevant to this litigation, U.S. broadcasters have transmitted digital television signals via ATSC Transport Streams. Accompanying Declaration of Michael Dolan ("Dolan Decl.") ¶ 3. ATSC Transport Streams include data related to television programming that is transmitted along with audio and video information. *Id.* ¶ 4. The data in ATSC Transport Streams is transmitted via several data packets that make up multiple "tables." *Id.* The Rating Region Table, or "RRT," contains information related to rating schemes in use in a particular geographic region. *Id.* ¶ 5. In the United States, the RRT in use is known as RRT1.[2] *Id.* A new RRT, known as RRT5, was proposed many years ago, but it never has been developed beyond a conceptual stage and never has been broadcast in the United States other than, if at all, in limited experimental testing. *Id.* ¶ 6.

---

[2] RRT1 is also referred to as "RRT-01."

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

RRT1 describes at least two separate informational or rating schemes: TV Parental Guidelines, and the MPAA movie ratings system. *See* Exhibit A to Wi-LAN's Third Supplemental Response to LG's First Set of Interrogatories ("3d Supp. Resp.").[3]  The TV Parental Guidelines and MPAA movie ratings system may be considered the first and second informational schemes described in Claim 7.  Accordingly, the receipt and storage of the RRT1 table by a television receiver constitutes the receipt and storage of the first and second configuration information described in elements (a) through (d) of Claim 7.

A separate table of interest that is part of the ATSC Transport Stream is known as the Event Information Table, or "EIT."  Dolan Decl. ¶ 7.  The EIT includes data known as a Content Advisory Descriptor, or "CAD."  *Id.*  The CAD contains the specific rating information for particular programs under the TV Parental Guidelines or the MPAA movie ratings system.  *Id.*  When practicing Claim 7, user preferences related to the different ratings in the CAD are stored in the device.  3d Supp. Resp., Exh. A.  When the EIT is received, the CAD is extracted and compared to user preferences.  *Id.*  The device then selectively blocks or allows display of the video programming based on the comparison.  *Id.*

In sum, the receipt, storage, and processing of RRT1, the EIT, and the CAD are central to the analysis of LG's devices for the purposes of determining infringement.  Wi-LAN explained its RRT1-based infringement theory as early as February 2007.  Holohan Decl., Exh. 24.  Wi-LAN later provided an extremely detailed explanation of its RRT1-focused infringement analysis to LG in November 2007, more than two years before this litigation was initiated.  Holohan Decl., Exh. 2.  In the years between that letter and the filing of the Complaint in this action, Wi-LAN and LG engaged in extensive discussions concerning Wi-LAN's reliance on LG's

---

[3] A copy is attached as Exhibit 1 to the accompanying Declaration of Matthew C. Holohan ("Holohan Decl.").

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

processing of RRT1 as the basis for infringement.  For example, in an email dated May 10, 2008, LGE acknowledged its understanding that Wi-LAN was relying upon RRT1 in support of its infringement theory by raising a number of arguments related to RRT1, mentioning RRT1 no fewer than six times.  Holohan Decl., Exh. 3 at LG078611-LG078612.  On May 16, 2008, Wi-LAN's outside counsel sent LGE a letter responding to this email, again making it clear that Wi-LAN was relying upon RRT1 to support its infringement theory.  Holohan Decl., Exh. 4.  For example, the letter stated: "Table II [of the '402 patent] shows an example of an information scheme similar to that in the first four columns of RRT-01.  Thus, by way of example, RRT-01 includes at least two distinct information schemes . . . ."  *Id.* at LG000126.  LGE responded on July 29, 2008, again raising numerous arguments related to RRT1.  Holohan Decl., Exh. 3 at LG078605-LG078609.  Indeed, LGE's email of this date again explicitly acknowledged Wi-LAN's position, stating: "We assumed, arguendo, that the RRT-01 table is considered to be 'configuration information.'"  *Id.* at LG078606.  Wi-LAN responded by email dated August 26, 2008, again refuting LGE's arguments related to RRT1 and making it clear that RRT1 was central to Wi-LAN's infringement analysis.  *Id.* at LG 078594-LG078605.

