**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

**WI-LAN INC.,**                                                                          10 CV 432 (LAK) (AJP)

        Plaintiff,

v.

**LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,**

        Defendants.

------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORTS OF WI-LAN'S OPINION WITNESSES MSSRS. TANNER AND DOLAN AND TO PRECLUDE THEIR OPINION TESTIMONY**

Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com
smuliand@gtlaw.com

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Matthew J. Levinstein (*pro hac vice*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc

Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG") submit this memorandum in support of their motion to strike the reports of Wi-LAN, Inc.'s ("Wi-LAN") opinion witnesses Craig K. Tanner and Michael Dolan and to preclude any opinion testimony of Mssrs. Tanner and Dolan at summary judgment and trial on the issues of the infringement and/or validity of Claims 7-11 ("Asserted Claims") of U.S. Patent No. 5,828,402 ("the '402 Patent").

## I.     INTRODUCTION

The evidentiary shortcomings of Mr. Tanner's and Mr. Dolan's "expert" opinions are immediately recognizable and startling in nature. Their testimony is nothing more than dressed up *ipse dixit*. Mssrs. Tanner and Dolan completely disregard well-settled and unambiguous patent law principles to reach unsupported, unreliable opinions on which they intend to offer testimony while completely disregarding the claim language. For example, neither Mr. Tanner nor Mr. Dolan ever construed the terms of the Asserted Claims in opining that LG's Accused Products infringe. For the few terms they did define during their depositions, Mssrs. Tanner and Dolan offered definitions that are non-sensical and wholly divorced from the claim language, the specification, and claim construction and patent infringement law. For example, Wi-LAN and its experts creatively read out entire limitations, the order prescribed by the claimed methods, and define the same term three different ways (depending on where it appears in the Asserted Claims) in order to maintain Wi-LAN's tenuous infringement positions, while wholly disregarding antecedent basis requirements. In fact, in attempting to salvage Wi-LAN's objectively baseless patent infringement claims, Mssrs. Tanner and Dolan rendered the Asserted Claims indefinite. Finally, Mssrs. Tanner and Dolan cannot point to a single act of direct infringement whereby each of the steps of the methods of the Asserted Claims is performed by

1

an LG Accused Product. Indeed, both cannot point to any evidence that an actual user has actually used LG's Accused Products to store his/her user preferences and selectively block television programming. As such, Mssrs. Tanner and Dolan are forced to rely on the comical theory that LG's factory default settings (stored in ■■■■■■■■■■ is the same thing as a person setting and storing his/her program blocking preferences so that certain programming can be selectively blocked according to the claimed purpose of the invention of the Asserted Claims. In so doing, both of Wi-LAN's opinion witnesses openly admit that default settings do not perform any comparison or blocking and that therefore certain steps of the Asserted Claims are never performed.

For these and for the many other reasons discussed herein, LG respectfully moves this Court to strike the expert reports Mssrs. Tanner and Dolan and to preclude them both from offering any opinion testimony at summary judgment and trial, in accordance with Federal Rules of Civil Procedure 26(a) and 37(c) and Federal Rules of Evidence 702 and 403.

## II. BACKGROUND

During expert discovery, Wi-LAN's primary technical opinion witness, Mr. Tanner, submitted two reports, an *Opening Expert Report and Disclosure of Craig K. Tanner Under Rule 26(a)(2)(B), Fed. R. Civ. P.*, served on January 14, 2011, ("Opening Expert Report," **Ex. 1**) opining primarily on LG's alleged infringement of the '402 Patent and a *Rebuttal of Craig K. Tanner to the Expert Report on Invalidity by Adam Goldberg*, served on January 28, 2011, ("Rebuttal Report," **Ex. 2**) opining on the validity of the '402 patent.[1] On March 7, 2011, LG deposed Mr. Tanner regarding the opinions contained in his Opening Report and Rebuttal

---

[1] Plaintiff untimely served its *Rebuttal of Craig K. Tanner to the Expert Report on Non-Infringement by Adam Goldberg* on February 24, 2011, after the formal close of expert discovery. Defendants' Motion to Preclude Plaintiff from Pursing a Claim of Patent Infringement Under the Doctrine of Equivalents (which would strike Mr. Tanner's February 24, 2011, report) is currently pending before this Court (Dkt. 115.)

