CONFIDENTIAL


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>WI-LAN INC.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>10 Civ. 432 (LAK) (AJP)</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>LG ELECTRONICS, INC. and LG<br>ELECTRONICS U.S.A., INC.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>


**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF WI-LAN INC.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' CLAIMS OF LACK OF NOTICE, LACHES, FAILURE TO MITIGATE DAMAGES, UNJUST ENRICHMENT, EQUITABLE RELIEF UNAVAILABLE, AND INVALIDITY UNDER 35 U.S.C. §112**

David E. Sipiora
Matthew C. Holohan (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
(303) 571-4000
disipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

David A. Koenigsberg
MENZ BONNER & KOMAR LLP
444 Madison Ave., 39th Floor
New York, New York 10022
(212) 223-2100
dkoenigsberg@mbklawyers.com

ATTORNEYS FOR PLAINTIFF
WI-LAN INC.

**CONFIDENTIAL**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT .................................................................................................. 1

    A.  LG Cannot Show Lack of Notice.................................................................. 1
    B.  LG Cannot Prove Laches. ............................................................................ 2

       1.  LG Has Presented No Evidence of Prejudice ................................................ 2

       2.  Extensive License Negotiations Preclude Laches as a Matter of Law ............................ 3

    C.  LG Cannot Prove Failure to Mitigate Damages ........................................... 10

    D.  LG Has No Evidence of Unjust Enrichment................................................. 11

    E.  LG Admits that Wi-LAN May Be Entitled to Equitable Relief ................................... 12

    F.  The '402 Patent Specification and the Asserted Claims Satisfy the Requirements Set Forth in 35 U.S.C. §112, ¶1 ................................................................. 12

       1.  LG's 35 U.S.C. §112, ¶1 Arguments Are Ripe for Summary Judgment....................... 12

       2.  LG Improperly Attempts to Shift the Validity Burden to Wi-LAN .............................. 14

       3.  The Claims of the '402 Patent Satisfy the Written Description, Enablement, and Best Mode Requirements ........................................................... 15

III.    CONCLUSION............................................................................................... 21

CONFIDENTIAL

## TABLE OF AUTHORITIES

CASES

*A .C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
  960 F.2d 1020 (Fed. Cir. 1992) *(en banc)* ....................................................................4

*Ajinomoto Co., Inc. v. Int'l Trade Comm'n,*
  597 F.3d 1267 (Fed, Cir, 2010) .................................................................................21

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.,*
  24 F.3d 178 (Fed. Cir. 1994) ......................................................................................2

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.,*
  598 F.3d 1336 (Fed. Cir. 2010) .................................................................15, 17, 18

*Bayer AG v. Schein Pharms., Inc.,*
  301 F.3d 1306 (Fed. Cir. 2002) .................................................................................21

*Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*
  448 F.3d 573 (2d Cir. 2006) .......................................................................................11

*Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.,*
  559 F.3d 1308 (Fed. Cir. 2009) ..................................................................................2

*Energizer Holdings, Inc. v. Int'l Trade Comm'n,*
  435 F.3d 1366 (Fed. Cir. 2006) .................................................................................19

*Giese v. Pierce Chem. Co.,*
  29 F. Supp. 2d 33 (D. Mass. 1998) ..............................................................................9

*Hearing Components Inc. v. Shure Inc.,*
  600 F.3d 1357 (Fed. Cir. 2010) ..................................................................................3

*Hyatt v. Boone,*
  146 F.3d 1348 (Fed. Cir. 1998) .................................................................................17

*In re CBI Holding Co., Inc.,*
  419 B.R. 553 (S.D.N.Y. 2009) ...................................................................................10

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,*
  47 A.D.3d 103, 846 N.Y.S.2d 95 (1st Dep't 2007) ...................................................10

*Martek Biosciences Corp. v. Nutrinova, Inc.,*
  579 F.3d 1363 (Fed. Cir. 2009) .................................................................................20

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.,*
  520 F.3d 1367 (Fed. Cir. 2008) .................................................................................14

CONFIDENTIAL

*Northern Telecom Inc. v. Datapoint Corp.*,
   23 U.S.P.Q.2d 1881 (N.D. Tex 1992)............................................................................9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008)..................................................................................18

*Purdue Pharma LP v. Faulding Inc.*,
   230 F.3d 1320 (Fed. Cir. 2000)..................................................................................18

*Sanofi-Synthelabo v. Apotex Inc.*,
   488 F. Supp. 2d 317 (S.D.N.Y. 2006)...........................................................................4

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 2009)..................................................................................14

*Valutron N.V. v. NCR Corp.*,
   23 U.S.P.Q.2d 1986 (S.D. Ohio 1992).........................................................................9

*Western Elec. Co. v. Piezo Tech., Inc.*,
   15 U.S.P.Q.2d 1401 (M.D. Fla. 1990) ..........................................................................9

*Young v. Lumenis, Inc.*
   492 F.3d 1336 (Fed. Cir. 2007)..................................................................................13

## STATUTES

35 U.S.C. § 112...................................................................................................1, 15, 17

35 U.S.C. §112, ¶1...........................................................12, 13, 14, 15, 16, 17, 19, 20

35 U.S.C. §112, ¶2...................................................................................................13, 15

