UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) 10 Civ. 432 (LAK) (AJP) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' CLAIMS OF INEQUITABLE CONDUCT AND PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY BASED ON UNCLEAN HANDS, INEQUITABLE CONDUCT, PATENT MISUSE, AND EQUITABLE ESTOPPEL

Plaintiff Wi-LAN Inc. ("Plaintiff" or "Wi-LAN") respectfully submits this Notice of Supplemental Authority in Support of its Motion for Summary Judgment on LG Electronics Inc.'s and LG Electronics U.S.A., Inc.'s (collectively "Defendants" or "LG") Claims of Inequitable Conduct (D.I. # 159)[1] and its Opposition to Defendants' Motion for Summary Judgment of Unenforceability Based on Unclean Hands, Inequitable Conduct, Patent Misuse, and Equitable Estoppel (D.I. # 231).[2]  The Federal Circuit's recent *en banc* decision in *Therasense*, *Inc*. *v*. *Becton, Dickinson & Co*., App. No. 2008-1511 (May 25, 2011) (attached as Exhibit 1) issued after dispositive motion briefing in this litigation concluded on May 6, 2011

---

[1] Hereinafter, "Wi-LAN Mot."

[2] Hereinafter, "Wi-LAN Opp."

and now controls disposition of the inequitable conduct issues in these motions.  Wi-LAN brings this binding, precedential opinion to the Court's attention because the Federal Circuit's holding *significantly heightens* the legal standard LG must meet to prove both elements of its inequitable conduct claim.

The *Therasense* case confirms that LG cannot show either of the requisite *materiality* and *intent to deceive* elements of this defense, no less both as now clearly required.  In *Therasense*, the Federal Circuit unambiguously raised the standard for finding conduct to be *material* to the patentability of an issued claim by requiring a "but-for" test in all cases.  Specifically, the Federal Circuit held that the party alleging inequitable conduct must show that "the patentee's misconduct *resulted in* the unfair benefit of receiving an unwarranted claim."  *Therasense*, Slip Op. at 27-29 (emphasis added).  In other words, LG must show that the challenged claims *would not have issued* had the alleged inequitable conduct not occurred.  The only exception is in rare circumstances where the "patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit . . . ."  *Id.* at 29.  LG has clearly failed to meet this substantial burden as to **any** of its numerous unsubstantiated allegations, including the alleged failure to disclose the *Violence and Television: The Canadian Example* ("VTV") presentation slides[3] and the testing activities that allegedly occurred in Buffalo, New York,[4] as well as the

---

[3] For instance, LG neither argues that the VTV slides anticipate any of the claims of the '402 patent, nor suggests that the VTV slides could have been combined with any of the art of record in the original examination of the '402 patent so as to allegedly render the claims obvious.  *See* LG's Opposition to Wi-LAN's Motions for Summary Judgment on Defendants' Claims and Affirmative Defenses of Inequitable Conduct, Patent Misuse, Unclean Hands, Waiver, and Estoppel and Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment of Unenforceability Based on Unclean Hands, Inequitable Conduct, Patent Misuse, and Equitable Estoppel (DI. # 227) ("LG Opp.") at 6-12.  Furthermore, LG has not shown or even alleged that the VTV slides, taken alone or in combination with any of the art of record in the original prosecution, invalidate any claim of the '402 patent.  This is required at a minimum to show that "but for" the alleged non-disclosure of the VTV slides, a claim would not have

baseless allegations regarding the declaration submitted to the U.S. Patent & Trademark Office (PTO) by Craig Tanner during the reexamination proceeding, and the absurd accusations related to the standard consulting agreement between Wi-LAN and one of its consultants.[5]  *See, e.g.,* Wi-LAN Opp. at 12-15 and 21-23.

