# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

WI-LAN INC.,                                                    10 CV 432 (LAK) (AJP)

          Plaintiff,

v.

LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,

          Defendants.

-------------------------------------------------------------- x

## DEFENDANTS' OPPOSITION TO PLAINTIFF WI-LAN INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT RECOMMENDING SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL ASSERTED CLAIMS AND THE DENIAL OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2)

Richard A. Edlin (RE 1998)
Daniel I.A. Smulian (DS 4746)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com; smuliand@gtlaw.com

Richard D. Harris (*pro hac vice*)
Jeffrey G. Mote (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Matthew J. Levinstein (*pro hac vice*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com; motej@gtlaw.com
lukasj@gtlaw.com; maierse@gtlaw.com
levinsteinm@gtlaw.com

Attorneys for Defendants LG Electronics,
Inc. and LG Electronics U.S.A., Inc.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION                                                                                   1

II.     FACTUAL BACKGROUND                                                                  3

        A.      Background Of Parental Control Requirements For Television Viewing. ..............3

        B.      The '402 Patent And The Alleged Invention Of The Asserted Claims. .................3

        C.      The Prosecution History Of The '402 Patent.........................................................4

        D.      LG's Accused Products..........................................................................................7

III.    LEGAL STANDARDS                                                                            8

        A.      Standard Of Review Applicable To The Magistrate Judge's Report .....................8

        B.      Summary Judgment Standard .................................................................................9

        C.      Patent Infringement Generally .............................................................................10

        D.      General Rules Of Claim Construction ..................................................................10

        E.      Standard For Direct Infringement Of A Method Claim........................................11

        F.      The "Summary Of The Invention" Limits The Scope Of The Claims. .................12

        G.      Prosecution Disclaimer And Prosecution History Estoppel .................................12

IV.     ARGUMENT                                                                                   14

        A.      The Magistrate Judge Correctly Construed The Claim Term
                "Informational Scheme." ......................................................................................14

                1.      The Specification and Prosecution History of the '402 Patent
                        Support Magistrate Judge Peck's Construction of the Claim Term
                        "Informational Scheme" to Exclude Schemes of Which the
                        Receiving Device Has Advance Knowledge. ........................................... 14

                2.      Wi-LAN's Attempt to Qualify its Admitted Disclaimer was
                        Properly Rejected by Magistrate Judge Peck........................................... 19

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

3.  Magistrate Judge Peck Correctly Found that the Specification's Disclosure Merely Confirms That a Receiving Device can Practice the Asserted Claims Only if it Receives Configuration Informations That Describe Complete *New or Updated* Informational Schemes and Meets the Remaining Limitations of the Asserted Claims. .............................................................................. 23

4.  Magistrate Judge Peck Correctly Found that Wi-LAN's Proposed Construction of the Claim Term "Informational Scheme" Would Render Steps (e) Through (i) of Claim 7 Superfluous. ............................. 27

B.  Magistrate Judge Peck Correctly Found That LG's Accused Products Do Not Literally Infringe The Asserted Claims Of The '402 Patent Because They Have Advance Or Prior Knowledge Of Any Alleged Informational Schemes. .................................................................................................................. 31

C.  Magistrate Judge Peck Correctly Found That LG's Accused Products Do Not Infringe The Asserted Claims Of The '402 Patent Under The Doctrine Of Equivalents. ......................................................................................................... 34

V.  CONCLUSION ........................................................................................................ 35

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*ACCO Brands, Inc. v. ABA Locks Mfg. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) ........................................................ 11

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
  265 F.3d 1294 (Fed. Cir. 2001) ........................................................ 13

*Allen Eng'g. Corp. v. Bartell Indus. Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002) ........................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................ 9

*Aquatex Indus., Inc. v. Technique Solutions*,
  419 F.3d 1374 (Fed. Cir. 2005) ................................................. 10, 13

*Bell Atlantic Network Services, Inc. v. Covad Comms. Group, Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001) ........................................................ 20

*Biovail Corp. v. Andrx Pharms, Inc.*,
  239 F.3d 1297 (Fed. Cir. 2001) ........................................................ 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................ 9

*Computer Docking Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008) ........................................................ 13

*Cordis Corp. v. Medtronic Ave., Inc.*,
  511 F.3d 1157 (Fed. Cir. 2008) ........................................................ 20

*Day Int'l., Inc. v. Reeves Brothers, Inc.*,
  260 F.3d 1343 (Fed. Cir. 2001) ........................................................ 20

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
  192 F.3d 973 (Fed. Cir. 1999) ........................................................ 13

*E-Pass Techs., Inc. v. 3COM Corp.*,
  473 F.3d 1213 (Fed. Cir. 2007) ........................................................ 12

*Feis v. U.S.*,
  No. 09-454-cv, 2010 WL 3818125 (2d Cir. Oct. 1, 2010) ...................... 25

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002) ........................................................................ 14

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ........................................................ 12

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

*General Am. Trans Corp. v. Cryo-Trans, Inc.*,
    93 F.3d 766 (Fed. Cir. 1996) ........................................................................ 28

*Glaxo Wellcome, Inc. v. Impax Labs., Inc.*,
    356 F.3d 1348 (Fed. Cir. 2004) .................................................................... 14

*Hartley v. Rubio*,
    No. 08 CV 4461, 2011 WL 1332198 (S.D.N.Y. Mar. 29, 2011)................... 25

*Joy Techs. Inc. v. Flakt Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) .......................................................................... 11

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
    542 F.3d 290, 312 (2d Cir. 2008) ................................................................ 26

*Markman v. Westview Instruments, Inc.*,
    52 F3d 967 (Fed. Cir. 1995) (en banc) ....................................................... 10

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
    579 F.3d 1363 (Fed. Cir. 2009) .................................................................... 16

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ....................................................... 11, 13, 18

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    503 F.3d 1352 (Fed. Cir. 2007) .................................................................... 34

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) .................................................................... 11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351, 1360 (Fed. Cir. 2008) ......................................................... 10

*Omega Engineering, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .................................................................... 20

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007) .................................................................... 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................... 10

*Phonometrics Inc. v. Northern Telecom Inc.*,
    133 F.3d 1459 (Fed. Cir. 1998) .................................................................... 11

*Planet Bingo, LLC v. GameTch Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006) .................................................................... 34

*Romag Fasteners, Inc. v. Mitzi Int'l Handbag and Accessories, Ltd.*,
    323 F.Supp.2d 512 (S.D.N.Y 2004) ............................................................. 23

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) ............................................................. 12, 16

iv

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

*Spectrum Int'l v. Sterilite Corp.*,
   164 F.3d 1372 (Fed. Cir. 1998) ........................................................ 11, 20

*TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*,
   529 F.3d 1364 (Fed. Cir. 2008) ............................................................. 25

*U.S. Phillips Corp. v. Iwasaki Elec. Co.*,
   505 F.3d 1371 (Fed. Cir. 2007) ............................................................. 10

*Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.*,
   204 F.3d 1360 (Fed. Cir. 2000) ............................................................. 10

*United States v. Karron*,
   750 F.Supp.2d 480 (S.D.N.Y. 2011) ...................................................... 26

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ........................................................ 12, 16

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 23

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
   103 F.3d 1571 (Fed. Cir. 1997) ........................................................ 14, 23

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) .............................................................................. 12

*Wolverine World Wide Inc. v. Nike, Inc.*,
   38 F.3d 1192 (Fed. Cir. 1994) ............................................................... 10

## Federal Statutes

35 U.S.C. § 112 ................................................................................. 5, 34

35 U.S.C. § 271 .................................................................................... 11

35 U.S.C. §§ 102, 103 .......................................................................... 5, 7

## Federal Rules

Fed. R. Civ. 56(c) .................................................................................. 9

Fed. R. Civ. 72(b)(3) ............................................................................. 8

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

## I.    INTRODUCTION

In its Objection, Plaintiff Wi-LAN, Inc. ("Wi-LAN") advances a number of specious and newly created arguments to discredit Magistrate Judge Peck's Final Report and Recommendation (the "Report").  However, none of these arguments articulate a plausible basis for overturning the Magistrate Judge's thorough and well-reasoned recommendation that the Court grant Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.'s (collectively, "LG") summary judgment of non-infringement.  Clearly there can be no literal infringement and no infringement under the Doctrine of Equivalents of any of the asserted Claims 7–11 ("Asserted Claims") of U.S. Patent No. 5,828,402 ("the '402 Patent") and the Court should reject Wi-LAN's objection to the Magistrate Judge's non-infringement recommendation.  The Court should likewise reject Wi-LAN's objection  to the Magistrate Judge's denial of  Wi-LAN's sanctions motion.[1]

With regard to the issue of non-infringement, the Magistrate Judge's Report and Recommendation did two things.  First, it accurately construed the claims by carefully considering the claim language and the intrinsic evidence.  Second, it compared the proper claim construction to LG's Accused Devices to find that LG's Accused Devices do not receive and store (for later use) configuration informations describing separate informational schemes of which the Accused Products have no advance knowledge.[2]   The Report confirms that LG does not infringe the asserted method claims simply by manufacturing a device that has the ***capability***

---

[1] In its Objection, Wi-LAN notes that if the Court sets aside the Magistrate Judge's recommendation on LG's summary judgment motion of non-infringement with respect to one term and those limitations containing that term, then several of Wi-LAN's  summary judgment motions that were determined to be moot as a result of the Report's recommendations would be resurrected.  However, Wi-LAN ignores that many of LG's motions were also rendered moot or denied without prejudice by the Magistrate Judge's Report.  (*See* Dkt. No. 172, Defendants' Consolidated Motion for Summary Judgment and Judgment on the Pleadings; Dkt Nos. 115, 198, 200; Report at 59–60.)

