UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WI-LAN, INC.,

                               Plaintiff,

                  -against-                                  10 Civ. 432 (LAK) (AJP)

LG ELECTRONICS, INC. and LG ELECTRONICS
U.S.A., INC.,

                               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

       Appearances:

David A. Koenigsberg                Richard A. Edlin
Melissa K. Driscoll                   Daniel I.A. Smulian
MENZ BONNER & KOMAR L.L.P.         Eric J. Maiers
                                      James J. Lukas
David J. Grais                        Jeffrey G. Mote
Jobe G. Danganan                  Matthew J. Levinstein
Owen L. Cyrulnik                 Richard D. Harris
GRAIS & ELLSWORTH, LLP           GREENBERG TRAURIG, LLP

David E. Sipiora                  *Attorneys for Defendants LG Electronics, Inc.*
Jonathan D. Link                *and LG Electronics U.S.A., Inc.*
Matthew C. Holohan
Richard S. Meyer
TOWNSEND AND TOWNSEND AND CREW, LLP

Stephen E. Baskin
KILPATRICK TOWNSEND AND STOCKTON LLP

*Attorneys for Plaintiff Wi-Lan, Inc.*

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on plaintiff's objections to the report and

recommendations of Magistrate Judge Andrew J. Peck (the "R&R"), which recommended that (1) the motion of defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG") for summary judgment dismissing plaintiff Wi-Lan Inc.'s ("Wi-Lan") patent infringement claim be granted, (2) Wi-Lan's motion for summary judgment dismissing LG's trademark infringement and false designation counterclaims be granted, and (3) all other remaining motions and claims be denied or dismissed as moot or for lack of subject matter jurisdiction. Plaintiff sued LG in 2010 alleging that certain devices LG was selling infringed claims 7 through 11 of U.S. Patent No. 5,828,402,[1] which claim a method for "Selectively Blocking Audio and Visual Signals".[2]

*Background*

        The parties agree that a determination of whether defendants infringed claim 7 of the '402 patent is dispositive of the patent infringement claim in this case.[3] Indeed, the outcome of plaintiff's infringement claim turns on the even narrower issue of the correct construction of the term "informational scheme," which appears many times in claim 7, and which reads:

---

[1]     Hereinafter the "'402 patent". The '402 Patent was issued in October 27, 1998 to Professor Timothy Collings. *See* '402 Patent, p. 1. Wi-Lan is now the owner by assignment. The patent is entitled "Method and Apparatus for Selectively Blocking Audio and Video Signals." *Id.*

[2]     The patented method is designed to allow a device to store and compare multiple sets of configuration information about television programming ratings, thereby allowing the device to respond to changes in television ratings without the need for manual reprogramming or re-wiring. *See* DI 278 at 2.

[3]     Claim 7 is the only independent claim of the four claims at issue, and so the outcome of the patent infringement allegations ultimately rests on whether it alone was infringed. If defendants did not infringe claim 7, then there has been no patent infringement. If they did, then it is likely they infringed claims 8 through 11 as well.

"7.  A method for selectively blocking video signals, said method comprising the steps of:

a) receiving first configuration information embedded in a first television channel, said first configuration information describing a first informational scheme, said first configuration information specifying, at least, numbers of levels in a first group of one or more multi-level categories of labels, in said first informational scheme;

b) storing said first configuration information in a memory;

c) receiving second configuration information embedded in a second television channel, said second configuration information describing a second informational scheme, said second configuration information specifying, at least, numbers of levels in a second group of one or more multi-level categories of labels, in said second informational scheme;

d) storing said second configuration information in said memory;

e) storing in said memory user preference information for each of said categories in each of said first and second informational schemes;

f) receiving a first video signal comprising embedded information specifying at least, either one of said first or second informational schemes, and current levels in each of said one or more categories in said specified informational scheme;

g) extracting said embedded information and comparing said extracted information with said stored preference information for said specified informational scheme;

h) if the result of said comparison indicates that said first video signal should not be displayed, blocking said first video signal from being displayed on a video display; and, I) if the result of said comparison indicates that said first video signal should be displayed, allowing said first video signal to be displayed on said video display."[4]

Wi-Lan argues that the appropriate construction of "informational scheme" is that set

---

[4]  '402 Patent at Col. 28 Ln. 66- Col. 29 Ln. 37.

out in the "summary of invention" section of the '402 patent – i.e., "a set of kinds of information that may be transmitted about a program, a set of values that may be transmitted for the different kinds of information and the meanings of those values."[5]  It asserts that this definition is unambiguous and, accordingly, that reliance on other portions of the "summary of invention" section of the patent,[6] its prosecution history, or the limitations stated in an earlier patent application[7] is not appropriate.  To the extent these sources are considered, Wi-Lan argues that they support its proposed construction of "informational scheme."

