UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _5/10/13_____

WI-LAN INC.,                                    :

                Plaintiff,          :               10 Civ. 0432 (LAK) (AJP)

         -against-              :          **REPORT AND RECOMMENDATION**

LG ELECTRONICS, INC. & LG ELECTRONICS   :
U.S.A., INC.,
                                :

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

          Wi-Lan initiated this patent infringement action on January 19, 2010. (Dkt. No. 1:

Compl.)  On December 11, 2012, the Federal Circuit affirmed this Court's decision granting

summary judgment to LG, dismissing Wi-Lan's patent infringement claims.  Wi-Lan, Inc. v. LG

Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.), report & rec.

adopted as modified, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.), aff'd per curiam,

493 F. App'x 103 (Fed. Cir. 2012).  Presently before the Court is LG's motion for an award of

attorneys' fees and expenses pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 11 and the Court's inherent

authority.  (Dkt. No. 314: Notice of Motion.)

          For the reasons set forth below, because this is not an "exceptional case" and Rule

11 does not apply, LG's motion should be DENIED.

## BACKGROUND[1]

In May 2006, LG took a license from Wi-Lan permitting LG "to manufacture products 'within the scope' of [Wi-Lan's] '402 Patent," following a Federal Communications Commission ("FCC") mandate requiring digital television receivers to be capable of receiving remotely transmitted content rating systems—a feature Wi-Lan claimed its patent covered. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *10. Thereafter, LG consistently reported no royalty bearing sales. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *10. Wi-Lan filed suit, asserting contract-based and patent infringement claims. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *10 n.13. Wi-Lan subsequently terminated LG's license and withdrew its breach of contract claim. Id.

On August 2, 2011, this Court recommended granting summary judgment to LG dismissing Wi-Lan's patent infringement claim. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075. Judge Kaplan adopted the Report & Recommendation, and the Federal Circuit affirmed. Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.), aff'd per curiam, 493 F. App'x 103 (Fed. Cir. 2012).

### The Court's Summary Judgment Decision Dismissing Wi-Lan's Infringement Claim

Claim 7 of Wi-Lan's '402 Patent describes a method by which, inter alia, "informational schemes" are transmitted to, received and stored by digital television receivers. Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *18 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.). The Court's construction of the term "informational scheme" was dispositive of Wi-Lan's

---

[1]    A complete statement of the case's factual and procedural background is set forth in this Court's August 2, 2011 Report & Recommendation. Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *1-10 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.).

infringement claim. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *18 ("The parties dispute the meaning of virtually every term in Claim 7. But because construction of the term 'informational scheme' is dispositive of the issue of infringement, the Court proceeds to construction of that term." (citations omitted)); see also Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2012 WL 760148 at *3 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.) ("This Court agrees that the claim construction of 'informational scheme' is dispositive in this case.").

Wi-Lan argued that the scope of the term "informational scheme" was broad enough to include ratings information of which the receiver had no advance knowledge and ratings information that was preprogrammed into the receiver, whereas LG argued that the term excluded preprogrammed ratings information. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *19; see also Wi-Lan, Inc. v. LG Elecs., Inc., 2012 WL 760148 at *2 ("The most obvious—and central—distinction between [LG's] proposed construction and the one Wi-Lan offers is that [LG's] mandates that an 'informational scheme' under claim 7 should be comprised only of new information, rather than including as well content about which a receiver or device has advance knowledge.").

The Court examined the specification and prosecution history, including a thorough review of the inventor's statements as to the claim's scope. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *19-22. In numerous instances, the inventor distinguished prior art on the basis that it required preprogrammed information and was incapable of accommodating new ratings information of which the receivers had no advance knowledge. Id. The Court concluded:

> In this case, the specification and prosecution history both reveal a clear intent to exclude from Claim 7's scope "informational schemes" that are preprogrammed into a receiver at the time of manufacture. . . .
>
> . . . .

>        Having thus distinguished the prior art, Wi-Lan cannot now argue that its
> method patent covers blocking systems that merely use preprogrammed
> "informational schemes" to selectively block unwanted programs.
>
>        Such a broad interpretation of claim scope would run counter to the stated
> purpose of the invention and the clear statements of the inventor as to what the '402
> Patent does not do. . . .
>
>        Accordingly, Claim 7 should be construed to exclude "informational
> schemes" programmed into the receiver at the time of manufacture. The claim term
> "informational scheme" should be construed as a "set of kinds of ratings information
> transmitted about a program . . . and of which the receiver has no advance
> knowledge."

Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *19, *21-22 (citations omitted).[2]

        Having so construed the claim, the Court went on to find that there was no evidence

of infringement. Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *22-26; see also Wi-Lan,

Inc. v. LG Elecs., Inc., 2012 WL 760148 at *3 ("If Wi-Lan's understanding of the term—which

allows a device to have advance knowledge of an informational scheme it receives—is correct, then

LG has infringed the patent and is not entitled to summary judgment. If, however, LG's construction

of the term is correct—that is, if the device may not have advance knowledge of the informational

scheme it is receiving—then there has been no infringement of the '402 patent, and LG is entitled

to summary judgment.").

## The August 2012 PTO Reexamination Certificate

        Prior to summary judgment, the United States Patent & Trademark Office ("PTO")

granted a request for an ex parte reexamination of the '402 Patent based on prior art and, on July 29,

---

[2]     Judge Kaplan adopted the Report & Recommendation but modified the construction of
        "informational scheme" to be "'[a first/second] kind or set of kinds of ratings information
        transmitted about a program that includes information assigned by one or more rating
        organizations, of which the receiver has no advance knowledge.'" Wi-Lan, Inc. v. LG Elecs.,
        Inc., 2012 WL 760148 at *4.

2010, "the PTO issued a non-final rejection of claims 7-15 of the '402 Patent on the grounds that they are 'anticipated' by prior art." Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *7 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.). Wi-Lan argued to the PTO that the prior art was distinguishable in that "it 'describes a system that can only utilize a single informational scheme.'" See id. "Wi-Lan also proposed adding new claims to the '402 Patent to 'further define the claimed invention.'" See id.

After summary judgment but prior to the Federal Circuit's decision on appeal, the PTO concluded its ex parte reexamination and issued a Reexamination Certificate on August 21, 2012. (Dkt. No. 326: Wi-Lan Opp. Br. at 6; Dkt. No. 327: Holohan Aff. Ex. 2: 8/21/12 Ex Parte Reexamination Certificate.) In addition to confirming the patentabilty of the challenged claims, the Reexamination Certificate added thirty-three new claims, several of which refer to preprogrammed information in connection with the "informational schemes" described in claim 7:

> 33. The method of claim 7 wherein at least one of said first or second configuration information is pre-configured in said memory.
>
> . . . .
>
> 35. The method of claim 7 wherein one of said received first and second configuration information describes said first or second informational scheme that has been previously stored in a persistent memory.

(Holohan Aff. Ex. 2: 8/21/12 Ex Parte Reexamination Certificate ¶¶ 33, 35; see also id. ¶¶ 38(j), 38(k), 46(c), 48; Wi-Lan Opp. Br. at 6-8.)

## The Federal Circuit's Oral Argument And Affirmance

On March 16, 2012, Wi-Lan appealed (Dkt. No. 294: Notice of Appeal), and the Federal Circuit heard oral argument on December 5, 2012 (Dkt. No. 327: Holohan Aff. Ex. 4: 12/5/12 Fed. Cir. Oral Argument Transcript ("T.")). The panel focused on claim construction.