Throughout these discussions, Wi-LAN has been consistent in grounding its infringement analysis on the processing of RRT1.[4]  As a result, for a period of several years, LG has been aware of the relevance and importance of LG's processing of the RRT1 signal in relation to Wi-LAN's claim of infringement.  In fact, in a dispute over LG's hiring of Adam Goldberg, who initially had been approached by counsel for Wi-LAN, LG roundly dismissed the claim that Wi-LAN had shared any confidential information when discussing with Mr. Goldberg Wi-LAN's

---

[4] Wi-LAN also expressed an alternative infringement theory based on RRT5.  However, as explained above, Wi-LAN made it clear that LG's Accused Products infringed based on RRT1 as well.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

analysis of infringement based on the processing of RRT1.  In an affidavit submitted by LG to

the Court, Mr. Goldberg stated that Wi-LAN's counsel had told him that "Wi-LAN was taking

the position in that case that Rating region Table 1 (RRT0x01) constitutes at least two separate

rating schemes," and that Wi-LAN's counsel "did not communicate any other details of the

case."  Holohan Decl., Exh. 5 ¶ 6.  In an accompanying letter to the Court, Defense Counsel

stated that "the purported 'information' described to Mr. Goldberg was nothing more than

*information that was already known to Defendants*."  Holohan Decl., Exh. 6 (emphasis added).

Yet, as seen below, it is precisely information about the processing of RRT1 that LG edited out

of its source code before producing the code to Wi-LAN.

### B.    LG's Accused Products

The Accused Products in this litigation have been defined as "Any device including

television receivers containing 'V-Chip' parental control functionality or similar technology to

block programming based upon a content advisory descriptor or program rating included with

the program."  The specific products include digital television sets ("DTVs"), digital video

recorders ("DVRs"), converter boxes ("set-top boxes"), and other devices that include receivers

equipped to receive ATSC Transport Streams.



CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████

To enable Wi-LAN to fully analyze LG's Accused Products, Wi-LAN served discovery requests on March 17, 2010, seeking documents and information related to the operation of LG's Accused Products related to V-Chip technology. Wi-LAN's requests included requests for source code and other technical documentation. LG consistently failed to fully produce information related to the operation of its Accused Products, despite being ordered to do so by the Court. LG additionally failed to timely make a complete production of source code, despite numerous Court Orders. LG's refusal to completely produce source code and other discovery prejudiced Wi-LAN's ability to analyze LG's products and forced Wi-LAN to expend needless resources in chasing down complete information regarding LG's Accused Products.

C.     **LG's Misconduct Regarding Source Code Production**

1.     **LG's Intentional Withholding of RRT1 Source Code**

Wi-LAN initially requested to review LG's source code on September 9-10, 2010.[5] The source code was provided on a source code computer under the terms of the Protective Order in

---

[5] The Protective Order in this action includes a fourteen-day notice period for production of source code and a ten-day period for objecting to consultants. LG's improper objection to Wi-LAN's consultant, which was later withdrawn, enabled LG to delay Wi-LAN's review of source code by more than a month. After Wi-LAN raised its original sanctions motion in October 2010, LG agreed to make the source code available on 48 hours notice.

## CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

this action. ████████████████████████████████████████

████████████████████████████████████████████████████

During this inspection, Wi-LAN's consultant immediately recognized that the source code was

incomplete. *Id.* ¶ 16. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ These omissions were troubling given that LG had been aware

since at least February 2007 that RRT1 and CAD processing are central to Wi-LAN's

infringement theory.

On the evening of September 10, immediately following the completion of the first round

of source code review, Wi-LAN sent LG a detailed letter setting forth these and other

deficiencies, including a request that LG provide information concerning the "build

environment," which would have confirmed the completeness of the source code production.