Reports. Mr. Dolan submitted his sole report entitled *Opening Expert Report and Disclosure of Michael A. Dolan Under Rule 26(a)(2)(B), Fed. R. Civ. P*. on January 14, 2011. (**Ex. 3**.) On February 25, 2011, LG deposed Mr. Dolan.

## III.   LEGAL STANDARDS

### A.   The Expert Disclosure Standards of Federal Rule of Civil Procedure 26(a).

Federal Rule of Civil Procedure 26(a)(2) regulates the disclosure of expert reports and testimony. Among other things, the expert report must be detailed and complete and must disclose the "basis and reasons" for all opinions contained therein. FED. R. CIV. P. 26(a)(2)(B)(i); advisory committee's note (1993). As such, conclusory opinions do not satisfy Rule 26(a)(2)(B)(i). In the patent infringement context, an expert's Claim construction forms the "basis and reasons" for any conclusions regarding infringement and/or invalidity. *See Oxford Gene Tech. Ltd. v. Mergen, Ltd.*, 345 F.Supp. 2d 431, 436–37 (D. Del. 2004) (excluding defendant's expert's report on invalidity because the expert did not submit a Claim construction providing "a clear construction of each disputed Claim element").

Federal Rule of Civil Procedure 37(c) authorizes sanctions for a party's failure to comply with FED. R. CIV. P. 26. FED. R. CIV. P. 37(C). "If a party fails to provide information … as required by Rule 26(a) … the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Exclusion of undisclosed information is "automatic" and the non-disclosing party bears the burden of proving that its failure was substantially justified or harmless. *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 395–96 (S.D.N.Y. 2005).

B.   **The Admissibility of Expert Testimony Under Federal Rule of Evidence 702.**

The Federal Rules of Evidence require that a Court "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 134, 147 (1999) (recognizing that the Federal Rules of Evidence impose "a special obligation upon a trial judge to ensure that any and all [expert] testimony … is not only relevant, but reliable."); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (*quoting Daubert* and affirming Judge Kaplan's ruling to exclude unreliable expert testimony).  "Expert testimony which does not relate to any issue in this case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. "Under *Daubert*, 'the district court functions as the gatekeeper for expert testimony,' … whether proffered at trial or in connection with a motion for summary judgment…." *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (internal citations omitted). The decision to exclude expert testimony is within the Court's discretion. *See, e.g., Amorgianos v. Nat. R.R. Passenger Corp.*, 303 F.3d 256, 264–65 (2d Cir. 2002).[2]

The basis of the Court's obligation is Federal Rule of Evidence 702,[3] "which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert*, 509 U.S. at 589. Rule 702 requires that with respect to scientific opinion, that opinion must be grounded "in the methods and procedures of science." *See Major League*, 542

---

[2] Although issues that are unique to patent law are subject to the Federal Circuit's appellate jurisdiction, issues relating to the admissibility of expert testimony are subject to the law of the regional Circuit. *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).

[3] Federal Rule of Evidence 702 now reads: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

4

F.3d at 310–11 (quoting *Daubert*, 590 U.S. at 589-90).  Thus, under *Daubert*, speculative expert testimony should be excluded.  *Id*. at 311.  Indeed, "the '[a]dmission of expert testimony based on speculative assumptions is an abuse of discretion.'"  *Id.* (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996)).

The proponent of the expert testimony ***carries the burden of proving admissibility***.  *Daubert*, 509 U.S. at 592 n.10 (citation omitted) (emphasis added).  Relevance turns on "whether [that] reasoning or methodology properly can be applied to the facts in issue."  *Id*. at 593.  Reliability is assessed by determining "whether the reasoning or methodology underlying the testimony is scientifically valid."  *See id.* at 592–93.  An expert's analysis must be reliable "at every step" to warrant admissibility; if any one step renders an expert's analysis unreliable, then the expert's testimony is inadmissible.  *Amorgianos*, 303 F.3d at 267 (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("The reliability analysis applies to all aspects of an expert's testimony; the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.").)

The failure to follow well-accepted patent law standards renders expert infringement and/or validity opinions unreliable and ripe for exclusion under Federal Rule of Evidence 702 (as well as under FED. R. CIV. P. 26(a)(2)(B)).  *See, e.g., Oxford* Gene, 345 F.Supp. 2d at 436–37 (excluding large portions of expert's report relating to invalidity because his report lacked a "clear construction of each disputed claim element," which rendered his report "less than helpful to the trier of fact, in contravention of Federal Rule of Evidence 702"); *Trueposition, Inc. v. Andrew Corp.*, No. 05-747-SLR, 2007 U.S. Dist. LEXIS 62705, at *4 (D. Del. Aug. 23, 2007) (expert excluded for failing to properly construe Claims for validity analysis).  Put differently, it is within the purview of a trial court to exercise its gatekeeping authority when parties offer

5

erroneous legal standards through expert testimony. *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."). As such, courts may exclude expert testimony that misapplies applicable law. *See, e.g., Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1381 (Fed. Cir. 1998).