**CONFIDENTIAL**

## I.    INTRODUCTION

Defendants LG Electronics, Inc. ("LGE") and LG Electronics U.S.A., Inc. ("LGEUS")

(collectively "LG") have failed to raise genuine issues of material fact concerning their "stock"

counterclaims and affirmative defenses of Lack of Notice, Laches, Failure to Mitigate Damages,

Unjust Enrichment, and Equitable Relief Unavailable.  In brief, each of these baseless claims and

defenses fails and should have been dropped long before now because:

- LG cannot deny that it has been on notice of U.S. Patent No. 5,848,402 ("the '402 patent") since 2001, and LG improperly relies on cases dealing with marking requirements for apparatus claims that are inapplicable to the method claim patent at issue in this lawsuit.

- LG cannot deny that Wi-LAN Inc. ("Wi-LAN") and its predecessor, Tri-Vision Electronics, Inc. ("Tri-Vision") engaged in extensive, substantive, bilateral negotiations for several years immediately preceding the filing of this lawsuit, thereby defeating laches as a matter of law.

- LG has not even attempted to show that it has been prejudiced by Wi-LAN's alleged delay in bringing suit, further confirming that LG's laches claim fails as a matter of law.

- LG has failed to show that Wi-LAN did not take any reasonable, efficacious measures to mitigate its damages.

- LG has failed to show that it has been damaged in any way by Wi-LAN's conduct giving rise to LG's claim of unjust enrichment (*i.e.*, truthfully representing to other companies the fact that LG had signed a license agreement).

- LG admits that Wi-LAN is not categorically barred from equitable relief.

Finally, LG's claims of invalidity based on 35 U.S.C. § 112 are ripe for summary

judgment and legally unsupported.  Accordingly, there are no genuine issues of material fact

concerning these claims or defenses, and Wi-LAN is entitled to judgment as a matter of law.

## II.    ARGUMENT

### A.    LG Cannot Show Lack of Notice

In seeking to salvage its baseless lack of notice defense, LG blatantly misconstrues

CONFIDENTIAL

controlling law. LG cannot dispute the well-settled legal principle that marking is not required for patents containing only method claims. *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308 (Fed. Cir. 2009). While acknowledging that the only claims in the '402 patent are method claims, LG nonetheless makes the outlandish argument that Wi-LAN has transformed its method claims into apparatus claims by asserting that the capability of infringing the method constitutes infringement. First, LG has no evidence that Wi-LAN has treated the method claims of the '402 patent as apparatus claims. That certain license agreements may define licensed products as devices that, when operated, perform the claimed methods of the '402 patent does not transform the claims themselves into apparatus claims. Not surprisingly, LG cites no authority for the proposition that a patentee may transform method claims into apparatus claims by talking about them in a particular way. None exists. On the contrary, the claims of the '402 patent are method claims and therefore no marking is required as a matter of law.

Equally unsupported is LG's assertion that Wi-LAN was required to put LG on notice of its specific theory of infringement before damages began to accrue. The only case LG cites for this novel proposition is *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994), which, again, involves marking requirements and is not applicable here. Because the '402 patent includes only method claims, LG's knowledge of the patent beginning in 2001 (LG Ex. 231) constitutes notice as of that date.

**B.    LG Cannot Prove Laches.**

**1.    LG Has Presented No Evidence of Prejudice**

In a stunning example of talking out of both sides of its mouth, LG simultaneously argues that Wi-LAN waited too long to provide notice, and yet provided notice too early. LG misrepresents Wi-LAN's initial communication concerning the '402 patent in 2001, and ignores

CONFIDENTIAL

the years of substantive and complex negotiations that took place between 2004 and 2010. But the Court need not even consider these arguments. LG has failed to even attempt to address one of the essential elements of a laches defense: prejudice to the defendant resulting from the delay. *Hearing Components Inc. v. Shure Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Because LG does not discuss, let alone present evidence of, this prejudice element, there is a complete failure of proof on LG's laches defense and Wi-LAN is entitled to summary judgment on that basis alone.

### 2.     Extensive License Negotiations Preclude Laches as a Matter of Law

Tri-Vision initially contacted LG by letter concerning the '402 patent in 2001. LG Ex. 231. Contrary to LG's assertion, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id.* Tri-Vision did not specifically assert that any particular LG products infringed at that time. *Id.* LG has adduced no evidence that Tri-Vision knew or should have known that LG infringed in 2001.

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

Importantly, there were no substantive discussions of claim scope or validity prior to the License Agreement. Rather, the parties agreed that a license was necessary, and the negotiations focused on the royalty rate (principally LG's fraudulent demand for a lower rate).

LG does not dispute that the negotiations leading up to the License Agreement excuse

---

[1] "MSJ Exhibits" refer to exhibits to the Declaration of Matthew C. Holohan in Support of Plaintiff Wi-LAN Inc.'s Motion for Partial Summary Judgment (D.I. #166).