Furthermore, the Federal Circuit also "tighten[ed]" the standard for showing the required second element of an inequitable conduct claim – that the "patentee acted with a specific intent to deceive." *Therasense*, Slip Op. at 24.  While circumstantial evidence may be used to prove intent, "the evidence 'must be sufficient to *require* a finding of deceitful intent in light of all the circumstances.'"  *Id.* at 25-26 (citations omitted) (emphasis in original).  In this regard, contrary to LG's arguments, the "absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id*. at 26.  The Court also expressly stated that "a district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa," thereby reestablishing that "[i]ntent and materiality are separate requirements." *Id*. at 25.  LG has not provided any direct

---

issued in the '402 patent.  In fact, LG relies on its paid "expert's" incorrect opinion that the VTV slides could be combined with the "'Digicipher II System Information Description, Rev. 1.2' or 'System Information Description, Rev. 1.3'" references to allegedly render the claims of the '402 Patent obvious, **neither of which were known to the Patent Office or the patentee at the time of the prosecution of the '402 patent**.  *Id*. at 8.  Thus, LG cannot show that "but-for" the alleged non-disclosure of the VTV presentation slides, a claim would not have issued in the '402 patent.

[4] Again, LG does not identify the claims that would have been anticipated by, or rendered obvious in light of, the alleged testing in Buffalo, NY.  Indeed, LG has utterly failed to establish substantive details as to the nature and extent of these tests.  Therefore, LG has not shown that "but-for" the Patent Examiner not knowing of the testing in Buffalo, New York, a claim would not have issued in the '402 patent.

[5] As demonstrated in Wi-LAN's prior motions, LG's allegations related to Wi-LAN's conduct in the concurrent reexamination proceeding are simply not true and have no basis in law or in the undisputed facts of the case.  However, these allegations cannot now survive as a matter of law under the *Therasense* "but-for" causation requirements to show materiality.

evidence of an intent to deceive the PTO by the patentee or Wi-LAN because there is none. Instead, LG expressly relies on each of these now clearly debunked and legally irrelevant rationales in a futile attempt to meet its substantial burden of proving inequitable conduct by clear and convincing evidence.[6]

Finally, as was demonstrated in Wi-LAN's prior briefs, LG's inequitable conduct allegations are nothing more than a continuation of "common litigation tactic[s]" based merely on the "slenderest grounds" that led to the *Therasense* decision. *See Therasense*, Slip Op. at 22-23 (internal quotations omitted). Indeed, the Federal Circuit's holding in *Therasense* is unambiguous –the Court expressly seeks to eradicate outlandish accusations, such as those advanced here by LG, that have "become an absolute plague" in patent litigation and are thus "cluttering up the patent system." *Id*. (internal quotations omitted).

For all of these reasons, Wi-LAN respectfully asks the Court to take Notice of the Supplemental Authority attached hereto, so that the Court may consider the recently issued controlling Federal Circuit *en banc* opinion that clearly defeats LG's claims of inequitable conduct as a matter of law.

---

[6] *See, e.g*., LG's Motion for Summary Judgment of Unenforceability Based on Unclean Hands, Inequitable Conduct, Patent Misuse, and Equitable Estoppel (D.I. # 179) at 25:

> Wi-LAN intended to deceive the PTO when it failed to disclose VT and any documentary evidence of public usage of the V-Chip. At the outset, the *high materiality* of these documents *suggests* that the applicant intended to deceive the PTO by failing to disclose them. Also, the mere fact that Mr. Collings was invited to present this paper at the Sorbonne in Paris, France, suggests that *he would not likely have simply forgotten about* the VT document. Similarly, the public usage in Buffalo, NY took place over a three year time period and was not a single isolated event susceptible to an *innocent bout of forgetfulness* before the PTO."

(emphasis added). *See also* LG Opp. at 9 ("Further, there is *no reasonable explanation* for Mr. Collings' and his attorney's failure to disclose the VTV slides.") (emphasis added).

Dated: June 7, 2011                     KILPATRICK TOWNSEND & STOCKTON LLP


                                        _____/s/ Matthew C. Holohan_____
                                        David E. Sipiora
                                        Matthew C. Holohan (admitted *pro hac vice*)
                                        1400 Wewatta Street, Suite 600
                                        Denver, CO 80202
                                        Telephone: (303) 571-4000
                                        Facsimile: (303) 571-4321
                                        dsipiora@kilpatricktownsend.com
                                        mholohan@kilpatricktownsend.com

                                        David A. Koenigsberg
                                        MENZ BONNER & KOMAR LLP
                                        444 Madison Ave., 39th Floor
                                        New York, New York 10022
                                        Telephone: (212) 223-2100
                                        Facsimile: (212) 223-2185
                                        dkoenigsberg@mbklayers.com

                                        Attorneys for Plaintiff
                                        Wi-LAN Inc.