[2] LG also moved for summary judgment of noninfringement because several other limitations of the Asserted Claims are not met by the Accused Devices.  Because Magistrate Judge Peck found no infringement of certain limitations containing the term "informational scheme," he chose not to address those additional noninfringement grounds, each of which also demonstrates that LG does not infringe the Asserted Claims.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

to perform a method—a method which **has never been performed** and **which cannot be performed** until, at the very least, new ratings systems of which a receiving device does not have advance knowledge are broadcast in the United States.

Nevertheless, Wi-LAN objects to the Magistrate Judge's Report based on inconsistent, unsupported and conclusory claim construction and infringement arguments that wholly disregard the claim language and the purpose of the invention, vitiate numerous claim limitations, and ignore fundamental claim construction and patent infringement principles. (*See*, Dkt. No. 279, Plaintiff Wi-LAN Inc.'s Objection Pursuant to Federal Rule of Civil Procedure 72(b)(2) ("Objection" or "Obj.")[3]

Contrary to Wi-LAN's Objection, the Magistrate Judge fully and accurately summarized the relevant facts and legal principles governing claim construction, prosecution disclaimer, patent infringement, and prosecution history estoppel and then properly applied them to construe the term "informational scheme" to recommend that the Court grant LG's motion for summary judgment of noninfringement of the Asserted Claims. Accordingly, Wi-LAN's Objection should be overruled and the Magistrate Judge's Report and Recommendation should be adopted in its entirety.

---

3 For example, notwithstanding the patentee's clear and unmistakable disavowal of claim scope with respect to the identical claim terms disclosed in the Asserted Claims of the '402 Patent during prosecution of the parent application to the '402 Patent (which Wi-LAN asserts the '402 Patent claims priority to), Wi-LAN now argues that the terms are not the same, and that the parent application discloses an entirely different invention. Wi-LAN then admits that it committed an express disclaimer of claim scope, but attempts to qualify that disclaimer, without any support in the intrinsic record by adding a variety of extraneous limitations that simply never appear in the claim language or the intrinsic evidence. Finally, Wi-LAN ignores the remaining limitations of asserted Claim 7 and the entire purpose of the invention to argue that configuration information describing informational schemes need only be received and stored, and can then be discarded even though the remaining limitations expressly refer back to those received and stored informational schemes by antecedent basis.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

## II.    FACTUAL BACKGROUND

### A.    Background Of Parental Control Requirements For Television Viewing.

In early 1997, the television industry, through the Valenti Coalition, submitted an initial proposal for parental controls, which was subsequently modified in August 1997 ("the Ratings System").  The Ratings System was adopted as a single integrated ratings system by the FCC in March of 1998.  Eventually, the television industry standardized a mechanism for implementing the Ratings System on television receivers and created the U.S. Rating Region (region 1) table ("RRT1").  For digital television broadcasts in the United States, the **only** ratings system upon which programming is rated is defined in the standard CEA-766-A ("CEA-766").  Because CEA-766 provides additional information that is not included in RRT1, television receivers must have complete knowledge of the information included in the Ratings System in order to implement the blocking functionality which is required by FCC regulation.  They are therefore required by FCC regulation to have the contents of CEA-766 permanently encoded or "hardwired" during manufacture.

### B.    The '402 Patent And The Alleged Invention Of The Asserted Claims.

The '402 Patent was filed on December 5, 1996, as a continuation-in-part application of parent application 08/667,030 (the "'030 Application"), which was filed on June 20, 1996.  The '402 Patent issued on October 27, 1998, and is entitled "Method and Apparatus for Selectively Blocking Audio and Video Signals."  (Obj. at Ex. 1, '402 Patent.)  Wi-LAN has asserted Claims 7–11 (the "Asserted Claims") against LG.  Claim 7 is a method claim and it is the only independent claim asserted by Wi-LAN.  Claims 8–11 all depend directly or indirectly from Claim 7.

The Asserted Claims of the '402 Patent are generally directed to a method whereby two new, complete, and different parental control ratings systems (*i.e.*, configuration information

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

describing informational schemes) are transmitted via broadcast transmission, received on separate television channels, and stored by television receivers.  Each complete configuration information describes a distinct informational scheme (or parental control rating system) of which the user's receiving device or television has no advance or prior knowledge, *i.e.*, the informational schemes cannot have been previously pre-programmed in the receiving device. Parental control preferences (or user preferences) that reference the newly downloaded parental control ratings systems are then obtained and stored, and television programming is selectively blocked based on a comparison between program rating information transmitted in the video signal portion of the television signal and the stored user preferences.  In order to selectively block, the user selects and stores his/her user blocking preferences for every category in the two received and stored informational schemes.  (Obj. at Ex. 1, '402 Patent; **Ex. 1**, Prosecution History of U.S. Patent Application No. 08/667,030[4]; **Ex. 2**, Prosecution History of U.S. Patent Application No. 08/761,091.)

### C.      The Prosecution History Of The '402 Patent.

The '402 Patent's parent '030 Application has the same title as the '402 Patent, namely "Method and Apparatus for Selectively Blocking Audio and Video Signals."   The '030 Application also shares approximately twenty columns of the specification with the '402 Patent. ***Throughout the litigation Wi-LAN has asserted that the Asserted Claims of the '402 Patent are entitled to the filing date of the '030 Application.***  (**Ex. 3,** Wi-LAN 1st Amended  Response to LG's Interrogatory No. 3 at 3 ("Claim 7 is entitled to the benefit of the filing dates of Parent Application Serial No. 667,030, filed June 20, 1996").)  Original claims 1 through 17 and 19 of

---

[4] Exhibits to the Declaration of James J. Lukas, Jr. in Support of Defendants' Opposition to Plaintiff Wi-LAN Inc.'s Objection to the Magistrate Judge's Report Recommending Summary Judgment of Non-Infringement of all Asserted Claims and the Denial of Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 72(b)(2) will be referred to herein as "Ex. __."

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

the '030 Application were method claims while original claim 18 was an apparatus claim.  (Ex. 1 at LG081996–082004.)

On **November 4, 1997** (long after the patentee had filed the '402 Patent application on December 5, 1996), the Examiner rejected all original 19 claims of the '030 Application as unpatentable over the prior art West, Elam, Vogel, and Lemelson patents under 35 U.S.C. §§ 102, 103.  (Ex. 1 at LG082028–30.)  Specifically, the examiner found that the prior art received configuration information and stated "[t]o the extent that the received data is not 'configuration information', it would have been obvious to have considered the data in the references as broadly configuring a local subscriber's receiver which includes a memory to enable the selected categories of programs."  (Ex. 1 at LG082029.)

On **January 16, 1998**, the patentee received  a rejection of all 16 claims[5] in the co-pending **'402 Patent application**.  (Ex. 2 at LG042171–77.)  Specifically, the examiner rejected lone apparatus claim 16 as unpatentable under 35 U.S.C. §§ 102 and 103 for the same reasons that he rejected the nearly identical claims of the '030 Application and based on the doctrine of obviousness type double patenting over the claims of the '030 Application.  The examiner also rejected  all of the claims as indefinite under 35 U.S.C. § 112, ¶ 2.  (Ex. 2 at LG042171–77.)

A month later, on **February 24, 1998**, the patentee submitted an amendment and response to the examiner's November 1997 office action in the '030 Application.  The patentee cancelled original claim 19 and amended original claim 13.  In addition, the patentee made a multitude of express disclaimers concerning the scope of the limitation "***receiving configuration information describing an informational scheme***"—which appeared in original independent

---

[5]Claims 1–15 were method claims and Claim 16 was an apparatus claim.  (Ex. 2, at LG042131–35.)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

claims 1, 13 of the '030 Application.[6]  Importantly, that limitation is virtually identical to the limitations included in Steps (a) and (c) of Asserted Claim 7:  "***receiving*** [first, second] ***configuration information***…said [first, second] configuration information ***describing a*** [first, second] ***informational scheme***."  (Obj. at Ex. 1, '402 Patent; Ex. 1 at LG081996–2003.)  The patentee expressly, unequivocally, and ***repeatedly*** stated that each of the cited prior art references disclosed receiving devices with advance or prior knowledge of the received informational schemes (*i.e.* "pre-programmed" informational schemes), but that the "configuration information describing an informational scheme" in the pending claims did not:

> [N]***one of the cited references deals with the main problem addressed by this application***, which is how to accommodate changing rating (or 'classification') schemes in apparatus for selectively blocking video signals.  None of the cited references even mention this problem, which arises, in part, because many advisory bodies, acting independently, are creating many different classification schemes.  Each of the cited references shows a video blocking system in which a ***blocking device is constructed with <u>a priori knowledge</u> of the rating scheme*** to be used.  (Ex. 1 at LG082038 (emphasis added).)