LG unsurprisingly rejects both Wi-Lan's proposed construction of "informational scheme" and its arguments that other portions of the '402 patent, its prosecution history, and the earlier patent application are either consistent with its construction or should not be considered in constructing the term "informational scheme" for present purposes.  LG offers its own construction, namely "a set of kinds of ratings information transmitted about a program that includes information assigned by one or more rating organizations, and of which the receiver has no advance knowledge."[8] The most obvious – and central – distinction between this proposed construction and the one Wi-Lan

---

[5]   '402 patent at Col. 5 Lns.39-43.

[6]   The "summary of the invention" section of the '402 patent notes in relevant part that the prior (and therefore non-patentable) art includes systems that "must be constructed or initially programmed with advance knowledge of the [informational] schemes to be used." '402 Patent at Col. 2 Lns. 17-20.

[7]   A patent application for U.S. Patent No. 08/667,030 was filed on June 20, 1996, and was entitled "Method and Apparatus for Selectively Blocking Audio and Video Signals" as well. *See* DI 204-15, Ex. 3 at p. 1.  The application was ultimately rejected by the U.S. Patent & Trademark Office. *Id.* at Ex. 3, LG 082029 ¶ 3.  That patent application is hereinafter referred to as the "'030 patent application."  The '402 patent was filed as a successive application to the '030 application, and Wi-Lan has asserted multiple times that it be given the same filing date as the '030 application. *See* DI 284 at p. 4.

[8]   *See* DI 173 at 11-14; *see also* DI 263 at 9-10.

offers is that it mandates that an "informational scheme" under claim 7 should be comprised only of new information, rather than including as well content about which a receiver or device has advance knowledge.

Magistrate Judge Peck issued a thorough and well reasoned R&R.[9]  He determined that the correct construction of "informational scheme" is "[a first/second] set of kinds of ratings information transmitted about a program that includes information assigned by one or more rating organizations, of which the receiver has no advance knowledge."[10]  After construing "informational scheme," he determined that defendants had not infringed the '402 patent, and recommended that their motion for summary judgment dismissing the patent infringement claim be granted, plaintiff's motion for summary judgment dismissing certain affirmative defenses be denied as moot, and plaintiff's motion for sanctions be denied.   He further recommended that plaintiff's motion for summary judgment dismissing defendants' trademark infringement and false designation counterclaims be granted.

Wi-Lan objects to the R&R's recommendations with respect to LG's summary judgment motion and its own sanctions motion, making arguments similar to those it advanced in its initial papers.  LG did not object to the R&R.

---

[9]      DI 227.  This opinion assumes familiarity with the facts, the technological specifications of both the '402 patent and defendants' allegedly infringing devices, and the holdings set forth in the excellent R&R.

[10]     This construction is almost identical to defendants' proposed construction, with the lone difference being the insertion of "[a first/second]" at the beginning to mirror the language of claim 7.

*Discussion*

*Patent Infringement*

This Court reviews *de novo* Magistrate Judge Peck's reasoning and conclusions regarding the '402 patent claim construction and his subsequent infringement determination.[11]

Issues of patent infringement are subject to a two-part analysis.  First, the claim scope is determined.  "[T]hen the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent."[12]

In construing patent claims, claim terms are "given their ordinary and customary meaning."[13]  Courts construing claim terms must look first "to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification, and, if in evidence, the prosecution history."[14]  Only after considering these intrinsic elements may the court consider extrinsic elements, such as the prosecution history, expert testimony, dictionaries, and treatises.[15]

Magistrate Judge Peck determined the issue of the alleged patent infringement based entirely on his construction of the term "informational scheme" as it appears in claim 7.  This Court agrees that the claim construction of "informational scheme" is dispositive in this case.  If Wi-Lan's

---

[11]

    Fᴇᴅ. R. Cɪᴠ. P. 72(b)(3) ("The district judge must determine de novo any [dispositive] part of the magistrate judge's disposition that has been properly objected to.")

[12]

    *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

[13]

    *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170 (2006).

[14]

    *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal citation omitted).