(Holohan Aff. Ex. 4: T. 37-38: "Yeah, but I'm trying to get at the claim construction, not at whether

or not there's an absence of an infringement because there's only one set of information being passed

instead of two.")  In so doing, the panel stated that it was "still trying . . . to decide" whether the

district court's claim construction was supported:

> I'm still trying to have you help both your sides help us to decide whether or
> not this claim construction in the face of a clear definition in the statute -- I mean in
> the spec, because the inventor said "by this, I mean this".
>
> You know we play by the rules here.  You got to have something pretty big
> to overcome that.

(Holohan Aff. Ex. 4: T. 38.)[3]

In reviewing the district court's claim construction, counsel was questioned

extensively on whether there was in fact "a clear and unmistakable" disclaimer or disavowal in the

intrinsic evidence, in light of the district court's reliance on that finding.  (Holohan Aff. Ex. 4: T. 24,

27.)[4]  LG pointed to a number of instances that it characterized as disclaimers or disavowals, but

the panel expressed doubt as to each one.  (Holohan Aff. Ex. 4: T. 23-31.)

---

[3]    See Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2012 WL 760148 at *3 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.) (recognizing Wi-Lan's argument that "the term 'informational scheme' is 'expressly and unambiguously defined' in the '402 patent so as to allow pre-configured information to be included").

[4]    See Wi-Lan, Inc. v. LG Elecs., Inc., 2012 WL 760148 at *4 ("In examining this history, [Judge Peck] concluded that the inventor's disclaimers definitively showed that 'informational schemes' were intended to encompass only new information." (emphasis added)); Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *24 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.) ("[H]aving previously disavowed that its method covers receivers that have 'advance knowledge' of the informational schemes, Wi-Lan 'cannot use the doctrine of equivalents to recapture the disclaimed scope.'" (emphases added)).

The panel also suggested that a construction of "informational scheme" that included

preprogrammed information was not necessarily precluded by statements in which prior art was

distinguished because it was incapable of accommodating new ratings information:

> JUDGE MOORE: But how is that -- how is saying consequently, the invention provides a method and apparatus to remotely change and accommodate new schemes the same thing as saying, therefore, my extension doesn't include to anything that has any preprogrammed information that it uses?
>
> Saying something includes one thing is not the same thing as saying it excludes something else.
>
> . . . .
>
> JUDGE MOORE: A clear and unmistakable disclaimer is something that we've taken very seriously here at the Court.

(Holohan Aff. Ex. 4: T. 27-28.)

The panel went on to posit that there was nothing in the record that foreclosed an

alternative claim construction which would include preprogrammed information:

> JUDGE CLEVENGER: So what would happen if the District Court had looked at this a little differently and said well, this informational scheme -- information, describe the informational scheme. Instead of saying that it can't include information that the device already knows, said it has to include something that the device doesn't know?
>
> And the purpose of the invention was to say here that there would be a way to allow the hardwiring device to make adjustments, if you will. And it's not going to make adjustments of what it already knows, it's going to make adjustments to something new or different.
>
> . . . .
>
> JUDGE CLEVENGER: Would you object to a definition that said instead of saying the way he did that the informational scheme has to exclude what's already known as to say it's indifferent than what's already known and has to include something that's new?

(Holohan Aff. Ex. 4: T. 31-32.)

Six days after oral argument, however, the Federal Circuit affirmed this Court's decision without opinion. Wi-Lan, Inc. v. LG Elecs., Inc., 493 F. App'x 103, 104 (Fed. Cir. 2012) (per curiam).

**The Instant Motion**

After prevailing on appeal, LG brought two motions to recoup its attorneys' fees and expenses incurred during its defense of this litigation. (Dkt. No. 311: Notice of Motion for Sanctions; Dkt. No. 314: Notice of Motion for Attorney Fees.) On March 11, 2013, this Court denied LG's motion for sanctions based on Wi-Lan's alleged privilege log misconduct. (Dkt. No. 334: 3/11/13 Order.) In the motion presently before the Court, LG seeks attorneys' fees and expenses alleging that this is an "exceptional case" warranting fee-shifting under 35 U.S.C. § 285 and that sanctions are warranted under Fed. R. Civ. P. 11 and the Court's inherent authority. (Notice of Motion for Attorney Fees; Dkt. No. 315: LG Br.)

## ANALYSIS

## I.     STANDARDS FOR AWARDING ATTORNEYS' FEES UNDER 35 U.S.C. § 285[5/]

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285; see, e.g., MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 915 (Fed. Cir. 2012); Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V., 00 Civ. 4992, 2007 WL 3284028 at *3 (S.D.N.Y. Nov. 1, 2007) (Chin, D.J.). Section 285 calls for a two-step inquiry:

> When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry. First, the court must determine whether the prevailing

---

[5/]     Federal Circuit law applies to applications for attorneys' fees under 35 U.S.C. § 285. E.g., Bywaters v. United States, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012); Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1032 (Fed. Cir. 2006); Int'l Rectifier Corp. v. Samsung Elecs. Co., 424 F.3d 1235, 1238 (Fed. Cir. 2005), cert. denied, 547 U.S. 1128, 126 S. Ct. 2021 (2006); Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed. Cir. 2004).

party has proved by clear and convincing evidence that the case is exceptional. . . . If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified.

MarcTec, LLC v. Johnson & Johnson, 664 F.3d at 915-16.[6]

## A. **Determining Whether A Case Is Exceptional**

"'It is established law under section 285 that absent misconduct in the course of the litigation or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'" Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 711 F.3d 1341, 1346 (Fed. Cir. 2013).[7] "Under this exacting standard, the plaintiff's case must have no objective foundation, and the plaintiff must actually know this." iLOR, LLC v. Google, Inc., 631 F.3d at 1377.[8] "Both the objective and subjective prongs of [the standard] 'must be established [by the movant] by clear and convincing evidence.'" iLOR, LLC v. Google, Inc., 631 F.3d at 1377; accord, e.g., Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 711 F.3d at 1346.[9]

---

[6] Accord, e.g., Research Corp. Techs., Inc. v. Microsoft Corp., 536 F.3d 1247, 1254 (Fed. Cir. 2008); AstraZeneca AB v. Dr. Reddy's Labs., Ltd., 07 Civ. 6790, 2010 WL 1375176 at *4 (S.D.N.Y. Mar. 30, 2010) ("A decision to award attorney's fees proceeds in two steps. The district court first determines as a matter of fact whether the case is exceptional. If the case is declared exceptional, the district court then decides whether attorney's fees are appropriate."), appeal dismissed, 452 F. App'x 948 (Fed. Cir. 2010).

[7] Accord, e.g., Raylon, LLC v. Complus Data Innovations, Inc., 700 F.3d 1361, 1370 (Fed. Cir. 2012); iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011); Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).

[8] Accord, e.g., MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 916 (Fed. Cir. 2012); Spectros Corp. v. Thermo Fisher Scientific, No. 09-01996, 2012 WL 5523510 at *3 (N.D. Cal. Nov. 13, 2012).

[9] See also, e.g., AstraZeneca AB v. Mylan Labs., Inc., 00 Civ. 6749, 03 Civ. 6057, 2010 WL 2079722 at *7 (S.D.N.Y. May 19, 2010), aff'd sub nom. In re Omeprazole Patent Litig., 412
(continued...)