Holohan Decl., Exh. 7. Wi-LAN requested an additional source code review session two weeks

later on September 24 and September 27-28, and asked LG to correct the deficiencies over the

next two weeks prior to the next round of source code review. *Id.*

LG did not substantively respond to Wi-LAN's letter for nearly two weeks. On

September 22, two days before the scheduled source code review, LG finally responded,

asserting that it would be unable to address the majority of issues raised in the September 10

letter in time for the September 24 review. *Id.*, Exh. 8. LG's excuse for failing to address the

deficiencies in its source code production was a Korean holiday that was celebrated during the

week of September 20. *Id.* Wi-LAN immediately responded, asserting that LG's failure to

correct its deficiencies was unacceptable and that the Korean holiday was no excuse given the

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

fact that LG had had nearly two weeks to correct the deficiencies in its production (deficiencies which should not have been present in the first place). *Id.*, Exh. 9. In the meantime, Wi-LAN agreed to proceed with the source code review on September 24, but postponed the review scheduled for September 27-28 until October 1-2. *Id.*[6]

A Status Conference was held on the morning of September 24, during which the Court ordered LG to correct all issues related to source code production by September 28. September 24, 2010 Hearing Tr. at 7:18-8:15. Wi-LAN requested this date so that there would be sufficient time between compliance with the Court's order and the next round of source code review to confirm that the source code review would be productive. *Id.* at 7:13-14. The Court allowed Wi-LAN to defer seeking costs for the source code review. *Id.* at 8:18-22.

Wi-LAN did not hear from LG on September 28, despite the Court's Order. The following morning, Wi-LAN wrote to LG seeking confirmation that LG had complied with the Court's Order. Holohan Decl., Exh. 11. LG refused to provide such confirmation, and refused to meet and confer with Wi-LAN. *Id.*

Wi-LAN requested a telephone conference with the Court the following day to address LG's defiance of the Court's Order. It was critical that Wi-LAN be able to conduct a complete review and analysis of LG's source code during the review scheduled for the following day, as the Rule 30(b)(6) deposition of Defendant LG Electronics, Inc. ("LGE") was scheduled to begin four days later in Seoul, Korea.

On September 30, 2010, fifteen minutes before the scheduled telephone conference, LG sent Wi-LAN a letter purporting to address the issues regarding source code production. *Id.*,

---

[6] Following the source code review session on September 24, Wi-LAN sent LG a letter responding further to LG's September 22 letter, explaining that the source code deficiencies still had not been cured. *Id.*, Exh. 10.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

Exh. 12.  LG's letter included two sanction-worthy admissions.  First, LG admitted that it had failed to comply with the Court's Order directing LG to make a full production of source code by September 28.  *Id.*  Rather, LG was still "attempting" to make additional source code available for review during the October 1-2 session.  *Id.*

More importantly, LG admitted that ███████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████

During the telephone conference on September 30, the Court admonished LG that "if witnesses who are deposed in Korea have to be redeposed because of the source code problems you run the risk of the second deposition occurring in the United States or at LG's expense in Korea."  September 30, 2010 Hearing Tr. at 3:20-23.

## 2.    LG's Continued Failure to Produce Source Code

Wi-LAN proceeded with the third review of LG's source code production on Friday, October 1 and Saturday, October 2, 2010.  LG produced new material requiring significant review, but after two days, it was again evident that LG continued to withhold source code.  ██
██████████████████████████████████████████████████
████████████████████████████████████ Wi-LAN raised this issue with LG, who were unable to explain the discrepancy in file production.  Holohan Decl., Exh. 13.  On the afternoon of October 1, an employee of Defense Counsel's law firm uploaded an additional directory to the source code computer, ██████████████████████████

63242409 v1                                          9

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

Dolan Decl. ¶ 19. Thus, LG was continuing to produce new source code on the afternoon of October 1, now less than five days away from the beginning of the Rule 30(b)(6) depositions in Seoul, and well after the date upon which the Court had ordered full production.