Although the Court in *Daubert* stated that the "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, "'when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'" *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (quoting *Amorgianos*, 303 F.3d at 266).

    **C.**    **Federal Rule of Evidence 403**

Federal Rule of Evidence 403 applies to expert opinion, which "'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely*, 414 F.3d at 397 (quoting FED. R. EVID. 403). "Indeed, the Supreme Court, … , has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Id.* (citing *see, e.g., Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this

6

risk, the judge in weighing possible prejudice against probative force under Rule 402 of the present rules exercises more control over experts than over lay witnesses." (internal citations omitted).

## IV. ARGUMENT

### A. Mssrs. Tanner's and Dolan's Infringement Analyses and Mr. Tanner's Invalidity Analysis Should Be Precluded In Violation Of FED. R. CIV. P. 26 Because They Did Not Construe the Asserted Claims.

At the outset, the Court should exclude testimony relating to Mr. Tanner's infringement and validity opinions and Mr. Dolan's infringement opinion because they fail to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). An infringement analysis is a two-step process. First, the Court construes the Claims. Second, the Court compares the Claims to the accused devices. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1356 (Fed. Cir. 2007). The same holds true for an invalidity analysis except that the construed Claims are compared to the prior art. *Smith Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999) ("It is well-established that the first step in any validity analysis is to construe the Claims of the invention to determine the subject matter for which patent protection is sought."); *Oxford Gene*, 345 F. Supp. 2d at 436 ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each Claim to each prior reference." (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) ("It is well settled that a Claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference."))).

Mr. Tanner and Mr. Dolan never applied a Claim construction for the disputed Claims of the patent in suit. (**Ex. 4**, Tanner Dep. at 133 ("I have not offered any claim construction"); **Ex. 5**, Dolan Dep. at 53.) Much worse than the excluded expert testimony in *Oxford Gene*, in which

the defendant's expert's "Claim construction" could be found only in the body of his invalidity report, Mssrs. Tanner and Dolan never applied or provided a Claim construction at all. *See* 345 F.Supp. 2d at 436. Thus, their infringement and validity reports contain much more egregious violations than the conclusory, unsupported expert opinion that warranted exclusion in *Oxford Gene* under FRCP 26 (and FRE 702). *See* 345 F. Supp. 2d at 435–41.

Having not disclosed their constructions of the relevant, critical limitations of the Asserted Claims, Mr. Tanner's and Mr. Dolan's opinions must be excluded for their lack of support. Without disclosing a Claim construction, a jury simply cannot follow their comparison of LG's Accused Product and the cited prior art to each Claim limitation. Pursuant to Rule 37(c)(1), this Court should strike Mr. Tanner's and Mr. Dolan's reports and exclude their testimony at summary judgment and trial relating to their lacking infringement and validity disclosures. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368-9 (Fed. Cir. 2006) (upholding district court's exclusion of expert testimony).

> **B.     Additionally, The Court Should Exclude Mr. Tanner's Unreliable Infringement And Validity Analyses and Mr. Dolan's Unreliable Infringement Analysis Under Federal Rules of Evidence 702 and 403 Because They Fail To Follow Well-Established Patent Law Standards.**

As noted above, the failure to follow well-accepted legal standards renders expert opinions unreliable and ripe for exclusion under Federal Rule of Evidence 702. *See, e.g., Oxford Gene*, 345 F.Supp. 2d at 437. Mr. Tanner's and Mr. Dolan's reports and testimony are replete with instances in which they reject fundamental patent law principles in favor of their own Wi-LAN-directed improper brand of Claim interpretation, infringement analysis, and validity analysis. Mr. Tanner's and Mr. Dolan's unreliable conclusions stemming from their flawed methodologies are of no use to a jury and can serve only to confuse and mislead a jury. For the foregoing reasons, the Court should exclude Mr. Tanner and Mr. Dolan from testifying to

8

infringement and validity of the '402 Patent at trial, in accordance with Federal Rules of Evidence 702 and 403.