**CONFIDENTIAL**

any purported laches defense during that period.  LG Opp. at 7.  However, LG wrongly asserts

that any negotiations that would have excused a delay in filing suit ended in May 2006, when the

License Agreement was signed, because after that time LG was consistent in its non-

infringement position.  As explained below, however, the undisputed facts show that LG's

characterization is another fantasy.  The negotiations between November 2006, when LG

confirmed its improper refusal to pay royalties, and January 2010, when the suit was filed, were

bilateral, substantive discussions directed toward resolving the dispute on amicable terms.  These

are precisely the types of negotiations that excuse delay in bringing suit as a matter of law.  *See,*

*e.g.*, *A .C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (*en*

*banc*); *Sanofi-Synthelabo v. Apotex Inc.*, 488 F. Supp. 2d 317, 348 (S.D.N.Y. 2006).  Far from

simply rebuffing Wi-LAN's attempts at resolving the dispute, LG offered numerous substantive

communications and repeatedly reaffirmed its apparent desire to work out a resolution.

Specifically, after LG submitted a royalty report falsely showing zero sales in July and

October 2006 (MSJ Exs. 112, 117, 153, & 161), LG explained that it had chosen not to comply

with the FCC regulations and would not be paying royalties.  MSJ Ex. 118.  LG and Tri-Vision

met in January 2007 in an effort to resolve the dispute.  MSJ Ex. 72 at LG073565.  Following

that meeting, ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

**CONFIDENTIAL**

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████ Thus, LG openly represented that it

would pay royalties once the FCC regulations were enforced, and the parties continued their

discussions concerning LG's duty to pay royalties based on LG's existing technology.

█████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**CONFIDENTIAL**

Again, Mr. Cho made it clear that LG was continuing to analyze the situation and remained open to working out a solution with Wi-LAN (who had acquired Tri-Vision earlier that year).

**CONFIDENTIAL**

██████████████████████████████████████████████████

████████████████████  These statements confirm that the parties were continuing to

negotiate, and that LG was not simply rebuffing Wi-LAN's arguments as LG alleges.

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**CONFIDENTIAL**

 Less than two months
after this communication from Mr. Jung, Wi-LAN commenced this lawsuit.

In light of the undisputed facts set forth in the above communications, no reasonable trier of fact could conclude that the communications between Wi-LAN/Tri-Vision and LG between May 2006 and January 2010 were anything other than a bilateral, substantive negotiation process directed toward resolving the dispute. Only after Mr. Jung replaced Mr. Cho and abruptly terminated the discussions did it become clear that LG was no longer interested in working toward a resolution. Prior to that time, through dozens of emails, meetings, and phone

**CONFIDENTIAL**

conversations, Mr. Kang and Mr. Cho repeatedly reaffirmed LG's desire to develop a mutual understanding and reach an amicable resolution. Accordingly, any delay in bringing suit was excused as a matter of law by the ongoing negotiations between Tri-Vision/Wi-LAN and LG.

For these reasons, the cases relied upon by LG do not defeat the undisputed showing that the parties were engaged in ongoing, substantive negotiations. Each case cited by LG involved a defendant who, unlike LG, never showed any interest whatsoever in seeking a resolution with the patent holder. In *Giese v. Pierce Chem. Co.*, 29 F. Supp. 2d 33, 41 (D. Mass. 1998), the plaintiff did not even allege that it had conducted negotiations with the alleged infringer, and the record reflected "sporadic contacts" rather than "bilateral negotiation or progress toward settling the dispute." In *Valutron N.V. v. NCR Corp.*, 23 U.S.P.Q.2d 1986, 1991 (S.D. Ohio 1992), "NCR never expressed any interest in taking a license, the parties never met face to face or spoke by telephone, no terms were ever discussed, and the communications were marked by one hiatus of eight months and another of thirteen months." In *Northern Telecom Inc. v. Datapoint Corp.*, 23 U.S.P.Q.2d 1881, 1889 (N.D. Tex 1992), the record reflected only a handful of letters and meetings with no substantive discussions of claim scope. Finally, in *Western Elec. Co. v. Piezo Tech., Inc.*, 15 U.S.P.Q.2d 1401, 1410-11 (M.D. Fla. 1990), there had been a "silence of more than five years" during the period prior to bringing suit. None of these cases come close to the record here, which reflects a sustained, ongoing series of communications between two parties working toward a meaningful resolution.[2] Wi-LAN is therefore entitled to summary judgment on LG's laches defense, for the independent reason that delay was excused due to negotiations.

---

[2] Nor can LG prove a presumption of laches based on its argument that the period between June 2001 and November 2004 can be "tacked on" to the period following the license agreement to establish a total delay of six years. LG cites no authority for its position that laches periods can be added together when there are intervening license negotiations.

CONFIDENTIAL

### C.      LG Cannot Prove Failure to Mitigate Damages

To prove its claim of failure to mitigate damages, it is LG's burden to establish that the measures that Wi-LAN allegedly failed to take are reasonable and would have been efficacious. *In re CBI Holding Co., Inc.*, 419 B.R. 553, 572 n.22 (S.D.N.Y. 2009). In asserting that Wi-LAN should have mitigated its damages by demanding higher royalties from its licensees after lowering their royalty rates due to LG's fraudulent conduct, LG cannot carry its burden.