> The West system is apparently ***programmed with advance knowledge*** of all rating schemes which might be applied to programming in the received video signal.  (Ex. 1 at LG082039 (emphasis added).)

> It is clear that the Elam apparatus is ***constructed with advance knowledge of the rating scheme to be applied***.  The number of rating levels is ***hard wired*** into the Elam apparatus.  (Ex. 1 at LG082039.)

> A user ***must know in advance*** the classification words that might be transmitted and their meanings.  (Ex. 1 at LG082040.)

> Finally, the patentee made the following statement to characterize (and distinguish over)

the prior art:

> The information transmitted and received by the cited references merely specifies the rating being applied to video programs ***according to a predetermined scheme known a priori to both the transmitter and the receiver***.  Claim 16 is therefore

---

[6]The terms "configuration information" and "informational scheme" also appeared in the remaining independent original claims 14–16, 18 (except for original claim 19 which was cancelled).  (Ex. 1 at LG081996–2003.)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

submitted to distinguish the cited references.   (Ex. 1 at LG082043 (emphasis added).)

As shown above, the prosecution history of the '030 Application expressly and unambiguously makes clear what an informational scheme according to the invention of the '402 Patent *is not—namely, a scheme of which a receiver has prior or advance knowledge.*

On **March 27, 1998** the examiner issued a final office action in the '030 Application, rejecting all remaining original claims as unpatentable under 35 U.S.C. §§ 102, 103.  (Ex. 1 at LG082048–50.)  The patentee never responded to that office action and the '030 Application was abandoned.  Two months later, the same examiner allowed the Asserted Claims which disclosed first and second configuration information describing first and second informational schemes as opposed to a single configuration information describing a single informational scheme.  (Obj. at Ex. 1, '402 Patent.)

### D.    LG's Accused Products

When operated by a user, the Accused Products perform program blocking functionality in a manner consistent with the FCC regulations, which requires that they block content based on CEA-766 and the ATSC A/65 Content Advisory Descriptor ("CAD").  (**Ex. 4**, Declaration of Adam Goldberg at ¶ 14.)   In order to implement the blocking functionality required by FCC regulation, the Accused Products must have complete knowledge of the information included in CEA-766.  However, RRT1 does not fully convey all of this information.  (*See* Ex. 4 at ¶ 14.) Consequently, the Accused Products must have the contents of CEA-766 embedded or encoded permanently during manufacturing.  (Ex. 4 at ¶¶ 18, 38–39.)  Thus, the Accused Products have advance or prior knowledge of the complete Ratings System described in CEA-766.

In the Accused Products, program blocking is configured by the user by first enabling program blocking functionality. (Ex. 4 at ¶ 15.)  If program blocking functionality is not enabled,

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

then a comparison between user preferences and program ratings is never performed and television programs cannot be blocked. (Ex. 4 at ¶ 15.)  Because CEA-766 is encoded in the Accused Products at the time of manufacture in Korea and Mexico, the Accused Products discard RRT1 without processing it.[7]  (Ex. 4 at ¶ 38.) As a result, the Accused Products do not store RRT1 in memory.  After a user has turned the program blocking functionality on, default values allow display of all content, and a user may then select his/her blocking preferences. (Ex. 4 at ¶ 16.)  The user interface for gathering blocking preferences is created based on prior knowledge of the Ratings System in use in the United States, which is defined in CEA-766 and, again, pre-coded in the Accused Products at the time of manufacture.  (Ex. 4 at ¶ 38.)  When the user is configuring blocking preferences, each preference is individually stored to memory when the preference is selected.  (Ex. 4 at ¶ 17.) If a user configures blocking preferences, when television programming is received and decoded, the receiver will extract program rating information from the CAD, which is transmitted in the PSIP stream of the television channel, not in the video signal.  (Ex. 4 at ¶ 18.)  It would then be compared against the user preferences using hard-coded prior knowledge of the ratings system. If appropriate, the television programming is blocked and not displayed.  (Ex. 4 at ¶ 18.)

## III.   LEGAL STANDARDS

### A.   Standard Of Review Applicable To The Magistrate Judge's Report

This Court reviews the Magistrate Judge's recommendation concerning LG's dispositive summary judgment motion of non-infringement *de novo*.  FED. R. CIV. 72(b)(3).  The Court may "accept, reject, or modify [the Magistrate Judge's] recommended disposition; receive further evidence; or return the matter to [the Magistrate Judge] with instructions."  *Id.*

---

[7]RRT5 has, to date, never been broadcast in the United States.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

While Wi-LAN identified the legal standard applicable to the Court's review of Defendants' dispositive summary judgment motion, it completely ignored standard of review applicable to the other recommendation to which it objects—namely the Magistrate Judge's recommendation that Plaintiff's non-dispositive sanctions motion be denied.  Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, that recommendation may only be modified or set aside if it is clearly erroneous or is contrary to law.  The single paragraph devoted to Wi-LANs objection to the Magistrate Judge's recommendation on Wi-LAN's sanctions motion is devoid of ***any*** argument that the Magistrate Judge's Report was either clearly erroneous or contrary to law.  Wi-LAN has failed to meet its burden.  Moreover, there is nothing to which LG can respond.  (*See* Obj. at 28.)

### B.    Summary Judgment Standard

The Federal Rules authorize entry of summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. 56(c).  To obtain summary judgment, the movant need only show "an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When a motion for summary judgment is supported by documentary and testimonial evidence, the nonmoving party may not rest upon the allegations or denials of its pleadings but must instead present significant probative evidence to establish a genuine issue of material fact.  *Id.* at 327; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial").

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

### C.      Patent Infringement Generally

A patent infringement analysis involves a two-step process. "First, the court determines the scope and meaning of the patent claims asserted….Second, the properly construed claims must be compared to the accused device." *Markman v. Westview Instruments, Inc.*, 52 F3d 967, 976 (Fed. Cir. 1995) (en banc). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Phillips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374–1375 (Fed. Cir. 2007). The patentee bears the burden of proving infringement by a preponderance of the evidence. *Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (stating that the patentee bears the burden of proving infringement and is responsible for any "shortcoming" in the evidence regarding the components of the accused process). Where an independent patent claim is not infringed, it is axiomatic that any claims depending from that claim are also not infringed. *Wolverine World Wide Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

### D.      General Rules Of Claim Construction

When the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve the meaning and scope of the patent claims that the plaintiff alleges have been infringed. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The claims of a patent are construed from the viewpoint of a person having ordinary skill in the art in light of the entire patent, including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–1313 (Fed. Cir. 2005) (en banc). In construing the claims, the claim terms, specification, and prosecution history are of central importance and are the best source for understanding a disputed technical term. *Aquatex Indus., Inc. v. Technique Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1313, 1315). In some cases,

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

the prosecution history may be even more significant if the patentee disclaimed or disavowed an interpretation.  *See Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998) ("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover").  Any arguments made during the prosecution of patents or applications in the same family related to common subject matter limits the scope of claim terms.  *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349–50 (Fed. Cir. 2004).

###     E.      Standard For Direct Infringement Of A Method Claim

Under Section 271(a), one who "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent."  35 U.S.C. § 271 (a).  A method may be directly infringed only by the actual performance, within the United States, of each and every claimed step of the method.  *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process consists of one or more operative steps, and, accordingly, '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized'"); *Joy Techs. Inc. v. Flakt Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method").  Accordingly, there can be no infringement as a matter of law if a single claim limitation is not found in the accused product or process.  *See Phonometrics Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1467 (Fed. Cir. 1998).

In order to show direct infringement of a method claim, a patentee must point to specific instances of direct infringement; "hypothetical instances of direct infringement are insufficient." *ACCO Brands, Inc. v. ABA Locks Mfg. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (affirming a finding of noninfringement of a method claim when the patentee presented "no evidence of actual users" operating the accused device in an infringing manner other than the patentee's paid

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

expert)).   The Court of Appeals for the Federal Circuit recently held that "[u]nless the claim language only requires the capacity to perform a particular claim element, … it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

Finally, when the language of the steps of a method claim refer to the completed results of a prior step, a patentee must show that all of the steps were performed and were performed in order.  *See E-Pass Techs., Inc. v. 3COM Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007)473 F.3d 1213 (Fed. Cir. 2007).   "[A] product that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

### F.      The "Summary Of The Invention" Limits The Scope Of The Claims.

The claims should not be construed to cover processes which are excluded as beyond the scope of the "summary of the invention" section of a patent specification.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("[T]he characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure"); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention") (citing *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318–19 (Fed. Cir. 2006)).

### G.      Prosecution Disclaimer And Prosecution History Estoppel

Prosecution disclaimer occurs when a patentee disavows claim scope during prosecution based on its arguments and/or amendments.  *Computer Docking Station Corp. v. Dell, Inc.*, 519

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

F.3d 1366, 1374–75 (Fed. Cir. 2008).   Prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability (amendment-based estoppel) or clearly and unmistakably surrenders subject matter by arguments made to an examiner (argument-based estoppel).   *See Aquatex Industries*, 419 F.3d at 1382. Prosecution disclaimers and prosecution history estoppel operate similarly and often lead to the same result.