[15]

    *See, e.g., AWH Corp.*, 415 F.3d at 1317 (internal citations omitted).

understanding of the term – which allows a device to have advance knowledge of an informational scheme it receives –  is correct, then LG has infringed the patent and is not entitled to summary judgment.  If, however, LG's construction of the term is correct – that is, if the device may *not* have advance knowledge of the informational scheme it is receiving – then there has been no infringement of the '402 patent, and LG is entitled to summary judgment.  The Court therefore focuses on the claim construction of "informational scheme."[16]

Wi-Lan's contention that Magistrate Judge Peck's recommended construction is incorrect is based on its contentions that (1) the term "informational scheme" is "expressly and unambiguously defined" in the '402 patent so as to allow pre-configured information to be included,[17] (2) the preferred embodiments listed in the '402 patent contain pre-configured informational schemes,[18] and (3) the prosecution history and purpose of the '402 patent do not support the determination that "informational schemes" may not be preprogrammed.[19]

LG, however, agrees with Magistrate Judge Peck's conclusion that the correct construction of "informational scheme" includes only information about which a receiver or device does not have advance knowledge.  Particularly, it relies on a statement in the "summary of invention" section of the '402 patent which reads that "[t]he prior art blocking systems include devices which must be constructed or initially programmed with advance knowledge of the coding scheme to be

---

[16] As noted in the R&R, citing Wi-Lan's own briefing in this matter, "the Court need only formally construe claims to the extent necessary to resolve disputes between the parties." R&R at 42 n.40.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

[17] DI 278 at 16.

[18] *Id.* at 16-19.

[19] *Id.* at 19-27.

used."[20]  LG argues this statement means that the patented method in the '402 patent may not encompass the use of such "initially programmed" information.  It points also to the prosecution history of the '402 patent and the '030 patent application, arguing that Wi-Lan repeatedly indicated during the patent application process that it was entitled to a patent in this instance precisely because the "first informational scheme" and "second informational scheme" delineated in claim 7 were not – and could not be – informational schemes of which a device had advance knowledge.[21]

        In parsing these arguments and determining whether "informational scheme" encompassed information about which a device had advance knowledge, Magistrate Judge Peck rightly concluded that both the '402 patent itself and the prosecution history revealed "a clear intent to exclude from Claim 7's scope 'informational schemes' that are pre-programmed into a receiver . . . ."[22]  He based this construction on his determination that the purpose of the patent was to "remotely configure [a receiver] to accommodate new [informational] schemes . . . that may be introduced to augment or replace existing schemes . . .  mak[ing] it unnecessary to physically alter [a receiver] if a new informational scheme is adopted."[23]  He agreed with defendants that the description of the prior art set forth in the '402 patent further supported the understanding that an "informational scheme"

---

[20]

    '402 Patent at Col. 2 Lns. 11-23.  *See also Verizon Servs. Corp. v. Vonage Holding Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.")

[21]

    DI 284 at 17-19.

[22]

    R&R at 43.  *See also AWH Corp.*, 415 F.3d at 1316 (holding that where a patent specification reveals "an intentional disclaimer, or disavowal, or claim scope by the inventor . . . , the inventor's intention, as expressed in the specification, is regarded as dispositive").

[23]

    In determining this purpose, Magistrate Judge Peck excerpted language from the '402 patent itself.  *See* '402 Patent at Col. 13 Lns. 1 - 6.

could not contain pre-programmed information.[24]  Finally, he relied on the prosecution history of the earlier '030 patent application, which shares a title and many other similarities with the '402 patent.[25]  In examining this history, he concluded that the inventor's disclaimers definitively showed that "informational schemes" were intended to encompass only new information.[26]

All of these considerations led Magistrate Judge Peck to the conclusion that "informational scheme" as it is employed in claim 7 could not include preprogrammed information.[27]  In accordance with this view, he construed the term in a manner very similar to LG's suggested construction.

Magistrate Judge Peck's construction of "informational scheme" is exceedingly precise and well-rendered.  Upon review, it is almost exactly "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention."[28]

The recommended construction, in the Court's view, errs in just one minor respect: it limits the possible informational schemes covered to instances in which there is a "set of kinds" of data

---

[24]

R&R at 43-44.

[25]

*Id.* at p. 44 n.41 (holding that the prosecution history of the '030 application was relevant "to understanding how the inventor understood the invention reflected in the '402 Patent").

[26]

*Id.* at 44-47.

[27]

The R&R also notes several other considerations supporting this holding.  *See id.* at 48-49 & n.42.  These include a holding that plaintiff's proposed construction would render sections a through d of claim 7 superfluous, and a determination that plaintiff's argument that disclosed embodiments in the '402 patent had advanced knowledge of information they received was meritless.  This Court agrees with Magistrate Judge Peck on both of these points.