"With respect to the subjective prong, 'there is a presumption that an assertion of infringement of a duly granted patent is made in good faith.'" Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d 1300, 1309-10 (Fed. Cir. 2012) (quoting Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed. Cir. 2010)), petition for cert. filed, 81 U.S.L.W. 3562 (Mar. 25, 2013).[10/] The reasonableness of the patentee's pre-litigation assessment of infringement may be a factor in determining whether there is sufficient evidence to rebut the good faith presumption. See, e.g., Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 811 (Fed. Cir. 1990) ("[T]he reasonableness of the patentee in assessing infringement was a proper consideration. Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith . . . ."); AstraZeneca AB v. Dr. Reddy's Labs., Ltd., 07 Civ. 6790, 2010 WL 1375176 at *4 (S.D.N.Y. Mar. 30, 2010) ("Of particular importance to the assessment of [plaintiff's] behavior in this litigation, 'the reasonableness of the patentee in assessing infringement [is] a proper consideration.'"), appeal dismissed, 452 F. App'x 948 (Fed. Cir. 2010).[11/]

---

[9/]    (...continued)
        F. App'x 297 (Fed. Cir. 2011); Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 07 Civ. 2373, 2008 WL 5049744 at *8 (S.D.N.Y. Nov. 26, 2008) (Chin, D.J.), aff'd, 605 F.3d 1305 (Fed. Cir. 2010); Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V., 00 Civ. 4992, 2007 WL 3284028 at *3 (S.D.N.Y. Nov. 1, 2007) (Chin, D.J.).

[10/]   Accord, e.g., iLOR, LLC v. Google, Inc., 631 F.3d at 1377; Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d at 1382; Springs Willow Fashions, LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed. Cir. 2003).

[11/]   See also, e.g., Lakim Indus., Inc. v. Linzer Prods. Corp., No. 12-cv-04976, 2013 WL 1767799 at *2 (C.D. Cal. Apr. 24, 2013) ("The Court presumes that a patent infringement assertion is made in good faith. But if the record indicates by clear and convincing evidence that a patentee was manifestly unreasonable in assessing and pressing its infringement allegations, then a court may infer that the claims were brought in bad faith." (citation (continued...)

With respect to the objective prong, an infringement claim is not objectively baseless merely because the patentee is ultimately unsuccessful on the merits.  See, e.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d at 1384; iLOR, LLC v. Google, Inc., 631 F.3d at 1378, 1380; Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1315 (Fed. Cir. 2010) ("Defeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless; all of the circumstances must be considered.").  "'To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits.'"  Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d at 1309; accord, e.g., Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 711 F.3d at 1346; Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544 (Fed. Cir. 2011).[12]

The Court determines whether the case is exceptional "by evaluating 'the totality of the circumstances.'"  AstraZeneca AB v. Dr. Reddy's Labs., Ltd., 2010 WL 1375176 at *4 (quoting Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d at 811).[13]

---

[11]  (...continued)
omitted)); Sony Elecs., Inc. v. Soundview Techs., Inc., No. 00CV754, 2005 WL 1661696 at *7 (D. Conn. July 13, 2005) ("[P]re-litigation accusations of infringement that are made without the requisite investigation of the accused products may be relevant to the inquiry into whether [defendant] acted in good faith in bringing its infringement claim.").

[12]  See also, e.g., Raylon, LLC v. Complus Data Innovations, Inc., 700 F.3d at 1370 ("Similar to the evaluation under Rule 11, for litigation to be objectively baseless, the allegations 'must be such that no reasonable litigant could reasonably expect success on the merits.'"); iLOR, LLC v. Google, Inc., 631 F.3d at 1378.

[13]  Accord, e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d at 1311 ("[W]e are 'to take into account the totality of circumstances.'"); Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d at 1384 ("[T]he entirety of a patentee's conduct may be considered . . . ."); Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1347 (Fed. Cir. 2000); Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V., 2007 WL 3284028 at *3 ("[I]n making this determination, 'the district court must look at the totality (continued...)

**B.     Even If The Case Were Exceptional, Determining Whether Attorneys' Fees Should Be Awarded Is Within The Court's Discretion**

Even if the court finds that a case is exceptional within the meaning of § 285, the decision of whether to award attorneys' fees is discretionary. E.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("Even for an exceptional case, the decision to award attorney fees and the amount thereof are within the district court's sound discretion."); Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 795 (Fed. Cir. 1995).[14]

"A number of factors determine whether attorneys fees are appropriate, including the 'closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser.'" McNeil-PPC, Inc. v. Perrigo Co., 516 F. Supp. 2d at 260 (quoting J.P. Stevens Co. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1051 (Fed. Cir. 1987)).[15] "Thus, [a]ttorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit, and are awarded to avoid a gross injustice." McNeil-PPC, Inc. v. Perrigo Co., 516 F.

---

[13]     (...continued)
of the circumstances.'").

[14]     See also, e.g., AstraZeneca AB v. Mylan Labs., Inc., 00 Civ. 6749, 03 Civ. 6057, 2010 WL 2079722 at *7 (S.D.N.Y. May 19, 2010), aff'd sub nom. In re Omeprazole Patent Litig., 412 F. App'x 297 (Fed. Cir. 2011); McNeil-PPC, Inc. v. Perrigo Co., 516 F. Supp. 2d 238, 260 (S.D.N.Y. 2007), aff'd, 274 F. App'x 899 (Fed. Cir. 2008).

[15]     See, e.g., Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001) ("A finding that this case was exceptional would not, of course, end the inquiry. The subsequent decision to award attorney fees, vel non, is discretionary and 'permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.'").

Supp. 2d at 260 (quotations omitted); accord, e.g., AstraZeneca AB v. Mylan Labs., Inc., 2010 WL

2079722 at *7.[16/]

## II.   THIS IS NOT AN "EXCEPTIONAL CASE" UNDER 35 U.S.C. § 285

LG argues that Wi-Lan's pre- and post-litigation conduct provide clear and

convincing evidence that its infringement claim was both subjectively and objectively baseless.

(Dkt. No. 315: LG Br. at 4-20, 24-31; Dkt. No. 329: LG Reply Br. at 1-10.) For the reasons set forth

below, LG has not met its burden of establishing that Wi-Lan pursued its claim in bad faith or that

a reasonable litigant could not expect success on the merits of Wi-Lan's claim.

### A.   LG Has Not Established By Clear And Convincing Evidence That Wi-Lan's Infringement Theory Was Subjectively Baseless

LG argues that the subjective bad faith prong is established by Wi-Lan's decision to

pursue an infringement claim that it knew was meritless for the purpose of coaxing a settlement out

of LG. (Dkt. No. 315: LG Br. at 28-29.) LG argues that it can be inferred that Wi-Lan knew its

claim was meritless from the following alleged pre-litigation conduct: (1) Wi-Lan's failure to

conduct a reasonable pre-filing investigation (LG Br. at 25-26); (2) LG's communications to Wi-Lan

of LG's noninfringement position (LG Br. at 10-11, 24-28); (3) Wi-Lan's efforts to lobby the FCC

to adopt a second ratings system (LG Br. at 8, 10, 28; Dkt. No. 329: LG Reply Br. at 4-6); and (4)

Wi-Lan's adoption of an alternative infringement theory after the FCC failed to adopt a second

ratings system, based on a broader claim scope that included preprogrammed ratings information

---

[16/]   See also, e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 701 F.3d 1351, 1355 (Fed. Cir. 2012) (en banc) ("Early on, it was recognized that attorneys' fee awards were 'not to be regarded as a penalty for failure to win a patent infringement suit,' and should only be allowed where it would be 'grossly unjust that the winner . . . be left to bear the burden of his own counsel fees.'"), petition for cert. filed, 81 U.S.L.W. 3562 (Mar. 25, 2013).

(LG Br. at 8-12, 27; LG Reply Br. at 6-7). LG's arguments are insufficient to rebut the presumption of Wi-Lan's good faith by clear and convincing evidence.