The third review session of LG's source code was completed on Saturday, October 2, 2010. The following day, Wi-LAN's counsel flew to Korea for depositions. Wi-LAN requested that source code computers be provided for review, consultation, and use during the depositions. Accordingly, on October 6, the first day of the technical deposition, LG produced a source code computer. *Id.* ¶ 21. However, the computer provided by LG was not the computer used in the prior reviews which contained software purchased by Wi-LAN to allow its consultant to review the source code in an efficient and expeditious manner. Instead, LG reported that the computer with the viewer was shipped with a delayed arrival in Korea, so that it would not be arriving until Thursday night—after the technical portion of LG Rule 30(b)(6) deposition was completed. Hence, while counsel for both parties could transport themselves to Korea in a matter of 24 hours, the computer containing the source code and the viewer that facilitated viewing that source code would not arrive for five days, conveniently after Wi-LAN completed the main technical deposition in the case.

But there is more. LG produced a surrogate computer at the deposition, without the software, and, amazingly, containing yet a third installment of source code production, ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

On the fly, while the deposition of LG's Rule 30(b)(6) technical witness was being conducted in the same room, Wi-LAN's consultant  reviewed and analyzed the new source code. Under such circumstances, Wi-LAN's consultant could not conduct a complete review and analysis of the new source code with the consultant in time to fully depose LG's technical witness on the subject. *Id.* ¶ 22.

After review of the third installment of source code, which was made available on the new computer in Korea at the deposition, Wi-LAN's consultant confirmed that the source code production was still incomplete. ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

███████████████████████████████████████████

████████████████████████

In addition to the wholesale failure to produce certain critical files and source code

blocks, there was other evidence in the source code produced at the deposition that information

had been intentionally deleted from the source code production. ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

### 3.   LG's Witness' Admissions Regarding Intentional Withholding, Alteration, and Deletion of Source Code Materials

LG designated Su Hyun Shin, a Chief Engineer with the company, to testify on behalf of

LG regarding technical issues, including the source code.[8]  Wi-LAN questioned Mr. Shin

---

[7]
████████████████████████████████████████
████████████████████████████████████████

[8] For example, Mr. Shin was designated to testify regarding Topic 6 of the deposition notice: "The software, firmware, hardware and any other component involved in the receipt, storage, and/or processing of rating region tables ("RRTs") (including without limitation static RRTs) or Content Advisory Descriptors ("CADs") in Accused Products or Accused Non-DTV Products." Holohan Decl., Exh. 14.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

extensively regarding the collection and production of source code.  Mr. Shin admitted to
extensive misconduct regarding previous source code production.

Obviously,
the fact that information is in Korean does not justify excluding it from production.  LG was

---

[9] Excerpts of Mr. Shin's deposition transcript are attached as Exhibit 15 to the Holohan Decl.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

required to produce the source code as kept in the ordinary course of business, and the deletion
of programmer comments from the source code production was plainly improper.  Furthermore,
Wi-LAN retained a Korean translator specifically to assist in source code review so that Korean
programmer comments could be understood.  Wi-LAN explicitly advised LG of the fact that a
Korean translator would be attending the source code review.  Holohan Decl., Exh. 16.

        In sum, LG has admitted, through correspondence and deposition testimony, that key
information was deliberately withheld, deleted, or otherwise altered within the source code
production.  LG subsequently failed to remedy this misconduct, despite a Court Order directing
them to do so.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

**D.     LG's Misconduct Regarding Rule 30(b)(6) Depositions**

In addition to the misconduct related to the production of source code discussed above,

LG has engaged in a pattern of obstructionist tactics designed to deprive Wi-LAN of a full and

fair opportunity to gather information regarding Accused Products and other issues in this case.