> 1. Mr. Tanner's and Mr. Dolan's Opinions Simply Do Not Specify How They (1) Construed The Claims, (2) Compared The Claims To Defendants' Accused Products And The Cited Prior Art, And (3) Ultimately Concluded That The '402 Patent Is Valid And That Defendants Infringe.

As noted above, Mr. Tanner's and Mr. Dolan's methodology omitted the critical claim construction step, rendering their conclusions on infringement and/or validity unreliable and misleading. Without knowing how Mr. Tanner and Mr. Dolan bridged the gap between the claim language and LG's Accused Products and the prior art, their conclusions are nothing more than *ipse dixit* and should be excluded.

> 2. Mr. Tanner's and Mr. Dolan's Failure To Apply Well-Accepted Claim Interpretation and Infringement Principles Improperly Reads Limitations Out Of The Asserted Claims.

According to the principle of consistency, "[a] word or phrase used consistently throughout a Claim should be interpreted consistently." *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998). According to the principle of claim differentiation, courts presume that different claim terms have different meanings. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119–20 (Fed. Cir. 2004) ("when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." (internal citations omitted)). Finally, according to the All Elements Rule, infringement lies only if each Claimed element is present in an accused device. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent Claim is deemed material to defining the scope of the patented invention….").

Mr. Tanner and Mr. Dolan have both read several steps and limitations out of the Asserted Claims in violation of the All Elements Rule and many other fundamental tenets of patent law. As such, Mr. Tanner's and Mr. Dolan's opinions regarding infringement and/or validity are unreliable and ripe for exclusion. Here are just a few examples:

### Mr. Tanner

- Mr. Tanner opined that the Claim terms "first television channel" and "second television channel" can be the *same* television channel. (Ex. 4, Tanner Dep. at 33.) Mr. Tanner's interpretation reads the "second television channel" element out of the Claim and violates fundamental tenets of patent law.

- Mr. Tanner defines the term "video signal" in several different ways: (1) "ATSC transport stream," (2) "audible component and display component together," and "display component only" (Ex. 4, Tanner Dep. at 150; 152, 15–19.) If "video signal" can mean any and all of these proffered definitions, then it means nothing. Mr. Tanner's interpretation violates fundamental tenets of patent law and renders the Asserted Claims indefinite.

- In his deposition Mr. Tanner stated: "No. I was really referring to what one of *ordinary skill* might implement. If you follow the *plain meaning* of claim steps 7 (h) and (i), there's no mention of audio. So, it's not my opinion that the claim requires it. I was only saying that it's a choice one might make." (Ex. 4, Tanner Dep. at 245-46.) So, the question becomes, what plain meaning is Mr. Tanner employing and why is that different from what one of ordinary skill would employ. This statement alone demonstrates that Mr. Tanner's opinions should be precluded.

- Mr. Tanner opined that the "informational schemes" discussed in Step (g) of Claim 7 finds antecedent basis in the "informational schemes" of element (f), but not in the "informational schemes" of Steps (a) and (c). (Ex. 4, Tanner Dep. at 237:8-238:10 ("The antecedent from the word "said" in (g) only goes back to (f)",) If the informational schemes of Steps (g) are different than those mentioned in Steps (a) and (c), then the inventor would have used a different word to describe them. Mr. Tanner's interpretation violates fundamental tenets of patent law.

- In a direct contradiction of the claim language included in Steps (a) and (c): "receiving [first, second] configuration information," Mr. Tanner opined that "configuration information is not limited to something that can be received over-the-air. Configuration information can be built at the factory…Configuration information can be placed into a TV at the time of manufacture without receiving it off air…Configuration is something that can be either received, per claim step (a) and (c), or inserted in some other manner at the time of manufacture." (Ex. 4, Tanner Dep. at 156-57.) In response to the question, "…reception of configuration information is not necessary to perform claim 7?" Mr.

10

Tanner stated "No. There's no prescribed use of it necessary to practice the invention." (Ex. 4, Tanner Dep. at 238.)

- Likewise, Mr. Tanner has taken contradictory positions regarding the claim term "receiving," effectively reading the limitation out of the Claim. Mr. Tanner first defined "receiving" as "receiving from a transmitted signal." (Ex. 4, Tanner Dep. at 155:16–17.) Yet, Mr. Tanner also believes that an LG receiver placed inside a Faraday cage (an apparatus that perfectly blocks incoming signals) can still infringe Claim 7 of the '402 Patent. (Ex. 4, Tanner Dep. at 174:1–175:3.) Mr. Tanner's positions are irreconcilable. Mr. Tanner has read out the "receiving" element of Claim 7.