LG admits that LG has failed to point to any contractual provision that would allow Wi-LAN to "unwind" its royalty reduction as suggested by LG, but asserts that a factual issue exists because Wi-LAN has not cited any contractual provisions that would prohibit such unwinding. LG's argument misses the mark. It is LG's burden to show that unwinding the royalty reduction would be reasonable and efficacious. *Id.* LG has presented no evidence whatsoever that such a measure would even have been possible, let alone reasonable and effective. For example, LG is simply wrong in asserting that it is "self-evident" that "returning the royalty rates of the pertinent licensees to their pre-LG-license levels would diminish Wi-LAN's damages," LG Opp. at 11. Even assuming that it would have been reasonable for Wi-LAN to attempt to raise its royalty rates for its approximately 100 licensees under the '402 patent, LG has presented no evidence that these licensees would have paid the increased royalty rates. Thus, there is a failure of proof and Wi-LAN is entitled to summary judgment on LG's claim of failure to mitigate damages.

Further, even if a fact issue existed as to whether Wi-LAN could have unilaterally raised its royalty rates, LG has failed to meet its additional burden to show "the extent to which such efforts would have diminished [Wi-LAN's] damages." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 47 A.D.3d 103, 107, 846 N.Y.S.2d 95, 99 (1st Dep't 2007). While LG asserts that determining this amount would "involve a simple calculation," LG Opp. at 11, LG has not even performed this "simple calculation," despite submitting an expert report on damages. Thus,

**CONFIDENTIAL**

LG's claim of failure to mitigate damages should be dismissed on this independent basis as well.

      **D.**     **LG Has No Evidence of Unjust Enrichment**

     As with its claim of laches, LG's claim of unjust enrichment suffers from an absolute failure of proof – in fact, LG does not even attempt to address all of the required elements. LG focuses on the first element – that Wi-LAN benefitted – by arguing that Wi-LAN's truthful and accurate representations to other companies that LG had executed a license agreement worked some benefit to Wi-LAN. While LG's evidence of this "benefit" is thin at best, LG all but ignores the other two elements – that the purported benefit came at the expense of LG and that equity and good conscience require restitution. *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006).

     In attempting to show that Wi-LAN's purported benefit somehow damaged LG, LG advances the absurd argument that Wi-LAN "seeks to deprive LG of the benefits of being licensed, including contractually fixed damages." LG Opp. at 12. LG thus admits that it has suffered no damages to date. Indeed, LG could not possibly argue otherwise. LG never benefitted from the "contractually fixed damages" to begin with, as it never paid a dime in royalties to Wi-LAN (and never intended to do so). Thus, even if LG can somehow show that Wi-LAN benefitted, LG has adduced no evidence that the benefit came at the expense of LG. On the contrary, LG's position has not changed at all since 2004. Since that time, LG has infringed the '402 patent without paying royalties, and continues to do so today.

     LG's damages theory is thus entirely forward-looking and speculative, as LG will be "damaged" only if Wi-LAN wins this lawsuit. But, if Wi-LAN prevails in this lawsuit and LG is forced to pay damages, it will be because LG has infringed the '402 patent without paying royalties, and defrauded Wi-LAN into reducing its royalty rates. If that is the case, then the third element of unjust enrichment – which LG also ignores – bars recovery for LG as a matter of law.

**CONFIDENTIAL**

The equities would clearly tip in favor of Wi-LAN, the victor in its suit against LG, and LG could not recover. LG's unjust enrichment theory is therefore self-defeating – LG can only show that it has been damaged if Wi-LAN succeeds in showing that LG defrauded Wi-LAN.

### E.   LG Admits that Wi-LAN May Be Entitled to Equitable Relief

LG admits that Wi-LAN is not categorically barred from obtaining injunctive relief by alleging that there are material issues of fact that preclude granting Wi-LAN's motion. LG Opp. at 12. Since LG admits the issue depends upon the facts, Wi-LAN is not categorically barred from relief due to its status as a licensing entity. Any consideration of facts should be deferred until Wi-LAN prevails on its patent infringement claim and makes a motion for permanent injunction. Further, LG's so-called "untenable position" is a product of LG's own doing. If LG had paid for its license and not defrauded Tri-Vision, it would not be subject to an injunction.

### F.   The '402 Patent Specification and the Asserted Claims Satisfy the Requirements Set Forth in 35 U.S.C. §112, ¶1

As detailed below, the asserted claims and the specification of the '402 patent clearly meet and exceed each of the requirements of 35 U.S.C. §112, ¶1 for written description, enablement, and best mode. Therefore, as set forth in Wi-LAN's Motion (D.I. # 157) at 22-24, summary judgment is appropriate as to LG's third affirmative defense and second counterclaim. LG has only presented arguments with regards to two claim terms: "multi-level categories of labels" as recited in claim 7; and "said descriptive text for labels" as recited in claim 11. *See* LG Inv. Opp. (D.I. # 222) at 13-20. Each of these will be addressed below.[3]

#### 1.   LG's 35 U.S.C. §112, ¶1 Arguments Are Ripe for Summary Judgment

LG incorrectly asserts that summary judgment as to its 35 U.S.C. §112, ¶1 affirmative

---

[3] LG also includes arguments as to why the '402 patent is not entitled to the priority date of the '030 application. *See* LG Inv. Opp. at 18 and 20-22. However, LG did not move for summary judgment on this issue and there is no need for the Court to decide this issue, as discussed *infra*.