Statements made during the prosecution of a related parent patent application concerning terms common to each application are highly pertinent to determining to the scope of the claims in a second patent stemming from that parent application.   *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1349–50 (Fed. Cir. 2004).[8]   Indeed, "[w]hen the application of prosecution disclaimer involves statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial patent are relevant in construing the claims at issue."   *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007); *Biovail Corp. v. Andrx Pharms, Inc*., 239 F.3d 1297, 1301 (Fed. Cir. 2001) (claim language "must be read consistently with the totality of the patent's applicable prosecution history," including parent applications); *Elkay Mfg. Co. v. Ebco Mfg. Co*., 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same limitation").

---

[8]Wi-LAN apparently agrees, yet argues otherwise.   (*See* Obj. at Ex. 9, Dkt. No. 161, Memorandum of Points and Authorities in Support of Plaintiff Wi-LAN Inc.'s Motion for Summary Judgment on Defendants' Claims of Prosecution History Estoppel at 15 fn. 6 (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) ("The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit").)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Similarly, with respect to prosecution history estoppel, "subject matter surrendered via claim amendments during prosecution is also relinquished for other claims containing the same limitation." *Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1356 (Fed. Cir. 2004); *see Allen Eng'g. Corp. v. Bartell Indus. Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002) (holding that an estoppel affecting a limitation in one claim will extend to all claims in which that limitation appears).   When an applicant makes a narrowing amendment, the presumption is that such amendment was related to patentability.   At that point, the burden shifts to Plaintiff to demonstrate that the reason was unrelated to patentability and that the amendment does *not* surrender a particular equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002) (emphasis added).   For argument-based estoppel, the relevant inquiry is "what a competitor reasonably may conclude [that] the patentee surrendered to gain issuance of the patent."  *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997).

## IV.   ARGUMENT

### A.   The Magistrate Judge Correctly Construed The Claim Term "Informational Scheme."

#### 1.   The Specification and Prosecution History of the '402 Patent Support Magistrate Judge Peck's Construction of the Claim Term "Informational Scheme" to Exclude Schemes of Which the Receiving Device Has Advance Knowledge.

As shown below, Magistrate Judge Peck correctly construed the term "informational scheme" because such construction is supported by the specification and the prosecution history and is consistent with the stated purpose of the alleged invention.  (*See* Report at 43 ("the specification and prosecution history both reveal a clear intent to exclude from Claim 7's scope 'informational schemes' that are pre-programmed into a receiver at the time of manufacture").)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

| Claim Language | Magistrate Judge Peck's Construction |
|---|---|
| **first informational scheme** | "[a first] set of kinds of ratings information transmitted about a program …and of which the receiver has no advance knowledge" |
| **second informational scheme** | "[a second] set of kinds of ratings information transmitted about a program …and of which the receiving device has no advance knowledge"[9] |

> **a.** **The Specification Supports Magistrate Judge Peck's Construction.**

Magistrate Judge Peck found that the specification of the '402 Patent supported his construction of the term "informational scheme."   (Report at 43–44.)  As discussed below, the Magistrate Judge's Report is consistent with the teaching of the specification.  According to the purpose of the invention of the '402 Patent, a receiving device cannot have advance knowledge of the "first informational scheme" and the "second informational scheme."   Indeed, in distinguishing the invention of the '402 Patent from the prior art in the "Summary of the Invention" section of the specification, the '402 Patent specification makes clear that the alleged invention expressly requires that a receiving device does not have advance knowledge of a received informational scheme:

> As noted above, the prior art includes various devices which block reception of an incoming video signal when a code encoded in the signal matches a code ***stored in the device***. The inventor has recognized that the previous video blocking systems known to the inventor share the disadvantage that they assume that a single consistent coding scheme will be used for all video programs. ***The prior art blocking systems include devices which must be constructed or initially programmed with advance knowledge of the coding scheme to be used. The advance knowledge must include what codes are used in the coding scheme*** and embedded in the incoming video signal and should also include the meanings of those codes.  (Obj. at Ex. 1, '402 Patent at 2:11–23 (emphasis added).)

Thus, the "Summary of the Invention" section of the '402 Patent itself distinguishes prior art systems, on the one hand, which had advance knowledge of informational schemes,

---

[9] *See* Report at 42, 49.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

from the invention of the '402 Patent, on the other, which does **not** have advance knowledge of any informational scheme. As the claims should not be construed to cover processes or products which are excluded as beyond the scope of the "Summary of the Invention" section of a patent specification, both the "first informational scheme" and "second informational scheme" must be construed to include the requirement that the receiving device has no advance knowledge of either. *See SciMed Life Sys.,* 242 F.3d at 1343 ("[T]he characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure"); *Verizon Servs. Corp.,* 503 F.3d at 1308 ("[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention") (citations omitted).[10]

---

[10] Wi-LAN's argument that the '402 Patent specification "expressly and unambiguously" defines the claim term "informational scheme" is without merit. (Obj. at 16 (relying on the following passage: "In this application, the term 'informational scheme' means a set of kinds of information that may be transmitted about a program, a set of values that may be transmitted for the different kinds of information and the meanings of those values.").) Wi-LAN simply ignores the entirety of the '402 Patent by assuming that the particular statement it relies on for the definition of "informational scheme" is the only portion of the specification that defines that term. In truth, as noted above, Magistrate Judge Peck adopted portions of this definition, but there are numerous portions of the '402 Patent specification and its prosecution history that further define the term informational scheme that Magistrate Judge Peck properly considered in reaching his final construction of the term "informational scheme." Wi-LAN's reliance on *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009) is misplaced as that case is inapposite to the situation here. (Obj. at 15–16.) In *Martek*, a question arose as to whether a human is an "animal" within the meaning of the patent-in-suit. *Martek*, 579 F.3d at 1379. The specification of the patent-in-suit defined the claim term "animal" to mean "any organism belonging to the kingdom Animalia." *Id.* at 1380. Notably, the patent-in-suit defined "animal" in accordance with the widely-accepted scientific definition. According to the *Martek* Court, it was error for the district court to construe the claim term 'animal' to exclude humans" because "it is *undisputed* that humans are members of the kingdom Animalia." *Id.* (emphasis added). Put simply, the Court rejected the district court's construction of the term "animal" because the explicit definition contained in the specification, which accorded with the well-accepted scientific definition of the term, flatly contradicted the district court's construction. Here, on the other hand, "informational scheme" does not have a widely-held definition. Even more importantly, the passage relied upon by Wi-LAN as the "express and unambiguous" definition of the claim term "informational scheme" is not the complete definition of "informational scheme" as it *does not indicate either way* whether configuration information describing an informational scheme of which a receiving device has advance knowledge qualifies as an informational scheme. As such, there was no *complete* definition of informational scheme for Magistrate Judge Peck to adopt. However, there *are* express and unambiguous disclosures in the specification and the prosecution history requiring that a receiving device not have advance knowledge of an informational scheme for an informational scheme to be an informational scheme according to the '402 Patent.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

   **b. The Prosecution History Supports Magistrate Judge Peck's Construction.**

  Magistrate Judge Peck also correctly found that the prosecution history of the '402 Patent supports his construction of the term "informational scheme" based on the patentee's clear disclaimer of claim scope.  (*See* Report at 44–49.)  Consistent with the "Summary of the Invention" in the specification, the restriction that the "first informational scheme" and "second informational scheme" must be schemes of which the receiver has no prior or advance knowledge is also required in view of the multitude of express disclaimers that the patentee made during the prosecution history of the '402 Patent together with its parent application:

> [N]*one of the cited references deals with the main problem addressed by this application*, which is how to accommodate changing rating (or 'classification') schemes in apparatus for selectively blocking video signals.  None of the cited references even mention this problem, which arises, in part, because many advisory bodies, acting independently, are creating many different classification schemes.  Each of the cited references shows a video blocking system in which a *blocking device is constructed with <u>a priori knowledge</u> of the rating scheme* to be used.  (Ex. 1 at LG082038 (emphasis added).)

> The West system is apparently *programmed with advance knowledge* of all rating schemes which might be applied to programming in the received video signal.  (Ex. 1 at LG082039 (emphasis added).)

> It is clear that the Elam apparatus is *constructed with advance knowledge of the rating scheme to be applied*.  The number of rating levels is *hard wired* into the Elam apparatus.  (Ex. 1 at LG082039.)

> A user *must know in advance* the classification words that might be transmitted and their meanings.  (Ex. 1 at LG082040.)

> The information transmitted and received by the cited references merely specifies the rating being applied to video programs *according to a predetermined scheme known a priori to both the transmitter and the receiver*.  Claim 16 is therefore submitted to distinguish the cited references.  (Ex. 1 at LG082043 (emphasis added).)

  Contrary to Wi-LAN's assertions (Obj. at 19–21), Magistrate Judge Peck correctly found that the prosecution history of the '030 Application is part of the prosecution history of the '402

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Patent as a parent application that shares the identical "configuration information," "informational scheme," and "receiving" claim terms, amongst others. (*See* Report at 44, fn. 41 ("The '030 Application and the '402 Patent share common claim terms and both propose a method to use 'configuration information' to selectively block television programs that are encoded according to new informational schemes"); *See also Microsoft Corp.*, 357 F.3d at 1349–50 (any arguments made during prosecution of patents or applications in the same family related to common subject matter limits the scope of claim terms).)