[28]

*AWH Corp.*, 415 F.3d at 1316 (internal citations omitted).

conveyed to the receiver.  The plural nature of the word "kinds" as used in the construction implies the necessary existence of more than one characteristic describing relevant ratings information.  It is possible to imagine, however, a rating  system that included only a single parameter. As the R&R noted, the '402 Patent can be performed "if, for example, it receives configuration information describing a new or updated informational scheme."[29]  This "new" or "updated" scheme need not necessarily contain multiple variables to alter the "advance knowledge" already programmed in the receiver.  A single previously-unknown "new" or "updated" item in theory could serve to perform all of the steps of the method laid out in claim 7, as well as claims 8 through 11.   The correct claim construction of "informational scheme," then, is almost identical to Magistrate Judge Peck's, but with one small addition to allow for a singular "kind" as well as " kinds" of information that might be received.  That is, "informational scheme" should be construed as a  "[a first/second] *kind or* set of kinds of ratings information transmitted about a program that includes information assigned by one or more rating organizations, of which the receiver has no advance knowledge."

This insertion is necessary because it is possible (hypothetically) that there some day might exist a  new "informational scheme" that consists of a single "kind" of data related to television programming ratings that would be stored and used to modify the ratings information stored in a device or receiver.  For example, a ratings agency could create and implement a new single-category rating scheme that would replace the current ratings scheme and that would contain just one single kind of ratings data.  Alternately, it is possible to imagine the addition of a single category of ratings information that would be transmitted to supplement the current ratings information scheme.  This additional information would not be pre-programmed into any device, including LG's, and the method described in the '402 patent therefore would have to be employed to "update" the device with the new

---

[29]     R&R at 48 n.42.

information, of which the device necessarily would have "no advanced knowledge." Accordingly, any such addition could very well fall within claim 7's method, and might infringe if it were not otherwise appropriately licensed.[30]

        That all said, this slight under-inclusion of the scope of possible "informational scheme[s]" that might fall within claim 7's described method ultimately serves to underscore the fundamental error in Wi-Lan's arguments regarding infringement. It is exceedingly difficult at present to understand what, in the future world of television ratings schemes, might constitute an "informational scheme" of which LG's device – or any other potentially infringing device – would not have advanced knowledge. This is because such an "informational scheme" does not exist.[31] Wi-Lan argues, as it must, in hypotheticals. And such hypotheticals regarding what another party someday might do are insufficient to show infringement when, as here, a method patent is at issue. As both

---

[30]        Defendants take issue with the idea that an update of an informational scheme could be considered a complete informational scheme under the '402 patent's terms. *See* DI 284 at 24-27. This issue is beyond the scope of what this Court or Magistrate Judge Peck needs to resolve to determine the relevant motions. As Defendants point out, "Wi-Lan has never asserted that updates infringe [the '402 patent] and Wi-Lan concedes that [the information LG's devices receive] has never been updated." *Id.* at 25. This Court therefore makes no final determination on when, if ever, an "update" to an informational scheme about which the device had no advance knowledge would infringe on claim 7 or any other portion of the '402 patent.

[31]        As explained in greater depth in the R&R, the ratings system currently utilized by LG's devices is called CEA-766, which the FCC adopted in 2004. *See* R&R at 16. LG's devices are fully pre-programmed with CEA-766's rating information. While in operation, the devices do receive information about ratings information under a ratings system called RRT-1. RRT-1, however, contains only a subset of information utilized in CEA-766, and no additional information. *See id.* at 17-18. While the FCC has mandated that newer receivers and devices such as defendants' must be able to process newer ratings systems, including one called RRT-5, this ratings system has never been designated for use in the U.S., nor has any other ratings system that expands the scope of CEA-766 in any way. *Id.* at 16-19. For the time being, CEA-766 is the only ratings system used or transmitted in the U.S. Because defendants' allegedly infringing devices have this system pre-programmed into them, they have "advance knowledge" of all the ratings information that they currently receive from incoming television signals, including RRT-1.

defendants and Magistrate Judge Peck have noted, the fact that a party *could* infringe on a method patent is insufficient. The "words 'capability,' 'could be used,' and 'ability' have no place in a discussion of method claims."[32] Furthermore, "[h]ypothetical instances of direct infringement are insufficient."[33]

Notwithstanding this minor modification to the claim construction, then, Magistrate Judge Peck's ultimate conclusions in this case are well-reasoned and well-supported, and the Court hereby adopts them. A method patent is not infringed "unless all steps or stages of the claimed process are utilized."[34] Whether defendants' devices in the future could receive informational schemes about which they do not have advanced knowledge therefore is irrelevant.[35] This has not yet happened. Until Wi-Lan can show that defendants have actually utilized the method that the '402 patent teaches – and as Magistrate Judge Peck held and elaborated upon in greater detail in the R&R, it categorically cannot at present given the correct claim construction of "informational scheme"[36] – there has been no showing of direct infringement.