First, LG's argument regarding the adequacy of Wi-Lan's pre-filing investigation is simply the unsupported ipse dixit that since Wi-Lan did not come to the same conclusion as LG (and ultimately the Court), Wi-Lan's investigation must have been unreasonable. (See LG Br. at 25-26.) In contrast, Wi-Lan submits evidence of its pre-filing investigation, which included "a detailed analysis not only of industry standards but of experiments that Wi-LAN performed on LG's products, demonstrating that LG's Accused Products infringe the '402 Patent." (Dkt. No. 326: Wi-Lan Opp. Br. at 25; Dkt. No. 327: Holohan Aff. Ex. 1: 11/26/07 Wi-Lan Atty. Fortkort Letter to LG.) LG has not shown by clear and convincing evidence that Wi-Lan's level of investigation was insufficient. See, e.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1384 (Fed. Cir. 2005) ("The several opinions of counsel and other expert opinions obtained by [defendant] are not charged with having been obtained for specious 'cosmetic' purposes, and their analysis of the designs is not unreasonable. We conclude that there was not clear and convincing evidence of bad faith by [defendant] in charging [plaintiff] with infringement and in pressing this charge in litigation."); Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1302 (Fed. Cir. 2004) (infringement analysis was sufficient where plaintiff in part "relied on its own comparison of the asserted claims with the accused product"); Sony Elecs., Inc. v. Soundview Techs., Inc., No. 00CV754, 2005 WL 1661696 at *8 (D. Conn. July 13, 2005) (defendant "acted with reasonable diligence" where counsel had technology analyzed by engineering consultants who opined it infringed defendant's patent, and the other "parties have not presented evidence suggesting that the investigation was a sham, with a[] predetermined result").

Second, having conducted its own investigation and come to its own conclusion, that Wi-Lan did not accept LG's noninfringement opinion does not make Wi-Lan's position unreasonable. See, e.g., HR U.S. LLC v. Mizco Int'l, Inc., No. 07-CV-2394, 2010 WL 3924548 at *12 (E.D.N.Y. Sept. 29, 2010) ("Defendants also rely on the fact that, at the beginning of the litigation, defendants' attorney sent a letter to plaintiff's counsel demanding that plaintiff withdraw the suit because there was no infringement of the '250 patent. In the letter, defendants' counsel set forth defendants' non-infringement defense by detailing five differences between the claimed and accused designs. . . . [T]he withdrawal letter only shows that plaintiff was on notice of defendants' position and does not, in and of itself, establish that plaintiff's view of infringement was manifestly unreasonable."); Seaquist Closures LLC v. Rexam Plastics, No. 08C0106, 2009 WL 1615521 at *2 (E.D. Wis. June 9, 2009) ("That [defendant] advised [plaintiff] that it believed the '501 patent was invalid based on prior art (and that the PTO ultimately agreed) also does not establish bad faith."); Sony Elecs., Inc. v. Soundview Techs., Inc., 2005 WL 1661696 at *8 ("[T]he fact that the [plaintiffs] warned [defendant] that its infringement claim lacked merit prior to [defendant's] commencement of this suit is of little moment. A party is not bound by its adversary's opinion of the strength of its case. . . . Thus, although the television manufacturers fiercely disputed the accusation of infringement, and [defendant] was aware of weaknesses in its infringement claim prior to bringing suit, on balance the [plaintiffs] have not proved that [defendant] brought this litigation in bad faith." (citation omitted)).

Furthermore, LG's argument that it believed Wi-Lan's original infringement theory to be meritless is undercut by the fact that LG took a license from Wi-Lan, as did dozens of other electronics manufacturers. (See Wi-Lan Opp. Br. at 26.) See, e.g., Sony Elecs., Inc. v. Soundview Techs., Inc., 2005 WL 1661696 at *8 ("Finally, [defendant's] licensing of other television

manufacturers is entitled to some weight in assessing whether [defendant] acted in bad faith in bringing this suit. As [defendant] notes, three-quarters of the television industry obtained licenses from [defendant] under its patent . . . . While it is possible to speculate, as the [plaintiffs] urge, that some of the manufacturers accepted licenses as a part of a litigation-averse business decision, or that upon further review, the manufacturers reversed their initial assessment of infringement, there is no evidence in the record supporting such speculation. [Defendant] commenced this suit after investigation and analysis of the accused infringers' technology, and after successfully licensing much of the television industry, which the [plaintiffs] have not rebutted, and which causes them to fall short of their burden of showing bad faith by clear and convincing evidence.").[17]

In its third point, LG infers that Wi-Lan knew its theory was meritless because it lobbied the FCC to adopt a second ratings system—lobbying that Wi-Lan would not have done, LG argues, unless it knew that its infringement claim could not succeed without the FCC's adoption of a second ratings system. (LG Br. at 8, 28.) Absent any evidence of Wi-Lan's motivation for lobbying the FCC, LG's bald assertion falls drastically short of the clear and convincing evidence needed to overcome the presumption of Wi-Lan's good faith.[18]

---

[17]   LG's argument that other manufacturers also opposed Wi-Lan's licensing efforts (LG Br. at 28), does not make Wi-Lan's position unreasonable. See, e.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d at 1384 ("Patent rights are useful only if they can legally exclude others from the patented subject matter. That [defendant] is a larger company than [plaintiff], that it has sued others, and that it was unwilling to grant a license, are not indicative of bad faith. Although the entirety of a patentee's conduct may be considered, enforcement of patent rights that are reasonably believed to be infringed does not entail special penalty when the patentee is unsuccessful.").

[18]   Cf., e.g., Rein v. Socialist People's Libyan Arab Jamahiriya, 443 F. App'x 612, 614 (2d Cir. 2011) (affirming district court's conclusion that "the fact that [claimant-appellant] engaged in lobbying did not prove that the firm's activities 'conferred a substantial benefit'" in the litigation where "[t]he record provides few details about the nature of [claimant-appellant's]
(continued...)

Fourth, and finally, LG argues that Wi-Lan's bad faith is evidenced by its abandoning its original infringement theory in favor of an alternative infringement theory, even without the FCC's promulgation of a second ratings system, by arguing that the term "informational scheme" encompassed preprogrammed ratings information in addition to remotely transmitted information. (LG Br. at 8; LG Reply Br. at 6-7.)  Again, LG's argument is not substantiated by sufficient evidence; merely adopting an alternative infringement theory does not establish Wi-Lan's bad faith by clear and convincing evidence.  See, e.g., Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 959 (Fed. Cir. 2010) ("[W]e see nothing improper in [plaintiff's] decision to narrow its infringement claim in this case."); Ortho Diagnostic Sys. Inc. v. Miles Inc., 865 F. Supp. 1073, 1083 (S.D.N.Y. 1994) (after considering the party's "successive changes of position on the issue of infringement," the court found that the evidence fell "short of establishing the level of culpability necessary for a finding of 'exceptional circumstances'"), appeal dismissed, 48 F.3d 1237 (Fed. Cir. 1995).

Accordingly, LG has failed to establish by clear and convincing evidence that Wi-Lan's infringement claim was subjectively baseless or brought in bad faith, as required to warrant an "exceptional case" finding.

---

[18]/    (...continued)

lobbying activities"); Whirlpool Corp. v. LG Elecs., Inc., No. 04-CV-100, 2007 WL 570467 at *4 (W.D. Mich. Feb. 20, 2007) ("The Court is not convinced that this evidence of aggressive and competitive business strategies has any relevance to the Court's determination of whether this litigation was initiated or pursued in bad faith.  Moreover, even if the statements suggested any bad-faith business practices, the Federal Circuit has made it clear that such practices would not support a finding that this is an 'exceptional case' under § 285 . . . ."); Moore v. Hartman, Nos. 92-2288, 93-0324, 1993 WL 405785 at *6 (D.D.C. Sept. 24, 1993) ("[T]his scenario . . . essentially relies upon a post hoc ergo propter hoc theory of causation—because the lobbying came before the prosecution, the lobbying must have caused the prosecution. . . . This link is far too tenuous . . . .").