In particular, LG was uncooperative in scheduling depositions and failed to produce a Rule

30(b)(6) witness with sufficient knowledge regarding key issues.

**1.     LG's Unilateral Alterations to Deposition Schedules**

The parties entered into a stipulation, at the Court's order, regarding deposition

scheduling on August 27, 2010.  Holohan Decl., Exh. 17.  Under the terms of this stipulation, the

parties agreed that LGE would produce two Rule 30(b)(6) witnesses: one covering technical

topics and one covering non-technical topics.  *Id.*  The parties agreed that the technical

deposition would proceed on October 6-8 in Seoul, Korea, and that the non-technical deposition

would proceed on September 29-30 in Washington, DC.  *Id.*  On September 2, LG advised Wi-

LAN that they would not be able to honor the stipulation that had been filed with the Court the

previous week.  *Id.*, Exh. 18.  The parties then agreed, on September 7, that the deposition

sessions for both LGE witnesses would proceed on October 6-9 in Seoul.  *Id.*, Exh. 19.

Wi-LAN intended to have its consultant attend the technical portion of the deposition.  In

order to allow its consultant to make travel arrangements, Wi-LAN requested, on September 21,

that LG confirm that the technical deposition would begin on October 6, as provided in the

original stipulation.  *Id.*, Exh. 20.  That same day, LG confirmed that the technical deposition

would begin on October 6, and the non-technical deposition would begin on October 8.  *Id.*  Wi-

LAN's counsel and Wi-LAN's consultant made travel arrangements and other planning

decisions in reliance upon this representation.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

However, on October 5, the day before the depositions were about to begin, LG informed Wi-LAN that they were unilaterally switching the witness order, presenting the non-technical witness on October 6-7 and the technical witness on October 8-9. *Id.*, Exh. 21.[10] Further, as mentioned above, the laptop computer used in prior source code reviews containing the software that Wi-LAN had purchased for use in reviewing the source code was on the proverbial "slow boat to Korea" and would arrive Thursday night, after the completion of the technical deposition. LG refused to honor its prior representations, and would only agree to an abbreviated deposition schedule in which both witnesses would be presented for a total of three days beginning October 6, with the technical witness going first. *Id.* Wi-LAN had no choice but to agree. *Id.*

## 2. LG's Failure to Produce a Knowledgeable Rule 30(b)(6) Witness

As described above, Wi-LAN proceeded with the deposition of LGE's technical witness beginning October 6. However, throughout the deposition it became clear that LGE had failed to comply with Rule 30(b)(6) by producing a knowledgeable witness. Instead, LGE's designated witness, Mr. Shin, lacked knowledge regarding numerous essential issues.

At the outset, it was clear that Mr. Shin failed to prepare adequately for the deposition.



---

[10] The dates on these emails reflect local time in Denver, Colorado.  The correspondence took place in Seoul, which is fifteen hours ahead of Denver.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

█████████████████████████████████ This information is critical in determining how LG's Accused Products operated at various times during the past six years, and thus is highly relevant at least to the issue of damages.

In sum, LGE designated a Rule 30(b)(6) witness who was unfamiliar with the basic operations of key components and source code that are central to the issues in this litigation. This, combined with LG's lack of cooperation regarding deposition scheduling and willful withholding of critical source code, has significantly prejudiced Wi-LAN and should be remedied by the Court.

### E.    LG's Inadequate Remedial Measures and Further Misconduct

After Wi-LAN originally brought these matters to the Court's attention in October, LG agreed to certain purported remedial measures in an apparent effort to minimize the impact of its misconduct and reduce its exposure to sanctions.  In particular, LG agreed to make source code available for review on 48 hours notice in Los Angeles, California, which was a more convenient location for Wi-LAN's expert.  Additionally, under Court Order, LG produced Mr. Shin for an additional day of deposition in Chicago, Illinois.  LG additionally represented that it had made a complete production of all source code for each of the four representative products, rather than selecting particular files that LG believed were relevant to the dispute.