- On a related issue, Mr. Tanner either could not or refused to answer questioning on whether the Accused Products can infringe if they are in a location where they cannot receive broadcast signals. (Ex. 4, Tanner Dep. at 129-30.)

- Mr. Tanner has read out the "*each*" limitation of element (e) of Claim 7. Step (e) of Claim 7 states: "storing in said memory user preference information for *each* of said categories in each of *s*aid first and second informational schemes." (emphasis added). Mr. Tanner reaches the opposite conclusion, namely that Step (e) of Claim seven does *not* require that user preference information be stored for *each* category in both the first and second informational schemes for infringement. (Ex. 4, Tanner Dep. at 106–107.)

- Mr. Tanner also opined that the stored user preference information need not be for a received informational scheme in direct contravention of the claim language (Step (e): "storing in said memory user preference information for of said categories in each of *said* first and second informational schemes." (Ex. 4, Tanner Dep. at 233-34.)

- Mr. Tanner opined that the comparison in Step (g) is not necessary for Steps(h) and (i) to be performed according to Claim 7. (Ex. 4, Tanner Dep. at 42-43.) Mr. Tanner's opinion read out Step (g) of Claim 7.

- Mr. Tanner states that a "user" is "somebody who is operating the television" and "the main purpose of the invention is to allow a parent, an individual user, to set user preferences." (Ex. 4, Tanner Dep. at 223, 285.) Yet, Mr. Tanner does not rely on any evidence of a user performing the steps of the Asserted Claims. (Ex. 4, Tanner Dep. at 183, 218, 285.)

**Mr. Dolan**

- Mr. Dolan never reviewed the prosecution history in forming his opinions. (Ex. 5, Dolan Dep. at 54.) Mr. Dolan's opinion violates fundamental tenets of patent law.

- Mr. Dolan states that "selectively blocking a video signal" means "the video signal would be blocked based on some selection criteria" (Ex. 5, Dolan Dep. at 91), but admits that he did not rely on any evidence of an actual user selecting and storing his or her user preferences. (Ex.5, Dolan Dep. at 170.)

11

- Mr. Dolan admitted that he never used the parental control features of an Accused Product in forming his opinion. (Ex. 5, Dolan Dep. at 119; *See also id.* at 156-57 ("I don't know. I've never operated the device").)

- Mr. Dolan admitted that the Accused Products have CEA-766 hardcoded and do not process RRT1. (Ex. 5, Dolan Dep. at 140.)

- Mr. Dolan's opinion is "that when the manufacturer LG manufactures its products in ███ and before they're even shipped, they already have stored user preferences." (Ex. 5, Dolan Dep. at 168.)

- Mr. Dolan stated that the definition of "video signal" is "context-dependent" and that "depending on where it's used in the patent, it means different things." (Ex. 5, Dolan Dep. at 181-82.) Mr. Dolan then defines the term "video signal" in two different ways: (1) "audible component and display component together," and (2) "display component only." (Ex. 5, Dolan Dep. at 181-83.) Mr. Dolan's opinion violates fundamental tenets of patent law and renders the Asserted Claims indefinite

- Mr. Dolan opines that the factory installed default settings do not permit any comparison of any received informational schemes or the blocking of any programs whatsoever. (Ex. 5, Dolan Dep. at 154-56.) Mr. Dolan's opinion violates fundamental tenets of patent law.

Mr. Tanner's and Mr. Dolan's expert opinions fail to consider all the steps and limitations of the Asserted Claims, read out many steps and limitations, and violate multiple fundamental tenets of patent law and are therefore unreliable and must be excluded.

> 3. Mr. Tanner's and Mr. Dolan's Opinions Do Not Point To A Single Instance Of A Direct Infringer Performing Each And Every Step Of Claim 7 With An LG Accused Product.

Patentee must adduce evidence of direct infringement by actual users of the allegedly infringing device. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("Unless the Claim language only requires the capacity to perform a particular Claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement."). Here, the '402 Patent requires more than the mere capability to perform the Claimed method. The only actual evidence of direct infringement offered by Mr. Tanner or Mr. Dolan is Mr. Tanner's own

12

purported use of and Accused Product, which, by Mr. Tanner's own admission, was not a complete element by element test of one of LG's Accused Products (Ex. 4 , Tanner Dep. at 116–17; Ex. 5, Dolan Dep. at 170.)