**CONFIDENTIAL**

defenses and counterclaims is not appropriate at this time because (1) the Court has not yet expressly construed the claims; and/or (2) the claims are indefinite under 35 U.S.C. 112, ¶2.  *See* LG Inv. Opp. at 13-14.  However, neither assertion has any merit.

First, summary judgment is not premature as to LG's baseless defenses and counterclaims based on 35 U.S.C. §112, ¶1.  The Court may and should decide these disclosure defenses at the same time as the Court construes the claims.[4]  Moreover, the claim terms at issue should be construed consistent with their plain and ordinary meaning, in proper context and as informed by the specification.  Therefore, summary judgment is appropriate at this time.

Second, LG's argument that summary judgment under 35 U.S.C. §112, ¶1 is inappropriate because the claim terms at issue are allegedly so insolubly ambiguous that they are not amenable to <u>any construction</u> is baseless.  LG. Inv. Opp. at 13.  Indeed, Wi-LAN has already addressed this outlandish argument in detail in its Motion at 24-27.  Not only are the meanings of these claim terms clear to a person of ordinary skill in the art, but the specification of the '402 patent provides an <u>express definition</u> (including reference to examples) of the claim term "multi-level categories of labels," and even explains its benefits.  *See id.*; '402 patent at 15:35-39.  LG's only response to this highly relevant disclosure is to ask this Court to expressly <u>ignore</u> that portion of the '402 patent because it is "an isolated portion of the specification."  *See* LG Inv. Opp. at 6.  However, LG's "turn a blind eye" method of claim interpretation is clearly improper.  *See, e.g., Young v. Lumenis, Inc.* 492 F.3d 1336, 1346 (Fed. Cir. 2007) ("'[T]he definiteness of claim terms depends on whether those terms can be given <u>any reasonable meaning</u>.'") (citations

---

[4] LG continues to falsely accuse Wi-LAN of somehow preventing this Court from construing the claim terms in advance of dispositive motions and delaying these proceedings.  *See* LG Inv. Opp. at 14, n 15.  This nonsense is based on Wi-LAN's position that a *Markman* hearing is not needed and that the claims should be given their plain and ordinary meaning.  Ignoring that LG initially <u>agreed</u> to this position, it is entirely proper to consider claim construction at the same time as dispositive motions for judicial efficiency.

CONFIDENTIAL

omitted, emphasis added).  Thus, LG's citations to other sections of the specification to show

that the term "labels" may be used in a different context (*e.g.* as "keywords"), LG Inv. Opp. at 7-

10, and not just as "descriptive labels for each level within each category" are irrelevant and do

not show that the term "labels" as used in the specific claim term "multi-level categories of

labels" is not amenable to any construction[5] – no less a precise construction set forth in the

corresponding portion of the specification.[6]  The arguments presented by LG that the claims are

insolubly ambiguous are clearly wrong as a matter of law, and therefore summary judgment

dismissing LG's arguments that the claims fail to meet the requirements of 35 U.S.C. §112, ¶1 is

warranted.[7]

### 2.    LG Improperly Attempts to Shift the Validity Burden to Wi-LAN

Recognizing the weakness of its positions, LG improperly attempts to shift the burden of

persuasion onto Wi-LAN to show that the claims of the '402 patent are valid.  *See, e.g.*, LG Inv.

Opp. at 15 n.16 ("LG notes that Wi-LAN's section on the issues of written description is less

than a page and Wi-LAN fails to offer any proposed constructions...");[8] *see also id.* at 1 ("Wi-

---

[5] LG improperly asks this Court to ignore the context of the claim and interpret "labels" by itself, and completely ignore the modifier "***multi-level category*** of labels."  It is clear that the '402 patent has defined the term "labels" within this specific context, which may be different from how the term "labels" is used in other examples in the specification.  *See* Wi-LAN Mot. at 24-27; Tanner MSJ Dec. (D.I. # 165) ¶18 ("the descriptive labels referred to by LG's expert are a separate system for conveying information about a program") (emphasis added).

[6] The Federal Circuit has even found claims amenable to construction that not only recite a single claim term that had multiple meanings, but that also used that term within the claims to reference both meanings.  *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367, 1374-78 (Fed. Cir. 2008).

[7] LG's arguments that categories and labels are always "distinct alternatives" are wrong, but imply that the term "categories of labels" is a typographic error, and should have stated "categories **or** labels."  LG Opp. at 10; LG Ex. 230 ¶14.  In this case, the Court may simply correct the typographic error.  *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009) ("[I]f the correction is not subject to reasonable debate to one of ordinary skill in the art . . . then a court can correct an obvious typographical error.").