During prosecution of the '030 Application, the patentee made many express disclaimers concerning the scope of the limitation "***receiving configuration information describing an informational scheme,***" which appeared in original independent Claims 1 and 13. Importantly, that limitation is essentially identical to the limitations included in Steps (a) and (c) of Asserted Claim 7: "***receiving*** [first, second] ***configuration information***…said [first, second] configuration information ***describing a*** [first, second] ***informational scheme***." (Obj. at Ex. 1, '402 Patent.) The identical terms in the relevant portions of the claims of the '030 Application compared to Asserted Claim 7 of the '402 Patent are shown bolded below:

| Original Claims from '030 Application | Asserted Claim 7 of the '402 Patent |
| --- | --- |
| **Claim 1:** "**receiving configuration information describing an informational scheme**, said configuration information specifying, at least, either a number of levels in one or more multi-level categories or a number of labels in one or more groups of labels, in said informational scheme" | **receiving first [second] configuration information** embedded in a first [second] television channel, said first [second] configuration information **describing a first [second] informational scheme**, said first [second] configuration information specifying, at least, numbers of levels in a first [second] group of one or more multi-level categories of labels, in said first [second] informational scheme |
| **Claim 13:** "**receiving configuration information describing an informational scheme**, said configuration information specifying, at least, either a number of levels in one or more multi-level categories or a number of labels in one or more groups of labels, in said informational scheme" | |

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

In fact, earlier in the litigation, Wi-LAN, through written discovery, informed LG that the '402 Patent is entitled to the priority filing date of the '030 Application.[11]  Tellingly, Wi-LAN now seeks to distance itself from the '030 Application in a last ditch effort to avoid the prosecution disclaimer contained therein.  (*See* Obj. at 19–21.)  As Magistrate Judge Peck correctly found (*see* Report at 44 fn. 41), the prosecution history of the '402 Patent includes the '030 Application, and the patentee expressly disavowed ***all informational schemes of which the receiver has advance knowledge.***

### 2. Wi-LAN's Attempt to Qualify its Admitted Disclaimer was Properly Rejected by Magistrate Judge Peck.

Wi-LAN admits that the patentee disclaimed and disavowed claim scope during prosecution but then attempts to qualify that disclaimer.  (*See* Obj. at 21–23.)  As shown below, Magistrate Judge Peck properly dismissed Wi-LAN's strained arguments because it conflicts with fundamental patent law regarding method claims, and was not supported by the intrinsic evidence.

### a. Wi-LAN Admits that the Patentee's Statements During Prosecution Gave Rise to a Disclaimer.

Wi-LAN itself confirms that the patentee's statements should be considered a prosecution disclaimer, limiting the scope of the limitations "receiving [first, second] configuration information…said [first, second] configuration information describing a [first, second] informational scheme" from Steps (a) and (c) at claim construction (Obj. at Ex. 1, '402 Patent):

**The characterization provided by the Applicant of the prior art devices as having *a priori knowledge* was done in the context of explaining the**

---

[11] *See* Ex. 3 at 3 ("Claim 7 is entitled to the benefit of the filing dates of Parent Application Serial No. 667,030, filed June 20, 1996").)  Wi-LAN also previously argued that the '030 application provided "ample support related to multiple informational schemes" for each of the Asserted Claims of the '402 Patent.  (Obj. at Ex. 19, Reply Memorandum in Support of Plaintiff Wi-LAN Inc.'s Motion for Summary Judgment on Defendants' Claims of Lack of Notice, Laches, Failure to Mitigate Damages, Unjust Enrichment, Equitable Relief Unavailable, and Invalidity Under 35 U.S.C. § 112, Dkt. 252 at 21 fn. 15.)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

**difference between "configuration information" in the claims and the embedded codes disclosed in the prior art.** (Obj. at Ex. 9, Dkt. No. 161 at 13–14[12].)

Wi-LAN cited extensively to *Cordis* for the proposition that the patentee's statements during the prosecution "*make[ ] explicit the meaning* of the term 'configuration information.'" (*See* Obj. at Ex. 9, Dkt. No. 161, at 13 ("the Applicant *was merely making explicit the meaning of the term configuration information*") (emphasis added).) Thus, Wi-LAN admits that the patentee's statements give rise to a prosecution disclaimer limiting the scope of the terms "configuration informations" describing "informational schemes" to information of which the receiving device has no advance or prior knowledge. In fact, Wi-LAN's own cited case supports Wi-LAN's own clear admission. *Cordis Corp. v. Medtronic Ave., Inc.,* 511 F.3d 1157, 1178 (Fed. Cir. 2008) ("That *statement clearly disavows* a wall surface such as that in the Ersek sleeve, but it does not disavow any equivalents to the wall surface 'disposed in a common cylindrical plane'") (emphasis added).)

Consistent with Wi-LAN's own admissions, it was therefore appropriate for Magistrate Judge Peck to limit the scope of the terms "[first, second] informational scheme" described by the "configuration information" *to information of which the receiving device has no advance or prior knowledge*. *See Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998) ("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover"); *See also Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323–28 (Fed. Cir. 2003) (finding a clear and unmistakable disclaimer of claim scope); *Bell Atlantic Network Services, Inc. v. Covad Comms. Group, Inc.*, 262 F.3d 1258, 1273–75 (Fed. Cir. 2001) (same); *Day Int'l., Inc. v. Reeves Brothers, Inc.*, 260 F.3d 1343, 1348 (Fed. Cir. 2001) (same).

---

[12] (*See also* Obj. at 21–23.)

### b.      Wi-LAN's Attempts to Qualify its Disclaimer Fail.

Wi-LAN sums up the patentee's clear and unmistakable surrender of claim scope with the following statement:  "Applicant…was merely emphasizing that the prior art devices were preconfigured with *a priori* knowledge of the rating scheme *only* and were therefore unable to adapt to changes in the content rating system."  (*See* Obj. at Ex. 9, Dkt. No. 161, at 11 (emphasis in original).)   Wi-LAN further argues that it is clear from the prosecution history that the patentee was only disclaiming receiving devices with "***only a priori***" or advance knowledge that "***could not*** be updated."  (Obj. at 22.)  Notably absent from Wi-LAN's Objection is any citation to the prosecution history showing that these limitations to the patentee's disclaimer were expressed by the patentee.  (*See* Obj. at 21–23; 9–11.)

The way that Wi-LAN proposes to limit the patentee's disclaimer is simply not supported by the intrinsic evidence or binding patent law.  Indeed, the portions of the prosecution history cited above do not include such a qualification but rather unequivocally evidence an intent to disclaim informational schemes of which a receiver has advance knowledge.  Moreover, even if Wi-LAN's additional and unsupported "lacking update capability" qualifier was correct, (which LG denies,) Wi-LAN does not dispute that the patentee disclaimed receivers with advance knowledge of received informational schemes.   Therefore Magistrate Judge Peck's claim construction and noninfringement recommendation should be affirmed because Wi-LAN concedes that LG's accused devices have advance knowledge of any informational scheme that may be transmitted.  (*See* Obj. at 27.)

Wi-LAN's interpretation of the prosecution history also smacks of its long-held, incorrect belief that the mere capability to perform a method claim–rather than actual performance–is sufficient to establish infringement of a method claim. This argument was also correctly and

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

forcefully rejected by Magistrate Judge Peck.  (Report at 54–55.)  Seemingly forgetting that the only claims at issue during the prosecution of the '030 Application were method claims,[13] Wi-LAN asserts that the patentee was merely *distinguishing* the prior art as not having the "capability" to be updated with new or changed ratings systems.  (*See* Obj. at Ex. 9, Dkt. No. 161, at 2.)[14]  Of course, this purported distinction is one without a difference as the reason the prior art did not have the "capability" is because the prior art had its ratings systems hardcoded (and therefore the receiving devices had advance or prior knowledge of the ratings systems). This is exactly the distinction that the patentee repeatedly made during the prosecution.  In fact, Wi-LAN openly makes this distinction in its citation to the specification, "[the prior art systems] were 'hardwired,' meaning that they 'must be constructed or initially programmed with advance knowledge of the coding scheme to be used.'"  (*See* Obj. at Ex. 9, Dkt. No. 161, at 2 (quoting '402 Patent at 2:18–20).)[15]

Notwithstanding the obvious, Wi-LAN's arguments reflect that it still does not comprehend the principle that one cannot infringe a method claim unless one performs all of the steps of a method and that the words "*capability*," "*could be used*," and "*ability*" (to be used) have no place in a discussion of method claims.  (Report at 55; *see* Obj. at Ex. 9, Dkt. No. 161, at 2–4; Obj. at 16-19.)  Further evidence that Wi-LAN fails to grasp this basic concept is revealed

---

[13]The patentee cancelled the sole apparatus claim in its amendment and response, limiting its discussion to the remaining method claims.  (*See* Ex. 1 at LG081996–2003.)

[14]*See also* Obj. at Ex. 9, Dkt. No. 161, at 4 ("…in which the Applicant distinguished the claims of the '030 application over prior art.")