Wi-Lan's only remaining argument is that LG has infringed the '402 patent under the

---

[32]
    R&R at 55.

[33]
    *ACCO Brands, Inc. v. ABA Locks Mfg. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). *See also Fujitsu Ltd.v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("[I]t is not enough to simply show that a produce is capable of infringement; the patent owner must show evidence of specific instances of direct infringement.")

[34]
    *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

[35]
    As the R&R explains at length, the receipt of the RRT-1 information that defendants' devices currently receive does not meet the appropriate construction of "informational scheme." These devices already come pre-programmed with complete knowledge of all information contained in RRT-1. *See* R&R at 55.

[36]
    *See* R&R at 51-52.

13

doctrine of equivalents.[37]  This too fails for the same reasons that Magistrate Judge Peck elaborated upon in the R&R.  Given the appropriate claim construction of "informational scheme," no reasonable jury could conclude that an informational scheme that is pre-programed into a television receiver is the "equivalent" of such information about "which the receiver has no advance knowledge.[38]  These two concepts are, as Magistrate Judge Peck noted, "polar opposites."[39]  Defendants therefore have not infringed the '402 patent under the doctrine of equivalents.

*Sanctions*

A magistrate judge's determination in a non-dispositive matter such as a motion for sanctions is reviewed for clear error.[40]

Wi-Lan objects to Magistrate Judge Peck's recommendation that its motion for sanctions be denied.  Magistrate Judge Peck so recommended because Wi-Lan failed to submit any evidence of fees and costs, leaving him without a means to determine whether sanctions might be reasonable and, if so, in what amount.[41]   The R&R lays out clear, concise reasons why Wi-Lan's

---

[37]
    *E.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) ("Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be held to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.")

[38]
    *See, e.g.,  Planet Bingo, LLC v. Game Tech Int'l, Inc.*, 472 F.3d 1338, 1344 (Fed. Cir. 2006).

[39]
    R&R at 52-53.

[40]
    FED. R. CIV. P. 72(a).

[41]
    R&R at 2 n.1.

motion for sanctions should be denied.[42]  Wi-Lan has pointed to no legal error that Magistrate Judge

Peck made in recommending that this motion be denied.  Magistrate Judge Peck's recommendation

therefore was not erroneous, and the motion for sanctions should be denied.


*Trademark Infringement Counterclaims*

        LG did not object to Magistrate Judge Peck's recommendation that Wi-Lan be granted

summary judgment dismissing its trademark infringement and false designation counterclaims.   LG

failed to offer evidence of customer confusion stemming from Wi-Lan's use of LG's logo on Wi-Lan's

website, or even to show that such confusion was likely.  As the R&R noted, identification of a logo

associated with defendants, without more, does not constitute trademark infringement.[43]  Accordingly,

Wi-Lan is entitled to summary judgment dismissing these claims.


*LG's Affirmative Defenses*

        LG asserted affirmative defenses against Wi-Lan regarding its patent infringement

claim in its answer to the complaint.  Wi-Lan then moved for summary judgment dismissing several

of these affirmative defenses, which included lack of notice, laches, failure to mitigate damages, unjust

enrichment, and invalidity of the '402 patent based on the disclosure requirements of 35 U.S.C. § 112.

In light of the Court's determination that LG did not infringe the '402 patent, Wi-Lan's motion for

---

[42]

        Namely, Wi-Lan submitted thousands of pages of evidence in connection with various motions and cross-motions, but somehow failed to submit any evidence regarding costs and fees in connection along with its motion for sanctions.  It then attempted to reserve the right to submit such evidence later, "if and when the Court awards sanctions."  In so doing, it failed to submit a complete and fully supported motion.  *See* R&R at 2 n. 1.

[43]

        *See, e.g., Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102-3 (2d Cir. 2010), *cert denied*, 131 S. Ct. 647 (2010).

summary judgment dismissing these affirmative defenses is moot.

*Conclusion*

Magistrate Judge Peck's construction of "informational scheme" is modified as described above, and his final recommendations are adopted.  Defendants' motion for summary judgment dismissing the patent infringement claim [DI 172] is granted.  Wi-Lan's motion for partial summary judgment dismissing LG's affirmative defenses [DI 156] is denied as moot.  Wi-Lan's motion for sanctions [DI 168] is denied.  Wi-Lan's motion for partial summary judgment on LG's trademark infringement and false designation counterclaims [DI 156] is granted.  All remaining state law claims are dismissed without prejudice, and all other remaining open motions [DI 198] are denied as moot.

The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:        March 7, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)