**B.** **LG Has Not Established By Clear And Convincing Evidence That Wi-Lan's Infringement Theory Was Objectively Baseless**[19]

Even if LG had shown Wi-Lan's claim to be subjectively baseless, which it has not, LG nevertheless has failed to establish that this case is "exceptional" because it has not shown by clear and convincing evidence that Wi-Lan's claim was objectively baseless. LG argues that the objective baselessness of Wi-Lan's theory of interpretation of "informational scheme" is established by: (1) the claim language and statements in the prosecution history distinguishing prior art based on preprogrammed information (Dkt No. 315: LG Br. at 8-13, 25-28; Dkt. No. 329: LG Reply Br. at 4, 6-7); (2) Wi-Lan's failure to prove actual infringement (LG Br. at 25, 27-29; LG Reply Br. at 5); and (3) the Federal Circuit's per curiam affirmance of this Court's summary judgment decision six days after the oral argument (LG Br. at 13-14; LG Reply Br. at 1-3).

As an initial matter, it is well established that LG's success on the merits of the disputed claim does not alone establish objective baselessness, and thus the Court's finding that the claim language and prosecution history supported a construction of "informational scheme" that excluded preprogrammed information is not proof that Wi-Lan's theory was baseless. (See cases

---

[19] Because LG has failed to satisfy the subjective bad faith requirement, the Court need not even address the objectively baseless prong. See, e.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("Since we conclude that the first requirement (subjective bad faith) is not satisfied here, we need not decide whether the second (objectively baseless) standard was met."); see also, e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d 1300, 1315 (Fed. Cir. 2012) ("Because we conclude that [defendant's] allegations of infringement of claim 52 were not objectively baseless, we need not reach the question of whether [defendant] acted in subjective bad faith."), petition for cert. filed, 81 U.S.L.W. 3562 (Mar. 25, 2013); iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1378 (Fed. Cir. 2011) ("[W]e conclude that a finding of objective baselessness has not been met here, and we need not consider the issue of subjective bad faith.").

cited at page 11 above.)[20] Likewise, because Wi-Lan's ability to produce evidence of infringement was entirely dependent on the Court's claim construction (see page 4 above), this Court's finding that there was no evidence of infringement under the construction it adopted does not establish that there was no proof of infringement under other claim constructions. (See Dkt. No. 326: Wi-Lan Opp. Br. at 27 n.5.) Indeed, as the Federal Circuit noted during oral argument, disregarding arguendo the construction of "informational scheme," further claim construction would be necessary to determine whether LG was infringing. (Dkt. No. 327: Holohan Aff. Ex. 4: T. 46: "Well, you know, that really then turns it all on what the meaning of stored is, which we haven't spent much time.")[21]

Moreover, despite the Court's ultimate holding, Wi-Lan's infringement claim was not unsupported; Wi-Lan had a reasonable basis for its theory, including a "detailed analysis of applicable industry standards, a nationwide engineering study, and review and analysis of LG's own technical documentation and witness testimony." (Wi-Lan Opp. Br. at 24.) See, e.g., Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 711 F.3d 1341, 1347-48 (Fed. Cir. 2013) (citing Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1374 (Fed. Cir. 2009) (rejecting "a general rule requiring one who alleges infringement of a claim containing functional limitations to perform actual tests or

---

[20]   See also, e.g., Lakim Indus., Inc. v. Linzer Prods. Corp., No. 12-cv-04976, 2013 WL 1767799 at *2 (C.D. Cal. Apr. 24, 2013) ("Reasonable minds can differ as to claim construction, and losing constructions can nonetheless be nonfrivolous.").

[21]   See also Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2012 WL 760148 at *3 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.) ("If Wi-Lan's understanding of the term . . . is correct, then LG has infringed the patent . . . ." (emphasis added)), aff'd per curiam, 493 F. App'x 103 (Fed. Cir. 2012); cf., e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d at 1315 ("There was no showing by [plaintiff] that it would not infringe under an alternate [claim] construction . . . ."); Spectros Corp. v. Thermo Fisher Scientific, No. 09-01996, 2012 WL 5523510 at *4 (N.D. Cal. Nov. 13, 2012) ("The mere fact that [plaintiff] did not prevail at the claim construction hearing with respect to the term 'illuminator' did not ipso facto obligate [plaintiff] to abandon its action against" defendant.).

experiments on the accused product or method")); Old Reliable Wholesale, Inc. v. Cornell Corp.,
635 F.3d 539, 545-46 (Fed. Cir. 2011) ("nothing frivolous or inherently implausible" in plaintiff's
theory despite a finding that it "was 'trying to have it both ways in order to preserve its infringement
claim'" and avoid invalidating the patent based on prior art); Brooks Furniture Mfg., Inc. v. Dutailier
Int'l, Inc., 393 F.3d at 1383-84 ("On review, we do not share the view that the opinions of counsel
and the opinions of the other experts were inadequate and their conclusions unreasonable. . . . The
fact that an infringement opinion may not have mentioned every detail of the patented or the accused
design does not necessarily render the opinion wrong or unreliable.").[22]

LG makes much of the Federal Circuit's per curiam affirmance without opinion six
days after the oral argument. (LG Br. at 13-14; LG Reply Br. at 1-3.)  Without more, the Court
declines to interpret the summary affirmance as a silent statement by the Federal Circuit that Wi-
Lan's infringement theory was objectively baseless.  See, e.g., Sony Elecs., Inc. v. Soundview
Techs., Inc., No. 00CV754, 2005 WL 1661696 at *3 (D. Conn. July 13, 2005) (case not exceptional
despite the fact that "the Federal Circuit rejected [defendant's] appeal without opinion"); Dri Mark
Prods. Inc. v. Nat'l Ink Inc., 01 Civ. 6541, 2002 WL 1339136 at *1 (S.D.N.Y. June 19, 2002)
(declining to award attorneys' fees for "exceptional case" where summary judgment decision was
affirmed without opinion), aff'd, 57 F. App'x 870 (Fed. Cir. 2003).[23]

---

[22]     See also, e.g., Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme
         GmbH, 603 F.3d 943, 957 (Fed. Cir. 2010) (plaintiff's reliance on expert witnesses to justify
         its "decision to go forward with its claim of infringement under the doctrine of equivalents"
         evidenced that its "position was not unreasonable even though it did not ultimately prevail").

[23]     This is especially true where, as here, the Federal Circuit held oral argument on the appeal.
         See, e.g., iLOR, LLC v. Google, Inc., 631 F.3d at 1379 ("[T]he fact that this court held oral
         argument . . . in the first appeal suggests that we did not regard the case as frivolous." (citing
         Fed. R. App. P. 34(a)(2) ("Oral argument must be allowed in every case unless a panel of
                                                                                    (continued...)