Unfortunately, LG's efforts failed to correct the damage that had been done by its prior misconduct. ████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

████████████████████████████i

      Furthermore, Wi-LAN was unable to verify the completeness of LG's source code

production without the build environment, something that Wi-LAN had requested in its first

letter to LG concerning source code production in September 2010.  LG refused to produce the

build environment, and required yet another Court Order before agreeing to produce it.  October

29, 2010 Hearing Tr. at 11:21-12:11.  Incredibly, LG violated this Court Order as well, failing to

produce the build environment by the date ordered by the Court.[12]  November 16, 2010 Hearing

Tr. at 3:13-4:2.  This failure occasioned still further delay as Wi-LAN scrambled to complete its

infringement analysis and prepare expert reports.

      In light of the source code selected for production by LG and the level of knowledge Mr.

Shin was willing to testify to concerning the operation of LG's receiver chips, Wi-LAN was

forced to subpoena LG's third-party chip suppliers to obtain additional information concerning

the operation of receiver chips.  Had LG cooperated in discovery earlier in the case, Wi-LAN

could have pursued these subpoenas earlier after confirming the extent of information LG was

able and willing to produce.  However, given LG's dilatory conduct, Wi-LAN was forced to

conduct the depositions of LG's chip suppliers after the close of fact discovery, during the week

---

[11] Excerpts from this deposition transcript are attached as Exhibit 25 to the Holohan Declaration.
[12] The Court has awarded Wi-LAN monetary sanctions for a day of source code review for LG's
latest violation of the Court's orders.  November 16, 2010 Hearing Tr. at 4:1-2.  As this
memorandum establishes, however, this sanction is only the tip of the iceberg in terms of the full
extent of sanctions owed by LG.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

of the Christmas holiday.  Holohan Decl. ¶ 2.  In other words, LG's dilatory conduct and

evidentiary tampering left Wi-LAN with just over three weeks to incorporate complete evidence

concerning the operation of LG's receiver chips into its expert reports served on January 14.[13]

## III.   LEGAL STANDARD

"A district court has broad authority to impose sanctions for violations of discovery

obligations, such as the spoliation of evidence or failure to comply in a timely manner with an

appropriate discovery request."  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 22 (S.D.N.Y. 2010).

Courts may also impose sanctions for failure to comply with a Court Order.  Fed. R. Civ. P.

37(b).  Additionally, "sanctions are appropriate if a corporate defendant fails to make a good

faith effort to comply with Rule 30(b)(6)."  *Rahman v. Smith & Wollesnky Restaurant Group*,

No. 06 Civ. 6198 (LAK) (JCF), 2009 WL 773344, at *2 (S.D.N.Y. Mar. 18, 2009).  "A court

may also sanction parties for sustained uncooperative conduct during discovery, even if no single

act in the uncooperative party's course of conduct would, on its own, warrant sanctions."

*R.F.M.A.S.*, 271 F.R.D. at 22.

> Sanctions that the court may impose for discovery violations
> include-in ascending order of harshness-an order directing the
> noncompliant party to provide further discovery; shifting of costs,
> including attorneys' fees, incurred by the other parties in
> connection with the discovery violation; imposing fines payable to
> the court on the culpable party or its attorneys; an instruction
> informing the jury of the discovery breach; an order precluding the
> noncompliant party from using particular pieces of evidence that
> were withheld during discovery in connection with motions or at
> trial; an order establishing particular facts, issues, claims, or
> defenses related to the discovery abuse against the noncompliant
> party; or the entry of a default judgment, dismissal, or declaration
> of a mistrial ("terminating sanctions").