Without any evidence of direct infringement, Mr. Tanner's and Mr. Dolan's conclusions regarding LG's infringement of the Asserted Claims of the '402 Patent are speculative and unreliable (not to mention highly prejudicial if presented to a jury) and should be excluded. Wi-LAN's experts' conclusory statements do not constitute evidence of specific instances of direct infringement.

        4.    *Contrary to Well-Established Law, Mr. Tanner and Mr. Dolan Opine That LG's Factory Default Settings Are User Preferences Which, By Their Own Admission, Demonstrates LG's Noninfringement of the Preamble and Steps (g) and (h).*

As Wi-LAN's own experts concede, LG's factory installed default settings ████████ ████████████████████████████████████ or the blocking of any programs whatsoever. (Ex. 5 Dolan Dep. at 154-156; 172; Ex.4 Tanner Dep. at 186 ("shipped to the consumer in a kind of no-blocking state"); at 188 (confirming that "default settings…allow all the programs to be viewed") Indeed, Wi-LAN's expert Mr. Tanner was very clear that the default settings would never permit Step (h) to occur. (Ex. 4, Tanner Dep. at 226-27.)

Thus, both Mssrs. Tanner and Dolan concede that its default theory demonstrates noninfringement of other steps yet continue to opine that LG infringes. Mssrs. Tanner and Dolan also agree that the default settings in LG's Accused Products are stored at the time of manufacture in ████████████, before they are shipped. (Ex. 4, Tanner Dep. at 185-86, 189; Ex. 5, Dolan Dep. at 158-59, 168.) Moreover, both Mr. Tanner and Mr. Dolan impermissibly rely on the extraterritorial performance of Step (e) of Claim 7 to prove infringement, thereby rendering their opinions unreliable and apt for exclusion. The direct infringement of a method

Claim requires that all steps be performed by a party *within the United States*. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("[A] process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country."). Claim 7, Step (e) requires "storing in said memory user preference information for each of said categories in each of said first and second informational schemes." Moreover, Mssrs. Tanner and Dolan's default settings theory also requires them to opine that the steps of the Claim can be performed in any order in complete disregard of any antecedent bases and the clear requirement of Claim 7 that the steps be performed in sequential order. *See E-Pass Techs.*, 473 F.3d at 1222.

### 5. Mr. Tanner and Mr. Dolan Never Address Any of the Limitations and Concessions Made During Patent Prosecution.

Mr. Tanner's and Mr. Dolan's failure to consider the effects of the inventor's disclaimer during prosecution means that they have, yet again, misapplied well-established patent law standards, which renders their analyses unreliable, incapable of assisting the jury, and therefore well-suited for exclusion. A patent cannot cover subject matter disclaimed during prosecution. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims. … The prosecution history limits the interpretation of Claim terms so as to exclude any interpretation that was disclaimed during prosecution." (internal citations omitted)). For example, Mr. Dolan readily admits that he never reviewed the prosecution history in forming his opinions. (Ex. 5, Dolan Dep. at 54.)

The opinions of Mr. Tanner and Mr. Dolan fail to meet the minimum threshold of reliability as their opinions presented therein are incompatible with a proper claim construction,

infringement and validity analysis. Their blatant disregard for well-accepted patent law principles renders their opinions speculative, misleading, and ultimately useless to the trier of fact. No amount of cross-examination can cure the prejudice that LG would suffer here if Mssrs. Tanner and Dolan are not precluded from offering opinion testimony. As the gatekeeper, this Court should prevent Mssrs. Tanner's and Dolan's flawed methodologies and conclusions from reaching any further in view of Federal Rules of Evidence 702 and 403 and Federal Rules of Civil Procedure 26(a) and 37(c).

## CONCLUSION

For the reasons stated herein, LG respectfully requests an Order striking Mssrs. Tanner's and Dolan's reports and opinions and precluding them from opining at summary judgment and trial.

Dated: April 1, 2011

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Richard D. Harris*
Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com
smuliand@gtlaw.com

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Matthew J. Levinstein (*pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601

(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
motej@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 1, 2011, the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORTS OF WI-LAN'S OPINION WITNESSES MSSRS. TANNER AND DOLAN AND TO PRECLUDE THEIR OPINION TESTIMONY** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel that have appeared for any party in this matter.

*/s/ Richard D. Harris*
Richard D. Harris