[8] Despite bearing the burden of proof, the report of LG's paid "expert" did not provide any analysis as to why the claims lack written description, enablement, or best mode support in the

CONFIDENTIAL

LAN …appl[ies] an improper and extremely limited analysis under 35 U.S.C. §112). However, the law is clear that LG must meet a heavy burden to show by <u>clear</u> and <u>convincing</u> evidence that the claims of the '402 patent are invalid under 35 U.S.C. §112, a burden LG cannot meet. *See, e.g., Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010). Wi-LAN need only point out to this Court that there is an absence of evidence to support part of LG's case. *See* Wi-LAN Mot. at 9.

> **3.    The Claims of the '402 Patent Satisfy the Written Description, Enablement, and Best Mode Requirements**

LG's erroneous arguments that the claims of the '402 patent are invalid for failure to satisfy the written description, enablement, and best mode requirements of 35 U.S.C. §112, ¶1 should be dismissed as a matter of law. LG relies on two incorrect underlying bases to support its arguments: (1) its erroneous position that the terms "multi-level category of labels" and "said descriptive text for labels" are insolubly ambiguous under 35 U.S.C. §112, ¶2; and (2) under Wi-LAN's claim constructions the specification lacks written description, enablement, and best mode support. LG. Inv. Opp. at 13, 15-16, and 19-20. LG is flat out wrong on both counts.

First, as described above, Wi-LAN has clearly shown that the terms "multi-level category of labels" and "said descriptive text for labels" are amenable to construction and are not insolubly ambiguous. *See also* Wi-LAN Mot. at 24-27. Secondly, as detailed below, LG mischaracterizes Wi-LAN's claim construction and expert's analysis in a blatant attempt to mislead this Court. Indeed, a fair reading of Wi-LAN's expert's declaration in view of the claims and the specification demonstrates that the claim terms put into issue by LG are fully

---

specification of the '402 patent beyond a mere conclusory statement in a summary chart. His brand new declaration purporting to confirm the invalidity of the Asserted Claims based on failure to satisfy the written description, enablement, and best mode requirements" should be disregarded as untimely. *See* LG Ex. 230. But, even if considered, its conclusory analysis fails to raise any genuine issues of material fact for reasons discussed herein.

**CONFIDENTIAL**

described in and enabled by the '402 patent specification.

(a)    <b>LG Misrepresents Wi-LAN's Statements and Claim Interpretation</b>

LG mounts a Herculean effort to confuse this Court and to distort the clear meaning of the claims of the '402 patent. *See* LG Inv. Opp. at 13-14 and 19. As part of this process, LG manipulates, distorts, and mischaracterizes Wi-LAN's positions (and those of Wi-LAN's expert Mr. Craig Tanner) so as to manufacture an argument as to why the claims do not satisfy 35 U.S.C. §112, ¶1.[9] However, a fair reading of Mr. Tanner's declaration and expert report evince a clear meaning of the claim terms as those terms would be understood by one of ordinary skill in the art. *See* Tanner MSJ Dec. ¶¶15-22.

In this regard, LG devotes a great amount of effort, including taking statements completely out of context and rearranging and manipulating those statements so as to allegedly support its erroneous argument that Wi-LAN's expert position is a "nonsensical construction." *See*. LG Inv. Opp. at 15; *see also id.* at 6 ("Multi-label categories *of* labels or Multi-level categories *of* levels") (emphasis in original). However, LG's strained attempt to create an issue where none exists is clearly wrong, and there is simply no need to give credence to such improper conduct. Indeed, Wi-LAN's position finds <u>direct support</u> in the specification for its construction of the term "multi-level categories of labels." *See* '402 patent at 13:26-31; Tanner MSJ Dec. ¶¶15-22. Despite LG's machinations, Wi-LAN's expert has not proffered a novel or "nonsensical" theory of the meaning of these claim terms, but has set forth a clear meaning of the

---

[9] For example, LG states that Wi-LAN's expert equates "levels" and "labels," which is clearly false. *Compare* LG Inv. Opp. at 6 with Tanner MSJ Dec. ¶¶21-22. Indeed, LG relies on statements made in an analysis of the meaning of claim 11, in which Wi-LAN's expert opined that a person of ordinary skill in the art reading <u>those claims</u> in context would understand that "<u>descriptive texts</u> for labels" were referencing the "<u>descriptive text</u> for levels." *Id.* Ignoring this context, LG takes these statements and rearranges the order of the words – without any analysis or context provided – to create demonstrably false impressions. *See* LG Inv. Opp. at 5.

CONFIDENTIAL

terms based on the direct language from the specification.

Thus, the meaning of the term "multi-level category of labels" as explained by Wi-LAN's expert is consistent with this meaning provided in the specification of '402 patent, and this portion of the specification clearly and expressly discloses to a person of ordinary skill in the art not only what multi-level category of labels means, but provides express examples ("*e.g.*, for the violence category: none, comedic, mild, brief, strong, graphic etc."). Many of these very same labels are shown in Table II and Table V of the '402 patent.[10]

> (b)    **The Term "Multi-Level Categories of Labels" Has Clear Support in the Specification**