[15] In fact, although Wi-LAN claims now that LG and Magistrate Judge Peck added extraneous limitations to the Asserted Claims, it is actually Wi-LAN who improperly proposes to import qualifications and limitations that do not appear in the claims–or *any* of the intrinsic record for that matter.  For example, Wi-LAN argues that "[o]nce these steps [Steps (a) through (d)] are satisfied, the receiver is *rendered capable* of updating its informational schemes *as necessary*" and that the blocking systems covered by Claim 7 "receive and store configuration information *to determine whether the use of preprogrammed informational schemes needs to be altered*."  (Obj. at 23.)  Yet, none of the words "rendered capable," "as necessary," "to determine whether the use of preprogrammed informational schemes needs to be altered" appear in Claim 7 or the prosecution history.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

by Wi-LAN's infringement claims in this litigation wherein it is unable to identify a single direct infringer that has performed all of the steps of the Asserted Claims.[16]

In the proper context of a method claim, a competitor would only conclude that the patentee gave up the scope of the step of the method "receiving configuration information describing an information scheme" where the receiving device was hardcoded or pre-programmed with informational schemes and therefore had advance or prior knowledge of the informational scheme. *See Wang Labs.*, 103 F.3d at 1578.[17]

> **3.      Magistrate Judge Peck Correctly Found that the Specification's Disclosure Merely Confirms That a Receiving Device can Practice the Asserted Claims Only if it Receives Configuration Informations That Describe Complete *New or Updated* Informational Schemes and Meets the Remaining Limitations of the Asserted Claims.**

As Magistrate Judge Peck noted, according to the named inventor Mr. Collings, the alleged invention of the '402 Patent was "superior to the prior art because different ratings systems are used in 'different geographical regions and [when] a blocking device is moved from one region to another [,] or where new [ratings systems] are introduced to *replace or supplement* existing [ratings systems], then the prior art units must be rewired or reprogrammed.'" (Report at 3–4 (emphasis added).)  Similarly, Magistrate Judge Peck found that the specification makes clear that the invention of the '402 Patent provides a "method … to remotely configure [a receiver] to accommodate new [informational] schemes … that may be introduced to *augment or replace existing schemes*."  (Report at 44 (citing '402 Patent at 12:67–13:4 (emphasis added)).)

---

[16]Wi-LAN incorrectly argues that "[t]he methods described and claimed in the '402 Patent provide the ***ability*** for receivers to adapt to new, and/or changes in, rating systems through the use of 'configuration information' which describes rating schemes." (*See* Obj. at Ex. 9, Dkt. No. 161, at 3 (emphasis added).)

[17] This Court has held that the "public [ ] is entitled to rely on the statements made by a patent applicant during the prosecution of a patent in determining whether a prospective future device infringes the patent's claims. *Romag Fasteners, Inc. v. Mitzi Int'l Handbag and Accessories, Ltd*., 323 F.Supp.2d 512, 520 (S.D.N.Y 2004) (quoting *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("The claims, specification, and file history … constitute the public record of the patentee's claim, a record on which the public is entitled to rely").)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Consequently, Wi-LAN's argument that the specification discloses numerous embodiments in which the receiver has advance knowledge of the informational scheme (Obj. at 16–19) is without merit because each cited passage "merely shows that a blocking device can have 'advance knowledge' of some informational schemes and still practice the '402 Patent, if for example, *it receives configuration information describing a new or updated informational scheme*" and meets the remaining limitations of the Asserted Clams.   (Report at 48 fn. 42 (emphasis added).)  Magistrate Judge Peck's finding is consistent with the claim language (*See* Report at 29–31), while Wi-LAN's argument fails because **it ignores the clear claim language of** Asserted Claim 7 which requires that two separate configuration informations *describing two different and complete informational schemes be received and stored*:

> receiving first [second] configuration information embedded in a first television channel, *said first [second] configuration information describing a first [second] informational scheme*;
>
> storing said first [second] configuration information in a memory.
>
> (Obj. at Ex. 1, '402 Patent.)

Thus, the '402 Patent does not disclose any embodiments in which the receiving device has advance knowledge of an entire new or updated informational scheme described by the received and stored configuration information.  At the very most, the '402 Patent may disclose an embodiment in which updates to a previously received and stored complete informational scheme can be received, however that embodiment does not meet the Asserted Claims which require that configuration information describing an entire new or updated informational scheme be received and stored and further satisfy the limitations in Steps (e) through (i).[18]  Simply put,

---

18 The '402 Patent acknowledges that "[i]f all programming were described everywhere according to a universal informational scheme, which never changed, then apparatus 20 could be preprogrammed to recognize all of the types of information about video signal 24 in that universal scheme."  (Obj. at Ex. 1, '402 Patent, 12:57–61.)  The '402 Patent characterizes the likelihood of such universal rating scheme as "highly unlikely."  ('402 Patent, 12:61–

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

while such an embodiment may disclose configuration information describing a minor update to an informational scheme, it does not disclose "configuration information describing an informational scheme" as required by the Asserted Claims.[19]  ***An update to an informational scheme is not the same thing as a complete informational scheme***.  Moreover, even if an update to an informational scheme as opposed to an informational scheme could meet the Asserted Claims—which it cannot—the Patentee's disclaimer in the specification and during prosecution controls, Even more importantly, Wi-LAN has never asserted that updates infringe and Wi-LAN concedes that RRT1 has never been updated.  (**Ex. 5**, LG Demonstrative Exhibit at ¶ 44.)[20] [21]

---

62.)  However, as Wi-LAN itself concedes, a universal, pre-known, unchanging rating scheme is exactly what exists in the United States today and what is preprogrammed in LG's Accused Products (*i.e.*, CEA-766).  The express language of the '402 Patent makes clear that the alleged invention of the Asserted Claims only applies if the existing situation (considering highly unlikely at the time of filing) did not exist, which consequently renders the Asserted Claims of the '402 Patent not applicable and unnecessary.  Of course, the patentee clearly did not think the present situation would come about and that is why it had no problem repeatedly giving up that claim scope.  Accordingly, informational schemes defined by the configuration information received in steps (a) through (d) of Claim 7 must relate to either new or updated ratings schemes.

[19] Claims cannot be construed to encompass an embodiment if such construction would directly contradict the claim language.  *See TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("The claims of the patent need not encompass all disclosed embodiments…the mere fact that there is an alternative embodiment disclosed in the [specification] that is not encompassed by district court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence").

[20] Likewise, Wi-LAN's reliance upon embodiments that utilize PRCC packets with revision codes as somehow supporting an embodiment in which configuration information does not need to be used is misplaced.  Indeed, the very passage Wi-LAN quotes makes it clear that the PRCC packets were previously received and used:

> If apparatus 20 has ***already received*** a complete PRCC packet sequence corresponding to that revision code then it is not necessary for apparatus 20 to parse the PRCC packets being received because the information contained in those packets ***has previously been received and stored*** in apparatus 20.

(Obj. at Ex. 1, '402 Patent at 24:64–25:2.)

[21] Ex. 5 is a demonstrative exhibit illustrating Wi-LAN's admissions to almost every one of LG's statements of fact directly relating to LG's noninfringement with respect to the issues contained in Magistrate Judge Peck's Report (namely, SUF paragraphs 44, 52–59, 61, 73, 85) based on Wi-LAN's failure to deny, to cite contradictory evidence, and/or its inclusion of impermissible argumentative and compound denials.  LG notes that numerous Second Circuit courts have deemed a movant's facts admitted where the non-movant failed to provide specific citations to evidence to controvert the movant's summary judgment 56.1 statement of facts.  *See, e.g.*, *Feis v. U.S.*, No. 09-454-cv, 2010 WL 3818125, at *2 (2d Cir. Oct. 1, 2010) (upholding district court's decision to decline to "'consider as disputed any statement supported by admissible evidence to which Plaintiff objects, but does not support with evidence,' … in perfect accordance with Local Rule 56.1(d)") (internal citations omitted); *Hartley v. Rubio*, No. 08 CV 4461, 2011 WL 1332198, at *1 n.1 (S.D.N.Y. Mar. 29, 2011) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*,

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

To the extent that Wi-LAN is arguing that the received and stored configuration information describing an informational scheme need not disclose an entire informational scheme, Wi-LAN's argument is inconsistent with its proposed definition for informational scheme.  (Obj. at Ex. 13, Dkt. No. 228, Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment of Non-Infringement at 18–19; Obj. at 16.)  "Configuration information" is information that is used to "configure" the receiver if the receiver is **not** a non-configurable, hard-coded system where all of the rating values are hard-coded in the receiver (such as LG's Accused Devices).  In fact, the specification makes this very clear:

> Consequently, the invention provides a method and apparatus to **remotely configure apparatus 20 to accommodate new schemes** for selecting and transmitting information about video signal 24 that may be introduced to augment or replace existing schemes.  (Obj. at Ex. 1, '402 Patent at 12:67–13:5 (emphasis added).)[22]

If the received configuration informations describing informational schemes were not complete, how could a receiver be configured to accept user preferences for informational schemes described by the configuration informations and to selectively block based on those user preferences?  (*See* Obj. at Ex. 1, '402 Patent at 13:12–22 ("When configuration information is received by apparatus 20 it is identified as such….This **information is used by apparatus 20 to allocate locations** in non-volatile memory means 58 **to store user preference information corresponding to _each_ category and _each_ group of labels in the informational scheme**")

---

542 F.3d 290, 312 (2d Cir. 2008) ("[I]n arriving at these undisputed facts, we reject as insufficient: (1) conclusory or non-responsive objections; (2) objections that omit citations to admissible evidence; and (3) responses that simply advocate for a different spin on otherwise uncontroverted facts."); *United States v. Karron*, 750 F.Supp.2d 480, 483 n.1 (S.D.N.Y. 2011) (Defendant "fails to comply with Local Rule 56.1, which provides that 'each statement controverting any statement of material fact [] must be followed by citation to evidence which would be admissible … as required by Federal Rule of Civil Procedure 56(e).'  Local Rule 56.1(d).  Thus, unless otherwise noted, the facts recited herein are deemed admitted.  See Local Rule 56.1(c).").