Furthermore, several of the panel members' statements during oral argument suggest that Wi-Lan's theory was objectively reasonable, notwithstanding that the Federal Circuit ultimately affirmed this Court's grant of summary judgment to LG. (See pages 6-8 above.) The question on this Section 285 motion is not whether Wi-Lan should have prevailed on the merits, but whether a reasonable litigant could have expected to prevail on the merits of the argument when it was made. (See cases cited at page 11 above.)[24/] The Federal Circuit panel was unconvinced that there was in fact a disclaimer of the claim's scope that would preclude Wi-Lan's interpretation. (See page 6 above.) Further, the panel went so far as to propose an alternative construction of "informational scheme" that was consistent with Wi-Lan's theory and not foreclosed by the claim language. (See page 7 above.) Any inference that could be drawn from the manner in which the Federal Circuit decided Wi-Lan's appeal does not support LG's position here. See, e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d at 1314-15 ("While the claim language . . . favors the construction ultimately adopted by the district court, it does not foreclose [defendant's] construction. . . . This is not a case where the claim language was not subject to an alternative construction . . . ."); iLOR, LLC v. Google, Inc., 631 F.3d at 1378 ("On its face, the claim language does not preclude the patentee's construction, although, as we held in the first appeal, the language supports the district court's construction. . . . [W]hile the specification does not disclose a right-click embodiment [which

_____

[23/]   (...continued)
three judges who have examined the briefs and record unanimously agrees that oral argument is unnecessary for any of the following reasons: (A) the appeal is frivolous . . . .")).

[24/]   See also, e.g., iLOR, LLC v. Google, Inc., 631 F.3d at 1378 ("The question is whether [plaintiff's] broader claim construction was so unreasonable that no reasonable litigant could believe it would succeed.").

the patentee argued is encompassed in the disputed term], it does not foreclose that argument either.").

Finally, the PTO's August 21, 2012 Reexamination Certificate offers additional support for the objective reasonableness of Wi-Lan's infringement claim. It is undisputed that the PTO's Reexamination Certificate has no bearing on this Court's decision. (Wi-Lan Opp. Br. at 6; LG Reply Br. at 10.)   Rather, the parties dispute whether the Certificate's newly added claims—which unequivocally establish that the PTO's understanding of the term "informational scheme" is consistent with the interpretation advanced by Wi-Lan but rejected by this Court (see page 5 above)—are probative evidence that Wi-Lan's argument was reasonable. (Wi-Lan Opp. Br. at 23-24; LG Reply Br. at 10 & nn.9-11.)

The Court agrees with LG that the holding of Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539 (Fed. Cir. 2011), which involved patent invalidity, is not directly applicable to the instant infringement claim. (LG Reply Br. at 10 & n.10.)[25]   Nevertheless, the general legal principle—that the objective reasonableness of a party's unsuccessful litigation claim may be evidenced by an ex parte reexamination certificate that validates or adopts the unsuccessful claim—is applicable here, notwithstanding that Wi-Lan's case involved claim construction.[26]   The

---

[25]   The Federal Circuit held that an ex parte PTO reexamination certificate confirming a patent's validity is probative evidence that plaintiff had a reasonable basis for claiming validity, and undercuts any contention that plaintiff's claim of validity was objectively baseless. Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d at 548-49.

[26]   Cf., e.g., Neev v. Abbott Med. Optics, Inc., No. 09-146, 2012 WL 1066797 at *6 (D. Del. Mar. 26, 2012) (relying on new claims added after reexamination to determine the scope of a disputed term during claim construction; "The parties' central dispute regarding this claim term ['interaction energy transients'] focuses on whether the term includes plasma within its purview.  Defendant argues that Plaintiff previously disclaimed plasma from the scope of the patent during prosecution in order to distinguish Plaintiff's invention from prior art.
(continued...)

PTO's unequivocal agreement with Wi-Lan's interpretation of "informational scheme" as including preprogrammed information provides some evidence that Wi-Lan's claim was objectively reasonable. Cf., e.g., Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d at 548-49; Tesco Corp. v. Weatherford Int'l Inc., 750 F. Supp. 2d 780, 818 (S.D. Tex. 2010) ("[I]t is undisputed that PTO examiners rejected all but three of [plaintiff's] claims [during reexamination]. The rejection of those claims by three PTO examiners, along with the lack of compelling contradictory evidence from [plaintiff], is sufficient to show that, as a matter of law, [plaintiff] cannot show by clear and convincing evidence that there was an objectively high likelihood that [defendant's] actions constituted infringement of a valid patent. . . . Therefore, [plaintiff] cannot prove the objective prong by clear and convincing evidence . . . .").[27/]

---

26/ (...continued)

Defendant cites to the prosecution history of the '199 Patent, during which the examiner purportedly understood the '199 Patent to distinguish between the 'interaction energy transients' of the '199 Patent and the 'plasma' disclosed in a previously issued patent . . . . [T]he term 'plasma' is specifically cited in the claims added during reexamination, including Claim 21. Therefore, the Court adopts Plaintiff's construction of 'interaction energy transients' as 'energy transients in the target material that are created by interaction of electromagnetic radiation with the target material.'" (citation omitted)).

27/ LG's arguments to the contrary are unavailing, as the same arguments were made and rejected by the Federal Circuit in Old Reliable. Specifically, LG argues that the PTO Reexamination Certificate is not evidence of objective reasonableness because the PTO did not consider the scope disclaimers distinguishing prior art in the prosecution history that this Court considered. (LG Reply Br. at 10 & n.10.) During reexamination, however, the PTO would have considered any such prior art. See, e.g., Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *2, *7 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.) (the PTO originally rejected the claims in the '402 Patent's parent application after consideration of prior art, and this PTO reexamination was requested for the purpose of distinguishing prior art), report & rec. adopted as modified, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.), aff'd per curiam, 493 F. App'x 103 (Fed. Cir. 2012). While the difference in evidentiary considerations could be important to an analysis of the merits of the claim construction, it does not preclude reliance on the PTO reexamination as evidence of objective reasonableness. See Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d at 548-49 (continued...)

Accordingly, LG has failed to establish by clear and convincing evidence that Wi-

Lan's infringement claim was objectively baseless or unreasonable, as required to warrant an

"exceptional case" finding.  See, e.g., iLOR, LLC v. Google, Inc., 631 F.3d at 1379-80 ("The

objective evidence in this case demonstrates that [plaintiff] could reasonably argue that its broad

claim construction position was correct and that [defendant] infringed its claims. . . .  As we held

in the first appeal, [plaintiff's] claim construction was incorrect.  But simply being wrong about

claim construction should not subject a party to sanctions where the construction is not objectively

baseless."); Sony Elecs., Inc. v. Soundview Techs., Inc., 2005 WL 1661696 at *4 ("While

[defendant] acknowledges that its claim construction was deemed 'contrary to the specification and

clear language of claim 1,' it argues that its interpretation of 'rating signal line' before the Special

Master depended on its reasonable construction of the term 'character,' which the Special Master

acknowledged presented the more difficult question. . . .  [G]iven the ambiguity in the term

---

27/      (...continued)
(Defendant "argues that this court should not give weight to the PTO's notice of intent to
issue an ex parte reexamination certificate . . . . In support, it . . . 'disputes the accuracy and
completeness of the reexamination proceedings,' and contends that '[t]he examiner did not
have, nor could he have reviewed, all of the information, facts and testimony upon which the
district court based its decision to invalidate the '950 patent.'  We do not find these
arguments persuasive.  Although the results of the PTO reexamination proceedings were not
available to the district court, this court can take judicial notice of the fact that the PTO, after
assessing the relevant prior art, issued a notice of intent to issue a reexamination certificate
confirming the patentability of all claims of the '950 patent.  Moreover, although the PTO
may not have considered all the deposition testimony relied upon by the district court in
making its invalidity determination, the fact remains that the PTO assessed . . . many other
prior art references, and yet confirmed the validity of all claims of the '950 patent over the
prior art.  '[I]t is the trial court's decision, not the PTO's, that is before us on appeal.'  This
court, therefore, is not reviewing the correctness of the PTO's reexamination validity
determination.  We conclude, however, that the fact that the PTO confirmed the validity of
the '950 patent on reexamination provides probative evidence on the issue of whether
[plaintiff] had a reasonable basis for its assertion that its patent was not anticipated."
(citations omitted)); see also id. at 548 n.6 (discussing different standards of review).