*Id.*

---

[13] Had LG made its complete source code production in a timely manner, Wi-LAN could have
assessed its needs to obtain third-party discovery earlier in the case.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

"The United States Court of Appeals for the Second Circuit has emphasized the importance it places on a party's compliance with discovery orders, and has warned that a party who flouts such orders does so at his peril." *Medina v. Gonzales*, No. 08 Civ. 01520(BSJ)(KNF), 2010 WL 3744344, at *14 (S.D.N.Y. Sep. 23, 2010) (internal quotations omitted). In determining the appropriate sanction for discovery violations, a Court must consider "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). "[T]ailoring an appropriate sanction lies within the sound discretion of the trial court, and is to be assessed on a case-by-case basis." *Id.* at 141.

## IV.   ARGUMENT

As set forth below, LG's pattern of willful discovery misconduct in defiance of Court orders has harmed Wi-LAN's ability to prosecute its case and forced the needless expenditure of significant resources. Accordingly, sanctions are appropriate.

### A.   Monetary Sanctions Are Warranted Due to LG's Gross Misconduct

The pattern of discovery misconduct described above warrants, at the very least, monetary sanctions against LG. Monetary sanctions are among the more modest sanctions available to courts, and therefore Wi-LAN's request for such sanctions is reasonable. In addition to preventing Wi-LAN from timely analyzing LG's Accused Products, LG's misconduct has caused Wi-LAN, as well as the Court, to waste significant resources. Accordingly, Wi-LAN seeks reimbursement of the following costs:

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

- All fees and costs associated with the source code review sessions conducted on September 9-10, September 24, and October 1-2, 2010.

- All fees and costs associated with the depositions of LG witnesses conducted in Seoul on October 6-7, 2010, and in Chicago on November 30.

- All fees and costs associated with seeking to address LG's deficient source code production, including the drafting of letters and Court conferences.

- All fees and costs associated with preparing this motion.

Such monetary sanctions are appropriate given LG's misconduct.  Not only did LG intentionally withhold evidence, but LG failed to advise Wi-LAN that such evidence was being intentionally withheld for several weeks and dragged its feet in correcting its production even after several Court Orders directing it to do so.  This forced Wi-LAN to engage in wasteful, and ultimately futile, meet and confer practice, as well as burdened the Court with issues that LG should have addressed months ago.  Thus, reimbursement of Wi-LAN's fees and costs, as well as appropriate fines to the Court, are appropriate to remedy LG's misconduct.

Each of the factors set forth in the *Arista* case favor such sanctions.  LG's pattern of misconduct indicates willfulness and bad faith.  As explained above, LG was on notice of the centrality of RRT1 to Wi-LAN's infringement position since February 2007.  ███████████

█████████████████████████████████████████████████████████████

███████████████████████ Furthermore, even though Wi-LAN raised the issue, and other deficiencies, with LG immediately, LG failed to respond to Wi-LAN's concerns for nearly two weeks, and even then refused to complete its production of source code.  ██████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████ LG's willful and deceitful withholding, deleting, and altering of source code must be remedied.

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Furthermore, the Court explicitly ordered LG to correct its source code production by September 28.  LG not only failed to do so, but also refused to cooperate with Wi-LAN in determining whether the Court's order had been obeyed.  It took yet another telephone conference with the Court to force LG to communicate with Wi-LAN.  Even then, LG was still producing new source code on October 1 and October 6, and LG's source code production was *still* incomplete after the trip to Korea.  Further Court Orders were necessary before LG produced sufficient information to confirm the completeness of its source code production.

Additionally, LG has failed to comply with discovery orders in the past.  The Court ordered LG to make a complete production of technical documents within ten days of the July 22 Status Conference.  Nonetheless, LG was still producing datasheets related to receiver chips as of September 24, 2010.  LG has never taken its discovery obligations seriously, and has acted with bad faith.  Thus, the first two *Arista* factors favor strong sanctions against LG.