Utilizing the proper construction of the term "multi-level categories of labels" as set forth by Wi-LAN's expert, it is clear that the specification "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date," as required by 35 U.S.C. §112, ¶1. *Ariad*, 598 F.3d at 1351 (citations omitted). The specification not only describes labels in a "multi-level category of labels," (*See* '402 patent at 13:26-31), but also provides clear examples of what those labels could include in some embodiments. *See* Tanner MSJ Dec., at ¶¶16-19. Not coincidentally, all of the terms identified in the specification cited to by Wi-LAN's expert are found at least in Table II, and many of the same terms are also found in Table V. *Id.* Thus, there is clear support for the claim term.[11]

LG's argument that the claims do not satisfy 35 U.S.C. §112, ¶1 because the actual words "multi-level categories of labels" do not literally appear in the specification in that particular

---

[10] LG incorrectly asserts that the "graphic" label is not shown in Table V of the '402 patent. LG Inv. Opp. at 7. Table V clearly shows many of the "labels" identified as "descriptive labels for each level within each category," including "**Graphic**." *See* '402 patent at 13:26-31; Table V.
[11] It should also be noted that "multi-level categories of labels" was included in the original claims as filed in the application that issued as the '402 patent, and is therefore included as part of the disclosure and may be considered in determining whether the requirements of 35 U.S.C. § 112, ¶1 are satisfied. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The claims as filed are part of the specification, and may provide or contribute to compliance with § 112.").

CONFIDENTIAL

syntax is simply irrelevant as a matter of law because there is no such requirement for literal, *verbatim* support. *See* LG Inv. Opp. at 15-16; *Purdue Pharma LP v. Faulding Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000) (holding that the disclosure does not have to provide "*in haic verba*" support in order to satisfy the written description requirement). Indeed, the portion of the specification referenced by Wi-LAN's expert states "descriptive <u>labels</u> for the <u>levels</u>" in "<u>categories of multi-level</u> information." Tanner MSJ Dec. ¶ 6; '402 patent at 13:26-31 (emphasis added). LG's only response to this highly relevant section of the specification is to ignore it because it is an "isolated portion of the specification." LG Inv. Opp. at 6.[12] This is simply improper as a matter of law, as a single example may be more than sufficient to provide support for a claim term. *Ariad*, 598 F.3d at 1352 ("the written description requirement does not demand either examples or an actual reduction to practice").

Thus, while written description is a matter of fact, summary judgment is appropriate where, as here, LG has failed to raise any genuine issues of material fact. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008); *see also* Wi-LAN Mot. at 10. LG's attempt to create an issue of fact through the newly minted Goldberg Declaration should be stricken. *See supra*, n.9. But even if considered, LG has no response to the clear example of support for the claim term in the specification. The fact that other sections of the '402 patent disclose other examples of "labels" is legally irrelevant and does not create a triable issue of fact.

 **(c)    The Term "Said Descriptive Text for Labels" in Claim 11 is Not Indefinite and Is Supported by the Specification**

LG's basis for arguing that "said descriptive text for labels" in claim 11 lacks sufficient

---

[12] Indeed, after asking the Court to ignore the direct support cited by Wi-LAN's expert, LG goes on to state in no less than six statements that either the specification provides no support for this term or that Wi-LAN's expert has not cited to the patent. *See* LG Inv. Opp. at 6 ("Wi-LAN fails to cite"); 15 ("specification lacks any discussion"); 16 ("Wi-LAN cannot point to any support" and "Wi-LAN cannot point to *any* disclosure") (emphasis in original); 19 ("as the limitations multi-level categories of label"…only appear in the asserted claims and nowhere else…").

CONFIDENTIAL

support to meet the requirements of 35 U.S.C. § 112, ¶1 is incorrect.  In this regard, LG largely

bases its argument on an erroneous construction of the term "labels" as referencing only the

"keywords" embodiments, and thereby ignores the relevant portion of the specification that

discusses "descriptive labels for levels."  *See* LG Inv. Opp. at 16-17; Tanner MSJ Dec. ¶18.  This

argument is clearly wrong, as shown above.

      Moreover, LG also misrepresents Wi-LAN's expert's statements regarding the meaning

of this claim term.  LG Inv. Opp. at 17.  Wi-LAN's expert opined that to a "person of ordinary

skill in the art, reading claim 11 in view of the specification . . . as well as the context of the

<u>claim taken in its entirety</u>" that the reference in claim 11 to "<u>said</u> descriptive text for labels" was

referencing the "descriptive text for levels" in claim 10.  Tanner MSJ Dec. ¶¶20-22 (emphasis

added).  This opinion was rendered in response to the use of the word "<u>said</u>," which indicates

that it is referencing a previous element.[13]  *Id.* ¶21.  Mr. Tanner simply stated that "descriptive

text" for a level is label, which is supported by the specification at 13:26-31, not that a "level" is

a "label."  *Id.*

      Finally, the specification of the '402 patent itself sets forth an example that corresponds

to the language in claim 11:

> Preferably the configuration information also identifies the names
> of the different categories of multi-level information in the
> informational scheme (e.g.  violence, sexuality, language etc.);
> <u>descriptive labels for each level within each category</u> (e.g., for the
> violence category: none, comedic, mild, brief, strong, graphic etc.);
> and some or all of the descriptive labels used in the informational
> scheme. <u>This information can be provided to a user to assist the
> user in providing user preference information for storage in
> apparatus 20.  In general, it is easier [for] a user to select between</u>

---

[13] Importantly, "despite the absence of explicit antecedent basis, 'If the scope of a claim would
be reasonably ascertainable by those skilled in the art, then the claim is not indefinite.'"
*Energizer Holdings, Inc.  v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006).
Moreover, "an antecedent basis can be present by implication."  *Id.* at 1371 (citations omitted).