[22]During prosecution, the examiner understood the meaning of "configuration information" in the claims to be information used to configure a receiver.  (Ex. 2 at LG042171–77 ("To the extent that the received data is not 'configuration information', it would have been obvious to have considered the data in the references as broadly configuring a local subscriber's receiver").)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

(emphasis added).)[23]   Accordingly, Wi-LAN's claim that configuration information need not disclose an entire informational scheme is incorrect because a receiver *either* (1) already includes complete configuration information in the form of hardwired configuration information describing an informational scheme (which the patentee disclaimed and which the prior art teaches) or (2) receives the transmitted, complete configuration information describing an informational scheme that it requires to enable it to be configured to selectively block.[24]

### 4.   Magistrate Judge Peck Correctly Found that Wi-LAN's Proposed Construction of the Claim Term "Informational Scheme" Would Render Steps (e) Through (i) of Claim 7 Superfluous.

Notably absent from Wi-LAN's Objection is any discussion of steps (e) through (i) of Claim 7.  (*See* Obj. at 27 fn. 15.)  Instead, Wi-LAN prefers to read Claim 7 in a vacuum by arguing that configuration information describing informational schemes need only be received and stored but not used.  (Obj. at 11 ("the '402 patent invention is directed to a different method in which configuration information need only be <u>received</u> and <u>stored</u> to provide a receiver with the flexibility to respond to new informational schemes").)  Thus, according to Wi-LAN, the patentee's "statements are fully consistent with the claim scope described by the specification, *i.e.* receiving and storing configuration information describing informational schemes that are pre-programmed in the receiver."  (Obj. at 21.)   But this argument lacks support too because

---

[23](*See also* Obj. at Ex. 13, Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment of Non-Infringement, Dkt. No. 228, at 48 ("information capable of configuring the receiver to block video signals based on an informational scheme are received").)

[24] Wi-LAN's argument that the configuration informations do not need to describe the entire informational scheme and need only describe category information and that information relating to levels and/or labels need not be received is also inconsistent with the claim language.  Once again, Wi-LAN's argument is directly contradicted by the specification, which makes clear that the configuration information is a ***complete*** data structure which identifies ***all*** of the categories, levels and labels of an entire informational scheme: "[t]he configuration information identifies: the number of categories (0 or more) and the number of levels within each category in the informational scheme; the number of groups of labels (0 or more) and the number of labels in each group."  (Obj. at Ex. 1, '402 Patent at 13:14–25; *see also id.* at 14:37–15:20 (disclosing that the alleged invention requires apparatus 20 to receive all of the configuration information, not just a portion of the configuration information).)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Claim 7 requires receiving and storing, steps that, under Wi-LAN's strained construction, would have no purpose at all.[25]

Magistrate Judge Peck found this argument also to be unpersuasive because it would eradicate the claimed invention of the Asserted Claims of the '402 Patent and destroy the entire purpose of the '402 Patent.  (Report at p.48 fn. 42.)  Moreover, Wi-LAN's proposed construction would read out every limitation of Claim 7, including the "receiving" and "storing" requirements.   Indeed, Wi-LAN fails to recognize that if the "configuration information describing an informational scheme" is discarded because such information is hardwired into the receiver, then the alleged invention and its purpose is rendered superfluous by the reading out the relationship between steps (a) through (d) and by ignoring steps (e) through (i).  *See General Am. Trans Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 771 (Fed. Cir. 1996) (rejecting construction that rendered superfluous a claim requirement).

The specification unequivocally confirms that "configuration information" is information that is used solely to "configure" the receiver when the receiver is ***not a non-configurable hard-coded system*** in which all of the rating values are previously hard-coded in the receiver (such as LG's Accused Devices).  (Obj. at Ex. 1, '402 Patent at 12:67–13:5.)   In fact, the specification directly contradicts Wi-LAN's claim that configuration information can be discarded without further use, by making very clear that ***after*** the configuration informations for the transmitted informational schemes are received and stored, the receiver ***uses*** the received configuration informations to allocate locations in non-volatile memory to store user preference information defining the user's preferences for blocking based on the categories of the informational schemes defined in the received informational schemes:

---

[25]Wi-LAN takes inconsistent positions on the meaning of the term "storing" in the context of "user preferences."  In that context, Wi-LAN defines "storing" as "a continuous act that takes place throughout the life of the device," *i.e.* storing for later use.  (Obj. at Ex. 13, Dkt. No. 228, at 43.)

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

> When ***configuration information*** is received by apparatus 20 it is identified as such....***This information*** is ***used*** by apparatus 20 to allocate locations in non-volatile memory means 58 to store user preference information corresponding to each category and each group of labels in the informational scheme. (Obj. at Ex. 1, '402 Patent at 13:12–22 (emphasis added).)

It is axiomatic that if the received configuration informations describing informational schemes are not retained for later use, user preferences could neither be set nor used according to the received informational schemes described by the configuration informations, as required by Claim 7.  Here, the specification emphasizes that the alleged novelty of the invention is the ability to receive ***and use*** the transmitted configuration information to set up (*i.e.* configure) the ratings categories and levels in the receiver.  Magistrate Judge Peck properly applied this Court's obligation to consider the goal of the invention and not artificially read elements in isolation. (Report at 48.)  Accordingly, his construction comports with the objectives of the invention, as described in the claims, the specification and the prosecution history, since those objectives require that "configuration information describing an informational scheme" be received and stored in Steps (a) through (d) and be retained for subsequent ***use*** in Steps (e) through (i) of Claim 7.  The only way an informational scheme can be stored is to store its configuration information.  There is no way to practice Steps (e) through (i) without ***using*** the received and stored configuration information that describes the informational scheme, which, of course, cannot be hardwired into the receiving device.

For example, the unambiguous language of lone independent Asserted Claim 7 (with the relevant terms and limitations highlighted) demonstrates that the informational scheme(s) referred to in Steps (e)–(g) must be the very same "said" informational schemes that were

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

"received" in the first and second television channels and therefore used later in the Asserted Claims, and not preprogrammed schemes:[26]

> A method for selectively blocking video signals, said method comprising the steps of:

> a) ***receiving first configuration information*** embedded in a first television channel, said first configuration information ***describing a first informational scheme***, said first configuration information specifying, at least, numbers of levels in a first group of one or more multi-level categories of labels, in said first informational scheme;
> b) ***storing said first configuration information in a memory***;
> c) ***receiving second configuration information*** embedded in a second television channel, said second configuration information ***describing a second informational scheme***, said second configuration information specifying, at least, numbers of levels in a second group of one or more multi-level categories of labels, in said second informational scheme;
> d) ***storing said second configuration information in said memory***;
> e) storing in said memory user preference information for each of said categories in each of ***said first and second informational schemes***;
> f) receiving a first video signal comprising embedded information specifying at least, either one of ***said first or second informational schemes***, and current levels in each of said one or more categories in said specified informational scheme;
> g) extracting said embedded information and comparing said extracted information with said stored preference information for ***said specified informational scheme***;
> h) if the result of said comparison indicates that said first video signal should not be displayed, blocking said first video signal from being displayed on a video display; and, i) if the result of said comparison indicates that said first video signal

---

[26] Reading Claim 7 in context, including the use of "said" for repeated elements within the claim, supports the conclusion that "said first or second informational schemes" and "said specified informational scheme," as used in Steps (e)–(g), refer to schemes which, in the first instance, are received with the first and second television channels in which they are respectively embedded, as per Steps (a) and (c). Any other reading would eliminate the antecedent basis requirement associated with the word "said." Indeed, Wi-LAN admits that informational schemes are received: ***"[T]he '402 patent describes rating schemes for programming content (first and second "informational schemes") that are received and stored by television receivers."*** (*See* Obj. at Ex. 9, Dkt. No. 161, at 3.) Accordingly, the informational scheme referred to in Steps (e)–(g) must be the schemes that were "received" in the first and second television channels, and not some other pre-programmed schemes, as Wi-LAN contends. Moreover, Wi-LAN's own expert Mr. Dolan confirmed in his deposition that "user preference information" refers to the informational schemes received in Steps (a) and (c):



(**Ex. 6**, Dolan Dep. at 165; *see also id.* at 163–64, 177–78.)

should be displayed, allowing said first video signal to be displayed on said video display.

LG respectfully submits that the Court should reject Wi-LAN's Objection and adopt Magistrate Judge Peck's construction of "first informational scheme" and "second informational scheme" to mean "[a first/second] set of kinds of ratings information transmitted about a program … and of which the receiver has no advance knowledge."