'character' in the patent, [defendant's] interpretation cannot be said to lack all grounding in the claim language.").[28]

## C.    LG's Remaining Arguments Are Unavailing

LG argues that this case should be declared exceptional for the additional reasons that Wi-Lan engaged in litigation misconduct and pursued a sham fraudulent inducement claim. (Dkt. No. 315: LG Br. at 29-31; Dkt. No. 329: LG Reply Br. at 6-8 & n.4.) LG alleges that Wi-Lan pursued a fraudulent inducement cause of action despite "multiple written and oral communications between LG and Wi-LAN in which LG repeatedly stated that it would pay royalties when it actually used the patented technology and that it wanted a separate report for reporting zero royalties in the interim." (LG Br. at 29.) LG relies only on its own arguments of the claim's weakness to support its sham assertion; nothing in the Court's decision suggests that Wi-Lan's fraudulent inducement claim was meritless. See Wi-LAN, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *27 (S.D.N.Y. Aug. 2, 2011) (Peck, M.J.) ("Wi-Lan's claim for fraudulent inducement . . . should be dismissed without prejudice."), report & rec. adopted as modified, 2012 WL 760148 at *6 (S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.) ("All remaining state law claims are dismissed without prejudice . . . ."), aff'd per curiam, 493 F. App'x 103 (Fed. Cir. 2012).

---

[28]    See also, e.g., AstraZeneca AB v. Apotex Corp., 01 Civ. 9351, 2010 WL 2541180 at *5 (S.D.N.Y. June 9, 2010) ("While [plaintiff] ultimately succeeded at trial, [defendant] raised a substantial question of infringement, one that required 'an exhaustive analysis' by the Court."); U.S. Philips Corp. v. Iwasaki Elec. Co., 607 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) ("[T]here was a colorable basis for [defendant's] assertions in the litigation: they had a substantial legal and factual basis for its positions, although none were ultimately meritorious."), appeal dismissed, 449 F. App'x 1 (Fed. Cir. 2010); Dri Mark Prods. Inc. v. Nat'l Ink Inc., 2002 WL 1339136 at *1 ("[T]he outcome of this case was by no means a foregone conclusion. . . . In overseeing the litigation of this matter from the pretrial conference to the granting of summary judgment nine months later, I found this case to be neither frivolous nor exceptional.  I therefore decline to award attorney fees.").

Moreover, LG's assertion that "Wi-LAN's fraud claim unnecessarily multiplied these proceedings" (LG Br. at 29) is belied by the fact that LG relied on the same evidence to defend against the fraud claim that it submits in support of its argument that Wi-Lan's infringement theory lacked merit. (See pages 13-17 above; see also LG Br. at 10-11: "LG consistently informed Wi-LAN in both pre- and post-execution license negotiations that no LG DTV receiver could possibly practice the method claimed in the '402 Patent until, at a minimum, new ratings systems were approved and broadcast in the U.S., such as RRT-05. . . . [Counsel's negotiation notes make clear] that Wi-LAN understood that LG believed that its DTV receivers could not possibly infringe the '402 Patent until new ratings systems were broadcast in the U.S. . . . . Wi-LAN concedes that in the United States, RRT-05 . . . has never been broadcast. . . . Despite failing to obtain favorable FCC standards that required the broadcast of a new, ratings system or downloadable RRT, Wi-LAN shifted gears, concocted its RRT-01 theory of infringement, and sued LG anyway.")

As to litigation misconduct, the litigation was hard-fought and both parties engaged in conduct that should not have occurred. (See, e.g., Dkt. No. 334: 3/11/13 Order.) See also Wi-Lan, Inc. v. LG Elecs., Inc., 2011 WL 3279075 at *1 n.1 ("[T]he Court previously indicated, without deciding, its willingness to shift costs for certain discovery violations including those raised by Wi-Lan's sanctions motion . . . ."). Indeed, LG's current motion—to the extent that it seeks Rule 11 sanctions despite its failure to follow the procedures required by Rule 11 (see pages 29-31 below), is itself the sort of misconduct that should not occur but does occur in hard-fought litigation.[29]

---

[29]     See, e.g., Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 833 F. Supp. 2d 333, 353-54 (E.D.N.Y. 2011) ("The present action was indeed hard-fought and rigorously contested, necessitating discovery disputes, a lengthy trial, and voluminous filings with this Court. However, a review of the record reveals that there is simply no basis to find that the Defendants acted in bad faith, committed inequitable conduct, or participated in vexatious
(continued...)

Accordingly, LG's additional arguments are insufficient to establish that this is an exceptional case
warranting an award of attorneys' fees.

## III.    LG IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES OR EXPENSES

### A.    An Award Of Attorneys' Fees Is Not Warranted Under 35 U.S.C. § 285

Even assuming arguendo that this case were "exceptional" within the meaning of 35

U.S.C. § 285, which it is not, the Court in its discretion nevertheless would decline to recommend

an award of attorneys' fees.  (See cases cited at page 12 above.)

As discussed above, the outcome of this case was not a foregone conclusion and

when viewed in the totality of circumstances, including LG's own litigation conduct (see page 26

above), as well as the weakness of LG's counterclaims,[30] and LG's frivolous Rule 11 application as

part of the current motion (see pages 29-31 below), Wi-Lan's actions do not amount to the type of

inequitable or unusual conduct that would justify awarding attorneys' fees under 35 U.S.C. § 285.

See, e.g., Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 833 F. Supp. 2d 333, 354

---

[29]    (...continued)
activity. . . . After reviewing the entire record, including discovery over a four and one-half
year period, the Court finds that the Defendants did employ some marginally vexatious
litigation tactics.  However, as both parties recognize, this case has been high stakes from
its inception.  Litigation by its nature is adversarial and often zealous advocacy can cross the
fine line between fervor and offense.  However, even taking all of the Plaintiff's allegations
of misconduct as true for purposes of this motion, Defendants' counsel did not act beyond
the bounds of civility."); U.S. Philips Corp. v. Iwasaki Elec. Co., 607 F. Supp. 2d 470, 482
(S.D.N.Y. 2009) ("Nothing in the litigation conduct of [defendant] warrants an award of
attorneys' fees.  In the five years presiding over this hard-fought case . . . I observed no
litigation misconduct by anyone.  This is not an 'exceptional case' warranting an award of
attorneys' fees."), appeal dismissed, 449 F. App'x 1 (Fed. Cir. 2010).

[30]    See Wi-Lan, Inc. v. LG Elecs., Inc., 10 Civ. 432, 2011 WL 3279075 at *26-27 (S.D.N.Y.
Aug. 2, 2011) (Peck, M.J.) (granting summary judgment for Wi-Lan dismissing LG's
trademark infringement counterclaim where "LG has offered no proof" of requisite elements
to establish trademark infringement), report & rec. adopted as modified, 2012 WL 760148
(S.D.N.Y. Mar. 7, 2012) (Kaplan, D.J.), aff'd per curiam, 493 F. App'x 103 (Fed. Cir. 2012).