Furthermore, lesser sanctions would be inadequate to remedy the prejudice suffered by Wi-LAN.  The only sanction that is less harsh than the cost shifting sought here is "an order directing the noncompliant party to provide further discovery."  However, Wi-LAN already went to extraordinary lengths to secure the evidence it needed for its infringement case, and thus further discovery would provide no benefit to Wi-LAN.  Wi-LAN expended significant resources and suffered prejudice concerning its ability to prepare expert reports, all due to LG's tampering with evidence and refusal to cooperate in discovery.  At this stage of the litigation, the only way to compensate Wi-LAN for this prejudice is by at least reimbursing the costs generated by LG's willful discovery misconduct.

LG cannot claim that sanctions would be without notice.  The Court warned LG regarding the possibility of sanctions at the September 30 Hearing, and deferred Wi-LAN's

**CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

intention to seek costs at the hearings on September 24 and December 30, 2010.  September 24, 2010 Hearing Tr. at 8:18-22; December 30, 2010 Hearing Tr. at 4:3-4.  Although the Court's initial admonitions were limited to the cost of additional depositions, the full extent of LG's misconduct was not apparent at the time of these Hearings.  In particular, it was not clear that LG had willfully excluded key portions of the source code production, nor could it have been predicted that LG would produce a Rule 30(b)(6) witness with a lack of basic knowledge regarding key functionalities within LG's Accused Products (and indeed, complete ignorance as to entire classes of Accused Products).  LG surely understood the risks of its misconduct.

Regarding client complicity, it is clear that LGE itself, as well as Defense Counsel, has engaged in misconduct related to source code production. ███████████████████ ████████████████████████████████████████████ ████████████████████████ LGE also apparently used the Korean holiday as an excuse to ignore its responsibility to correct the numerous deficiencies that Wi-LAN identified regarding source code production, deficiencies that had been identified long before the holiday began.  Accordingly, reasonable sanctions are appropriate given the complicity of LGE itself in altering and withholding evidence.

Finally, as discussed above, Wi-LAN has been severely prejudiced by LG's misconduct.  Wi-LAN invested significant resources in reviewing and analyzing source code that was incomplete, not to mention attempting in vain to engage LG in correcting the deficiencies regarding the source code.  Wi-LAN was unable to fully depose Mr. Shin regarding the produced source code during his original deposition, as portions of the source code were produced only on the first day of Mr. Shin's deposition.  Additionally, Mr. Shin's lack of knowledge regarding LG's Accused Products prevented Wi-LAN from fully preparing its infringement case until the

CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

last minute, forcing additional depositions through the holiday season. Accordingly, monetary sanctions are necessary to remedy the prejudice suffered by Wi-LAN.

### B.     Wi-LAN Is Also Entitled to a Jury Instruction

Wi-LAN is entitled at the very least to monetary sanctions for the costs associated with unwinding LG's discovery misconduct. In addition, given the *Arista* factors discussed above, Wi-LAN is entitled to the additional sanction of "an instruction informing the jury of the discovery breach." This measure would not preclude LG from offering evidence or deem any facts admitted, which the Court sought to avoid given its comments at the October 29, 2010 Status Conference. *See* October 29, 2010 Hearing Tr. at 2:11-17. However, this remedy would apprise the jury of the fact that LG intentionally withheld, concealed, and obfuscated evidence that demonstrates the infringing operation of LG's Accused Products. The jury is entitled to consider this information in determining issues such as infringement and willfulness.

## V.     CONCLUSION

LG's consistent pattern of willful discovery misconduct, including blatant violation of Court Orders, should not be countenanced by the Court. Wi-LAN has been significantly prejudiced in prosecuting its case, and has been forced needlessly to incur extensive costs due to LG's abject failure to timely produce key evidence. Accordingly, Wi-LAN respectfully requests an order granting the sanctions requested above, and any further relief the Court deems appropriate.

Dated: April 1, 2011                    KILPATRICK TOWNSEND & STOCKTON LLP


David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100

Attorneys for Plaintiff
Wi-LAN Inc.