CONFIDENTIAL

blocking programming in which the level of violence is 'strong' or
'graphic' than it is to select between levels '4' and '5'.

'402 patent at 15:26-39 (emphasis added).[14]  Therefore, a fair and accurate reading of Mr.

Tanner's statement makes clear that this claim is fully described in the specification, and LG's

arguments fail as a matter of law.

> (d)    **LG Has Failed to Meet Its Burden of Showing that the Claims
> of the '402 Patent Do Not Meet the Enablement Requirement**

LG's argument that the claims of the '402 patent are not enabled once again relies on the

same erroneous positions and confusion tactics identified above.  LG mischaracterizes Wi-

LAN's position as to the meaning of the claim terms "multi-level categories of labels" and "said

descriptive text for labels," blatantly ignores the express disclosure provided in the '402 patent,

and requires *verbatim* support when none is required by law.  *See* LG Inv. Opp. at 19-20.

However, as described above, the specification expressly describes "multi-level categories of

labels" and "said descriptive text for labels" and further provides two tables that have labels that

correspond to this disclosure.  *See* Tanner MSJ Dec. ¶¶15-18.  LG has not raised any other issues

in regards to enablement, and therefore, for substantially the same reasons described in detail

above, LG has not established any triable issues of material fact with regard to the enablement

requirement of 35 U.S.C. §112, ¶1, which is a matter of law.  *See Martek Biosciences Corp. v.*

*Nutrinova, Inc.*, 579 F.3d 1363, 1378 (Fed. Cir. 2009)

> (e)    **LG Has Clearly Abandoned Any Best Mode Argument**

LG has abandoned the only "best mode" theory it proffered during fact and expert

discovery (*i.e.* that a "field configurable device was a best mode").  *See* Wi-LAN Mot. at 23-24.

---

[14] *Compare with* Claim 11: "The method of claim 10 wherein said step of storing said user
preference information comprises <u>displaying</u> on a display said <u>descriptive text for labels</u> in said
first informational scheme and <u>accepting from a user</u>, and storing, <u>user preference information</u>
for said first informational scheme said user preference information comprising a threshold level
for each of said categories in said first informational scheme."

CONFIDENTIAL

Thus, it has failed to establish any basis for continuing to assert that the claims of the '402 patent are invalid based on a violation of the best mode requirement.  Instead, LG mints a brand new argument that the '402 patent should not be afforded the priority date of the '030 application. LG Inv. Opp. at 20-22.  However, LG did not file a motion for summary judgment as to the priority date of the '402 patent, and therefore this argument has been waived for summary judgment.  Furthermore, LG has not come forth with any alleged prior art that has an effective date between the filing dates of the '030 application and the '402 patent.  Therefore, there is simply no reason for this Court to decide this priority date issue.[15]

Finally, LG does not assert that the specification of the '402 patent does not adequately disclose the best mode of the invention as defined by the '402 patent claims.[16]  Therefore, summary judgment that there is no violation of the best mode requirement is proper.

## III.    CONCLUSION

Wi-LAN respectfully requests that the Court grant summary judgment dismissing LGE's third, fourth, fifth, sixth, and thirteenth affirmative defenses; LGE's second and seventh counterclaims; LGEUS's third, fourth, fifth, sixth, and thirteenth affirmative defenses; and LGEUS's second and sixth counterclaims.

---

[15] In actuality, there is ample support related to multiple informational schemes in the '030 application for each of the claims in the '402 patent. *See, e.g.* Tanner Opp. Dec. (D.I. # 236) Ex. B at ¶¶218-220 and Ex. 3 (Priority Chart).

[16] "The [best mode] disclosure requirement, however, is limited to 'the invention defined by the claims.'" *Ajinomoto Co., Inc. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1273 (Fed, Cir, 2010) (quoting *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1315 (Fed. Cir. 2002)).  In this regard, "[s]ubject matter outside the scope of the claims falls outside of the best mode requirement. *Id.* Thus, there was no requirement to disclose the multiple informational schemes in the '030 application because this feature was not claimed.  LG has not and cannot allege that the '402 patent specification does not disclose multiple informational schemes.

Dated: May 6, 2011                   KILPATRICK TOWNSEND & STOCKTON LLP


                                     _____
                                     David E. Sipiora
                                     Matthew C. Holohan (admitted *pro hac vice*)
                                     1400 Wewatta Street, Suite 600
                                     Denver, CO 80202
                                     Telephone: (303) 571-4000
                                     Facsimile: (303) 571-4321

                                     David A. Koenigsberg
                                     MENZ BONNER & KOMAR LLP
                                     444 Madison Ave., 39th Floor
                                     New York, New York 10022
                                     (212) 223-2100

                                     Attorneys for Plaintiff
                                     Wi-LAN Inc.