### B. Magistrate Judge Peck Correctly Found That LG's Accused Products Do Not Literally Infringe The Asserted Claims Of The '402 Patent Because They Have Advance Or Prior Knowledge Of Any Alleged Informational Schemes.

Wi-LAN admits that LG's Accused Products have advance knowledge of CEA-766 (which includes information conveyed in RRT1 and more) and any alleged informational schemes contained therein.  (*See* Obj. at 27 ("While Wi-LAN does not dispute that LG's accused products are pre-configured with RRT1…"); Report at 52).)  As discussed above, a receiving device cannot infringe Claim 7 if it has advance knowledge of the "configuration information describing a first informational scheme" and the "configuration information describing a second informational scheme."  Thus, as Magistrate Judge Peck properly concluded, LG's Accused Products do not infringe Claim 7 of the '402 Patent.  (Report at 49–56; Ex. 5.)

To implement the blocking functionality required by FCC regulation, television receivers must have complete knowledge of the information included in the Valenti Ratings System and described in CEA-766—information that is not fully incorporated in RRT1.  Thus, television receivers, including LG's Accused Products, are effectively required to have the contents of CEA-766 embedded or encoded in a permanent, unchangeable way during manufacture.  While Wi-LAN argues that RRT1 is the only configuration information that describes first and second informational schemes, RRT1 alone cannot be used by receivers to comply with FCC rules.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Wi-LAN and Wi-LAN's experts concede that the Accused Products include explicit, encoded and pre-compiled ratings system information for CEA-766 (and necessarily RRT1). (Ex. 6 at 99, 122–23, 220–21; Report at 52 ("Wi-LAN does not contest that LG's products are pre-configured with RRT1 data").)  In fact, Mr. Collings, the named inventor of the '402 Patent and a 30(b)(6) deposition designee of Wi-LAN, submitted the following statement to the FCC:

> I explained that the RRT for rating region 0x01 [RRT1] (as defined in section 4.1 of EIA-766-A) *can not be fully interpreted by DTV receivers* using the RRT syntax specified in PSIP *alone*.  (**Ex. 7,** 10/24/03 Ex Parte Letter from T. Collings to FCC at WL0279085 (emphasis added).)

Wi-LAN's experts Mssrs. Dolan and Tanner also agree that Digital Television ("DTV") receivers, including LG's Accused Products, cannot interpret the allegedly broadcast RRT1 and therefore disregard it.  (**Ex. 8**, Tanner Dep. at 213–14.)  As shown below, Wi-LAN's expert Mr. Dolan conceded that the Accused Products disregard and do not process any broadcast RRT1:



(Ex. 6 at 140 (emphasis added).)

Moreover, when asked how LG creates the on-screen user interface for parental controls Mr. Tanner explained that LG's Accused Products are hard-coded in Korea with that information:



(Ex. 8 at 211–12 (emphasis added).) [27]

---

[27]Wi-LAN's expert Mr. Dolan agrees that the RRT1 table that is encoded and sent to the Accused Products would not provide enough information for the Accused Products to break up the table into three groups (MPAA, TV Guidelines and Children and TV) for use in the on-screen interface.  (Ex. 6 at 120.)

Mr. Tanner further confirmed that LG's Accused Products contain known and previously stored configuration information:

███████████████████████████████████████

████████████(Ex. 8 at 144 (emphasis added).)[28]

Likewise, Wi-LAN's expert Mr. Dolan also concedes that certain information defined in CEA-766 such as the limits on what ratings are possible, the inter-relationships between dimensions, and additional text providing the meaning of D, S, L and V[29] —is **not** included in the allegedly broadcast RRT1. (Ex. 6 at 99, 122–23 (stating that Table 3 from CEA-766 is not included in the RRT1 that is encoded and broadcast and that "████████████████████

████████████").)[30, 31]

As LG's Accused Devices are encoded with CEA-766 at the time of manufacture (which necessarily includes RRT1 and all of the informational schemes Wi-LAN alleges are contained in any broadcasted RRT1), Wi-LAN cannot adduce any evidence of LG's Accused Devices receiving configuration informations describing informational schemes of which LG's Accused Devices **do not have advance or prior knowledge**. (Ex. 4 at ¶¶ 14–18, 38–39.)

Accordingly, Magistrate Judge Peck correctly found that Wi-LAN cannot show direct infringement of Steps (a) through (d) and cannot raise a genuine issue of material fact that LG's accused products do not receive configuration informations describing informational schemes of which the accused products have no advance or prior knowledge. Accordingly, LG's Accused

---

[28]Wi-LAN's expert Mr. Dolan also admits that LG's Accused Products have advance knowledge of CEA-766 (which includes RRT1) and any alleged informational schemes. (Ex. 6 at 220–21.)

[29]D stands for Dialogue, S stands for Sex, L stands for Language and V stands for Violence.

[30]Wi-LAN's expert Mr. Dolan testified that RRT1 as represented in Mr. Tanner's Infringement Report is "████████
████████████" (Ex. 6. at 93.)

[31]*See* Ex. 5.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

Products do not and cannot literally infringe asserted independent Claim 7 of the '402 Patent and the remaining asserted dependent Claims 8–11 which depend from Claim 7, and this court should adopt Magistrate Judge Peck's recommendation of granting LG's motion for summary judgment of noninfringement.[32]

### C.   Magistrate Judge Peck Correctly Found That LG's Accused Products Do Not Infringe The Asserted Claims Of The '402 Patent Under The Doctrine Of Equivalents.

Magistrate Judge Peck also correctly concluded that LG's Accused Products do not infringe the Asserted Claims under the Doctrine of Equivalents and that Wi-LAN is barred from asserting infringement under the Doctrine of Equivalents based on prosecution history estoppel. (Report at 52–55.)[33] According to Magistrate Judge Peck, no reasonable jury could conclude that informational schemes about which the receiver has no advance knowledge are equivalent to pre-programmed informational schemes because they are "polar opposites." (Report, at 52 (citing, see, e.g., *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1344 (Fed. Cir. 2006) ("[T]he game method in which the winning combination is not known until after the game begins cannot be equivalent to a game method where this occurs before because 'after is opposite of before, not equivalent.'").) For the reasons discussed above with respect to his prosecution disclaimer holding, Magistrate Judge Peck also correctly determined that Wi-LAN is barred from asserting that receivers with advance knowledge of the claimed informational schemes can infringe the Asserted Claims under the Doctrine of Equivalents, based on the doctrine of

---

[32] Asserted Claims 8–11 of the '402 Patent, which depend from Claim 7, are deemed to include all of the limitations of Claim 7.  35 U.S.C. § 112, ¶ 4.  If an accused product does not infringe an independent claim, by definition it does not infringe any claims depending therefrom. *See, e.g., Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007).

[33] LG also moved the Court to preclude Wi-LAN from raising a Doctrine of Equivalents theory of infringement as Wi-LAN never disclosed such a theory during fact discovery, or in expert discovery.  (Dkt. No. 115, Defendants' Motion to Preclude Plaintiff from Pursuing a Claim of Patent Infringement Under the Doctrine of Equivalents; Dkt. No. 117, Defendants' Memorandum of Law in Support of their Motion to Preclude Plaintiff from Pursuing a Claim of Patent Infringement Under the Doctrine of Equivalents.)  The Magistrate Judge denied that motion as moot.

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

prosecution history estoppel.  (Report at 53.)  Thus, Magistrate Judge Peck found, in accordance with Federal Circuit law, that Wi-LAN cannot recapture its disclaimed scope through the Doctrine of Equivalents.  *Id.*  LG's Accused Products do not infringe asserted independent Claim 7 of the '402 Patent and the remaining asserted dependent Claims 8–11 which depend from Claim 7 under the Doctrine of Equivalents, and for this additional reason, this Court should adopt Magistrate Judge Peck's recommendation of granting LG's motion for summary judgment of noninfringement.

## V.      CONCLUSION

For the foregoing reasons, LG respectfully requests that the Court reject Wi-LAN's Objection and affirm Magistrate Judge Peck's Report and Recommendation in its entirety.

Dated: September 2, 2011                           Respectfully submitted,

                                                  **GREENBERG TRAURIG, LLP**


                                                  *_____/s/ James J. Lukas, Jr._____*
                                                  Richard A. Edlin (RE 1998)
                                                  Daniel I.A. Smulian (DS 4746)
                                                  200 Park Avenue
                                                  New  York, New York 10166
                                                  (212) 801-6528 (*telephone*)
                                                  (212) 801-5528 (*facsimile*)
                                                  edlinr@gtlaw.com
                                                  smuliand@gtlaw.com

                                                  Richard D. Harris (*pro hac vice*)
                                                  Jeffrey G. Mote (*pro hac vice*)
                                                  James J. Lukas, Jr. (*pro hac vice*)
                                                  Eric J. Maiers (*pro hac vice*)
                                                  Matthew J. Levinstein (*pro hac vice*)
                                                  Greenberg Traurig, LLP
                                                  77 West Wacker Drive, Suite 3100
                                                  Chicago, Illinois 60601
                                                  (312) 456-8400 (*telephone*)
                                                  harrisr@gtlaw.com
                                                  motej@gtlaw.com

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

**Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.**

CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on September 2, 2011.

*/s/ James J. Lukas, Jr.*