(E.D.N.Y. 2011) ("There was nothing 'truly unusual' about the Defendants' conduct so as to characterize this case as 'exceptional'. However, even if this case could be considered exceptional, the Court still exercises its discretion to deny the Plaintiff's request for attorneys' fees."); McNeil-PPC, Inc. v. Perrigo Co., 516 F. Supp. 2d 238, 260 (S.D.N.Y. 2007) (attorneys' fees not awarded where "[i]nequitable conduct in this case could be found, hypothetically, only by a 'close margin'" (citing J.P. Stevens Co. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1051 (Fed. Cir. 1987))), aff'd, 274 F. App'x 899 (Fed. Cir. 2008).[31/]

## B. LG Is Not Entitled To Attorneys' Fees Or Expenses Under Rule 11 Or This Court's Inherent Authority

LG also argues that it is entitled to attorneys' fees and expenses (including expert fees) under Rule 11 and the Court's inherent authority. (Dkt. No. 315: LG Br. at 25-26, 34-35.) LG's arguments are unavailing. As an initial matter, having failed to meet the "exceptional case" standard (see pages 13-27 above), LG is not entitled to expert fees or expenses pursuant to the Court's inherent authority. See, e.g., Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 966 (Fed. Cir. 2010) ("[W]e have stated that a case must be sufficiently beyond exceptional within the meaning of section 285 to justify . . . a sanction under the court's inherent power." (quotations omitted)); see also, e.g., MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 921 (Fed. Cir. 2012) ("A district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute. Use of

---

[31/]   See also, e.g., K-TEC v. Vita-Mix, 765 F. Supp. 2d 1304, 1314, 1316 (D. Utah 2011) ("Although [defendant] raised nearly fifty invalidity defenses, most of which did not survive summary judgment, and an interfering patents counterclaim, which was without merit, [plaintiff] also brought claims that were ultimately determined to lack merit. Vigorous litigation is not the same as litigation misbehavior. . . . In this case, [defendant's] conduct did not rise to the level necessary for the court to impose attorney fees." (citation omitted)), aff'd, 696 F.3d 1364 (Fed. Cir. 2012).

this inherent authority is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." (quotations & citation omitted)).

With regard to Rule 11 sanctions, LG's failure to comply with Rule 11's procedural requirements bars any award of Rule 11 sanctions. Consistent with Rule 11(c)(1)'s notice requirement, a party's Rule 11 sanctions motion must be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). A copy of the motion must be served on the offending party twenty-one days before it is filed with the Court. Fed. R. Civ. P. 11(c)(2); see Fierro v. Gallucci, 423 F. App'x 17, 19 (2d Cir. 2011) (subsection (c)(2) "requires Rule 11 motions to be served on the opposing party 21 days prior to their filing"); Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 156 (2d Cir. 2010) (Rule 11(c)(2) "provides filers with a 'safe harbor' from sanctions, in that a Rule 11(c)(2) motion not only must specify the conduct for which sanctions are sought but must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document."); In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003) ("Where a sanction is initiated by a party's motion, this provision requires initial service of the motion but delays filing or presentation of the motion to the court for 21 days . . . ."); Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002); Martens v. Thomann, 273 F.3d 159, 178 (2d Cir. 2001) (Sotomayor, C.J.). This so called "safe-harbor" provision affords the offending party an opportunity to withdraw, or otherwise correct, the "challenged paper, claim, defense, contention, or denial" before the motion is filed. Fed. R. Civ. P. 11(c)(2).[32] "A motion that fails to comply with the safe harbor provision of Rule 11 must be

---

[32] See, e.g., Fierro v. Gallucci, 423 F. App'x at 19; Lawrence v. Richman Grp. of CT LLC, 620 F.3d at 156; In re Pennie & Edmonds LLP, 323 F.3d at 89; Perpetual Sec., Inc. v. Tang, 290 F.3d at 142; Martens v. Thomann, 273 F.3d at 178.

denied." <u>Castro</u> v. <u>Mitchell</u>, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010); <u>see, e.g.</u>, <u>Fierro</u> v. <u>Gallucci</u>,

423 F. App'x at 18-19 ("[T]he district court was required to deny plaintiffs' motion for sanctions for

failure to comply with the 21-day 'safe harbor' . . . ."); <u>Rojas</u> v. <u>Schkoda</u>, 319 F. App'x 43, 44 (2d

Cir. 2009) (affirming denial of Rule 11 sanction because defendant "did not comply with the 'safe

harbor' provision"); <u>Bryant</u> v. <u>Britt</u>, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (affirming denial of Rule

11 sanctions because movant "failed to comply with Rule 11(c)[(2)]"); <u>Perpetual Sec., Inc.</u> v. <u>Tang</u>,

290 F.3d at 142 (reversing imposition of Rule 11 sanctions because "appellees did not serve their

[Rule 11] motion on [appellant] prior to filing it with the court").[33/]

 LG's application for Rule 11 sanctions was not made "'separately from any other

motion,'" as required by Fed. R. Civ. P. 11(c)(2), nor is there any evidence in the record that LG's

motion was served on Wi-Lan's counsel twenty-one days before filing with the Court. (<u>See</u> Dkt. No.

326: Wi-Lan Opp. Br. at 32.) LG's Rule 11 motion thus failed to comply with Rule 11's safe harbor

---

[33/] <u>See also, e.g.</u>, <u>NMD Interactive, Inc.</u> v. <u>Chertok</u>, 11 Civ. 6011, 2013 WL 1385213 at *11 (S.D.N.Y. Mar. 18, 2013) ("This safe harbor is mandatory, and failure to honor it is sufficient grounds for denying a Rule 11 motion. The safe harbor provision disposes of Defendant's motion to sanction Plaintiff. Defendant failed to give Plaintiff twenty-one days to withdraw the challenged motion. Indeed, he failed to give Plaintiff any time at all, filing his Rule 11 motion on the same day he served Plaintiff. Therefore, the Court denies Defendant's motion for Rule 11 sanctions." (citations omitted)); <u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>, 08 Civ. 5996, 2010 WL 4970011 at *7-8 (S.D.N.Y. Dec. 8, 2010) (Peck, M.J.), <u>report & rec. adopted as modified</u>, 855 F. Supp. 2d 205 (S.D.N.Y. 2012); <u>Homkow</u> v. <u>Musika Records, Inc.</u>, 04 Civ. 3587, 2009 WL 721732 at *20 (S.D.N.Y. Mar. 18, 2009) ("If a party seeking Rule 11 sanctions fails to comply with the safe-harbor provision . . . the motion must be denied."); <u>Libaire</u> v. <u>Kaplan</u>, No. 06-1500, 2008 WL 794973 at *15 (E.D.N.Y. Mar. 24, 2008) ("Notwithstanding [plaintiff's violation of Rule 11], defendants are not entitled to sanctions under Rule 11 due to their failure to comply with the safe harbor provision embodied in Rule 11(c) . . . ."); <u>O'Callaghan</u> v. <u>Sifre</u>, 242 F.R.D. 69, 75-76 (S.D.N.Y. 2007); <u>Benicorp Ins. Co.</u> v. <u>Nat'l Med. Health Card Sys., Inc.</u>, 447 F. Supp. 2d 329, 341 (S.D.N.Y. 2006).

provision.[34/]  (See cases at pages 29-30 above.)  LG's Rule 11 motion for attorneys' fees therefore should be denied.

## CONCLUSION

For the reasons set forth above, LG's motion to declare this case exceptional and for an award of attorneys' fees and expenses (Dkt. No. 314) should be <u>DENIED</u> in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.

---

[34/]    "The language of the Rule makes no provision for oral or informal notice.  Case law similarly confirms that a written motion must be served upon the adverse party in order to comply with Rule 11(c)(2)."  Castro v. Mitchell, 727 F. Supp. 2d at 307 (citing cases); see also, e.g., Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement. An informal warning . . . without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." (citations omitted)).

32

1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:       New York, New York
             May 10, 2013

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies (ECF) to:      All Counsel
                      Judge Lewis A. Kaplan